**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **Asuris Northwest Health; Blue Cross and Blue Shield of Kansas City; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross and BlueShield of Oregon; Regence BlueCross and BlueShield of Utah; and Regence BlueShield of Washington**, | Case No. 1:20-cv-4940 |
| | *consolidated with* |
| *Plaintiffs*, | Case No. 1:20-cv-1853 |
| | Case No. 1:20-cv-1929 |
| v. | Case No. 1:20-cv-3332 |
| | Case No. 1:20-cv-4738 |
| **Walgreen Co. and Walgreens Boots Alliance, Inc.**, | |
| | Honorable Virginia M. Kendall |
| *Defendants*. | Magistrate Judge Sheila M. Finnegan |

**MEMORANDUM IN SUPPORT OF DEFENDANTS**
**WALGREEN CO.'S & WALGREENS BOOTS ALLIANCE, INC.'S**
**MOTION TO DISMISS CASE NO. 1:20-CV-4940**
**UNDER FED. R. CIV. P. 12(B)(7) & 12(B)(6)**

Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co.*
*and Walgreens Boots Alliance, Inc.*

## TABLE OF CONTENTS

Introduction ........................................................................................................... 1

Statement of Facts ................................................................................................ 2

Argument ............................................................................................................... 4

I.   Rule 12(b)(7) – Plaintiffs Failed to Join the PBMs, Indispensable Parties that Defeat Diversity and Are Not Subject to the Court's Jurisdiction; Dismissal Is Required ...... 4

II.  Rule 12(b)(6) – Plaintiffs Have Not Adequately Pleaded Their Common-Law Claims (Counts 1–3 & 9) ................................................................................................ 7

   A.  Plaintiffs' Claims Fail to Satisfy Rule 8(a), Much Less Rule 9(b) .............................. 8

      1.  Plaintiffs have failed to plead that Walgreens made any false statements. ................... 9

      2.  Plaintiffs have failed to plead that Walgreens knew that Plaintiffs expected reported U&C prices to include PSC prices. ................................................ 10

      3.  Plaintiffs have failed to plead—and cannot plead—that they reasonably relied on the reported U&C prices. ........................................................... 10

      4.  Plaintiffs have failed to plead the circumstances constituting the alleged fraud with particularity, as required under Rule 9(b). ................................... 11

   B.  Plaintiffs' Fraudulent Concealment and Negligent Misrepresentation Claims (Counts 2 & 3) Also Fail Because Walgreens Owed Plaintiffs No Duty .................. 11

   C.  Plaintiffs' Unjust Enrichment Claim (Count 9) Must Be Dismissed ........................ 12

III. Rule 12(b)(6) – Plaintiffs' Statutory Claims Fail (Count 4–8) ........................................ 12

   A.  Plaintiffs' UTPA Claim Is Untimely (Count 4) ............................................. 12

   B.  Plaintiffs Lack Standing to Bring an ICPA Claim (Count 5) .................................... 13

   C.  Plaintiffs' ICFA and IUDTPA Claims Fail Because Plaintiffs Have Failed to Plead an Illinois Nexus (Counts 7–8) ........................................................... 13

   D.  Plaintiffs' Statutory Claims (Counts 4–8) Fail on the Merits .................................. 14

IV.  All Claims against WBA Must Be Dismissed ................................................................ 15

Conclusion .......................................................................................................... 15

i

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.,*
  348 F. Supp. 3d 797 (N.D. Ill. 2018) ........................................................15

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.,*
  751 F.3d 796 (7th Cir. 2014) ......................................................................7

*American Pipe & Construction Co. v. Utah,*
  414 U.S. 538 (1974) ..................................................................................13

*Avery v. State Farm Mut. Auto Ins. Co.,*
  216 Ill. 2d 100 (2005) ..........................................................................13, 14

*Bass v. Prime Cable of Chi., Inc.,*
  284 Ill. App. 3d 116 (1st Dist. 1996) .......................................................11

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ....................................................................................8

*BI3, Inc. v. Hamor,*
  No. 08 CV 2384, 2011 WL 9728 (N.D. Ill. Jan. 3, 2011) .........................2

*Bonnstetter v. Chicago,*
  811 F.3d 969 (7th Cir. 2016) ....................................................................13

*Chaudry v. Musleh,*
  No. 17 C 1813, 2018 WL 3361846 (N.D. Ill. July 9, 2018) ......................7

*Cleary v. Philip Morris Inc.,*
  656 F.3d 511 (7th Cir. 2011) ....................................................................12

*Corcoran v. CVS Health Corp.,*
  No. 15-cv-03504, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017), *rev'd,* 779 F.
  App'x 431 (9th Cir. 2019) ...........................................................................9

*Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.,*
  No. 08 C 2561, 2010 WL 1541308 (N.D. Ill. Apr. 16, 2010)............2, 4, 5

*In re: Dairy Farmers of Am., Inc. Cheese Antitrust Litig.,*
  No. 9-cv-3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015).................13

*Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co., Ltd.,*
  759 F.3d 787 (7th Cir. 2014) ......................................................................6

*Fleshman v. Wells Fargo Bank, N.A.*,
   27 F. Supp. 3d 1127 (D. Or. 2014) ...................................................................14, 15

*Forth v. Walgreen Co.*,
   No. 17-cv-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) .................................12

*United States ex rel. Garbe v. Kmart Corp.*,
   824 F.3d 632 (7th Cir. 2016) .....................................................................................3

*Gen. Accident Ins. Co. of Am. v. Old Repub. Int'l Corp.*,
   648 F. Supp. 634 (N.D. Ill. 1986) .............................................................................7

*Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*,
   105 Wash. 2d 778 (1986) (en banc)..................................................................14, 15

*Henson v. CSC Credit Servs.*,
   29 F.3d 280 (7th Cir. 1994) ......................................................................................2

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
   451 F. Supp. 2d 982 (N.D. Ill. 2006) .................................................................11, 15

*Martin Implement Sales, Inc. v. Ford New Holland, Inc.*,
   No. 87 C 8883, 1989 WL 31031 (N.D. Ill. Mar. 29, 1989) .....................................6

*McIntosh v. Walgreens Boots Alliance, Inc.*,
   2019 IL 123626.........................................................................................................11

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69 (1982) ...........................................................................................11, 12

*N. Grain Mktg., LLC v. Greving*,
   743 F.3d 487 (7th Cir. 2014) .....................................................................................6

*Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*,
   295 Ill. App. 3d 567 (1st Dist. 1998) ........................................................................8

*Pearson v. Philip Morris, Inc.*,
   358 Or. 88 (2015)......................................................................................................14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ...............................................................................8, 11

*Pirelli Armstrong Tire Corp. v. Walgreen Co.*,
   No. 09 C 2046, 2009 WL 2777995 (N.D. Ill. Aug. 31, 2009).................................12

*United States ex rel. Proctor v. Safeway Inc.*,
   No. 11-cv-3406, 2020 WL 3132397 (C.D. Ill. June 12, 2020)................................10

*Progress Printing Corp. v. Jane Byrne Political Comm.,*
    235 Ill. App. 3d 292 (1st Dist. 1992) ...................................................................5

*Saenz v. Pittenger,*
    78 Or. App. 207 (1986)...........................................................................12, 13

*SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.,*
    374 Ill. App. 3d 1 (1st Dist. 2007) ........................................................................8

*United States ex rel. Schutte v. Supervalu, Inc.,*
    No. 11-3290, 2020 WL 3577996 (C.D. Ill. July 1, 2020)..................................9, 10

*Scott v. Ill. Bell Tel. Co.,*
    169 F. Supp. 3d 845 (N.D. Ill. 2016) ..................................................................13

*Sears v. Likens,*
    912 F.2d 889 (7th Cir. 1990) .......................................................................11, 15

*Serv. Corp. Int'l v. Stericycle, Inc.,*
    No. 19 C 1960, 2020 WL 43017 (N.D. Ill. Jan. 4, 2020) ....................................15

*Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Solutions, Inc.,*
    No. 18 C 566, 2019 WL 2357030 (N.D. Ill. June 4, 2019) ...................................15

*Tarzian v. Kraft Heinz Foods Co.,*
    No. 18 C 7148, 2019 WL 5064732 (N.D. Ill. Oct. 10, 2019) ................................14

*Taylor v. McNichols,*
    149 Idaho 826 (2010).................................................................................13, 15

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties,*
    390 F. Supp. 3d 892 (N.D. Ill. 2019) ..................................................................13

*Zarecor v. Morgan Keegan & Co., Inc.,*
    801 F.3d 882 (8th Cir. 2015) .............................................................................13

**Statutes**

815 ILCS 505/2 .........................................................................................................14

815 ILCS 505/2B.3 ...................................................................................................14

815 ILCS 510/3 .........................................................................................................14

28 U.S.C. § 1367 .........................................................................................................6

Idaho Code § 48-608..................................................................................................14

Or. Rev. Stat. § 646.638............................................................................................12, 14

iv

Wash. Rev. Code § 19.86.020.........................................................................................................14

**Other Authorities**

Fed. R. Civ. P. 10......................................................................................................................2

Fed. R. Civ. P. 12.......................................................................................................2, 4, 7, 12

Fed. R. Civ. P. 19......................................................................................................................5, 7

Fed. R. Evid. 201........................................................................................................................2

Rest. (2d) Agency § 1................................................................................................................5

## INTRODUCTION

This matter is the ***fifth*** in a series of nearly identical, misguided complaints filed by the same counsel on behalf of large healthcare insurers seeking a windfall recovery based on a theory of liability that Plaintiffs lifted wholesale from an inapposite government case about Medicaid rules.[1] Plaintiffs fail in their attempt to twist the government fraud theory from that other case into the framework of sophisticated commercial contracts that defines Plaintiffs' business relationships with Defendant Walgreen Co. ("Walgreens"). Once more, Plaintiffs focus on a single contractual term, "Usual & Customary" ("U&C"), contained in agreements between Walgreens and the pharmacy benefit managers ("PBMs") who acted as Plaintiffs' agents for purposes of pharmacy reimbursement transactions. *See* Pls.' Compl., No. 1:20-cv-4940, ECF No. 1 ("Compl."), ¶¶ 41–43, 45, 53–54. According to Plaintiffs, the U&C prices Walgreens reported to Plaintiffs' PBMs should have reflected, but did not reflect, the special prices available only to members of certain discount clubs, such as Walgreens' Prescription Savings Club ("PSC").[2] Plaintiffs again suggest that they should never pay the negotiated rate for a drug if any customer could buy it for a lower price, even if the customer could obtain the lower price only by joining PSC. Once more, Plaintiffs are dead wrong, ***because their agents, the PBMs, do not require or expect Walgreens to include discount club rates in its reported U&C prices, and they never have***.

---

[1] All five cases in the series—this case; *BCBSM, Inc. v. Walgreen Co.*, No. 1:20-cv-1853 ("*BCBSM*"); *Horizon Healthcare Servs., Inc. v. Walgreen Co.*, No. 1:20-cv-3332; *HealthNow New York Inc. v. Walgreen Co.*, No. 1:20-cv-1929; and *Blue Cross & Blue Shield of Arizona, Inc. v. Walgreen Co.*, No. 1:20-cv-4738—were consolidated before this Court. *See* 1:20-cv-1853, ECF No. 86.

[2] Plaintiffs also reference "other similar discount programs," including JustRx. *See, e.g.*, Compl. ¶¶ 11–12. Plaintiffs do not (and cannot) allege, however, that Walgreens owns or operates JustRx or any of these "other similar discount programs." In any event, Plaintiffs focus almost exclusively on PSC, *see, e.g.*, *id.* ¶¶ 2, 9; *id.*, Ex. 1, and every "exemplar overcharge[]" Plaintiffs identify allegedly occurred through PSC. *See id.* ¶ 73 n.45; *id.*, Ex. 2. Accordingly, this memorandum focuses on PSC, though Plaintiffs' vague allegations about other discount programs fail for most of the same reasons.

As in earlier cases filed in this Court by other Blue Cross Blue Shield affiliates, Plaintiffs' PBMs are indispensable parties whose rights and obligations will be central to the resolution of this case. *See Creative Trade Grp., Inc. v. Int'l Trade Alliance, Inc.*, No. 08 C 2561, 2010 WL 1541308, at *3–5 (N.D. Ill. Apr. 16, 2010). As a result, Plaintiffs' case fails under Federal Rule of Civil Procedure 12(b)(7). Plaintiffs' tortured fraud theory also fails once again as a matter of law. Even setting aside the PBMs' sworn testimony repudiating Plaintiffs' claims and ignoring the actual terms of the contracts between Walgreens and OptumRx, Inc. ("OptumRx") and Express Scripts, Inc. ("Express Scripts"), Plaintiffs fall short of basic federal pleading standards, as well as Rule 9(b)'s enhanced standards for fraud. Plaintiffs' Complaint should be dismissed.[3]

## STATEMENT OF FACTS[4]

Plaintiffs' factual allegations, and their relationships with Walgreens through Plaintiffs' PBM agents, follow a pattern with which the Court is now familiar. Plaintiffs, through their PBM agents, reimburse Walgreens the lesser of a negotiated price and Walgreens' U&C price. *See* Compl. ¶¶ 47, 54. In this case, Plaintiffs employed Express Scripts, Catalyst RX, Catamaran, OptumRx,[5] and Prime Therapeutics LLC ("Prime") as their PBM agents. *See id.* ¶ 53.[6]

---

[3] Walgreens and Walgreens Boots Alliance, Inc. ("WBA," and together with Walgreens, "Defendants") filed a similar motion and memorandum in *BCBSM*. *See* No. 1:20-cv-1853, ECF Nos. 47, 49, 52. Defendants respectfully refer the Court to that memorandum for additional details.

[4] The Statement of Facts is drawn from Plaintiffs' Complaint, exhibits attached to it, *see* Fed. R. Civ. P. 10(c), and the PBMs' declarations in other federal court cases. The Court may take judicial notice of the fact that the PBMs provided declarations. *See* Fed. R. Evid. 201(b); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994). For the purposes of Defendants' 12(b)(7) argument, the Court can also rely on the substance of the declarations and other extrinsic evidence. *See, e.g.*, *BI3, Inc. v. Hamor*, No. 08 CV 2384, 2011 WL 9728, at *2 (N.D. Ill. Jan. 3, 2011).

[5] OptumRx is the successor entity of various mergers involving Catalyst RX and Catamaran. *See* Sneha Banerjee, *UnitedHealth to Buy Pharmacy Benefit Firm Catamaran for $12.8 Billion*, Reuters (Mar. 20, 2015), https://www.reuters.com/article/us-catamaran-m-a-unitedheal-grp/unitedhealth-to-buy-pharmacy-benefit-firm-catamaran-for-12-8-billion-idUSKBN0MQ0WT20150330.

[6] Blue Cross Blue Shield of Kansas City ("Blue KC") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 39(a–c). ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮, the remaining plaintiffs (the "Cambia Plaintiffs") ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Because the PBMs stand between the pharmacies and insurers, two sets of contracts govern the reimbursement process and define the U&C price: the pharmacies' contracts with the PBMs, and the PBMs' contracts with the insurers. *See, e.g.*, *id.* ¶¶ 39, 41–43, 122. In other federal lawsuits, OptumRx, Prime, and Express Scripts have testified that their contracts with pharmacies do ***not*** require the pharmacies to report discount club rates, like those offered to PSC members, as U&C.

- According to OptumRx's Senior Director of Network Relations, OptumRx "took a consistent position with respect to membership-based generic programs . . . . If a pharmacy required a customer to enroll in a program in order to access the membership program's prices," then OptumRx ***did not "require[] the pharmacy to submit the program's prices as U&C***." Decl. of Charles D. Zagnoli ("Zagnoli Decl."), Ex. 1, ¶ 12 (emphasis added).

- Prime is owned by a number of Blue Cross-related entities, including at least some of the Cambia Plaintiffs. Prime's Assistant Vice President of Network Management likewise explained under oath that "Prime had ***no expectation of pharmacies to submit pricing from such opt-in savings programs as their U&C pricing***." Zagnoli Decl., Ex. 2, ¶ 17, *see also id.*, Ex. 3, ¶ 20 (emphasis added).

- Express Scripts' Vice President for Retail Strategy & Contracting similarly testified that, even though Express Scripts "is aware that several [pharmacy membership programs] still exist today," it "believes ***these programs are outside the [ ] contractual relationship" that defines the U&C price***. Zagnoli Decl., Ex. 4, ¶ 18 (emphasis added).

For years, Plaintiffs have reimbursed Walgreens based on U&C prices that exclude discount club prices. *See id.* ¶ 74. In fact, Plaintiffs ***continue to this day*** to reimburse Walgreens based on those U&C prices, *id.* ¶ 94, despite the fact that (i) in lawsuits dating back more than a decade, including *United States ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016),[7] which Plaintiffs rely on in their Complaint, *see* Compl. ¶ 66, plaintiffs have accused pharmacies of improperly excluding membership club prices from U&C; (ii) in 2017, a putative nationwide class (which, if certified, would include Plaintiffs) filed a lawsuit specifically against Walgreens[8]

_____

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. *Id.* ¶ 39(d). ▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* ¶ 39(e).

[7] No. 3:12cv881 (S.D. Ill., filed July 16, 2008, unsealed Sept. 2, 2010); *see also, e.g.*, *United States ex rel. Proctor v. Safeway Inc.*, No. 11-cv-3406 (C.D. Ill., filed Nov. 7, 2011, unsealed Aug. 26, 2015).

[8] *Forth v. Walgreen Co.*, No. 17-cv-2246 (N.D. Ill., filed March 23, 2017).

making essentially the same allegations Plaintiffs make here, *see id.* ¶ 30; and (iii) on January 24, 2019, Walgreens publicly settled government claims related to its U&C prices. *Id.* ¶ 2.[9]

## ARGUMENT

## I. RULE 12(B)(7) – PLAINTIFFS FAILED TO JOIN THE PBMS, INDISPENSABLE PARTIES THAT DEFEAT DIVERSITY AND ARE NOT SUBJECT TO THE COURT'S JURISDICTION; DISMISSAL IS REQUIRED

This case revolves around the contracts and course of dealing between Walgreens and Plaintiffs' agents, the PBMs. The PBMs are the only entities that have relevant contracts with *both* Walgreens and Plaintiffs; they served as the "sole conduit" between Walgreens and Plaintiffs in a purportedly massive fraud scheme. *Creative Trade Grp.*, 2010 WL 1541308, at *4. For each Plaintiff, the PBM-Walgreens contracts are the instruments under which Walgreens agrees to submit U&C prices—the heart of Plaintiffs' purported fraud case. *See* Compl. ¶¶ 41, 45. The PBMs are thus required parties. *See Creative Trade Grp.*, 2010 WL 1541308, at *3–5. However, the relevant PBMs are not subject to personal jurisdiction in Illinois or their presence would destroy diversity. Because this case cannot proceed without the PBMs, Rule 12(b)(7) mandates dismissal.

*First*, the PBMs are required parties under Rule 19(a)(1). The PBMs clearly "claim[] an interest relating to the subject of the action," and the Court "cannot accord complete relief among existing parties" without them. Fed. R. Civ. P. 19(a)(1). Walgreens interacted with Plaintiffs solely through the PBMs. The PBMs adjudicated reimbursement claims with full knowledge regarding the U&C provisions in *both* the Walgreens-PBM and PBM-Plaintiff contracts and with full knowledge that Walgreens was offering discounted prices to PSC members that it was not reporting as U&C prices. *See, e.g.*, Compl. ¶¶ 53–55; Zagnoli Decl., Exs. 1–4.[10] If the PBMs have

---

[9] *See United States ex rel. Baker v. Walgreens, Inc.*, No. 1:12-cv-00300-JPO, Stipulation & Order of Settlement & Dismissal, ECF No. 53.

[10] The Court can rely on extrinsic evidence to resolve a Rule 12(b)(7) motion. *See supra*, note 4.

contractual obligations or made representations to their principals (Plaintiffs) that are inconsistent with their contracts and course of dealings with Walgreens, Plaintiffs' claims are against the PBMs, not Walgreens. *See Creative Trade Grp.*, 2010 WL 1541308, at *4.

The PBMs' absence also leaves Walgreens "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Because Plaintiffs "employ[] the services of a PBM" to "adjudicate and administer prescription benefits . . . on their behalf" subject to a "contractual . . . reimbursement formula," Compl. ¶¶ 52, 55, the PBMs are Plaintiffs' agents. *See, e.g.*, Rest. (2d) Agency § 1. And because the PBMs are Plaintiffs' agents, Walgreens was entitled to rely on the PBMs' representations and course of dealings regarding what the U&C price must—and need not—include. *See, e.g.*, *Progress Printing Corp. v. Jane Byrne Political Comm.*, 235 Ill. App. 3d 292, 307–10 (1st Dist. 1992).

OptumRx, Prime,[11] and Express Scripts have all testified publicly that they have consistently taken the position that, when pharmacies require customers to join a membership club to take advantage of the club's lower prices, the pharmacies need not report those membership club prices as U&C. *See* Zagnoli Decl., Ex. 1, ¶ 12; *id*. Ex. 2, ¶ 17; *id*. Ex. 3, ¶ 20; *id*. Ex. 4, ¶ 18. Moreover, the contracts between Walgreens and OptumRx and Walgreens and Express Scripts ████████████████████████████████████████████████████████. Walgreens' January 1, 2017, Pharmacy Network Agreement with OptumRx ██████████████████████ ████████████████████████████████████████████████████████ ███████████████" Zagnoli Decl., Ex. 5 § 1.43. Similarly, a 2017 amendment to Walgreens' contract with Express Scripts ██████████████████████████████████ ████████████████████████████████████" Zagnoli Decl., Ex. 6, ¶ 4; *id*. Ex. 7.

---

[11] Prime's supplemental declarations, *see* Zagnoli Decl., Exs. 8–9, do not negate its original testimony.

The PBMs' binding contracts and sworn testimony directly contradict Plaintiffs' claims; should Plaintiffs prevail in this case, however, Walgreens would have to submit U&C prices contrary to its contracts and long course of dealing with Plaintiffs' PBMs. *Cf. Martin Implement Sales, Inc. v. Ford New Holland, Inc.*, No. 87 C 8883, 1989 WL 31031, at *3 (N.D. Ill. Mar. 29, 1989).

*Second*, the PBMs cannot be joined, either because they would divest this Court of subject-matter jurisdiction, or because they are not subject to personal jurisdiction in Illinois. Prime and Express Scripts plainly defeat diversity jurisdiction. Prime, ███████████████████████████, *see* Compl. ¶ 39(e), is owned by 18 Blue Cross entities, including Blue Cross and Blue Shield of Illinois and several Cambia Plaintiffs.[12] Because an LLC has the citizenship of each of its members, *Fellowes, Inc. v. Changzhou Xinrui Fellowes Office Equip. Co., Ltd.*, 759 F.3d 787, 787–88 (7th Cir. 2014), Prime destroys diversity whether it joins the case as a plaintiff (adverse to both Defendants, each an Illinois citizen) or a defendant (adverse to multiple Plaintiff-owners sharing Prime's citizenships). Express Scripts is a Delaware corporation with its principal place of business in Missouri, meaning it shares Delaware citizenship with Defendant WBA and Missouri citizenship with Plaintiff Blue KC.[13] Again, the PBM defeats diversity and divests the Court of jurisdiction regardless of which side of the caption it occupies as a party. *See* 28 U.S.C. § 1367(b).

This Court also lacks personal jurisdiction over OptumRx (and Express Scripts and Prime), so OptumRx is not subject to service of process. *See* Fed. R. Civ. 19(a)(1). Because Plaintiffs invoke diversity jurisdiction, Compl. ¶ 31, the forum state's jurisdictional rules control. *See N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014). Illinois courts may exercise personal jurisdiction to the extent permitted by the Constitution, *see id* at 491–92, but haling

---

[12] *See* Prime Therapeutics, *Owner clients*, https://www.primetherapeutics.com/en/news/Resources/clients.html.

[13] *See* Zagnoli Decl. Ex. 6; *id.* Ex. 7 ¶ 8.2 (██████████████████████████████).

OptumRx, Express Scripts, or Prime into an Illinois court for this case would violate the Fourteenth Amendment. These PBMs are not subject to *general* personal jurisdiction in Illinois because they are not "at home" here.[14] None is headquartered, incorporated, or has its primary operations in this State. *See Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014). The Court also lacks *specific* jurisdiction over these PBMs. *Id.* at 801–02. If, for example, Plaintiffs sued these PBMs for fraudulently reporting U&C prices to Plaintiffs, the PBMs could not be dragged into court in Illinois by out-of-state Plaintiffs simply because Walgreens is based in Illinois. In that case, the PBMs' only suit-related contacts with Illinois would be their contracts with Walgreens, and the PBMs' contacts with Illinois through other parties do not subject them to jurisdiction here. *See id.* at 801.

*Third*, the action cannot "in equity and good conscience" proceed without the PBMs. Fed. R. Civ. P. 19(b). "The Seventh Circuit has repeatedly explained that a contracting party" like each of the PBMs here, "is the paradigm of an indispensable party." *Chaudry v. Musleh*, No. 17 C 1813, 2018 WL 3361846, at *4 (N.D. Ill. July 9, 2018) (quotations omitted). As a result, the Court must dismiss the Complaint. *See Gen. Accident Ins. Co. of Am. v. Old Repub. Int'l Corp.*, 648 F. Supp. 634, 638 (N.D. Ill. 1986).

## II.  RULE 12(B)(6) – PLAINTIFFS HAVE NOT ADEQUATELY PLEADED THEIR COMMON-LAW CLAIMS (COUNTS 1–3 & 9)

The Court must also dismiss this case under Rule 12(b)(6) for reasons that are now familiar to the Court. Plaintiffs' muddled common-law fraud and misrepresentation claims (Counts 1–3)

---

[14] OptumRx is a California corporation with its principal place of business in California. *See Corporation – Statement of Information*, (filed July 27, 2020), https://businesssearch.sos.ca.gov/Document/RetrievePDF?Id=01569496-28688315. Express Scripts is a Delaware corporation with its principal place of business in Missouri. *See supra*, note 13. Prime is a Delaware LLC with its principal place of business in Minnesota. *See Prime Therapeutics LLC*, https://mblsportal.sos.state.mn.us/Business/SearchDetails?filingGuid=6a9c9c1b-8bd4-e011-a886-001ec94ffe7f.

fail to satisfy even Rule 8(a)'s basic pleading standards, *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007), much less the more demanding standards under Rule 9(b). *See, e.g.*, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441, 446–47 (7th Cir. 2011). Because Plaintiffs' unjust enrichment claim (Count 9) relies on the same faulty allegations, it too must be dismissed.

### A.   Plaintiffs' Claims Fail to Satisfy Rule 8(a), Much Less Rule 9(b)

To plead fraud, fraudulent nondisclosure, and negligent misrepresentation, Plaintiffs must at least allege that Walgreens made a false statement or concealed a material fact, and that Plaintiffs reasonably relied on that statement or omission. *Neptuno Treuhand-Und Verwaltungsgesellschaft Mbh v. Arbor*, 295 Ill. App. 3d 567, 571–575 (1st Dist. 1998).[15] To plead fraud and fraudulent nondisclosure, Plaintiffs must also allege that Walgreens knew its U&C prices were false. *Id.* Plaintiffs' fraud-based claims (Counts 1–3) thus fail from the start: the Complaint demonstrates that contracts, not vague, varied industry standards, define U&C. By relying on industry standards alone, Plaintiffs cannot plausibly plead—let alone plead with particularity—that Walgreens made any false statements or that Walgreens reported any U&C prices knowing them to be false.

Plaintiffs never clearly allege that Walgreens told Plaintiffs that its U&C prices included discount club prices, or that they did not *know* that Walgreens' U&C prices excluded such prices. Instead, Plaintiffs complain that Walgreens failed to disclose certain details about PSC. Plaintiffs fail to plead plausibly how Plaintiffs reasonably could have relied on any notional representation by Walgreens that it was reporting discount club prices as U&C. Walgreens has advertised its lower PSC prices since 2007, and, for more than a decade, plaintiffs have accused pharmacies of

---

[15] Illinois law applies to the common-law claims as there is no conflict between Illinois and any other potentially applicable states' law. *See SBC Holdings, Inc. v. Travelers Cas. & Sur. Co.*, 374 Ill. App. 3d 1, 13 (1st Dist. 2007).

excluding membership club prices from U&C. *See supra*, note 7. Plaintiffs' own Complaint thus reflects that the insurers were on inquiry and actual notice of Walgreens' practices for years.

1.    <u>Plaintiffs have failed to plead that Walgreens made any false statements.</u>

As the Complaint and case law make clear, the U&C price is a creature of contract. *See* Compl. ¶¶ 6, 39, 41–43, 45, 81; *United States ex rel. Schutte v. Supervalu, Inc.*, No. 11-3290, 2020 WL 3577996, at *10–11 (C.D. Ill. July 1, 2020); *Corcoran v. CVS Health Corp.*, No. 15-cv-03504, 2017 WL 3873709, at *20 (N.D. Cal. Sept. 5, 2017) ("Plaintiffs' claims of misrepresentations rely on defendants breaching their contract with the PBMs and TPPs . . ."), *rev'd*, 779 F. App'x 431, 433 (9th Cir. 2019) (still recognizing essential role of PBM contracts in evaluating plaintiffs' fraud claims). Crucially, the Complaint also makes clear that separate contracts between Walgreens and Plaintiffs' PBMs define the U&C prices that Walgreens transmits to the PBMs. *Id.* ¶¶ 41–43, 122. No matter how Plaintiffs defined U&C in their own PBM contracts, or what Plaintiffs supposedly believe pharmacies should report, the Walgreens-PBM agreements could contain different (but valid, binding) terms defining U&C contrary to Plaintiffs' alleged expectations.

Instead of alleging with any specificity how Walgreens' contracts with Plaintiffs' PBM agents define U&C, Plaintiffs plead on information and belief that Prime's contract adopted "industry standards" that bind Walgreens. *See* Compl. ¶¶ 43, 45.[16] Plaintiffs have pleaded themselves out of court, however, by alleging facts making clear that *there is no industry standard definition of U&C*. Indeed, Plaintiffs point to a laundry list of rules, regulations, manuals, and their own contracts with their PBMs, each carving in or out different benefits, promotions, and discounts from the definition of U&C. *See, e.g.*, Compl. ¶¶ 36, 39, 49. Of course, *none* of these authorities— including Prime's Pharmacy Provider Manual, *see id.* ¶ 44—establishes the definition of U&C in

---

[16] Plaintiffs fail entirely to plead how Walgreens' contracts with OptumRx or Express Scripts define U&C.

the only context that is actually relevant here: Walgreens' contractual relationship with the PBMs that served as Plaintiffs' agents.

> 2. Plaintiffs have failed to plead that Walgreens knew that Plaintiffs expected reported U&C prices to include PSC prices.

Plaintiffs do not allege that they ever told Walgreens, directly or through their agents, that U&C reporting must include discount club prices. Instead, Plaintiffs speculate that Walgreens somehow knew that Plaintiffs' agreements with their PBMs contained such a requirement. *Id.* ¶ 39. Specifically, Plaintiffs contend that they each "contracted [with their PBMs] to receive the benefit" of certain U&C discounts. *Id.* Yet Plaintiffs do not assert that Walgreens had any reason to know the terms of Plaintiffs' highly confidential PBM contracts—documents that Plaintiffs filed under seal in this case. *See* Mot. for Leave to File Compl. under Seal., ECF No. 1-4, at ¶¶ 4–5. Without any factual basis to assert that Walgreens was even aware of Plaintiffs' purported contractual expectations about U&C pricing, Plaintiffs' fraud theory fails. *United States ex rel. Proctor v. Safeway Inc.*, No. 11-cv-3406, 2020 WL 3132397, at *25 (C.D. Ill. June 12, 2020) (pharmacy did not recklessly or knowingly submit false U&C prices because law governing U&C requirements was unclear); *Schutte*, 2020 WL 3577996, at *9–11.

> 3. Plaintiffs have failed to plead—and cannot plead—that they reasonably relied on the reported U&C prices.

Plaintiffs acknowledge that Walgreens has marketed PSC and advertised its price list since 2007. Compl. ¶ 60, 62, *id.*, Ex. 1. Plaintiffs even used Walgreens' publicly available PSC formularies to create the exemplary-transaction list attached to the Complaint. *See id.* ¶¶ 62, 73 & n.45. Plaintiffs' Complaint also cites a similar case filed more than a decade ago, and notes that a putative nationwide class of third-party payors (which, if certified, would include Plaintiffs) sued Walgreens in this District in 2017 based on a "similar factual and legal nexus" that Walgreens misreported U&C prices. *Id.* ¶¶ 30, 66. Yet, Plaintiffs (sophisticated insurers) ***continue*** to

reimburse Walgreens for allegedly fraudulent U&C prices to this very day.[17] *Id.* ¶ 94. Thus, by their own allegations, Plaintiffs were on at least inquiry notice of Walgreens' alleged scheme years ago. Plaintiffs cannot have reasonably relied on any purported misstatement or omission from Walgreens, nor can Walgreens' allegedly inaccurate reporting of U&C prices be *material* to Plaintiffs' payment decisions. *Bass v. Prime Cable of Chi., Inc.*, 284 Ill. App. 3d 116, 127–28 (1st Dist. 1996). Plaintiffs continue to pay purportedly fraudulent claims since discovering the "truth."

4.    Plaintiffs have failed to plead the circumstances constituting the alleged fraud with particularity, as required under Rule 9(b).

Plaintiffs fail to satisfy Rule 9(b)'s heightened pleading standard because they allege general actions taken by "Walgreens," a term they define to lump together both WBA and Walgreens. *See* Compl. ¶ 23; *see also Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990). Plaintiffs' claims also fail under Rule 9(b) because Plaintiffs acknowledge that the "apparent overcharges" in Exhibit 2 might not *really* be overcharges, *see id.* ¶ 73 n.45—and, tellingly, Plaintiffs do not include the U&C definition from the Walgreens–PBM contracts that govern the transactions. *See Pirelli*, 631 F.3d at 444–46.

**B.    Plaintiffs' Fraudulent Concealment and Negligent Misrepresentation Claims (Counts 2 & 3) Also Fail Because Walgreens Owed Plaintiffs No Duty**

Plaintiffs fail to allege with specificity that Walgreens owed *Plaintiffs* any duty to communicate accurate U&C information *to their PBMs*. Plaintiffs also allege that they suffered only economic harm, *see* Compl. ¶¶ 125, 127, so the *Moorman* doctrine bars Plaintiffs' negligent

---

[17] Despite their investigation and filing this action, Plaintiffs have paid and continue to pay Walgreens' reimbursement claims knowing that Walgreens excludes discount club pricing from U&C. The voluntary payments doctrine thus forecloses Plaintiffs' claims, which also fail for lack of reliance and materiality. *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 22. While Plaintiffs quibble that Walgreens did not fully publicize its alleged scheme before this case, the law does not require that level of detail to defeat Plaintiffs' fraud claim. *See Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 (N.D. Ill. 2006). Plaintiffs were on notice of the supposed fraud long ago; yet they sued only after the government collected money from pharmacies under a "U&C" theory that simply does not apply here.

misrepresentation claim. *See Moorman Mfg. Co. v. Nat'l Tank Co.*, 91 Ill. 2d 69, 90–91 (1982); *see also Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 WL 1235015, at *7 (N.D. Ill. Mar. 9, 2018).

### C.     Plaintiffs' Unjust Enrichment Claim (Count 9) Must Be Dismissed

Plaintiffs' unjust enrichment claim merely repeats Plaintiffs' flawed allegations that Walgreens "fraudulently inflated the U&C prices." Compl. ¶ 186. When "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and the claims will rise—and, in this case, fall—together. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011).

## III.     RULE 12(B)(6) – PLAINTIFFS' STATUTORY CLAIMS FAIL (COUNT 4–8)

### A.     Plaintiffs' UTPA Claim Is Untimely (Count 4)

The statute of limitations ran out on Plaintiffs' Oregon Unlawful Trade Practices Act ("UTPA") claim. Because Plaintiffs invoke diversity jurisdiction, Compl. ¶ 31, the Court applies the statute of limitations the forum state would use. *Pirelli Armstrong Tire Corp. v. Walgreen Co.*, No. 09 C 2046, 2009 WL 2777995, at *6 (N.D. Ill. Aug. 31, 2009). When, as in this case, a foreign statute creates a cause of action, Illinois's courts apply that statute's limitation period. *See id*. As a result, Oregon's one-year statute of limitations governs Plaintiffs' claim, Or. Rev. Stat. § 646.638(6), and starts to run when the plaintiff "knew or should have known" about the allegedly unlawful trade practice. *Saenz v. Pittenger*, 78 Or. App. 207, 211–12 (1986) (quotations omitted).

Plaintiffs' own allegations demonstrate that the statute of limitations started running no later than January 2019, more than a year before Plaintiffs filed this suit. Plaintiffs knew or should have known about the alleged fraud years ago, *see* Part II.A.3, but Plaintiffs make clear that January 15, 2019, was "[s]ignificant[]." *Id.* ¶ 2. That day, Walgreens settled government claims related to its U&C prices. *Id.* Plaintiffs allege that they were "damaged ***by the same fraudulent course of conduct***." *Id.* (emphasis added). When the district court unsealed that settlement on

12

January 24, 2019, *see supra*, note 9, Plaintiffs discovered, or with reasonable diligence should have discovered, the alleged fraud. *See, e.g.*, *Saenz*, 78 Or. App. at 211–12. Because Plaintiffs' allegations establish the elements of a statute-of-limitations defense, the Court should dismiss their claim. *See Bonnstetter v. Chicago*, 811 F.3d 969, 974 (7th Cir. 2016).

Plaintiffs erroneously allege that the class-action tolling doctrine from *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974), saves their claim. Compl. ¶ 95. But the putative *Forth* class **did not even assert** a UTPA claim, *see* Compl., No. 17-cv-2246, ECF 1, and "*American Pipe* applies only when the earlier class suit involves **exactly** the same cause of action subsequently asserted." *Scott v. Ill. Bell Tel. Co.*, 169 F. Supp. 3d 845, 853 (N.D. Ill. 2016) (quotations & alterations omitted, emphasis added). "Because [Plaintiffs' UTPA claim] did not appear in the [*Forth*] Complaint, [it is] time barred, and *American Pipe* tolling cannot save [it]." *In re: Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9-cv-3690, 2015 WL 3988488, at *30 (N.D. Ill. June 29, 2015); *accord Zarecor v. Morgan Keegan & Co., Inc.*, 801 F.3d 882, 888 (8th Cir. 2015).

### B. Plaintiffs Lack Standing to Bring an ICPA Claim (Count 5)

Only plaintiffs "in a contractual relationship with the party alleged to have acted unfairly or deceptively" have standing under the Idaho Consumer Protection Act ("ICPA"). *Taylor v. McNichols*, 149 Idaho 826, 846 (2010). Plaintiffs make clear that they do not contract directly with Walgreens. Compl. ¶¶ 39, 41–43, 122. A complaint that fails to allege "a contractual relationship" between the parties "fail[s] to state [a] claim[] for relief under [ ] ICPA." *Taylor*, 149 Idaho at 846.

### C. Plaintiffs' ICFA and IUDTPA Claims Fail Because Plaintiffs Have Failed to Plead an Illinois Nexus (Counts 7–8)

The Illinois Uniform Deceptive Trade Practices Act ("IUDTPA") and Consumer Fraud and Deceptive Business Practices Act ("ICFA," and with IUDTPA, the "Illinois Acts") do "not have extraterritorial effect." *Avery v. State Farm Mut. Auto Ins. Co.*, 216 Ill. 2d 100, 185 (2005); *U.S.*

*Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 909–11 & n.11 (N.D. Ill. 2019). As a result, the Illinois Acts apply only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery*, 216 Ill. 2d at 187. Plaintiffs do not, however, plead that any of Plaintiffs' members filled prescriptions in Illinois, *see* Compl., Ex. 2, that Walgreens reported any U&C prices to PBMs in Illinois, that the PBMs processed reimbursement requests in Illinois, that the PBMs sent adjudicated claims to Illinois entities, or that Plaintiffs felt any injury in Illinois. In fact, Plaintiffs are legal entities of Washington, Missouri, Oregon, Idaho, and Utah incorporated specifically to sell insurance in those states. *Id.* ¶¶ 14–20. Courts routinely dismiss ICFA and IUDTPA claims like Plaintiffs' that fail to allege a sufficient Illinois nexus. *See, e.g.*, *Tarzian v. Kraft Heinz Foods Co.*, No. 18 C 7148, 2019 WL 5064732, at \*2–3 (N.D. Ill. Oct. 10, 2019).

### D.    Plaintiffs' Statutory Claims (Counts 4–8) Fail on the Merits

For all the reasons explained above, Plaintiffs failed to plead plausibly that Walgreens committed any unfair or deceptive acts, as required under UTPA, ICPA, Washington's Consumer Protection Act ("WCPA"), ICFA,[18] and IUDTPA.[19] Plaintiffs also failed to plead that Walgreens proximately caused Plaintiffs harm.[20] Plaintiffs' UTPA[21] claim fails because Plaintiffs do not

---

[18] Plaintiffs also allege that Walgreens violated 815 ILCS 505/2B.3. *See* Compl. ¶ 176. But Plaintiffs' Complaint does not suggest that PSC customers received anything other than the exact discounts Walgreens promised, and "Walgreens' intent for offering those discounts," *id.*, is irrelevant. 815 ILCS 505/2B.3(3).

[19] *See* Idaho Code § 48-608(1); Wash. Rev. Code § 19.86.020; Or. Rev. Stat. § 646.638(1); 815 ILCS 505/2; 815 ILCS 510/3.

[20] *See* Idaho Code § 48-608(1); *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 794 (1986) (en banc); *Pearson v. Philip Morris, Inc.*, 358 Or. 88, 125–26 (2015); *Avery*, 216 Ill. 2d at 199–203.

[21] A plaintiff must specifically identify which subsections of the UTPA the defendant allegedly violated. *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139–40 (D. Or. 2014). Plaintiffs fail to identify *any* particular subsection here, however, alleging only that "Walgreens' business acts and practices . . . constitute unconscionable and unlawful trade practices under [UTPA]." Compl. ¶ 129. Because "the

specifically allege which particular statutory provisions Walgreens allegedly violated; their ICPA claim fails for the same reason.[22] Nor have Plaintiffs adequately pleaded that Walgreens' conduct impacted consumers, which further dooms their ICFA and WCPA claims.[23] Because Plaintiffs now know the truth about Walgreens' U&C prices (and have continued to pay claims based on those prices for years despite that knowledge), Plaintiffs also are not entitled to injunctive relief under UTPA, WCPA, or IUDTPA (the last of which makes available only injunctive relief).[24]

## IV. ALL CLAIMS AGAINST WBA MUST BE DISMISSED

Nowhere does the Complaint allege that WBA ever filled any prescriptions, submitted any reimbursement claims, advertised any programs, reported any U&C prices, or signed any contracts with Plaintiffs' agents. Nor could it. WBA is a "parent holding company" that derives all of its profits from its wholly owned subsidiaries, including Walgreen Co. Compl. ¶ 22. As the Complaint fails to and cannot allege any actions taken directly by WBA, all claims against WBA must be dismissed. *See, e.g.*, *Sears*, 912 F.2d at 893; *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Solutions, Inc.*, No. 18 C 566, 2019 WL 2357030, at *5 (N.D. Ill. June 4, 2019).

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaint with prejudice under Rules 12(b)(7) and 12(b)(6).

---

allegations in the [ ] Complaint do not identify which subsections of O.R.S. 646.608(1) are alleged to have been violated," Plaintiffs' UTPA claim fails and should be dismissed. *Fleshman*, 27 F. Supp. 3d at 1141.

[22] When a complaint fails to allege a "specific prohibited unfair or deceptive practice," it "fail[s] to state a claim . . . under the ICPA." *McNichols*, 149 Idaho at 846. Plaintiffs' Complaint does not allege any specific violations of ICPA's "specific prohibited actions," and so must be dismissed. *Id*.

[23] *See Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19 C 1960, 2020 WL 43017, at *5 (N.D. Ill. Jan. 4, 2020); *Hangman Ridge*, 105 Wash.2d at 790–91 ("Ordinarily, a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest," as required under WCPA).

[24] *Int'l Star Registry*, 451 F. Supp. 2d at 990–91; *see also In re 100% Grated Parmesan Cheese Mktg. & Sales Practices Litig.*, 348 F. Supp. 3d 797, 811 (N.D. Ill. 2018).

Dated: September 29, 2020                Respectfully submitted,


                                         */s/ Jeffrey J. Bushofsky*
                                         Jeffrey J. Bushofsky
                                         Laura G. Hoey
                                         Charles D. Zagnoli
                                         **ROPES & GRAY LLP**
                                         191 North Wacker Drive
                                         32nd Floor
                                         Chicago, Illinois 60606
                                         Tel: (312) 845-1200
                                         Fax: (312) 845-5522
                                         Jeffrey.Bushofsky@ropesgray.com
                                         Laura.Hoey@ropesgray.com
                                         Charles.Zagnoli@ropesgray.com

                                         *Attorneys for Defendants Walgreen Co. and*
                                         *Walgreens Boots Alliance, Inc.*

**CERTIFICATE OF SERVICE**

I, Charles D. Zagnoli, hereby certify that the foregoing Memorandum in Support of Defendants Walgreen Co.'s & Walgreens Boots Alliance, Inc.'s Motion to Dismiss Case No. 1:20-cv-4940 under Fed. R. Civ. P. 12(b)(7) & 12(b)(6) was electronically filed on September 29, 2020, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

*/s/ Charles D. Zagnoli*

Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendants Walgreen Co. and Walgreens Boots Alliance, Inc.*