**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| BCBSM, INC. (d/b/a BLUE CROSS AND BLUE SHIELD OF MINNESOTA), et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) ) ) |
| Defendants. | ) ) |
| ------------------------------------------------------- | ) ) |
| HEALTHNOW NEW YORK INC., et al., | ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) ) ) |
| *Defendants*. | ) ) |
| ------------------------------------------------------- | ) ) |
| HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), et al., | ) ) ) ) |
| *Plaintiffs*, | ) ) |
| v. | ) ) |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) ) ) |
| *Defendants*. | ) ) |
| ------------------------------------------------------- | ) ) |
| BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS SHIELD OF ARIZONA and d/b/a AZBLUE), | ) ) ) ) |
| *Plaintiffs*, | ) |

Case No. 1:20-cv-1853
Case No. 1:20-cv-1929
Case No. 1:20-cv-3332
Case No. 1:20-cv-4738
Case No. 1:20-cv-4940

Honorable Virginia M. Kendall

Honorable Sheila M. Finnegan

|  | ) |
| v. | ) |
|  | ) |
| WALGREEN CO. and WALGREENS | ) |
| BOOTS ALLIANCE, INC., | ) |
|  | ) |
| *Defendants*. | ) |
| ------------------------------------------------------- | ) |
|  | ) |
| ASURIS NORTHWEST HEALTH, et al., | ) |
|  | ) |
| *Plaintiffs*, | ) |
|  | ) |
| v. | ) |
|  | ) |
| WALGREEN CO. and WALGREENS | ) |
| BOOTS ALLIANCE, INC., | ) |
|  | ) |
| *Defendants*. | ) |
| ------------------------------------------------------- | ) |

**DEFENDANTS WALGREEN CO. AND WALGREENS BOOTS ALLIANCE, INC.'S
OPENING BRIEF SUPPORTING THEIR MOTION FOR SANCTIONS**

Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co. and
Walgreens Boots Alliance, Inc.*

**TABLE OF CONTENTS**

**Page**

STATEMENT OF FACTS ...........................................................................................................5

LEGAL STANDARD ...............................................................................................................7

    A.   Rule 11 Allows Sanctions for Factually and Legally Unsupported Filings ......................7

    B.   28 U.S.C. § 1927 Requires Counsel to Avoid or Withdraw Baseless Arguments .............8

ARGUMENT ............................................................................................................................9

I.   BCBS of Alabama's Own Contract with Its PBM ██████████████████
██████, Directly Contradicting This Plaintiff's Allegations ................................10

II.   Walgreens' Contracts with the Other Respondents' PBM-Agents ████████████
███████████████████, Directly Contradicting Those Respondents' Allegations ..............10

III.   Plaintiffs' Counsel Should Be Sanctioned for Advocating Legally Unsupported Claims
Under the Illinois Acts.................................................................................................14

CONCLUSION.........................................................................................................................15

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.,*
 216 Ill. 2d 100 (2005) ...................................................................................14, 15

*Bovinett v. HomeAdvisor, Inc.,*
 No. 17 C 06229, 2020 WL 1330407 (N.D. Ill. Mar. 3, 2020) ...............................12

*Chambers v. Am. Trans Air, Inc.*
 17 F.3d 998 (7th Cir. 1994) ...............................................................................15

*Corvus Grp., Inc. v. Nichols Kaster, PLLP,*
 No. 12 C 1269, 2012 WL 1899431 (N.D. Ill. May 24, 2012) ...............................15

*Dal Pozzo v. Basic Machinery Co., Inc.,*
 463 F.3d 609 (7th Cir. 2006) .................................................................................8

*Fries v. Helsper,*
 146 F.3d 452 (7th Cir. 1998) ...........................................................................7, 8

*Intellect Wireless, Inc. v Sharp Corp.,*
 87 F.Supp.3d 817 (N.D. Ill. 2015) ......................................................................11

*Jolly Group, Ltd. v. Medline Indus., Inc.,*
 435 F.3d 717 (7th Cir. 2006) .................................................................................9

*LG Elecs. USA, Inc. v. Whirlpool Corp.,*
 809 F. Supp. 2d 857 (N.D. Ill. 2011) ...................................................................14

*Matlin v. Spin Master Corp.,*
 No. 17-c-7706, 2019 WL 2422872 (N.D. Ill. June 10, 2010)...................................8

*Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.,*
 649 F.3d 539 (7th Cir. 2011) ................................................................................7

*Moline v. Trans Union, LLC,*
 222 F.R.D. 346 (N.D. Ill. 2004) ............................................................................9

*Nisenbaum v. Milwaukee Cty.,*
 333 F.3d 804 (7th Cir. 2003) ................................................................................7

*Royce v. Michael R. Needle, P.C.,*
 158 F. Supp.3d 708 (N.D. Ill. 2016) .....................................................................8

*Senese v. Chi. Area I. B. of T. Pension Fund,*
 237 F.3d 819 (7th Cir. 2001) .................................................................8

*Service Corp. Int'l v. Stericycle, Inc.,*
 C.A. No. 19 C 1960, 2020 WL 43017 (N.D. Ill. Jan. 4, 2020) ...............14

*Szabo Food Serv., Inc. v. Canteen Corp.,*
 823 F.2d 1073 (7th Cir. 1987) .................................................................8

*In re TCI Ltd.,*
 769 F.2d 441 (7th Cir. 1985) ............................................................8, 9

*U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties,*
 390 F. Supp. 3d 892 (N.D. Ill. 2019) ....................................................14

**Statutes**

28 U.S.C. § 1927
 .......................................................................................................*passim*

815 ILCS 505/2
 ....................................................................................................4, 14, 15

815 ILCS 510/2
 ....................................................................................................4, 14, 15

**Other Authorities**

Fed. R. Civ. P. 11
 .......................................................................................................*passim*

In five nearly identical complaints filed piecemeal by 29 associated Blue Cross Blue Shield insurers,[1] Plaintiffs accuse Walgreen Co. ("Walgreens") and Walgreens Boots Alliance, Inc.,[2] ("WBA"; with Walgreens, "Defendants") of statutory and common law fraud for honoring the terms of contracts between Walgreens and Plaintiffs' agents. Plaintiffs and their counsel repeatedly mimic an inapposite legal theory behind Walgreens' recent government settlement involving public health care programs. Walgreens' government payments depend on government rules and regulations. In contrast, the relationships at issue here—business arrangements among Walgreens, commercial insurers, and the insurers' agents—are defined by private contracts. Plaintiffs speculated wrongly that Walgreens' contracts with various pharmacy benefit managers ("PBMs") would support their fraud claims—even though publicly filed, sworn PBM declarations flatly contradicted those faulty assumptions. Now that Walgreens has attached its actual PBM contracts to its filings in this case, Plaintiffs have absolutely no good faith basis to proceed under the Complaints as drafted. Caught between their unfounded allegations and irrefutable evidence to the contrary, Plaintiffs improvidently forge ahead. As set out in Defendants' motions to dismiss,[3] the Court should dismiss the Complaints under Federal Rules of Civil Procedure 12(b)(6) and (7). However, certain of Plaintiffs' knowingly unsupported factual and legal positions go beyond the pale of procedural inadequacy and merit sanctions.

---

[1] *BCBSM, Inc. v. Walgreen Co., et al.*, No. 1:20-cv-1853, Dkt. 1 ("BCBSM Compl."); *HealthNow New York Inc. v. Walgreen Co., et al.*, No. 1:20-cv-1929, Dkt. 3 ("HealthNow Compl."); *Horizon Healthcare Servs., Inc. v. Walgreen Co., et al.*, No. 1:20-cv-3332, Dkt. 1 ("Horizon Compl."); *BCBS of Arizona v. Walgreen Co., et al.*, No. 1:20-cv-04738, Dkt. 1 ("BCBS of Arizona Compl."); *Asuris Northwest Health v. Walgreen Co., et al.*, No. 1:20-cv-04940, Dkt. 1 ("Asuris Compl.") (together, "Complaints"). These five matters were consolidated for all purposes. Dkt. 46, 80, 86.

[2] WBA is a holding company that derives all of its profits from its wholly owned subsidiaries, including Walgreens. The Complaints wholly fail to allege that WBA engaged in any conduct whatsoever, never mind fraud. WBA neither submitted a reimbursement claim to Plaintiffs or Plaintiffs' agents, nor signed any agreement with Plaintiffs' agents. Accordingly, in their Motions to Dismiss, Defendants seek dismissal of all counts against WBA. *See* Defs.' Mem. in Supp. Mot. to Dismiss BCBSM ("MTD Br."), Dkt. 52 at 22.

[3] Dkts. 52, 69, 76, 89; No. 1:20-cv-4738, Dkt. 27.

On July 16, 2020, defense counsel sent the *BCBSM*, *HealthNow*, and *Horizon* Plaintiffs' counsel a letter detailing these and other violations of Rule 11 ("July Letter"). Ex. 8 to Decl. of Charles D. Zagnoli in Support of Defs.' Mot. for Sanctions, filed Oct. 8, 2020 ("Zagnoli Decl."). Plaintiffs' counsel sent a five-page reply on July 31, 2020 ("July Response"), largely ignoring the points addressed in this Motion and disclaiming any intention to address the deficient filings. *Id*. Ex. 9. Plaintiffs' counsel then filed two new, nearly-identical complaints reiterating the same flawed legal and factual theories on August 12, BCBS of Arizona Compl., 1-20-cv-4738, Dkt. 1, and on August 21, 2020, Asuris Compl., 1-20-cv-4940, Dkt. 1. On September 16, 2020, defense counsel sent Plaintiffs' counsel two similar letters again identifying the Rule 11 violations still present in each of the new complaints. Zagnoli Decl., Exs. 10, 11. In a letter sent on October 7, 2020 (with the July Response, the "Response Letters"), Plaintiffs' counsel again refused to address the glaring defects, merely incorporating by reference their July Response and their oppositions to Defendants' motions to dismiss. *Id*. Ex. 12. Defendants move for sanctions against Plaintiffs and their counsel for the most egregious violations of Rule 11 and 28 U.S.C. § 1927 identified in Defendants' three letters (together, the "Sanctions Letters"). While this Motion seeks sanctions against only certain Plaintiffs and against Plaintiffs' counsel for certain especially egregious factual and legal claims, Defendants in no way concede that any claims not addressed have merit. This Motion focuses only on positions clearly lacking any good faith basis in the facts or law.

*First*, nineteen Plaintiffs refuse to withdraw claims and allegations that are directly negated by incontrovertible facts known to Plaintiffs and their counsel. Defendants seek sanctions against those Plaintiffs and their counsel for these factual violations of Rule 11 and 28 U.S.C. § 1927.

- Plaintiff Blue Cross Blue Shield of Alabama ("BCBS of Alabama") brings claims that are ███████████████████████████ of **BCBS of Alabama's *own* PBM contract**, as quoted in its Complaint. BCBSM Compl. ¶ 43(h). BCBS of Alabama and its counsel have no answer to this fundamental defect; Plaintiffs conspicuously ignored

BCBS of Alabama's PBM contract in their otherwise comprehensive and detailed five-page Response Letter and their motion to dismiss briefing. Zagnoli Decl., Ex. 9. The Court should sanction BCBS of Alabama and its counsel for these unfounded claims.

- Six Plaintiffs brought claims for transactions processed by their PBM Express Scripts, Inc., even though Express Scripts' contract with Walgreens has ███████████ ███████████ since at least October 1, 2017. The Court should sanction these Plaintiffs—**Blue Cross Blue Shield of Massachusetts, Inc.; Blue Cross Blue Shield of Massachusetts HMO Blue, Inc.; HealthNow New York, Inc.; BlueCross BlueShield of Western New York, Inc.; BlueShield of Northeastern New York;** ███████████ (together, the "ESI Plaintiffs")[4]—and their counsel for these claims.

- Five Plaintiffs brought claims for transactions processed by their PBM CaremarkPCS Health, LLC ("Caremark"), when Caremark's contract with Walgreens has ███████████ since at least January 1, 2018. The Court should sanction these Plaintiffs—**Wellmark Inc.; Wellmark of South Dakota, Inc.; Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.** (together, the "Caremark Plaintiffs")[5]—and their counsel for these unfounded claims.

- Eight Plaintiffs brought claims for transactions processed by their PBM OptumRx, Inc., when OptumRx's contract with Walgreens has ███████████ ███████████ since at least January 1, 2017. The Court should sanction these Plaintiffs—**Blue Cross and Blue Shield of Arizona** ("BCBS of Arizona"); ███████████ ███████████ ███████████ (together, the "OptumRx Plaintiffs"; with BCBS of Alabama and the ESI, Caremark, and OptumRx Plaintiffs, "Respondents")[6]—and their counsel for these unfounded claims.

*Second*, Plaintiffs assert claims with patent, incurable legal defects. Three groups of non-Illinois Plaintiffs—those filing the BCBSM, Horizon, and Asuris Complaints[7]—bring sanctionable claims under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815

---

[4] ███████████████████████████ Asuris Compl. ¶ 39(a–b), and as the PBM for the other ESI Plaintiffs at all relevant times. BCBSM Compl. ¶ 43(l); HealthNow Compl. ¶ 44.

[5] The Caremark Plaintiffs have used Caremark as their PBM since 2014. BCBSM Compl. ¶ 43(o).

[6] OptumRx has served as BCBS of Arizona's PBM since July 2016, BCBS of Arizona Compl. ¶ 44, ███████████ ███████████

[7] While this motion does not seek sanctions for Illinois Act claims brought by BCBS of Arizona, which alleged a handful of purported Illinois transactions, BCBS of Arizona Compl. at Ex. 2, those allegations remain wholly insufficient under governing Illinois law, and those claims should be summarily dismissed.

ILCS 505 ("ICFA"), and the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 ("IUDTPA"; with ICFA, the "Illinois Acts"). They brought those claims—and refuse to withdraw them—despite (a) the undeniable fact that the claims are based on reimbursement requests received outside Illinois for non-Illinois transactions, and (b) the unavoidable truth that the Illinois Acts have no extraterritorial reach. Plaintiffs have no answer to this fundamental defect in their Complaints, as confirmed by the fact that they conspicuously ignored the defect in their Response Letters and offered an irrelevant defense of the claims in their motion to dismiss briefing. The Court should sanction Plaintiffs' counsel for asserting and continuing to advocate these claims.

In response to Defendants' correspondence raising these and other vital pleading defects and demanding that Plaintiffs withdraw their Complaints, Plaintiffs offer a series of unconvincing excuses and recriminations against Defendants, including an unsupported reliance on other U&C-related litigation.[8] At the same time, Plaintiffs simply ignore the obviously baseless claims described above (the focus of this Motion) altogether. Contrary to Plaintiffs' omissions and attempted misdirection, the present dispute relates to very specific contract terms and relationships with absent PBMs, contracts and relationships unaddressed in the other litigation. Those contract terms put the lie to Plaintiffs' claims. When Plaintiffs proceeded to file Complaints that they knew or should have discovered were unsupported, they and their counsel violated Federal Rule of Civil Procedure 11 and 28 U.S.C. § 1927. Plaintiffs likewise engaged in sanctionable conduct when they later refused to withdraw the pleadings and continued to advocate baseless positions *after* Defendants called Plaintiffs' attention to the pleadings' defects through the Sanctions Letters.

---

[8] Plaintiffs and their counsel appear determined to ride the coattails of other U&C litigation. Yet these cases arise in materially different circumstances and rely on equally defective theories. For example, primarily *consumer*-plaintiffs are prosecuting those cases—consumers who know far less about the pharmacy industry than Plaintiffs as insurers. Moreover, many of those cases involve government payors. Plaintiffs concede that because these payors "have specific regulatory requirements for claims reporting," a comparison between public- and private-payor U&C definitions is inapt. Dkt. 83 ("Pls' Opp.") at 9–10.

Defendants seek the relief listed on pages 2–5 of their Motion for Sanctions, including dismissal of Respondents' Complaints, dismissal of all claims improperly premised on alleged Illinois Act violations, an award of Defendants' attorneys' fees and expenses incurred in defending this litigation and pursuing this Motion, and such other relief as the Court deems just and proper.

## STATEMENT OF FACTS

When an insured patient fills a prescription, insurers reimburse the pharmacy the lesser of a pre-negotiated price and the pharmacy's U&C price. BCBSM Compl. ¶¶ 50, 57. The contractually-defined U&C price operates as a ceiling on insurers' reimbursement obligations. Uninsured or otherwise cash-paying patients pay a pharmacy's retail price—the U&C price, *id.* ¶ 1—unless they receive special discounts or belong to a discount club. Walgreens launched PSC, its discount club, in 2007. *Id.* ¶ 63. To join PSC, consumers must enroll, pay a membership fee, and agree to abide by various terms and conditions. *Id.* ¶¶ 63–64, Ex. 1. In exchange, members receive reduced prices on certain drugs when they pay out of pocket. BCBSM Compl. ¶¶ 63–64.

Plaintiffs—insurers operating under licensed Blue Cross Blue Shield brands—"employ[]" PBMs as agents to "adjudicate and administer prescription benefits." BCBSM Compl. ¶ 55. Because PBMs stand between the pharmacies and the insurers, two relevant sets of contracts govern the reimbursement process: the pharmacies' contracts with the PBMs, and the PBMs' contracts with the insurers. *See, e.g., id.* ¶¶ 3, 43–46, 83, 123. These contracts define and govern the information each party must submit to the other—including U&C prices. *See id.* ¶¶ 43–46.

Contracts between Walgreens and Plaintiffs' PBMs Express Scripts, Caremark, and OptumRx, for example, ██████████████████████████████████████████████

████████ . Decl. of Charles D. Zagnoli in Supp. of Mot. to Dismiss, Dkt. 56 ("BCBSM Zagnoli Decl."), Exs. 5–7; Decl. of Charles D. Zagnoli in Supp. of Mot. to Dismiss BCBS of Arizona, 1:20-cv-4738, Dkt. 29, Ex. 2 ("Arizona Zagnoli Decl."). Similarly, Plaintiff BCBS of Alabama's

own contract with its PBM, Prime Therapeutics LLC ("Prime"), ███████████████████
████████████████████████████████████████████████████████ BCBSM Compl. ¶ 43(h).
Although not all PBM contracts explicitly address discount club prices, several prominent PBMs—
including **all four** currently employed by Plaintiffs—submitted declarations in federal lawsuits
attesting under oath that they **do not** construe common language defining "U&C price" in the
PBMs' contracts with pharmacies to include discount club prices. Zagnoli Decl., Exs. 1–5. The
PBMs acknowledged that they had long known about discount club programs like PSC, had no
expectation that pharmacies would report discount club prices as U&C prices, and did not interpret
common contractual definitions of "U&C price" to include such prices.[9] *Id*., Exs. 1–5.

Despite this indisputable evidence nullifying Plaintiffs' fraud theory, Plaintiffs filed fraud
complaints on March 18, March 23, June 5, August 12, and August 21, 2020. In those Complaints,
BCBS of Alabama asserts claims based on allegations ████████████████████████████████
█████████████████████████, and the other Respondents assert claims factually undermined by the
terms of their PBM-agents' contracts with Walgreens and directly at odds with those PBM-agents'
sworn testimony about those contracts. In addition, three complaints assert claims under the Illinois
Acts that find no support in the law or facts. BCBSM Compl. ¶¶ 128–52; Horizon Compl. ¶¶ 121–
45; Asuris Compl. ¶ 159–83. Plaintiffs amended the *HealthNow* complaint on June 15, 2020,
without correcting their claims' defects, and filed the *BCBS of Arizona* and *Asuris* complaints after
receiving the July Letter. Defendants moved to dismiss the Complaints on July 8, September 14,
and September 29, 2020. Dkt. 47, 57, 64, 89; 1:20-cv-4738, Dkt. 27. Plaintiffs filed their
opposition to Defendants' Motions to Dismiss the first three complaints on September 8, 2020—

---

[9] The PBMs' rationale is straightforward: a pharmacy charges discount club prices only to the club's
members, not uniformly to the general public; to access club prices, a consumer has to enroll in the program
(and typically pay a fee), thus distinguishing that consumer from the cash-paying public. Zagnoli Decl., Ex.
2, ¶ 10; *Id*., Ex. 3, ¶¶ 15–17.

making no reference at all to BCBS of Alabama's defective claims and offering no real defense to the Illinois Act claims. Dkt. 83. All five motions are pending before the Court.

Defense counsel sent the Sanctions Letters on July 16 and September 16, 2020, explaining the Complaints' serious deficiencies and requesting that Plaintiffs withdraw the baseless pleadings. Zagnoli Decl., Exs. 8, 10–11. The Sanctions Letters advised Plaintiffs of the 21-day safe-harbor period allowed by Rule 11. *Nisenbaum v. Milwaukee Cty.*, 333 F.3d 804, 808 (7th Cir. 2003); *Matrix IV, Inc. v. Am. Nat'l Bank & Trust Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011). Plaintiffs' counsel responded to the Sanctions Letters on July 31 and October 7, 2020. Zagnoli Decl., Exs. 9, 12. Both Response Letters ignored many of the deficiencies noted in the Sanctions Letters, and Plaintiffs refused to withdraw or amend their Complaints despite their claims' obvious lack of factual or legal support. Plaintiffs' Opposition to the motions to dismiss further advocated for these baseless legal and factual positions—and still ignored most of the deficiencies, including those raised here. *See* Pls' Opp. at 5–16. The BCBS of Arizona and Asuris Complaints asserted most of the unsupported positions anew, even after Plaintiffs learned of the claims' defects. Defendants now seek sanctions for Plaintiffs' and their counsel's violations of Rule 11 and Section 1927.

## LEGAL STANDARD

### A. Rule 11 Allows Sanctions for Factually and Legally Unsupported Filings

To deter frivolous litigation and baseless allegations, Federal Rule of Civil Procedure 11 requires an attorney of record or party to sign every filing and attest that all "factual contentions have evidentiary support" and that all legal contentions "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. P. 11(a), (b)(2)–(3); *see Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998), *quoting Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990) (Rule 11's purpose). To meet these obligations, an attorney must make a "reasonable inquiry into both fact and law" before

submitting the filing to the court. *Szabo Food Serv., Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir. 1987) (quotation omitted). Courts evaluate what lawyers objectively should have known, not their "subjective belief in the righteousness of [their] cause. . . ." *Senese v. Chi. Area I.B. of T. Pension Fund*, 237 F.3d 819, 824 n.2 (7th Cir. 2001) (citation omitted).

Courts have "significant discretion" in determining what sanctions to impose (whether monetary or equitable), provided the sanctions are designed to deter the improper conduct at issue. *Fries*, 146 F.3d at 459. When a party is represented by counsel, courts may impose monetary sanctions on a party or its attorneys for violating Rule 11(b)(3) with unsupported factual assertions, and on counsel for violating Rule 11(b)(2) with unsupported legal conclusions. Fed. R. Civ. P. 11(c)(5)(a); *Royce v. Michael R. Needle, P.C.*, 158 F. Supp. 3d 708, 724–25 (N.D. Ill. 2016); *see also Matlin v. Spin Master Corp.*, No. 17-C-7706, 2019 WL 2422872, *1 (N.D. Ill. June 10, 2019).

**B.  28 U.S.C. § 1927 Requires Counsel to Avoid or Withdraw Baseless Arguments**

Attorneys who file unsupported pleadings may also violate 28 U.S.C. § 1927, which provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The statute does not require a "finding of malice or ill will." *Dal Pozzo v. Basic Machinery Co., Inc.*, 463 F.3d 609, 614 (7th Cir. 2006). If an attorney "pursues a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound, the conduct is objectively unreasonable and vexatious." *In re TCI Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985); *see Dal Pozzo*, 463 F.3d at 614. Section 1927 imposes an ongoing duty on attorneys to ensure the facts and law support their arguments; attorneys must "dismiss claims that are no longer viable" when they learn that their subjective belief in the claims' merits is objectively baseless. *Jolly Group, Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006). An attorney who violates Section 1927 may face sanctions. *Id.*; *Moline v. Trans Union,*

8

*LLC*, 222 F.R.D. 346, 349 (N.D. Ill. 2004). Like Rule 11, the statute serves to deter reckless litigation and "ensure that those who create costs also bear them." *TCI*, 769 F.2d at 446.

## ARGUMENT

The Complaints rest on a false factual foundation and rely on legal theories wholly unsupported by clear governing law. Respondents assert that Walgreens used PSC to deceive and defraud Plaintiffs for over a decade and that—according to supposed industry standards—PSC rates constituted U&C prices. However, information readily available to Respondents and their counsel—including BCBS of Alabama's ***own binding contract*** with its PBM-agent; Walgreens' contracts with PBMs Express Scripts, Caremark, and OptumRx; and the PBM-agents' sworn testimony—directly contradicts Respondents' central factual allegations. Respondents and their counsel know full well that binding contracts (not vague purported "industry standards") dictate U&C prices, BCBSM Compl. ¶¶ 3, 43–46, 83, 123, and that these contracts ***expressly exclude club rates from the U&C price definition***. Respondents offer no countervailing facts.

Instead, their Complaints speculated as to the contents of Walgreens' PBM contracts, in some cases on information and belief, *see, e.g.*, BCBS of Arizona Compl. ¶ 34. The PBMs' public declarations already refuted that speculation, declaring under oath that the PBMs did not read typical U&C definitions to include discount club rates. But Defendants removed any doubt when they showed Respondents Walgreens' Express Scripts, Caremark, and OptumRx contracts, all of which ***expressly*** carved out club rates from U&C. Undeterred by their error, Respondents continue to assert their baseless claims despite these facts, even filing new complaints premised on the same theories. To be sure, the Court should dismiss Respondents' Complaints for failing to state a claim. But the Court should also sanction Respondents and their counsel for doubling down on their most baseless allegations in the face of known facts illustrating the allegations' falsity. Also, Plaintiffs'

counsel make no effort to plead (or even argue) the Illinois nexus required for their Illinois Act claims. These assertions are not simply meritless; they are so unfounded as to be frivolous.

## I. BCBS OF ALABAMA'S OWN CONTRACT WITH ITS PBM ███████████████, DIRECTLY CONTRADICTING THIS PLAINTIFF'S ALLEGATIONS

BCBS of Alabama alleges that, because "Walgreens knew that [BCBS of Alabama] contracted to receive the benefit of . . . 'discount' prices" that Walgreens charged its cash-paying customers, "Walgreens should have reported the true U&C price (*e.g.*, the PSC Program Price for a given drug)." BCBSM Compl. ¶¶ 43, 74. Yet BCBS of Alabama's ***own PBM contract***—which BCBS of Alabama quotes in its Complaint—███████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████ BCBS Compl. ¶ 43(h) (bolded, italicized emphasis added). BCBS of Alabama and its counsel were certainly aware of this provision when filing the Complaint. Even if BCBS of Alabama attempted to deny knowledge of its own contract (it has not done so), the simple truth is that the insurer quoted and incorporated the contract into the Complaint. The Court should sanction BCBS of Alabama and its counsel for making and continuing to advocate these allegations despite clear evidence that they are baseless.

## II. WALGREENS' CONTRACTS WITH THE OTHER RESPONDENTS' PBM-AGENTS ██████████████████████████████████, DIRECTLY CONTRADICTING THOSE RESPONDENTS' ALLEGATIONS

The other Respondents' allegations of deception by Walgreens run flatly contrary to Walgreens' contracts with those Plaintiffs' PBM-agents. In fact, ██████████████████

███████████████████████████████████████████. The 2017 contract between Walgreens and Express Scripts defines "U&C price" ██████████████

████████████████████████████████████ BCBSM Zagnoli Decl.,

Dkt. 56, Ex. 6, ¶ 4. Walgreens' 2018 contract with Caremark similarly defines U&C pricing to

███████████████████████████████████████████████████████████████████

█████████████████ *Id*. at Ex. 5, ¶ 1.16. And Walgreens' 2017 contract with OptumRx defines

the U&C price as ████████████████████████████████████████████████████████

███████████████████████ Arizona Zagnoli Decl., Ex. 2 § 1.43. Far from committing fraud

against the insurers when it reported non-PSC U&C prices, as Respondents allege, *see, e.g.*,

BCBSM Compl. ¶¶ 74, 112, 148, Walgreens in fact honored the contracts that defined Walgreens'

only price-reporting obligations to Express Scripts, Caremark, and OptumRx, and their insurer-

principals. These contractual provisions directly contradict Plaintiffs' fraud allegations.

Respondents and their counsel chiefly claimed to have not seen Walgreens' contracts with

the PBMs when they filed their Complaints, instead pleading their expectations about those

contracts' content "upon information and belief." *See, e.g.*, BCBS Compl. ¶ 43(m); BCBS of

Arizona Compl. ¶ 34. The Asuris Complaint ignored Walgreens' Express Scripts and OptumRx

contracts altogether. Pleas of ignorance no longer hold water. Respondents' counsel has now seen

the key definitions; Defendants attached the relevant contract provisions to their July 8 and

September 14, 2020 motions to dismiss, *see, e.g.*, Dkt. 56, Exs. 5–7; Arizona Zagnoli Decl., Ex.

2, and cited the contracts in the Sanctions Letters, Zagnoli Decl., Ex. 8, n.12; *id.*, Exs. 10–11.

Nonetheless, the ESI, Caremark, and OptumRx Plaintiffs refused to withdraw their

Complaints. In fact, Plaintiffs' counsel filed the Asuris Complaint **having already seen the

Express Scripts contract that forecloses claims in that complaint**. And Respondents have doubled

down on their baseless claims by continuing to advocate their failed fraud theory after seeing the

contracts. *See, e.g.*, Pls.' Opp. at 5–16, 25, n.12; Zagnoli Decl., Ex. 12. The failure to withdraw

claims revealed to be baseless and the continued advocacy of frivolous allegations violate Section

1927 and Rule 11. *Intellect Wireless, Inc. v Sharp Corp.*, 87 F.Supp.3d 817, 848–49 (N.D. Ill.

2015) (granting § 1927 sanctions against counsel who continued to advocate flawed arguments);
Fed. R. Civ. P. 11(b), (c)(1) (allowing sanctions on party or counsel who "later advocat[es]" a prior
filing's baseless claim); *Bovinett v. HomeAdvisor, Inc.*, No. 17 C 06229, 2020 WL 1330407 at *6
(N.D. Ill. Mar. 3, 2020) ("Burying one's head in the sand is not an acceptable litigation tactic.").

Respondents cannot disregard the fact that clear and binding contractual language defeats
their unsupported fraud claims. Instead of showing how those claims can survive when Walgreens
complied with its only contractual obligations, Respondents largely ignore the contracts, alleging
instead that Walgreens violated undefined—and nonexistent—"industry standards" that
supposedly understood U&C prices to include club rates. Given the clear, explicit contracts
governing the parties' relationships, the Court need not and should not look to industry standards;
the contracts—not industry standards—control. But even if such standards were relevant,
Plaintiffs' own allegations and the record show that the alleged monolithic industry standard does
not exist. Not only do Plaintiffs' and Walgreens' contracts adopt variable and often conflicting
definitions of U&C prices,[10] Plaintiffs' express agents have issued publicly filed sworn
declarations and testimony that the PBMs were aware of discount clubs like PSC and did not
consider club prices to meet the various U&C definitions in the PBMs' contracts with pharmacies.

Critically, an Express Scripts representative declared that "Express Scripts was aware of
the pharmacy membership programs in the industry . . . , is aware that several still exist today,"
and "understood that ***the membership program price did not meet the definition of the U&C***" in
the PBM's pharmacy contracts. Zagnoli Decl., Ex. 2 ¶¶ 17–18 (emphasis added). According to a
Caremark representative, "pharmacies offering Club Plans ***are not contractually required to***

---

[10] Plaintiffs do not even attempt to explain how Walgreens was supposed to know the terms of the
confidential contracts between Plaintiffs and their PBMs. Notably, Plaintiffs moved to redact the
Complaints' references to key provisions in the contracts precisely because the agreements are confidential.
*See, e.g.*, Pls.' Am. & Supplemental Mot. for Leave to File Compl. under Seal, Dkt. 23, at ¶ 5.

*submit to Caremark the Club Plan price as their usual and customary prices. Examples of Club Plans include the Walgreens Prescriptions Savings Club* . . . ." *Id.*, Ex. 1, ¶ 16 (emphasis added). OptumRx "took a consistent position with respect to membership-based generic programs. . . . If a pharmacy required a customer to enroll in a program in order to access the membership program's prices," then OptumRx *did not "require[] the pharmacy to submit the program's prices as U&C." Id.*, Ex. 5, ¶ 12 (emphasis added). Other non–Respondent Plaintiffs' PBMs have issued similar sworn declarations; notably, Prime—the current PBM for and a subsidiary of several Plaintiffs[11]—declared that "[g]enerally, claims for prescriptions filled pursuant to membership programs are not submitted to PBMs. Prime had *no expectation* of pharmacies to submit pricing from such opt-in savings programs as their U&C pricing." *Id.*, Ex. 3, ¶ 17 (emphasis added); *see also id.*, Ex. 4, ¶ 20 (same).[12] Prime's expectations followed from its contracts: "Prime did not consider [membership-club] opt-in prices to be 'applicable discounts' or 'discounts offered to attract customers" for purposes of Prime's pharmacy contracts. *Id*. at Ex. 4, ¶ 17. Absent from the declarations and the judicial record in the many U&C-pricing cases is any indication that any of Plaintiffs or their PBMs ever objected to Walgreens' excluding PSC discounts from U&C pricing. The declarations show the opposite was true: as the insurers' agents, the PBMs acknowledged and consented to Walgreens' approach for years, knowing Walgreens was relying on the PBMs' tacit and eventually overt consent. If any uniform industry standard existed, it understood U&C prices to exclude club rates, contrary to Plaintiffs' claims.

---

[11] BCBSM Compl. ¶¶ 43, 56; Horizon Compl. ¶¶ 24, 47; Asuris Compl. ¶ 39(e); MTD Br. at 5.

[12] Prime's representative also provided supplemental declarations purportedly clarifying that she lacked personal knowledge about the particular pharmacies' discount club programs and that she was not opining on the proprietary of the pharmacies' practices under relevant federal payor rules and regulations. *See* Zagnoli Decl., Exs. 6, 7. The supplemental declarations do not, however, recant or modify the original declarations' key testimony: Prime knew about club programs and did not expect pharmacies to submit club prices as U&C prices. *Id.*, Ex. 3 ¶¶ 16–17; *see also id.*, Ex. 4 ¶ 20.

### III. PLAINTIFFS' COUNSEL SHOULD BE SANCTIONED FOR ADVOCATING LEGALLY UNSUPPORTED CLAIMS UNDER THE ILLINOIS ACTS

Three Plaintiff groups' Illinois Act claims (Counts IV and V in the BCBSM and Horizon Complaints; Counts VII and VIII in the Asuris Complaint) ignore a fundamental principal of Illinois law: the Illinois Acts ***do not*** apply to transactions that take place outside of Illinois. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 185 (2005).[13] Yet Plaintiffs' counsel signed pleadings asserting Illinois Act claims for transactions that took place primarily and substantially outside of Illinois. And worse, when Defendants noted these glaring defects in their Sanctions Letters and motions to dismiss, Plaintiffs' counsel could only defend the claims by citing general platitudes about consumer fraud acts' liberal construction; Plaintiffs' counsel could offer no legal basis at all for their claims or for extending *Avery*, let alone a nonfrivolous one. *See* Pls.' Opp. at 25. Plaintiffs' counsel deserves sanctions for repeatedly advocating these legally unsupportable claims, as well as for signing the pleadings containing the factual deficiencies described above.

Fifteen years ago, the Illinois Supreme Court held, in the landmark *Avery* decision, that ICFA covers only acts that occur "primarily and substantially" in this state. 216 Ill. 2d at 187. Courts have made clear that the black-letter principal announced in *Avery* also applies to IUDTPA. *U.S. Bd. of Oral Implantology*, 390 F. Supp. 3d at 909–11 & n.11; *LG Elecs. U.S.A., Inc.*, 809 F. Supp. 2d at 859–61. As in this case, *Avery* involved an Illinois-headquartered defendant (State Farm) accused of violating ICFA by, among other things, engaging in deceptive transactions in various non-Illinois states with non-Illinois plaintiffs. *Avery*'s holding that ICFA does *not* apply extraterritorially to such non-Illinois conduct could not have been clearer. Despite *Avery's* unchanged hornbook proposition, three Plaintiff groups' claims under the Illinois Acts plainly bear

---

[13] *See Service Corp. Int'l v. Stericycle, Inc.*, C.A. No. 19 C 1960, 2020 WL 43017, at \*3–5 (N.D. Ill. Jan. 4, 2020); *U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 909–11 & n.11 (N.D. Ill. 2019); *LG Elecs. USA, Inc. v. Whirlpool Corp.*, 809 F. Supp. 2d 857, 859–61 (N.D. Ill. 2011).

no connection at all to Illinois. The relevant Complaints allege misstatements conveyed from non-Illinois PBMs to non-Illinois Plaintiffs regarding non-Illinois transactions involving non-Illinois insureds. MTD Br. at 19; Dkt. 90 at 13–14. In fact, each Plaintiff is a non-Illinois legal entity incorporated specifically to sell insurance to non-Illinois residents for use outside Illinois. In Plaintiffs' words, they offer coverage "to their members in respective states in which they operate" [14]—but notably **not** Illinois.

Plaintiffs' counsel make no arguments for extending or modifying the well-established law that dooms their Illinois Act claims, and counsel conspicuously ignored Defendants' arguments about the Illinois Acts in their Response Letters. Courts routinely award sanctions when, as in this case, counsel file claims clearly outside a statute's scope, *see, e.g.*, *Chambers v. Am. Trans Air, Inc.* 17 F.3d 998, 1006 (7th Cir. 1994), including when, under a "clear holding of the Illinois Supreme Court," a plaintiff's "ICFA claim [is] frivolous" and violates Rule 11. *Corvus Grp., Inc. v. Nichols Kaster, PLLP*, No. 12 C 1269, 2012 WL 1899431, at *4 (N.D. Ill. May 24, 2012). Because the clear, black-letter holding in *Avery* makes Plaintiffs' claims under the Illinois Acts frivolous, Respondents' counsel violated Rule 11 and Section 1927 by advocating them.

## CONCLUSION

Defendants respectfully request that the Court grant this Motion and sanction Respondents and their counsel, as detailed on pages 2–5 of Defendants' Motion, by dismissing the Complaints as to Respondents, dismissing all claims improperly premised on alleged violations of the Illinois Acts, awarding Defendants' attorneys' fees and expenses incurred in defending this litigation and pursuing this Motion, and granting any other relief the Court deems just and proper.

---

[14] BCBSM Compl. ¶ 3. Namely, Minnesota, Florida, North Carolina, North Dakota, Alabama, Kansas, Nebraska, Massachusetts, Iowa, New Jersey, South Dakota, Missouri, Oregon, Utah, Idaho, and Washington. *Id.*; Horizon Compl. ¶ 3; Asuris Compl. ¶ 3.

Dated: October 8, 2020                   Respectfully submitted,


*/s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co. and*
*Walgreens Boots Alliance, Inc.*

**CERTIFICATE OF SERVICE**

I, Charles D. Zagnoli, hereby certify that the foregoing document was electronically filed on October 8, 2020, and will be served electronically via the Court's ECF Notice system upon the registered counsel of record.

*/s/ Charles D. Zagnoli*

Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendants Walgreen Co. and*
*Walgreens Boots Alliance, Inc.*