**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE),** | ) ) ) ) ) | |
| *Plaintiff*, | ) ) | |
| v. | ) ) | |
| **WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC.,** | ) ) ) | Case No. 1:20-cv-04738 Case No. 1:20-cv-04940 |
| *Defendants.* | ) ) | |
| ------------------------------------------------------- | ) ) | Honorable Virginia M. Kendall |
| **ASURIS NORTHWEST HEALTH; BLUE CROSS AND BLUE SHIELD OF KANSAS CITY; CAMBIA HEALTH SOLUTIONS, INC.; REGENCE BLUESHIELD OF IDAHO, INC.; REGENCE BLUECROSS AND BLUESHIELD OF OREGON; REGENCE BLUECROSS AND BLUESHIELD OF UTAH; and REGENCE BLUESHIELD OF WASHINGTON,** | ) ) ) ) ) ) ) ) ) ) ) | Honorable Sheila M. Finnegan |
| *Plaintiffs*, | ) ) | |
| v. | ) ) | |
| **WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC.,** | ) ) ) | |
| *Defendants.* | ) ) ) | |

**CONSOLIDATED REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS
WALGREEN CO.'S & WALGREENS BOOTS ALLIANCE, INC.'S
<u>MOTION TO DISMISS UNDER FED. R. CIV. P. 12(B)(7) & 12(B)(6)</u>**

Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co.
and Walgreens Boots Alliance, Inc.*

## TABLE OF CONTENTS

**Page**

I.    **Rule 12(b)(7): The PBM Contracts and the Course of Dealing between Walgreens and Plaintiffs' PBMs Support Dismissal**.................................................................................1

II.    **Rule 12(b)(7): Plaintiffs' Opposition Arguments Confirm that the PBMs Are Required, Indispensable Parties**...................................................................................................3

III.    **Rule 12(b)(6): Plaintiffs Fail to Save Their Common-Law Claims (Arizona Counts 1–3 & 7; Asuris Counts 1–3 & 9)**...............................................................................8

    A.    Plaintiffs' Defective "Industry Standards" Argument Fails ................................. 8

    B.    Plaintiffs Fail to Distinguish *Schutte* and *Proctor*, Cases Showing that Walgreens Made No Knowingly False Statements................................................................. 9

    C.    Plaintiffs' Opposition Makes Clear that They Have Had Actual and Inquiry Notice of Walgreens' U&C Pricing for Years ...................................................... 9

    D.    Plaintiffs Still Fail to Contextualize Their Allegations, As Rule 9(b) Requires... 10

    E.    Plaintiffs Do Not Distinguish *Moorman* or Establish a Duty Owed to Plaintiffs. 10

    F.    Plaintiffs Offer No Additional Support for Their Unjust Enrichment Claims...... 11

IV.    **Rule 12(b)(6): Plaintiffs Do Not Seriously Defend Their Statutory Claims (Arizona Counts 4–6; Asuris Counts 4–8)** .......................................................................................11

    A.    Plaintiffs Fail to Demonstrate a Sufficient Illinois Nexus to Support Their Illinois Act Claims (Arizona Counts 5–6; Asuris Counts 7–8)........................................ 11

    B.    Plaintiffs Fail to Explain Why Their Untimely ACFA and UTPA Claims Should Not Be Dismissed (Arizona Count 4; Asuris Count 4)........................................ 12

    C.    Plaintiffs Still Lack Standing to Bring an ICPA Claim (Asuris Count 5) ............ 14

    D.    Plaintiffs' Consumer Act Claims Also Fail on the Merits .................................... 14

V.    **Plaintiffs Fail to Justify Their Claims against WBA** .................................................15

**Conclusion** .........................................................................................................................................15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*,
 751 F.3d 796 (7th Cir. 2014) ................................................................7

*Albano v. Shea Homes Ltd. P'ship*,
 227 Ariz. 121 (2011) (en banc) ...........................................................13

*Albano v. Shea Homes Ltd. P'ship*,
 634 F.3d 524 (9th Cir. 2011) ..............................................................14

*Anderson v. Ford Motor Co.*,
 803 F.2d 953 (8th Cir. 1986) ................................................................1

*Avery v. State Farm Mut. Auto. Ins. Co.*,
 216 Ill. 2d 100 (2005) ....................................................................2, 11

*Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*,
 199 Ill. 2d 325 (2002) ........................................................................13

*Burger King Corp. v. Am. Nat'l Bank & Trust Co. of Chi.*,
 119 F.R.D. 672 (N.D. Ill. 1988).....................................................4, 5, 7

*Car Carriers, Inc. v. Ford Motor Co.*,
 745 F.2d 1101 (7th Cir. 1984) ............................................................15

*Castillo v. St. Croix Basic Svs., Inc.*,
 72 V.I. 528 (Super. 2020) ...................................................................13

*Collins v. Reynard*,
 154 Ill. 2d 48 (1992) ............................................................................1

*Corcoran v. CVS Health*,
 No. 15-cv-03504, 2017 WL 3873709 (N.D. Cal. Sept. 5, 2017), *rev'd on other
 grounds*, 779 F. App'x 431 (9th Cir. 2019) ..........................................2

*Corcoran v. CVS Health*,
 169 F. Supp. 3d 970 (N.D. Cal. 2016) ................................................11

*Creative Trade Grp. v. Int'l Trade Alliance, Inc.*,
 No. 08 C 2561, 2010 WL 1541308 (N.D. Ill. Apr. 16, 2010)................6

*In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*,
 No. 9 CV 3690, 2015 WL 3988488 (N.D. Ill. June 29, 2015) .............14

i

*Davis Cos. v. Emerald Casino, Inc.*,
    268 F.3d 477 (7th Cir. 2001) .................................................................3

*In re Duramax Diesel Litig.*,
    No. 17-cv-11661, 2018 WL 3647047 (E.D. Mich. Aug. 1, 2018)...........................14

*FDIC v. Success Title Servs., Inc.*,
    No. 09 C 4867, 2010 WL 3385519 (N.D. Ill. Aug. 24, 2010)................................3

*First Midwest Bank, N.A. v. Stewart Title Guar. Co.*,
    218 Ill. 2d 326 (2006) .......................................................................11

*Fleshman v. Wells Fargo Bank, N.A.*,
    27 F. Supp. 3d 1127 (D. Or. 2014) ..........................................................15

*Forth v. Walgreen Co.*,
    No. 1:17-cv-2246, 2019 WL 10255628 (N.D. Ill. July 10, 2019) ...........................9

*Forth v. Walgreen Co.*,
    No. 1:17-cv-2246, 2018 WL 1235015 (N.D. Ill. Mar. 9, 2018) ................10, 11, 15

*Franklin v. Phoenix*,
    No. CV-06-02316-PHX-NVW, 2007 WL 1463753 (D. Ariz. May 17, 2007) .......................13

*U.S. ex rel. Garbe v. Kmart Corp.*,
    824 F.3d 632 (7th Cir. 2016) ............................................................8, 9

*Hashop v. Fed. Home Loan Mortg. Corp.*,
    171 F.R.D. 208 (N.D. Ill. 1997)............................................................6

*Haskin v. Glass*,
    102 Idaho 785 (Ct. App. 1982) ............................................................14

*Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*,
    451 F. Supp. 2d 982 (N.D. Ill. 2006) .....................................................10

*Kalmich v. Bruno*,
    553 F.2d 549 (7th Cir. 1977) .............................................................12

*Kirksey v. R.J. Reynolds Tobacco Co.*,
    168 F.3d 1039 (7th Cir. 1999) .........................................................13, 15

*Martin Implement Sales, Inc. v. Ford New Holland, Inc.*,
    No. 87 C 8883, 1989 WL 31031 (N.D. Ill. Mar. 29, 1989) ...................................4

*McIntosh v. Walgreens Boots Alliance, Inc.*,
    2019 IL 123626..........................................................................10

*Moorman Mfg. Co. v. Nat'l Tank Co.*,
   91 Ill. 2d 69 (1982) ..........................................................................................11

*N. Grain Mktg., LLC v. Greving*,
   743 F.3d 487 (7th Cir. 2014) ..............................................................................7

*Ottaviano v. Home Depot, Inc. USA*,
   701 F. Supp. 2d 1005 (N.D. Ill 2010) ...............................................................14

*Pasco Int'l (London) Ltd. v. Stenograph Corp.*,
   637 F.2d 496 (7th Cir. 1980) ..............................................................................6

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) ............................................................................10

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*,
   No. 9 C 2046, 2009 WL 2777995 (N.D. Ill. Aug. 31, 2009) .............................12

*U.S. ex rel. Proctor v. Safeway Inc.*,
   No. 11-cv-3406, 2020 WL 3132397 (C.D. Ill. June 12, 2020) .........................1, 9

*Rader v. Greenberg Traurig, LLP*,
   237 Ariz. 433 (Ct. App. 2015) ..........................................................................13

*Reyna v. Portland*,
   No. 02-980-JO, 2005 WL 708344 (D. Or. Mar. 28, 2005) ...............................13

*Roche Diagnostics Corp. v. Priority Healthcare Corp.*,
   No. 2:18-cv-01479-KOB, 2020 WL 2309874 (N.D. Ala. May 8, 2020) .............3

*Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*,
   642 F.3d 560 (7th Cir. 2011) ............................................................................14

*U.S. ex rel. Schutte v. SuperValu, Inc.*,
   No. 11-3290, 2020 WL 3577996 (C.D. Ill. July 1, 2020) ..............................1, 2, 9

*Serv. Corp. Int'l v. Stericycle, Inc.*,
   No. 19 C 1960, 2020 WL 43017 (N.D. Ill. Jan. 4, 2020) ..................................11

*Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*,
   9 F.3d 1236 (7th Cir. 1993) ..............................................................................12

*Smith v. Prime Cable of Chi.*,
   276 Ill. App. 3d 843 (1st Dist. 1995) ................................................................10

*Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Solutions, Inc.*,
   No. 18 C 566, 2019 WL 2357030 (N.D. Ill. June 4, 2019) ...............................15

*Taylor v. McNichols,*
   149 Idaho 826 (2010) ...........................................................................14, 15

*Teamster Local Union No. 714 v. GES Exposition Servs., Inc.,*
   494 F. Supp. 2d 970 (N.D. Ill. 2007) ...........................................................4

*Tinoco v. San Diego Gas & Elec. Co.,*
   327 F.R.D. 651 (S.D. Cal. 2018) .................................................................2

*Trs. of AFTRA Health Fund v. Biondi,*
   303 F.3d 765 (7th Cir. 2002) .......................................................................1

*United States v. Bestfoods,*
   524 U.S. 51 (1998) .....................................................................................15

*Vyas v. Wallach,*
   No. C06-1193RSM, 2006 WL 8454883 (W.D. Wa. Nov. 30, 2006) .....................15

*Walden v. Fiore,*
   571 U.S. 277 (2014) .....................................................................................7

*Willmott v. Fed. St. Advisors, Inc.,*
   No. 05 C 1124, 2008 WL 2477507 (N.D. Ill. June 17, 2008) .................6

**Statutes**

Ariz. Rev. Stat. § 12-541 ......................................................................................12

Or. Rev. Stat. § 646.638......................................................................................12

**Other Authorities**

Fed. R. Civ. P. 19.............................................................................................4, 6, 7

19A Ill. Law & Practice Fraud § 6 ..................................................................10

iv

Plaintiffs' latest Opposition ("Opp."), ECF 110, unsuccessfully attempts to reframe the case they actually pled, only underscoring that (1) irrefutable facts, appropriately considered by the Court under Rule 12(b)(7), demonstrate that the PBMs are indispensable parties and (2) Plaintiffs fail to state a claim under Rule 12(b)(6).[1] Plaintiffs failed reframing is further highlighted by their continued reliance on factually inapposite U&C cases and their unsuccessful attempt to distinguish *U.S. ex rel. Schutte v. SuperValu, Inc.*, No. 11-3290, 2020 WL 3577996 (C.D. Ill. July 1, 2020), and *U.S. ex rel. Proctor v. Safeway Inc.*, No. 11-cv-3406, 2020 WL 3132397 (C.D. Ill. June 12, 2020), recent authority from this Circuit demonstrating that Walgreens made no material misrepresentation about U&C pricing that could support Plaintiffs' common law and statutory fraud claims. Plaintiffs' two most recent Complaints should be dismissed.[2]

## I. RULE 12(B)(7): THE PBM CONTRACTS AND THE COURSE OF DEALING BETWEEN WALGREENS AND PLAINTIFFS' PBMS SUPPORT DISMISSAL

Plaintiffs concede that their own agent-PBMs' sworn statements and testimony about U&C pricing "run contrary to" Plaintiffs' position. Opp. at 15–16. Despite this stark admission, Plaintiffs now claim that the PBMs' contracts and courses of dealing with Walgreens are actually irrelevant. Plaintiffs intone that "this is a fraud case, and not a contract case," *id.* at 10—an observation that does nothing to negate the fact that many common law and statutory fraud claims, including the claims alleged here, arise directly from contractual terms and relationships.[3]

---

[1] Capitalized terms used but not defined have the meaning given to them in Defendants' opening briefs in Support of the Motions to Dismiss these actions (No. 1:20-cv-4738, ECF 27; No. 1:20-cv-1853, ECF 90) ("OBs"). Citations to "Ariz." and "Asuris" refer to the Complaints (No. 1:20-cv-4738, ECF 1; No. 1:20-cv-4940, ECF 1) and OBs in those actions.

[2] This Reply addresses only the arguments that the Opposition actually raises. Defendants respectfully refer the Court to their prior reply (ECF 96) for additional details and for responses to points unaddressed here.

[3] Plaintiffs' authorities do not support the suggestion that courts should disregard key contract terms when considering motions to dismiss, particularly where the plaintiffs' own pleadings put the contracts at issue. *Anderson v. Ford Motor Co.*, 803 F.2d 953, 957 (8th Cir. 1986), and *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 780 (7th Cir. 2002), address federal-state preemption; *Collins v. Reynard*, 154 Ill. 2d 48, 49–

Plaintiffs place both Walgreens' and Plaintiffs' own PBM contracts at center stage in their Complaints. Plaintiffs recite their agreements' U&C definitions, Asuris Compl. ¶ 39, and assert that Walgreens must have known that its U&C submissions were false *precisely because Walgreens' contracts with the PBMs purportedly define U&C the same way as Plaintiffs' contracts with the PBMs. See id.* ¶ 43; Ariz. Compl. ¶ 34. It is obvious why Plaintiffs invoked the applicable PBM contracts in their Complaints before trying to abandon them in briefing: PBM contracts establish U&C reporting obligations. *See Corcoran v. CVS Health*, No. 15-cv-03504, 2017 WL 3873709, at \*20 (N.D. Cal. Sept. 5, 2017), *rev'd on other grounds*, 779 F. App'x 431, 433 (9th Cir. 2019); *Schutte*, 2020 WL 3577996, at \*10–11; *contra* Opp. at 5. It strains credulity for Plaintiffs to assert that the very PBM contracts that they put at issue in their Complaints are now immaterial because "this is a fraud case."[4] In fact, after spending pages distancing themselves from their contract-based pleadings, Plaintiffs hypocritically attempt to save their ICPA claim by admitting that their contracts are relevant. Opp. at 22. Plaintiffs are wrong about Idaho law, *see* Part IV.C, but they are absolutely right that their claims are "related to a contract." Opp. at 22.

In a cynical attempt to distance themselves from their own pleadings about the PBM agreements, Plaintiffs also assert that Walgreens submitted only "incomplete" and irrelevant PBM declarations and contracts. *Id.* at 3, 15–17. While Walgreens certainly disagrees with that assertion, the argument misses the point and misconstrues the distinctions between Rule 12(b)(6) and Rule 12(b)(7) motions. To be relevant to Walgreens' 12(b)(7) motion, the PBMs' declarations and contracts need only support a finding that the PBMs are required, indispensable parties. *Tinoco v.*

---

50 (1992), addresses legal malpractice; and the other cases Plaintiffs cite focus on the uncontested point that tort claims do not require contractual privity.

[4] In *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005), for example, the insurance policies that defined State Farm's coverage obligations were integral to, not irrelevant to, the plaintiffs' consumer fraud claims.

*San Diego Gas & Elec. Co.*, 327 F.R.D. 651, 657 (S.D. Cal. 2018). Rule 12(b)(7) does not require Walgreens to establish that the contracts' terms preclude Plaintiffs' claims as a matter of law (although they do so). Walgreens submitted declarations or contracts from each of Plaintiffs' ▮ PBMs demonstrating the PBMs' critical importance. Ariz. OB at 3–6, Asuris OB at 3–6.

Plaintiffs also complain that the PBMs' declarations, which broadly undermine Plaintiffs' U&C definition, "do not even mention Walgreens" and "pertain to different disputes." Opp. at 16–17. Yet, in a case where Plaintiffs claim that so-called "industry standards" control, the Court should not ignore testimony from the industry-leading PBMs—including Plaintiffs' ▮ PBM-agents—testifying about industry-wide practices.[5] Moreover, Plaintiffs are wrong on the facts: Express Scripts' declaration expressly mentions *Walgreens' program* and concludes that "membership programs in the industry" are "outside the [ ] contractual relationship" between pharmacies and the PBMs. Zagnoli Decl. in Supp. of Asuris Mot., ECF 93, Ex. 4 ¶¶ 9, 18. The Court can and should consider this relevant extrinsic evidence under Rule 12(b)(7). *See Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 & n.4 (7th Cir. 2001).

## II.     RULE 12(B)(7): PLAINTIFFS' OPPOSITION ARGUMENTS CONFIRM THAT THE PBMS ARE REQUIRED, INDISPENSABLE PARTIES

In the primary cases on which Plaintiffs rely, the defendants did *not* face the substantial risk of multiple or inconsistent obligations that Walgreens plainly faces in this case.[6] Here, the

---

[5] *See* Zagnoli Decl. in Supp. of BCBS of Ariz. Mot., ECF 30, Ex. 1 ¶ 12; Zagnoli Decl. in Supp. of Asuris Mot., ECF 93, Ex. 2 ¶ 17, Ex. 3 ¶ 20, Ex. 4 ¶ 18. Plaintiffs make much of Prime's supplemental declarations, *see* Opp. at 17, but the later affidavits only clarified Prime's statements regarding a *particular* pharmacy's program; they left unchanged Prime's testimony that "[g]enerally . . . Prime had no expectation of pharmacies to submit pricing from [ ] opt-in savings programs as their U&C pricing." *See* ECF 93, Ex. 8.

[6] *See Roche Diagnostics Corp. v. Priority Healthcare Corp.*, No. 2:18-cv-01479-KOB, 2020 WL 2309874, at *11–13 (N.D. Ala. May 8, 2020) (no evidence that absent PBMs approved defendants' behavior and "no one [was] seeking to . . . alter any contract"); *Davis*, 268 F.3d at 483–85 (absent party not an intermediary, not in privity with plaintiff, and "no overlap" between defendant's separate contracts with absent party and with plaintiff); *FDIC v. Success Title Servs., Inc.*, No. 09 C 4867, 2010 WL 3385519, at *2–3 (N.D. Ill. Aug. 24, 2010) ("no argument that [absent parties] could logically be deemed in privity with either" party).

PBMs undisputedly are intermediaries between and in privity with both Plaintiffs and Walgreens, and Plaintiffs' claims relate to the U&C definition in Walgreens' PBM contracts. Ariz. OB at 4–6; Asuris OB at 4–6. The PBMs have also testified under oath that their common contract language does *not* require pharmacies to report club rates as U&C, and a contrary ruling *would* alter the U&C definition in Walgreens' PBM contracts. Ariz. OB at 4–6; Asuris OB at 4–6. Beyond these distinguishable cases, Plaintiffs fail to show that Walgreens will not face "a substantial risk of . . . multiple, or otherwise inconsistent obligations" if the Court rules in their favor. Fed. R. Civ. P. 19(a)(1)(B)(ii). At most, Plaintiffs speculate that Walgreens "would not run afoul of [its PBM] contracts by reporting accurate U&C prices." Opp. at 13. Yet Plaintiffs ignore that, if the Court grants the injunctive relief Plaintiffs seek, Walgreens would violate certain of its PBM contracts' plain terms and the PBMs' clear expectations. *See Martin Implement Sales, Inc. v. Ford New Holland, Inc.*, No. 87 C 8883, 1989 WL 31031, at *3 (N.D. Ill. Mar. 29, 1989).[7]

Plaintiffs also fail to show that the PBMs are not required parties under Rule 19. ***First***, Plaintiffs illogically argue that, because the PBMs have not intervened, they must not be required. Opp. at 12. That argument "simply does not apply when joining [a] party would destroy absolute diversity," *Burger King Corp. v. Am. Nat'l Bank & Trust Co. of Chi.*, 119 F.R.D. 672, 678 (N.D. Ill. 1988), as it would for Prime and Express Scripts. Asuris OB at 6. And the PBMs' decision not to intervene is not dispositive.[8] *See Teamster Local Union No. 714 v. GES Exposition Servs., Inc.*, 494 F. Supp. 2d 970, 975 (N.D. Ill. 2007). ***Second***, Plaintiffs suggest the PBMs lack a legal interest

---

[7] If, contrary to the PBMs' expectations, Walgreens includes PSC discounts in U&C, the PBMs could receive lower reimbursements from Plaintiffs, leading to losses the PBMs could sue Walgreens to attempt to recover.

[8] Plaintiffs' logic proves too much: if a missing party's failure to voluntarily intervene defeats a 12(b)(7) motion, no defendant could ever successfully move for dismissal under the rule. Rule 12(b)(7) assumes that a missing party has not appeared and cannot be forced to appear without divesting the Court of jurisdiction.

in the case—but then apparently recognize, as they must, that the PBMs *do* have a legal interest in their contracts with Walgreens. Opp. at 12–13; *see also Burger King*, 119 F.R.D. at 675–77. **Third**, Plaintiffs erroneously claim that *Walgreens* will adequately represent the PBMs. Opp. at 13. It is obvious that the PBMs' interests diverge from Walgreens' interests. The PBMs might side with the insurers against Walgreens, despite the PBMs' U&C definitions and testimony legally negating Plaintiffs' fraud theory. After all, the PBMs serve as *Plaintiffs'* agents, and certain Plaintiffs own Prime. Asuris OB at 6. Even if the PBMs were on Walgreens' side of the dispute (for example, as codefendants), their interests would *still not* be aligned with Walgreens'. For example, if Plaintiffs were in fact defrauded (they were not), it would be because the PBMs knowingly accepted undiscounted U&C prices from Walgreens while (allegedly) representing falsely to Plaintiffs that club discounts are included. In any case, a "mere similarity of interest will not do." *Burger King*, 119 F.R.D. at 678 & n.5. The PBMs' interests are not clearly aligned with, let alone identical to, Walgreens' interests, and Walgreens has *never* argued that they are. *Contra* Opp. at 13.[9] **Fourth**, apparently attempting to create a new form of issue preclusion from whole cloth, Plaintiffs assert that, if Walgreens did not argue the PBMs were required parties in prior litigation, then the PBMs cannot be required parties here. Opp. at 2, 14–15. Plaintiffs offer no authority to suggest that Walgreens' palette of legal defenses from other disputes limits its arguments now. Plaintiffs simply cannot cram this dispute into the template of prior cases with different facts, including *Forth*, where PBMs had almost no role. *See* First Am. Compl., No. 1:17-cv-2246, ECF 46, ¶ 49 n.16. Here, PBMs dominate Plaintiffs' claims. Ariz. Compl. ¶¶ 43–48; Asuris Compl. ¶¶ 39, 52–57.

---

[9] Plaintiffs urge that, because Walgreens allegedly did not explain why it would not adequately represent the PBMs' interest, it "concedes this point." Opp. at 13 n. 19. "Adequate representation," however, is not an element of a *prima facie* Rule 19 claim, *see* Fed. R. Civ. P. 19, so Walgreens did not need to address it. In any event, Walgreens *did* explain why it could not adequately represent the PBMs. *See* Asuris OB at 6.

Because Walgreens' 12(b)(7) motion is not constrained by the four corners of Plaintiffs' Complaints, the Court is not limited to artfully pleaded allegations avoiding an elephant that Plaintiffs themselves walked into the room: the PBMs played a pivotal role in the alleged fraud scheme. Only the PBMs knew what *both* Plaintiffs *and* Walgreens knew and expected about U&C. Plaintiffs offer no valid reason why, given the PBMs' privity with *both* Walgreens and Plaintiffs, the PBMs need not be parties "as a practical matter." Fed. R. Civ. P. 19(a)(1)(B)(i); *Creative Trade Grp. v. Int'l Trade Alliance, Inc.*, No. 08 C 2561, 2010 WL 1541308, at *3–5 (N.D. Ill. Apr. 16, 2010); *Hashop v. Fed. Home Loan Mortg. Corp.*, 171 F.R.D. 208, 211–12 (N.D. Ill. 1997). Plaintiffs do not distinguish *Creative Trade*, arguing only that "the absent party there played a central role in the fraud," and that Plaintiffs do not accuse the PBMs of fraud here. Opp. at 12 n.17. But Plaintiffs' choice to exclude the PBMs does not mean they are not required or indispensable.

Unable to avoid the PBMs' crucial role, Plaintiffs offer the erroneous and irrelevant argument that the PBMs actually are not Plaintiffs' agents. *Id.* at 15.[10] But Plaintiffs' own allegations establish, as a matter of law, that the PBMs *are* Plaintiffs' agents. Ariz. OB at 5; Asuris OB at 5. And even if the PBM-Plaintiff relationships did not meet the hornbook definition of express agency (as they do), Walgreens was reasonably entitled to rely on the PBMs as Plaintiffs' *apparent* agents. *See Willmott v. Fed. St. Advisors, Inc.*, No. 05 C 1124, 2008 WL 2477507, at *7, 9 (N.D. Ill. June 17, 2008). In any event, Plaintiffs do not suggest that *only* a party's agents are required under Rule 19, which would be an error.

Plaintiffs do not dispute that, if Prime and Express Scripts join the case, the Court will lose subject matter jurisdiction; in fact, Plaintiffs make no argument at all about subject matter

---

[10] Plaintiffs backstop this point by arguing that the PBMs would not be required *even if they were* Plaintiffs' agents. Opp. at 11, 15 n.22. But *Pasco Int'l (London) Ltd. v. Stenograph Corp.*, 637 F.2d 496 (7th Cir. 1980), held only that a *defendant's* agent is not indispensable. *Id.* at 502–03.

jurisdiction. Instead, Plaintiffs contend that, because Optum (Plaintiffs' only ██████ PBM that would not destroy diversity, Asuris OB at 6) allegedly contracted with and paid Walgreens in Illinois, and because Walgreens allegedly processed Optum's transactions in Illinois, Optum is subject to specific personal jurisdiction here. Opp. at 13–14. (Plaintiffs concede that Optum is not subject to Illinois general jurisdiction.) "But it is well established that an individual's contract with an out-of-state party doesn't suffice on its own to establish sufficient minimum contacts in the other party's home forum," *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 496 (7th Cir. 2014), and Plaintiffs offer no additional evidence connecting Optum to Illinois. Plaintiffs have certainly established that *Walgreens* has sufficient minimum contacts—although nothing in Plaintiffs' Complaints, beyond the location of Walgreens' headquarters, suggests that Optum actually paid Walgreens in Illinois or that Walgreens processed any payments here. *Contra* Opp. at 14. Walgreens' contacts, "however significant," do not determine "whether [Optums'] due process rights are violated," *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quotations omitted); Walgreens "cannot be the only link between [Optum] and the forum." *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 802 (7th Cir. 2014) (quotations omitted). Plaintiffs fail to point to sufficient contacts that ***Optum itself*** created with Illinois, *see id.* at 801, so haling Optum into Illinois would violate the Fourteenth Amendment. The PBMs thus are indispensable parties that cannot be joined, either because they would divest this Court of subject matter jurisdiction or because they are not subject to personal jurisdiction; dismissal is required.[11]

---

[11] Plaintiffs argue irrelevantly that Walgreens has not brought a 12(b)(7) motion in other cases with different facts (a factor that appears nowhere in Rule 19(b)), and that Walgreens has not shown that it and the absent PBMs will unavoidably be prejudiced by the Court's judgment. Fed. R. Civ. P. 19(b)(2). Because Plaintiffs request injunctive relief, however, Walgreens faces contradictory and prejudicial obligations if Plaintiffs prevail, *see, e.g.*, *Burger King*, 119 F.R.D. at 680, and because the PBMs are required, the first and third Rule 19(b) factors are inapplicable or favor dismissal. *See id.* at 679–80. Plaintiffs also fail to explain why the parties lack an alternative forum. *See* Opp. at 15.

III.    RULE 12(B)(6): PLAINTIFFS FAIL TO SAVE THEIR COMMON-LAW CLAIMS
        (ARIZONA COUNTS 1–3 & 7; ASURIS COUNTS 1–3 & 9)

Plaintiffs' overreaching reading of *Garbe* and their reliance on other litigation over pharmacies' U&C reporting underscore the implausibility of Plaintiffs' allegations. Government payor rules do not control reimbursement under private insurance policies; contracts do.

A.    Plaintiffs' Defective "Industry Standards" Argument Fails

Plaintiffs' Opposition depends on the false assumption that they have plausibly alleged Walgreens' submission of inflated U&C prices by relying on vague and varied industry standards alone. Opp. at 4–6. But Plaintiffs' Opposition confirms that no such universal industry standard exists. If most retail pharmacies, *id.* at 2 nn. 3–4, and Plaintiffs' own agent PBMs, *id.* at 15–16, submitted and adjudicated U&C prices that *exclude* membership club discounts, exactly who in the industry (other than Plaintiffs) thought those discounts must be *included*, and why?

Plaintiffs do not include Walgreens' PBM contracts in the Complaints or make any plausible allegations about their contents. Ariz. OB at 9; Asuris OB at 9–10 & n. 16. Instead, Plaintiffs attempt to ride the coattails of distinguishable cases to cobble together a U&C definition. *See* Opp. at 1–2. For example, Plaintiffs cite *U.S. ex rel. Garbe v. Kmart Corp.*, 824 F.3d 632 (7th Cir. 2016), as establishing a favorable definition of U&C "as a matter of law." Opp. at 2. But *Garbe* does not universally proclaim that U&C must include discounts. Instead, *Garbe* holds that, in *Medicare* transactions, "*[u]nless state regulations provide otherwise*, the 'usual and customary' price is defined as the 'cash price offered to the general public.'" 824 F.3d at 643 (emphasis added). Here, where contracts instead of regulations govern, the parties' contracts absolutely "provide otherwise." Plaintiffs include the terms of some of their PBM contracts. Asuris Compl. ¶ 39. ███

███████████████████████████████████████████████████████████████████████

█████████████████████████████████. *See id.* Nor do Plaintiffs plausibly plead that

Walgreens agreed to be bound by *government* rules and guidance in its own *commercial* PBM contracts. *Cf.* Opp. at 6–7 n.9. *Garbe* thus does not control here, and it does not reach the broad holding Plaintiffs suggest. Rather, "the Seventh Circuit made clear in *Garbe* that usual and customary definitions could differ" and that "no [ ] single definition exists." *Forth v. Walgreen Co.*, 2019 WL 10255628, at *5 (N.D. Ill. July 10, 2019).[12]

### B. Plaintiffs Fail to Distinguish *Schutte* and *Proctor*, Cases Showing that Walgreens Made No Knowingly False Statements

Plaintiffs do not allege that they or their PBMs ever clearly communicated Plaintiffs' supposed U&C expectations to Walgreens, suggesting instead that this key fact is irrelevant. *See* Opp. at 6. *Schutte* and *Proctor* demonstrate otherwise. In both cases, the court determined that pharmacies could not knowingly submit false U&C prices absent unambiguous, authoritative standards. *See Schutte*, 2020 WL 3577996, at *8–11; *Proctor*, 2020 WL 3132397, at *20–25. Plaintiffs fail to distinguish these cases, Opp. at 6–7 n.9, which undermine their fraud claims.[13]

### C. Plaintiffs' Opposition Makes Clear that They Have Had Actual and Inquiry Notice of Walgreens' U&C Pricing for Years

Plaintiffs utterly fail to explain why the facts underlying the *decade* of U&C suits noted in Plaintiffs' own brief, Opp. at 2 & nn. 3–4—facts that Plaintiffs think establish the legal sufficiency of their pleadings' distinguishable allegations—did not put them on notice of Walgreens' alleged

---

[12] The other False Claims Act cases Plaintiffs point to as establishing a favorable U&C definition, Opp. at 2 & nn. 3–4, also do not control because those cases did not involve the contracts that govern transactions between pharmacies and commercial payors. Instead, as Plaintiffs acknowledge, they "involved claims submitted to [government] programs, which have specific regulatory requirements." *Id.* at 6–7 n. 9. For that same reason, the settlement in *U.S. ex rel. Baker v. Walgreens, Inc.*, No. 12-cv-00300-JPO, ECF 53 (S.D.N.Y. Jan. 24, 2019), does not affect the outcome here.

[13] The public programs in *Schutte* and *Proctor* issued *public* guidance, making the payors' expectations known to pharmacies. *Proctor*, 2020 WL 3132397, at *23. Here, Plaintiffs' contracts with their agent-PBMs are confidential. Pls.' Mot. for Leave to File Compl. under Seal, No. 1:20-cv-4940, ECF 1-4. And these Plaintiffs are not entitled to discovery based only on their unsupported (and facially implausible) allegations, including that Walgreens knew what benefits "Plaintiffs contracted to receive" in confidential PBM agreements that Plaintiffs do not (and cannot) allege Walgreens ever saw. Asuris Compl. ¶ 39.

scheme. Plaintiffs also offer no explanation why the allegedly "well-accepted" methodology of using Walgreens' "public PSC list price . . . as a proxy for Walgreens' actual cash price," Opp. at 10, did not put them on notice in 2007. At the very least, Plaintiffs had a duty to investigate. *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 (N.D. Ill. 2006). Plaintiffs fail to plead their reasonable reliance, and even at this stage, the Court need not accept their implausible allegations. *See id.*[14]

### D. Plaintiffs Still Fail to Contextualize Their Allegations, As Rule 9(b) Requires

The "who, what, when, where, and how" of Plaintiffs' fraud claim remain missing, *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 441–45 (7th Cir. 2011), particularly because Plaintiffs still fail to distinguish Walgreens from WBA. *See* Opp. at 9. Notably, Plaintiffs also do not address their failure to allege how the Walgreens-PBM contracts that govern the exemplar overcharges define U&C. Ariz. OB at 11; Asuris OB at 11.

### E. Plaintiffs Do Not Distinguish *Moorman* or Establish a Duty Owed to Plaintiffs

Plaintiffs apparently concede that Walgreens owed no fiduciary duty to Plaintiffs' PBMs, let alone to *Plaintiffs*, *see* Opp. at 8, and Plaintiffs' other, newly articulated theories fail to establish that Walgreens owed Plaintiffs any other duty. ***First***, Plaintiffs fail to explain which material facts (besides the allegedly accurate U&C prices, Ariz. Compl. ¶ 100; Asuris Compl. ¶ 109) Plaintiffs omitted. But Plaintiffs had no affirmative duty to correct U&C prices that Plaintiffs allege were not just half true, but wholly false. *See* 19A Ill. Law & Practice Fraud § 6 (defendant has duty to

---

[14] Plaintiffs argue that *Forth* saves their claims, Opp. at 7, but *Forth* addressed only whether *individual consumers* pleaded reliance. 2018 WL 1235015, at *6 & n.10 (N.D. Ill. Mar. 9, 2018). And the voluntary payment doctrine, which separately forecloses Plaintiffs' claims, Asuris OB at 11 n.17, ***does*** apply. *Contra* Opp. at 7–8 n.10. Plaintiffs fail to plead adequately that their claims satisfy the doctrine's fraud exception (or any other exceptions), *see Smith v. Prime Cable of Chi.*, 276 Ill. App. 3d 843, 847–55 (1st Dist. 1995), and consumer fraud claims like Plaintiffs' are not "categorically exempt." *McIntosh v. Walgreens Boots Alliance, Inc.*, 2019 IL 123626, ¶ 31. Regardless, the voluntary payment doctrine is an affirmative defense that Walgreens will further develop at the appropriate time. *See id.* ¶ 16.

"state qualifying matter" regarding only statement that is "truthful as far as it goes"). ***Second***, other U&C decisions have declined to impose a freestanding, "industry standards" duty to report particular U&C prices. *Forth*, 2018 WL 1235015, at *7; *Corcoran*, 169 F. Supp. 3d 970, 988–89 (N.D. Cal. 2016). ***Third***, the duty to avoid negligently conveying false information (an exception to *Moorman*'s economic loss bar, 91 Ill. 2d 69, 90–91 (1982)), does not apply when the information a defendant supplies is "merely ancillary to the sale of a product," like prescription drugs here. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 218 Ill. 2d 326, 339 (2006).

### F. Plaintiffs Offer No Additional Support for Their Unjust Enrichment Claims

Plaintiffs agree that their unjust enrichment claims depend entirely on their other claims. Opp. at 9. Since the other claims fail, the unjust enrichment claims also fail. *See* Asuris OB at 12.

## IV. RULE 12(B)(6): PLAINTIFFS DO NOT SERIOUSLY DEFEND THEIR STATUTORY CLAIMS (ARIZONA COUNTS 4–6; ASURIS COUNTS 4–8)

### A. Plaintiffs Fail to Demonstrate a Sufficient Illinois Nexus to Support Their Illinois Act Claims (Arizona Counts 5–6; Asuris Counts 7–8)

Plaintiffs' Opposition confirms that Walgreens' alleged scheme did not "occur primarily and substantially" in Illinois. *Avery*, 216 Ill. 2d at 185–86. Even if every fact pleaded in the Complaints was true, all but one Plaintiff—BCBS of Arizona—has alleged only that Walgreens is Illinois-based and has Illinois operations—*exactly like the* Avery *defendant, State Farm*. Asuris OB at 13–14. The fact that an alleged "scheme to defraud was 'disseminated' from" Walgreens' Illinois headquarters, however, "is insufficient." *Avery*, 216 Ill. 2d at 189. Nor does the fact that a handful of BCBS of Arizona's *members* allegedly filled prescriptions in Illinois save BCBS of Arizona's—let alone the other Plaintiffs'—claims. BCBS of Arizona has not pleaded, for example, that *it* received any allegedly fraudulent information or felt any injury in Illinois. Ariz. OB at 14; *see also Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19 C 1960, 2020 WL 43017, at *1, 4 (N.D. Ill. Jan. 4, 2020) (no Illinois nexus when plaintiff with nationwide locations did not allege that it

received inflated invoices in Illinois "or that any other unfair or deceptive activity took place in Illinois"). And BCBS of Arizona's allegations only make the other Plaintiffs' total lack of any Illinois nexus even more conspicuous. *Compare* Ariz. Compl., Ex. 2, *with* Asuris Compl., Ex. 2.

**B.   Plaintiffs Fail to Explain Why Their Untimely ACFA and UTPA Claims Should Not Be Dismissed (Arizona Count 4; Asuris Count 4)**

Plaintiffs' attempt to salvage their time-barred ACFA and UTPA claims fails at each step. *First*, Plaintiffs erroneously argue that Arizona and Oregon law do not supply the statutes of limitations for their ACFA and UTPA claims. Opp. at 17–18.[15] "Where a cause of action is created by [a foreign] statute and a time is fixed within which the cause of action must be asserted," however, courts applying Illinois law must adopt the foreign limitations period. *Pirelli*, 2009 WL 2777995, at *6. The exact same section of the Oregon statute that creates Plaintiffs' private consumer fraud cause of action also includes a one-year limitation period. *See* Or. Rev. Stat. § 646.638(1), (6). Thus, Oregon law supplies the UTPA limitations period. *Kalmich v. Bruno*, 553 F.2d 549, 553–54 (7th Cir. 1977). Arizona's one-year limitations period likewise applies to BCBS of Arizona's ACFA claim: the limitations period directly applies to any "liability created by statute," including ACFA. Ariz. Rev. Stat. § 12-541(5); *see also Kalmich*, 553 F.2d at 554–55.

*Second*, Plaintiffs cite an inapposite *Illinois* case to argue that, even if Arizona's and Oregon's one-year limitations periods apply, Plaintiffs' claims have not yet accrued under the "continuing violations doctrine." Opp. at 18–19. Because Arizona and Oregon supply the statute of limitations, however, they also supply the accrual rules. *See Singletary v. Cont'l Ill. Nat'l Bank & Trust Co. of Chi.*, 9 F.3d 1236, 1242 (7th Cir. 1993). Plaintiffs make no argument at all that,

---

[15] Plaintiffs cite *Pirelli*, No. 9 C 2046, 2009 WL 2777995, at *6 (N.D. Ill. Aug. 31, 2009), to suggest that it would be "premature" to decide whether Arizona's and Oregon's statutes of limitations apply. Opp. at 18 n.32. In *Pirelli*, however, the Court explained that it would be premature to decide which statute of limitations to apply only because the answer would not affect the outcome and because the parties never addressed the point. 2009 WL 2777995, at *6. Here, Defendants provided the argument missing in *Pirelli*.

under *Arizona or Oregon* law, their claims have not yet accrued or are tolled. Nor could they. Arizona and Oregon, like Illinois, recognize that the continuing violations doctrine does not apply when a plaintiff alleges discrete acts that cause discrete injuries.[16] Each allegedly fraudulent reimbursement claim allegedly caused Plaintiffs to suffer a discrete injury: an overpayment. Ariz. Compl., Ex. 2; Asuris Compl., Ex. 2. Thus, Plaintiffs' consumer fraud claims started to accrue no later than January 24, 2019, when Plaintiffs allegedly discovered the supposed fraud. *See* Ariz. OB at 12–13; Asuris OB at 12–13.[17] Plaintiffs filed their ACFA and UTPA claims more than a year later. The continuing violations doctrine does not make Plaintiffs' claims timely.

*Third*, Plaintiffs argue, based on a misunderstanding of Arizona law, that *American Pipe* tolling saves BCBS of Arizona's untimely ACFA claim against Walgreens.[18] Plaintiffs recognize, as they must, that "the Court must look to the laws of [Arizona] to determine if tolling applies." Opp. at 19–20. Citing only *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121 (2011) (en banc), Plaintiffs suggest that Arizona follows *American Pipe* tolling. Opp. at 20. "Contrary to [Plaintiffs'] argument, *Albano* did **not** adopt intra-jurisdictional tolling in Arizona." *Rader v. Greenberg Traurig, LLP*, 237 Ariz. 433, 437–38 (Ct. App. 2015) (emphasis added). Plaintiffs cite no other Arizona cases suggesting that Arizona has adopted *American Pipe* tolling, and none exists.[19]

---

[16] *Franklin v. Phoenix*, No. CV-06-02316-PHX-NVW, 2007 WL 1463753, at *2 (D. Ariz. May 17, 2007); *Reyna v. Portland*, No. 02-980-JO, 2005 WL 708344, at *4–5 (D. Or. Mar. 28, 2005); *see also Belleville Toyota, Inc. v. Toyota Motor Sales, USA, Inc.*, 199 Ill. 2d 325, 347–49 (2002).

[17] Plaintiffs suggest that Walgreens conceded that Plaintiffs' ICFA claims (and other statutory claims with different periods of limitation) are timely. Opp. at 17 n.28. In fact, Walgreens vigorously disputes that Plaintiffs timely filed any of their claims, and Walgreens does not concede that the discovery rule tolled the accrual of Plaintiffs' claims. *See* Ariz. OB at 12–13 & n.14; Asuris OB at 12.

[18] Plaintiffs do not respond to Walgreens' argument that *American Pipe* does not apply to their UTPA claim, Asuris OB at 13, or to BCBS of Arizona's ACFA claim against WBA, Ariz. OB at 13 n.15, thus abandoning these claims. *See, e.g.*, *Kirksey v. R.J. Reynolds Tobacco Co.*, 168 F.3d 1039, 1041–43 (7th Cir. 1999).

[19] *Cf. Castillo v. St. Croix Basic Svs., Inc.*, 72 V.I. 528, at ¶ 29 (Super. 2020) ("Arizona . . . ha[s] not taken a clear position" regarding intra-jurisdictional tolling).

Instead, Arizona courts still have not resolved the "uncertain[]" question, certified by the Ninth Circuit in *Albano*, 634 F.3d 524, 540 (9th Cir. 2011), whether *American Pipe* tolling applies in Arizona. As a result, no matter the type of tolling at issue here,[20] the Court should not make new Arizona law and apply *American Pipe* to toll BCBS of Arizona's untimely ACFA claim.

### C. Plaintiffs Still Lack Standing to Bring an ICPA Claim (Asuris Count 5)

The PBMs stand between Walgreens and Plaintiffs, so Plaintiffs cannot allege that they are in direct privity with Walgreens as Idaho law requires. Asuris OB at 13. Instead, after spending pages arguing that "this is a fraud case, and not a contract case," Opp. at 4–5, 10–11, Plaintiffs suddenly admit that their claims are "related to a contract." *Id.* at 22. Claims brought under ICPA, however, must be more than *related* to a contract—they "must be *based* upon a contract." *Haskin v. Glass*, 102 Idaho 785, 788 (Ct. App. 1982) (emphasis added); *see also Taylor v. McNichols*, 149 Idaho 826, 846 (2010).[21] Plaintiffs thus lack standing to pursue their ICPA claim.

### D. Plaintiffs' Consumer Act Claims Also Fail on the Merits

Plaintiffs make no real effort to distinguish Defendants' cases, instead simply reciting irrelevant aspects of their holdings. *Compare* Ariz. OB at 14–15 nn. 17–18, *and* Asuris OB at 14–

---

[20] Plaintiffs argue that Walgreens "incorrectly defines" cross-jurisdictional tolling. Opp. at 19. The Seventh Circuit has made clear, however, that "when the statute of limitations depends on state law, then state rules determine the tolling effect of a class suit, *even if all litigation occurs in federal court*. The source of the law, and not the identity of the forum," controls. *Sawyer v. Atlas Heating & Sheet Metal Works, Inc.*, 642 F.3d 560, 562–63 (7th Cir. 2011) (emphasis added). A class action thus implicates cross-jurisdictional tolling if it is filed in one jurisdiction but would be used to toll a different jurisdiction's statute of limitations; it matters whether the class action's forum and the statute of limitations' home state cross jurisdictions, not whether the class action and the subsequent suit do. *See In re Dairy Farmers of Am., Inc. Cheese Antitrust Litig.*, No. 9 CV 3690, 2015 WL 3988488, at *25, 30–31 (N.D. Ill. June 29, 2015) (adopting this understanding); *Ottaviano v. Home Depot, Inc. USA*, 701 F. Supp. 2d 1005, 1011–13 (N.D. Ill 2010) (same).

[21] To avoid this clear bar to their ICPA claim, Plaintiffs cite only a federal case that narrows Idaho law. Other federal courts, however, disagree with that court (and Plaintiffs), because "the Idaho Supreme Court has specifically confirmed that, to sue under the ICPA, 'the aggrieved party must have been in a contractual relationship *with the party alleged to have acted unfairly or deceptively*.'" *In re Duramax Diesel Litig.*, No. 17-cv-11661, 2018 WL 3647047, at *8–9 (E.D. Mich. Aug. 1, 2018) (quoting *Taylor*, 149 Idaho at 846).

15 nn. 20, 23, *with* Opp. at 20 n.33.[22] Plaintiffs likewise fail to justify their claims for injunctive relief, the *only* remedy available under IUDTPA.[23] Plaintiffs' UTPA and ICPA claims fail because Plaintiffs cannot use their Opposition to amend their Complaints, which failed to plead the particular UTPA and ICPA provisions Walgreens allegedly violated, as they must. *See Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139–40 (D. Or. 2014); *Taylor*, 149 Idaho at 846.

## V. PLAINTIFFS FAIL TO JUSTIFY THEIR CLAIMS AGAINST WBA

Plaintiffs' Opposition—like their Complaints—provides no reason to depart from the general principle that "a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Here, the Complaints allege only that Walgreens and WBA had "integrated operations," Ariz. Compl. ¶ 17; Asuris Compl. ¶ 23, and never mention WBA again. This barebones, conclusory allegation fails to plead adequately that WBA's actions were inconsistent with "normal parent-subsidiary behavior," *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Solutions, Inc.*, No. 18 C 566, 2019 WL 2357030, at *5 (N.D. Ill. June 4, 2019), regardless of how many people Plaintiffs now argue WBA employs.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss Plaintiffs' Complaints with prejudice under Rules 12(b)(7) and 12(b)(6).

---

[22] Plaintiffs abandoned their allegation that Walgreens violated ICFA by deceptively selling or promoting a cash discount card. Ariz. OB at 14 n.16; Asuris OB at 14 n.18. That claim must be dismissed. *See Kirksey*, 168 F.3d at 1041–43. Plaintiffs again mistakenly rely on *Forth*'s holding that a *consumer* adequately pleaded causation to attempt to remedy their own claims' deficiencies. Opp. at 20; *see* 2018 WL 1235015, at *12. Plaintiffs also fail to explain their consumer nexus theory, which the Court *can* resolve on a motion to dismiss. *See Vyas v. Wallach*, No. C06-1193RSM, 2006 WL 8454883, at *4 (W.D. Wa. Nov. 30, 2006).

[23] Plaintiffs' suggestion that "network adequacy and contractual requirements" compel Plaintiffs to continue reimbursing Walgreens, Opp. at 21 n. 35, appears nowhere in Plaintiffs' Complaints. Pleadings "may not be amended by the briefs in opposition to a motion to dismiss." *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984).

Dated: November 4, 2020           Respectfully submitted,

*/s/ Jeffrey J. Bushofsky*
Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co. and*
*Walgreens Boots Alliance, Inc.*

## CERTIFICATE OF SERVICE

I, Charles D. Zagnoli, hereby certify that the foregoing Consolidated Reply Memorandum in Support of Defendants Walgreen Co.'s & Walgreens Boots Alliance, Inc.'s Motion to Dismiss under Fed. R. Civ. P. 12(b)(7) & 12(b)(6) was electronically filed on November 4, 2020, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

*/s/ Charles D. Zagnoli*

Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendants Walgreen Co. and*
*Walgreens Boots Alliance, Inc.*