**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BCBSM, INC, (d/b/a BLUE CROSS and BLUE SHIELD of MINNESOTA), HEALTH NEW YORK, INC, HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE), ASURIS NORTHWEST HEALTH, *et al.*, | No. 20 C 1853<br>No. 20 C 1929<br>No. 20 C 3332<br>No. 20 C 4940<br>No. 20 C 4738 |
| *Plaintiffs*, | |
| v. | Judge Virginia M. Kendall |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | |
| *Defendants*. | |

**MEMORANDUM OPINION AND ORDER**

The Plaintiffs in this case are health care plans offering comprehensive health care services and coverage, including prescription drug coverage, to their members in locations across the United States. Defendants are Walgreen Co. and Walgreens Boots Alliance, Inc. (together "Walgreens") who allegedly engaged in a fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices. Plaintiffs filed five separate cases, which were consolidated on September 18, 2020 before this Court. Walgreens filed Motions to Dismiss [Dkts. 47, 57, 64, 87][1] the Complaints, arguing Plaintiffs failed to join a

---

[1] The Motion to Dismiss Case No. 20-cv-04738 was filed before Judge Rowland at Dkt. No. 24 prior to being consolidated with Case No. 20-cv-1853 before this Court.

required party under Fed. R. Civ. P. 12(b)(7). Walgreens additionally asserts Plaintiffs failed to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) for common law fraud, fraudulent concealment, negligent misrepresentation, unjust enrichment, and statutory consumer protection claims under the laws of various states. Walgreens also moves for sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 claiming that the Complaints are frivolous and without legal merit.

For the foregoing reasons, the Court dismisses without prejudice Plaintiffs' negligent misrepresentation claim, Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505, et seq.) and Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq) claims. The Court denies Walgreens' Motions to Dismiss the remaining claims. The Court denies Walgreens' Motion for Sanctions. [Dkts. 99, 101].

## **BACKGROUND**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the Complaint's well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The facts below come from Plaintiffs' Complaints[2] and the Court accepts them as true for purposes of reviewing this Motion. *See Vinson v. Vermillion Cty., Ill.*, 776 F.3d 924, 925 (7th Cir. 2015).

Defendant Walgreen Co. is an Illinois corporation with its principal place of business and corporate headquarters in Deerfield, Illinois. On December 31, 2014, Walgreen Co. became a wholly owned subsidiary of Defendant Walgreens Boots Alliance, Inc. ("WBA") pursuant to a merger to effect a reorganization of Walgreen Co. into a holding company structure. (Dkt. 1 ¶ 24).

---

[2] The cases discussed in this motion were consolidated on July 8, 2020 (Dkt. 46) and September 18, 2020 (Dkt. 87). Because of the overlap of the material facts in the Complaints, the Court will cite to the Complaint in Case No. 1: 20-cv-1853, which the other cases have been consolidated under, while acknowledging that paragraph numbers containing the cited facts are different in each complaint.

Defendant WBA is a Delaware corporation with its principal place of business and corporate headquarters in Deerfield, Illinois. (*Id.* ¶ 24). Because of their integrated operations, allegations as to Walgreen Co. and WBA pertain to both parties. (*Id.* ¶ 26).

Walgreens is and has been a network pharmacy for every Plaintiff, meaning that Plaintiffs' Members can use their prescription drug benefit to fill their prescriptions at Walgreens pharmacy locations at in-network pricing. (Dkt. 1 ¶ 32). When a Walgreens pharmacy dispenses a prescription to a Member, Walgreens causes an electronic claim for reimbursement to be sent to Plaintiffs' pharmacy benefit managers ("PBMs"), which then submits a claim for payment to Plaintiffs. (*Id.*). During the relevant time period, Plaintiffs have paid Walgreens through PBMs. (*Id.*). Plaintiffs employed Medco Health Solutions, Inc.; Catalyst Rx; Catamaran Corp.; CVS Caremark; Express Scripts, Inc.; MedImpact Healthcare Systems, Inc.; Preferred Care Services, Inc.; Prime Therapeutics LLC; and RegenceRx as their PBM agents. (*Id.* ¶ 56; Case No. 20-cv-4940 (hereinafter "Asuris") ¶ 29).

Walgreens reports a "usual and customary price" ("U&C price") on every reimbursement claim, which the PBMs directly pass on to the Plans. (*Id.* ¶ 55). U&C price is the price customers without insurance pay a given pharmacy for prescription drugs, i.e., the cash or uninsured price, and federal health programs have consistently required Walgreens and other pharmacies to report the cash prices offered by pharmacy discount programs to be reported as a pharmacy's U&C price. (*Id.* ¶¶ 37–39). The U&C price also serves as a ceiling to how much a pharmacy can charge a health plan for the drug. (*Id.* ¶ 37).

For more than a decade, Walgreens knowingly and intentionally submitted inflated U&C prices for brand and generic drugs purchased by Plaintiffs' members. (*Id* ¶ 49). Walgreens submitted U&C prices paid by few—if any—actual cash customers (i.e. customers who paid for

drugs without insurance) and were regularly five, ten, or even twenty times higher than what Walgreens actually charged cash customers. (*Id.* ¶ 7). Walgreens has been able to continue this scheme through its Prescription Savings Club ("PSC"), which offers cash customers steeply discounted prices on up to 8,000 brand and generic drugs in exchange for a small enrollment fee. (*Id.* ¶¶ 63–70). In its recent settlement with the Department of Justice, Walgreens admitted that it regularly returned "enrollment fees" to its PSC Program enrollees through store credits.[3] (*Id.* ¶ 67). Walgreens additionally offers a similar "Rx savings program" called the JustRx Program to customers who pay without using insurance at more than 1,900 Walgreens-owned Rite Aid stores, as well as Duane Reade-branded Walgreens pharmacies, which provides discounts on all prescription drugs with no annual or up-front membership fee to participate. (*Id.* ¶ 71). Walgreens inflated the U&C prices that it reported to Plaintiffs and their PBMs by pegging Walgreens' reported U&C prices to higher prices that did not reflect the cash prices offered to PSC Program enrollees, JustRx Program participants, or third-party discount program cardholders. (*Id.* ¶ 72). Since 2007, the Plans paid Walgreens more than $18 billion to reimburse more than 264 million claims.[4] (*Id.* ¶ 76). Through its fraudulent scheme, Walgreens overcharged Plaintiffs hundreds of millions of dollars for prescription drug. (*Id.* ¶ 1).

## DISCUSSION

Walgreens moves to dismiss the Complaints pursuant to Rule 12(b)(7) because Plaintiffs' have not joined the PBMs, a required party under Fed. R. Civ. P. 19 according to Walgreens.

---

[3] On January 15, 2019, Walgreens settled claims brought by the United States, 39 states, and the District of Columbia alleging that, from January 2008 through December 2017, Walgreens violated the False Claims Act, 31 U.S.C. § 3729 *et seq.*, by submitting false U&C prices that were higher than the prices it charged for the same drugs sold through its Prescription Savings Club cash discount program ("PSC Program"), thereby obtaining more money in reimbursements for Medicaid fee-for-service claims than it was entitled to receive. *Id.* ¶ 2.
[4] In the Complaints for Case No. 1:20-cv-4738 (BCBSAZ) and Asuris (defined above), the Plaintiffs state that since 2007, the Plans have paid Walgreens more than $3.4 billion to reimburse more than 60.5 million claims. *See* BCBSAZ ¶ 65; Asuris ¶ 74.

Walgreens additionally moves under 12(b)(6) for failure to state a claim for common law fraud, fraudulent concealment, negligent misrepresentation, unjust enrichment, and statutory consumer protection claims under the laws of various states. Walgreens also moves for sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927 claiming the Complaints are frivolous and without legal merit.

## I. Motion to Dismiss for Failure to Join a Necessary Party

Walgreens first argues the Court should dismiss the suit because Plaintiffs failed to join the PBMs, allegedly the conduit between Plaintiffs and Walgreens and purportedly indispensable parties. "The purpose of Rule 19 is to permit joinder of all materially interested parties to a single lawsuit so as to protect interested parties and avoid waste of judicial resources." *Askew v. Sheriff of Cook Cty.*, 568 F.3d 632, 634 (7th Cir. 2009). When evaluating a Rule 12(b)(7) motion, the Court accepts all well-pleaded allegations in the complaint as true and may consider extrinsic evidence. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 480 n. 4 (7th Cir. 2001). Dismissal for failure to join a party "is not the preferred outcome under the Rules." *Askew*, 568 F.3d at 634.

Analysis of a Rule 12(b)(7) motion proceeds in two steps. First, the Court determines whether a party is one that should be joined, if feasible, under Rule 19(a). *Askew*, 568 F.3d at 635; *Davis Cos.*, 268 F.3d at 481 (citing *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)). A party is necessary if:

> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1). Second, if the Court determines that the party should be joined but cannot be for jurisdictional reasons, then the Court must determine whether the party is indispensable; that is, whether the litigation can proceed in that party's absence under Rule 19(b). *Askew*, 568 F.3d at 635; *Davis*, 268 F.3d at 481.

In a 12(b)(7) motion, the movant bears the burden of demonstrating that the absent party is necessary and indispensable. *See, e.g., United States v. Sullivan*, No. 10 CR 821, 2016 WL 1626622, at *4 (N.D. Ill. Apr. 21, 2016) (quoting *Ochs v. Hindman*, 984 F. Supp. 2d 903, 906 (N.D. Ill. 2013)). The term "complete relief" refers solely to whether the relief between the persons already parties to the case is possible without the addition of the absent person. *See Davis*, 268 F.3d at 481.

Walgreens asserts that the PBMs are necessary because they contracted with both Plaintiffs and Walgreens. Yet, the Complaints sound in fraud; not in breach of contract. Plaintiffs allege Walgreens engaged in fraudulent conduct that damaged them by forcing them to pay higher prices for prescription drugs. While the PBMs served as the intermediary between the parties, nothing in the Complaint suggests they engaged or assisted in the fraud. It is possible under this relationship for the Court to grant Plaintiffs complete relief for fraudulent activity if, as alleged, the injury they suffered arose through the sole actions of Walgreens. Walgreens baselessly asserts the PBMs' absence also leaves Walgreens "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations." Fed. R. Civ. P. 19(a)(1)(B)(ii). Walgreens cherry-picks quotes from the Complaints in an attempt to frame the claims once again as contractual claims. But there are no allegations that the PBMs engaged in the fraudulent conduct or conspired in the fraud. Nor is it clear why the PBMs would have an interest in the matter since

they have not intervened despite public statements in the related litigation Walgreens cites. Walgreens' statement that the PBMs have claimed an interest or that Walgreens will be subject to inconsistent obligations is more conclusory than sound. *See e.g. Rotec Indus., Inc. v. Aecon Grp., Inc.*, 436 F. Supp. 2d 931,937 (N.D. Ill. 2006) (denying Rule 12(b)(7) motion because "nothing in the record demonstrates that [the absent party] is claiming an interest in this action").

Finally, as to whether the PBMs are indispensable, Walgreens claims "[t]he Seventh Circuit has repeatedly explained that a contracting party," like each of the PBMs here, "is the paradigm of an indispensable party." (Dkt. 89 at 7 (quoting *Chaudry v. Musleh*, No. 17 C 1813, 2018 WL 3361846, at *4 (N.D. Ill. Jul. 9, 2018) (quotations omitted)).[5] Again, the allegations in the complaint are fraud claims based on alleged misrepresentations made by Walgreens. The PBMs, while the intermediaries, are not alleged to have engaged in any fraudulent action or made any false or untrue misrepresentations. Surely, if this case were a breach of contract claim, such as *Chaudry*, an entirely different analysis would apply as to whether the PBMs are necessary parties. However, as it is not, the PBMs are not essential to the litigation. Walgreens' motion to dismiss for failure to join a necessary party is denied.

## II.    Motion to Dismiss for Failure to State a Claim

Walgreens also argues Plaintiffs failed to state a claim and so the Complaint should be dismissed pursuant to Rule 12(b)(6). A motion to dismiss for failure to state a claim challenges the sufficiency of the complaint. *Berger v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289–90 (7th Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), the complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A claim is facially

---

[5] Defendants also cite *Chaudry* at Dkt. 69 at 5, Dkt. 59 at 5, Dkt. 52 at 10.

plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Olson v. Champaign Cty.*, 784 F.3d 1093, 1099 (7th Cir. 2015) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 734 (7th Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678). The Seventh Circuit has interpreted this plausibility standard to mean that the plaintiff must "give enough details about the subject-matter of the case to present a story that holds together." *Vanzant v. Hill's Pet Nutrition, Inc.*, 934 F.3d 730, 736 (7th Cir. 2019) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir.2010)). Additionally, evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016). (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011); *Iqbal*, 556 U.S. at 678)).

Because Plaintiffs adequately pleaded their claims of common law fraud, fraudulent concealment, and unjust enrichment, Walgreens' motion to dismiss these claims is denied. The Court dismisses the negligent misrepresentation claim because Plaintiffs failed to plead Walgreens owes them a duty. All of Plaintiffs' statutory consumer protection claims may proceed, with the exception of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505, et seq.) and the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq).

### A.    Plaintiffs' Common Law Claims

Walgreens' arguments as to Plaintiffs' common law claims of fraud, fraudulent concealment, negligent misrepresentation, and unjust enrichment are largely the same across each

8

of its motions to dismiss. Walgreens argues that Plaintiffs' claims are deficient under the Rule 9 heightened pleading standard because Plaintiffs have not pled: (1) false statements; (2) that Walgreens knew Plaintiffs expected reported U&C prices to include PSC prices; and (3) that Plaintiffs reasonably relied on the reported U&C prices.[6] Walgreens also seeks to dismiss the negligent misrepresentation and fraudulent concealment claims because Walgreens did not owe Plaintiffs a duty. Finally, Walgreens argues the unjust enrichment claim fails as it hinges on the other claims.

Under Illinois law, the elements of fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement.[7] *Forth v. Walgreen Co.*, No. 17-cv-2246, 2018 WL 1235015, *4 (N.D. Ill. Mar. 9, 2018) (quoting *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996)). To state a claim for fraudulent concealment, Plaintiffs must allege Walgreens concealed a material fact when under a duty to disclose that fact to Plaintiffs. *Connick*, 675 N.E.2d at 593.

The elements of negligent misrepresentation in Illinois are similar and Plaintiffs must plead: (1) the defendant had a duty to the plaintiff to communicate accurate information; (2) the defendant made a false statement of material fact to the plaintiff; (3) the defendant negligently failed to ascertain the truth of that statement; (4) the defendant made the statement with the intent to induce the plaintiff to act; (5) the plaintiff acted in reliance on the truth of that statement; and (6) the plaintiff suffered damage due to that reliance. *First Midwest Bank, N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 334–35 (Ill. 2006).

---

[7] The parties agree that Illinois law applies to Plaintiffs' common law claims.

9

Walgreens, notably, ignores these above elements in its motions to dismiss and seeks to impose their own heightened elements for pleading the above claims. While, as discussed further below, Rule 9(b) indisputably applies and requires Plaintiffs to plead their fraud claims with particularity, *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (internal citation and quotation marks omitted), Plaintiffs need not present an affirmative factual showing of fraud at this stage.

### 1. False Statements

Walgreens' first issue with the Complaints is Plaintiffs failed to plead that Walgreens made any false statements, a required element for fraud, fraudulent concealment, and negligent misrepresentation. Walgreens claims that "[t]o plead adequately that Walgreens fraudulently reported false U&C prices, Plaintiffs must allege facts demonstrating that Walgreens was required under its contracts with the PBMs to report discount club prices as U&C prices, and that Walgreens failed to do so." (Dkt. 52 at 12)[8]. Walgreens does not provide any support for this requirement and the Court cannot find any authority that, in order to plead a false statement under a theory of fraud, a plaintiff must prove a contractual term. In the similar case of *Forth*, individual consumer plaintiffs alleged that Walgreens engaged in fraudulent pricing practices through the PSC program, therein artificially inflating the U&C prices reported to health-insurance companies and related third-party payors, and resulting in plaintiffs overpaying for generic drugs. 2018 WL 1235015, *4–5. Walgreens made similar arguments stating that Plaintiffs common law claims for fraudulent conduct failed to state a claim. That court there found Walgreen's arguments unavailing and that Plaintiffs properly pled their claims. Here, too, Plaintiffs' common law claims are adequately pled. Plaintiffs pled throughout the Complaints that Walgreens made false statements when it

---

[8] *See also* Dkt. 69 at 7; Dkt. 89 at 9.

fraudulently reported inflated U&C prices on "millions of claims" submitted to the Plans for reimbursement. (Dkt. 1 ¶¶ 1, 7, 74–77, 85–89, 92, 96, 99). In similar cases, allegations that a pharmacy submitted a fraudulently inflated U&C price on a claim form were sufficient under Rule 9(b). *See e.g. Sheet Metal Workers Local No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, 221 F. Supp. 3d 227, 231 (D.R.I. 2016) (denying CVS's motion to dismiss on the basis that fraudulently inflated U&C prices were adequately pled false claims); *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 986 (N.D. Cal. 2016) (same). Walgreens' argument that Plaintiffs have not pled false statements is denied.

### 2. Walgreens' Knowledge

Walgreens next argues Plaintiffs failed to plead Walgreens knew Plaintiffs expected the reported U&C prices to include PSC prices and failed to provide any factual basis to assert Walgreens was even aware of Plaintiffs' purported contractual expectations about U&C pricing. This argument goes to the knowledge element of the claims. Walgreens cites *United States ex rel. Proctor v. Safeway Inc.*, No. 11-cv-3406, 2020 WL 3132397, at *25 (C.D. Ill. Jun. 12, 2020) and *United States ex rel. Schutte v. Supervalu, Inc.*, No. 11-3290, 2020 WL 3577996, at *9–10 (C.D. Ill. Jul. 1, 2020), which held "that retail pharmacy did not recklessly or knowingly submit false U&C prices because law governing U&C requirements was unclear." (Dkt. 52 at 14).[9] Yet, these cases do not support Walgreens' argument. First, these cases were at the motion for summary judgment stage which entails a different and higher standard of review.[10] At this stage, the Court is limited to the pleadings and may not determine factual issues. Even in these cases that

---

[9] *See also* Dkt. 69 at 8; Dkt. 89 at 10.

[10] The Court notes that the courts in *Proctor* and *Schutte* previously denied motions to dismiss, finding the Plaintiffs had alleged sufficient facts to state a claim under the FCA. *United States ex rel. Schutte v. Supervalu, Inc.*, 218 F. Supp. 3d 767 (C.D. Ill. 2016); *United States ex rel. Proctor v. Safeway Inc.* Case No. 11-3406, 2016 WL 7017231, *8–10 (C.D. Ill. Dec. 1, 2016).

Walgreens cites, they were no dismissed at the pleading stage. *Id.* Here, Plaintiffs pleaded multiple times that Walgreens knew its U&C prices did not reflect the prices routinely charged to its cash customers, thus rendering them false and inflated. (Dkt. 1 ¶¶ 41–43, 113, 120). This is sufficient to plead knowledge for fraud under Rule 9(b), which requires a complaint to "state with particularity the circumstances constituting fraud or mistake," but "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Walgreens attempts to place a higher pleading standard than required upon Plaintiffs at this stage. Walgreens' arguments as to its purported lack of knowledge are denied.

### 3. Reasonable Reliance

Walgreens argues Plaintiffs failed to plead they reasonably relied on the reported U&C prices. Walgreens argues, because Plaintiffs knew about the PSC program and its discounted prices, Plaintiffs could not ignore the available information and claim reasonable reliance each time Walgreens reported a U&C price that did not match the PSC price. Walgreens also claims years of related litigation in their industry should have made Plaintiffs aware of the alleged scheme such that their reliance was unreasonable. Another court in this district heard this argument and denied it, finding whether the Plaintiffs could have discovered the alleged fraud through research was a "fact-intensive inquiry" inappropriate for resolution at the motion to dismiss stage. *Forth*, 2018 WL 1235015, at *6 (citing *Glazer v. Abercrombie & Kent, Inc.*, No. 07C2284, 2007 WL 3120055, at *2 (N.D. Ill. Oct. 23, 2007) ("Based on the specific facts of this case, the issue of whether plaintiffs' reliance on certain documents and statements was reasonable is not appropriate for resolution at the Rule 12(b)(6) motion to dismiss stage of the proceeding.")).

My colleague's reasoning is sound. Whether the Plaintiffs' reliance on the reported U&C prices was reasonable is a fact-intensive question inappropriate for resolution at this stage. As it

stands, Plaintiffs sufficiently pled they reasonably relied upon Walgreens' representations. (Dkt. 1 ¶¶ 59–60, 78–97, 105–06, 113, 122, 124).

Walgreens cites to *Smith v. Duffey*, 576 F.3d 336, 339 (7th. Cir. 2009) to claim that Plaintiffs' reliance on an outrageously false statement cannot constitute fraud. In *Duffy*, the Plaintiff, a knowledgeable businessman, claimed reliance upon an outrageously false statement. The Court reasoned that "a false statement that the person to whom it is made could not believe, because its falsity was obvious to him given what else he knew, is not actionable as a fraud." *Id.* at 339. Unlike *Duffy*, there was no blatantly obvious reason for Plaintiffs to know that they were being defrauded. The Plaintiffs allege that Walgreens "used its marketing to conceal the true nature of the PSC Program." They further allege that the only way to confirm the true prices was to review Walgreens' internal cash transactions and discount pricing data neither of which is publicly available. To suggest that these were statements that no one could possibly believe would require that their falsity was obvious and in the public knowledge. The allegations show that this is not the case. Although it is true that "the Illinois Supreme Court has said that the question of whether the plaintiff ha[s] a right to rely on a false representation is to be answered while viewing the representation in the light of all the facts of which plaintiff had actual knowledge as well as those of which he might have availed himself by the exercise of ordinary prudence," *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 (N.D. Ill. 2006), this remains a fact-intensive question that is not so immediately obvious as to grant a dismissal on the pleadings. Plaintiffs allege Walgreens "used its marketing to conceal the true nature of the PSC Program and the fact that cash-paying customers were paying U&C prices that were lower than the U&C prices Walgreens reported" to them. (Dkt. 1 ¶¶ 79, 82). Plaintiffs point out in their response that the "only way to confirm Walgreens' true cash prices is to review Walgreens' internal cash transaction

13

and discount pricing data, which are not publicly available and which Walgreens has actively concealed from the Plaintiffs. (Dkt. 83 at 11). Dismissal based on Plaintiffs' reasonable reliance is denied.

### 4. Rule 9(b)'s Particularity Requirement

Walgreens argues generally that Plaintiffs' claims do not meet the Rule 9(b) pleading standard for fraud. Under Rule 9(b), complaints alleging fraud must be pleaded with particularity. Plaintiffs must describe the "who, what, when, where, and how" of the fraud, that is, "the first paragraph of any newspaper story" *United States ex rel. Berkowitz v. Automation Aids, Inc*., 896 F.3d 834, 839 (7th Cir. 2018) (quoting *United States ex rel. Lusby v. Rolls-Royce Corp*., 570 F.3d 849, 853 (7th Cir. 2009)). "What constitutes 'particularity' . . . may depend on the facts of a given case," but plaintiffs must "use some . . . means of injecting precision and some measure of substantiation into their allegations of fraud." *Id*. at 839–40 (quoting *United States ex rel. Presser v. Acacia Mental Health Clinic, LLC*, 836 F.3d 770, 776 (7th Cir. 2016)).

Walgreens claims Plaintiffs' allegations fail to satisfy Rule 9(b) because they lump defendants WBA and Walgreen Co. together and do not "place the data in context." (Dkt. 52 at 17 (quoting *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*., 631 F.3d 436, 444 (7th Cir. 2011)). Further, they claim the allegations are deficient because Plaintiffs do not include the definition of U&C from any of the Walgreens–PBM contracts that govern the transactions. None of these supposed deficiencies are fatal to Plaintiffs' claims. Walgreens does not argue that the who, what, where, when, and how of the fraud has not been adequately alleged. Indeed, they cannot. Plaintiffs clearly laid out the allegations of how the fraud was perpetuated and concealed. (*See* Dkt. 1 ¶¶ 72–77). The district court in *Forth* found similarly. *See Forth*, 2018 WL 1235015, at *7 (finding that Plaintiffs' pleadings as to Walgreens' alleged fraudulent

scheme met the Rule 9(b) particularity requirements). Walgreens' arguments requiring Plaintiffs to plead extraneous details when they have already pled with particularity are unpersuasive.

Walgreens alleges the pleadings are deficient because Plaintiffs "lumped together" the parties. This case is not parallel to *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990), where the defendants were individual persons. Here, Walgreens consists of a company and its parent corporation. Other courts have uniformly denied similar arguments. *See e.g. U.S. ex rel. Strauser v. LaFrance Holdings, Inc.*, No. 18-cv-673, 2019 WL 1086363, at *15–16 (N.D. Okla. Mar. 7, 2019) (denying Walgreens' Rule 9(b) arguments that Plaintiff clustered defendants actions because Plaintiff alleged a uniform, chainwide scheme facilitated through a shared centralized pharmacy transaction system"); *Schutte*, 218 F. Supp. 3d at 771–72 (same).

### 5. Negligent Misrepresentation and Fraudulent Concealment

As discussed above, both negligent misrepresentation and fraudulent concealment claims require the existence of a breach of duty. Plaintiffs argue Walgreens owed the Plans a duty to disclose, even in the absence of a fiduciary duty, because Walgreens passed off half-truths as the whole truth, because Walgreens has a duty to follow industry standards, and because Walgreens is in the business of supplying information for others in their business transactions. Plaintiffs have strung together cases where a duty to disclose arose in the absence of a fiduciary duty from various doctrines, and so the Court will look at each claim in turn and where any possible duties have arisen.

As stated by the court in *Forth*, in the context of a negligent misrepresentation claim, "the Illinois Supreme Court *only* recognizes a duty to communicate accurate information where necessary 'to avoid negligently conveying false information that results in physical injury to a person or harm to property,' or 'to avoid negligently conveying false information where one is in

the business of supplying information for the guidance of others in their business transactions.'" 2018 WL 1235015, at *7 (citing *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998) (emphasis added)). To determine whether a defendant is in the business of supplying information, the Court looks at whether: (1) the defendant supplies the information in the course of his or her business; and (2) the information is supplied for the guidance of others in their business transactions. *Fireman's Fund Insur. Co. v. SEC Donohue, Inc.*, 679 N.E.2d 1197, 1201 (Ill. 1997). In performing this analysis, the Court must focus on "the nature of the information and its relation to the particular type of business conducted." *Orix Credit Alliance, Inc. v. Taylor Machine Works, Inc.*, 125 F.3d 468, 475 (7th Cir.1997) (citations omitted). Supplying information must be central to the business transaction. *TreeHouse Foods Inc. v. SunOpta Grains & Foods, Inc.*, No. 18 C 1412, 2019 WL 1429337, at *11 (N.D. Ill. Mar. 29, 2019) (citing *Tolan & Son, Inc. v. KLLM Architects, Inc.*, 719 N.E.2d 288, 297 (Ill. App. Ct. 1999)).

Plaintiffs state Walgreens is in the business of supplying information to guide others. Plaintiffs cite sparse allegations that Walgreens "calculates and reports the U&C prices that its pharmacies report on claims for reimbursement by Plaintiffs and their PBMs," and they specifically guide the Plans "in calculating and paying Members' prescription reimbursements on both brand and generic claim." Dkt. 83 at 12 (citing Dkt. 1 ¶¶ 60, 122).

As it is, no allegations plausibly suggest Walgreens is in the business of supplying information to guide the Plans, or anyone else, for that matter. The Complaint characterizes Walgreens as "the largest retail drugstore chain in the United States based on both revenues and number of stores." (Dkt. 1 ¶ 28). Plaintiffs further describe Walgreens as "the largest retail pharmacy, health and daily living destination across the United States and Europe." (*Id* ¶ 31).

These allegations do not put Walgreens in a category akin to lawyers, inspectors, and accountants, who do supply information to guide others, or even to the middle ground of insurance agents and financial advisors. *See Haimberg v. R&M Aviation, Inc.*, 5 Fed. Appx. 543, 548 (7th Cir. 2001) (discussing the continuum of businesses that supply information for the guidance of others). There is no plausible allegation that Walgreens is in the business of supplying information, and not goods. *See e.g. Forth*, 2018 WL 1235015, at *7 (finding that Plaintiffs' negligent misrepresentation claim was barred because there was no duty to disclose).

Relatedly, for this same reason, the *Moorman* doctrine applies and bars the negligent misrepresentation claims. In Illinois, the *Moorman* rule generally bars suits for purely economic damages based on negligent misrepresentations. *See, e.g., Hartford Fire Ins. Co. v. Henry Bros. Const. Mgmt. Serv., LLC*, 877 F. Supp. 2d 614, (N.D. Ill. 2012) (citing *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443 (Ill. 1982)). However, these suits may proceed if the party is in the business of supplying information to guide others' business transactions. *See First Midwest Bank, N.A.*, 843 N.E.2d 327 at 334–35 (citations omitted). As discussed, Plaintiffs do not plausibly allege Walgreens is in the business of supplying information to guide others. Plaintiffs' argument that Walgreens must show that Plaintiffs are not alleging "purely economic losses," and since they have not, the *Moorman* doctrine would not apply is spurious. Considering Plaintiffs allege that they suffered only economic harm and are seeking economic damages (Dkt. 1 ¶ 127) and are not alleging property damage or personal injury, it is hard to ascertain their argument that their damages are not purely economic. Plaintiffs' negligent misrepresentation claim is dismissed.

Plaintiffs claim a duty can arise where a defendant is subject to an industry standard. Plaintiffs cite *F.D.I.C. v. Masarsky*, 968 F. Supp. 2d 915, 926 (N.D. Ill. 2013) as support for this proposition. However, in *Masarsky*, the defendants had to adhere to set professional rules, the

Uniform Standards of Professional Appraisal Practice ("USPAP"). That is not the case here. Plaintiffs do not allege Walgreens is guided by any professional rules or regulations that either create a duty or delineate the scope of the duty. *See Kelley v. Carbone*, 837 N.E.2d 438, 443 (Ill. App. Ct. 2005) (finding that the USPAP do not create the duty, but only delineated the scope of the duty). Even were this a well-settled exception, which it is not, it does not apply here.

Turning to Plaintiffs' fraudulent concealment claim, a duty to disclose may arise under Illinois law if the defendant makes "an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009) (citations omitted). Plaintiffs allege that, by submitting false and inflated U&C prices that "were regularly five, ten, or even twenty times higher than what Walgreens actually charged cash customers," Walgreens took on the duty to correct its "misleading 'half-truth' and disclose the 'whole truth' regarding its actual U&C prices." Dkt. 83 at 11 (quoting Dkt. 1 ¶ 7). A half-truth is a disclosure that is misleading because it omits important information. *Apotex Corp. v. Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005). At this stage, Plaintiffs' allegations that Walgreens' repeated submissions of false U&C prices in its forms (which Walgreens asserted as true and accurate) when actually charging customers less could give rise to a duty to disclose. The Court declines to dismiss this claim.

### 6. Unjust Enrichment

Walgreens argues Plaintiffs' unjust enrichment claims should fail because when "an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will be tied to this related claim" and the claims will rise and fall together. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 517 (7th Cir. 2011). Plaintiffs' fraud and fraudulent misrepresentation claim may proceed, so their unjust enrichment claims may as well. *See Ass'n*

*Benefit Servs. v. Caremark Rx, Inc.*, 493 F.3d 841, 855 (7th Cir.2007) ("[W]here the plaintiff's claim of unjust enrichment is predicated on the same allegations of fraudulent conduct that support an independent claim of fraud, resolution of the fraud claim against the plaintiff is dispositive of the unjust enrichment claim as well.").

### B. Plaintiffs' Statutory Claims

Plaintiff alleged violations of various state consumer protection laws across the Complaints. The state statutes include the Arizona Consumer Fraud and Deceptive Business Practices Act (Ariz. Rev. Stat. § 44-1521, et seq); the Florida Deceptive and Unfair Trade Practices Act (Fla. Stat. § 501.201, et seq.); the Idaho Consumer Protection Act (Idaho Code Ann. §§ 48-601, et seq.); the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq.), the Illinois Consumer Fraud and Business Practices Act (815 ILCS 505, et seq.); the Minnesota Unlawful Trade Practices Act (Minn. Stat. §§ 8.31, 325D.09-.16); the Minnesota Uniform Deceptive Trade Practices Act (Minn Stat. §§ 8.31, 325D.43-.48); Massachusetts Consumer Protection Law (Mass Gen. Laws Ch. 93A, §§ 1-11); South Dakota Deceptive Trade Practices and Consumer Protection Law (S.D. Codified Laws § 37-24-1, et seq.); Nebraska Uniform Deceptive Trade Practices Act (Neb. Rev. Stat.. § 87-301, et seq.); Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1601, et seq.); New York Consumer Protection Act (N.Y. Gen. Bus. Law § 349, et seq.); North Carolina Unfair and Deceptive Trade Practices Act (N.C. Gen. Stat. § 75-1, et seq.); North Dakota Unlawful Sales or Advertising Practices Act (N.D. Cent. Code. § 51-15, et seq.); Oregon Unlawful Trade Practices Act (O.R.S. §§ 646.605, et seq.); and the Washington Consumer Protection Act (Wash. Rev. Code Ann. §§ 19.86.010, et seq.).

In some instances, Walgreens challenges specific state laws, whereas in others, Walgreens challenges the consumer act claims generally. The Court will analyze the specific state challenges before turning to the general claims.

### 1. Illinois

Plaintiffs' claims under the Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq.) ("IUDTPA") and Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505, et seq.) ("ICFA") fail because Plaintiffs have not pleaded any of the unfair acts took place primarily and substantially in Illinois. The ICFA "does not have extraterritorial effect," and therefore applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 853–54 (Ill. 2005). However, "there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own fact." *Id.* at 854. Courts have interpreted the IUDTPA to require the dispute occur primarily and substantially in Illinois. *See, e.g., U.S. Bd. of Oral Implantology v. Am. Bd. of Dental Specialties*, 390 F. Supp. 3d 892, 909–11 & n.11 (N.D. Ill. 2019); *IPOX Schuster LLC v. Nikko Asset Mgmt. Co., Ltd.*, 191 F.Supp.3d 790, 807–08 (N.D. Ill. 2016). In particular, the Illinois Supreme Court considers: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed. *Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19 C 1960, 2020 WL 43017, at *3–4 (N.D.

Ill. Jan. 4, 2020) (Kendall, J) (citing *The Clearing Corp. v. Fin. and Energy Exch. Ltd.*, No. 09 C 5383, 2010 WL 2836717, *6 (N.D. Ill. July 16, 2010)).

Walgreens maintains the only tie to Illinois is that it is headquartered in Illinois, which is insufficient to state a claim. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (discussing considerations in *Avery* and how only tie to Illinois was defendant's headquarters). This is a fact-intensive question, one the Court is hesitant to dismiss without discovery, but as alleged, Plaintiffs have plainly pleaded insufficiently to state a claim. The only alleged facts that tie the claim to Illinois are that Walgreens are headquartered here and have 583 drugstores in the state of Illinois. (Dkt. 1 ¶¶ 24, 25, 28). There is nothing alleged that gives rise to any inference that any of the contracts between the parties were signed here, that any deceptive statements took place here, that any payments were sent here that could possibly form the basis for Plaintiffs' Illinois-based consumer protection claims. The Court draws all reasonable inferences in the favor of Plaintiffs, *Smoke Shop, LLC*, 761 F.3d at 785, but there is insufficient information in the Complaint to infer in favor of the Plaintiffs. This is not to say Plaintiffs' claims are frivolous. They are not. It is entirely possible they may adequately plead if they choose to file an amended complaint. However, as it stands now, because the allegations relating the claims to Illinois are insufficient, Plaintiffs' IUDTPA and ICFA claims are dismissed without prejudice.

### 2. Idaho

Walgreens alleges Plaintiffs' claim under the Idaho Consumer Protection Act (Idaho Code Ann. §§ 48-601, et seq.) ("ICPA") should fail because only plaintiffs "in a contractual relationship with the party alleged to have acted unfairly or deceptively" have standing under the ICPA. *Taylor v. McNichols*, 149 Idaho 826, 846 (2010). Walgreens believes that there must be direct privity

between the parties. However, as discussed extensively by another federal court when confronted with this exact argument:

> [I]t it is not clear from *Taylor* what kind of contractual relationship the court was contemplating; in other words, it is not clear that the court was necessarily requiring a direct contract between the plaintiff and defendant (immediate privity)…they do not necessarily require that the contract must be one entered into by the plaintiff and defendant directly.

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prods. Liab. Litig.*, 295 F. Supp. 3d 927, 1021–22 (N.D. Cal. 2018). The court concluded the action only need be based on a contract, but there need not be privity. *Id.* Here, while the suit itself sounds in fraud, there is an underlying contractual relationship between the parties, which Walgreens does not deny. The *Taylor* court did not clearly demand direct privity and the Court cannot find any case that requires direct privity to bring an ICPA claim. The Court denies dismissal of this claim.

### 3. The Statute of Limitations of Arizona and Oregon

Walgreens argues both the Arizona Consumer Fraud and Deceptive Business Practices Act and the Oregon Unlawful Trade Practices Act ("UTPA") should be dismissed because they are outside the limits of the one-year statute of limitations. *See* Ariz. Rev. Stat. § 12- 541(5); Or. Rev. Stat. § 646.638(6). Plaintiffs argue the Illinois three-year statute of limitations applies, but this is incorrect. "A federal court sitting in diversity must follow the statute of limitations that the state in which it is sitting would use." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 707 (7th Cir. 2004). In Illinois, statutes of limitations are procedural in their nature and the Illinois' statute of limitations will usually apply. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co*, No. 09 C 2046, 2009 WL 2777995, at *6 (N.D. Ill. Aug. 31, 2009) (Kendall, J.) (citing *FDIC v. Wabick*, 335 F.3d 620, 627 (7th Cir. 2003)). However, "where a cause of action is created by statute and a time is fixed within which the cause of action must be asserted, however, the law of the state where

the action occurred must govern." *Id.* (citing *Cox v. Kaufman*, 571 N.E.2d 1011, 1015 (Ill. App. Ct. 1991)). In this instance, the limitations period is not merely procedural, but a fundamental component of the right itself. *Kalmich v. Bruno*, 553 F.2d 549, 553 (7th Cir. 1977).

Here, the relevant cause of action is created by the state statutes and, therefore, the limitations periods of the respective statutes apply. Therefore, Arizona's one-year statute of limitations governs Plaintiffs claim and begins running when the defrauded party discovers, or with reasonable diligence could have discovered, the fraud. *Mister Donut of Am., Inc. v. Harris*, 723 P.2d 670, 672 (Ariz. 1986). Oregon law supplies the UTPA limitations period, which states that the one-year statute of limitations starts to run when the plaintiff "knew or should have known" about the allegedly unlawful conduct. *Pearson v. Philip Morris, Inc.*, 361 P.3d 3, 33 (Or. 2015)

This does not end the inquiry. The statute of limitations is an affirmative defense, and "'complaints need not anticipate and attempt to plead around defenses.'" *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613 (7th Cir. 2014) (quoting *United States v. N. Trust Co.*, 372 F.3d 886, 888 (7th Cir. 2004)). Therefore, "a motion to dismiss based on failure to comply with the statute of limitations should be granted only where 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense.'" *Id.* (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)). A court may only dismiss a claim as untimely under Rule 12(b)(6) if "it is clear from the face of the ... complaint that it is hopelessly time-barred." *Cancer Found., Inc. v. Cerberus Capital Mgmt., LP*, 559 F.3d 671, 675(7th Cir. 2009); *see also Grzanecki v. Bravo Cucina Italiana*, 408 Fed.Appx. 993, 996 (7th Cir. 2011) (A court may dismiss the complaint if the plaintiff "mak[es] allegations that conclusively establish the action's untimeliness.").

Walgreens argues Plaintiffs should have discovered Walgreens' alleged conduct due to public litigation that commenced in 2017, that Plaintiffs mention as sharing similar facts. (Dkt. 1 ¶ 33 (discussing *Forth, et al. v. Walgreen Co. and Walgreens Boots Alliance, Inc.*, Civ. No. 17-cv-02246, ECF No. 1 (N.D. Ill.)). In the alternative, Walgreens argues Plaintiffs could have discovered the scheme when Walgreens first advertised the PSC program in 2007. (*Id.* ¶¶ 6, 63). At the very least, Walgreens believes Plaintiffs should have discovered the allegedly fraudulent scheme on January 15, 2019, when the District Court for the Southern District of New York unsealed Walgreens' settlement with the Department of Justice for the same fraudulent course of conduct alleged here. (Dkt. 1 ¶ 2). Information in the public domain, however, does not necessarily put a plaintiff on constructive notice of its injuries. *See, e.g., In re Copper Antitrust Litig.*, 436 F.3d 782, 790 (7th Cir. 2006) (concluding that "a dispute of material fact exists regarding when a diligent inquiry" by a plaintiff would have revealed its cause of action despite publicly available information). These related lawsuits or the DOJ settlement are insufficient to definitively plead the Plaintiffs out of the case. Solely because Plaintiffs make passing reference to the dates and related suits in the Complaint does not mean they affirmatively had notice of the fraudulent scheme. Plaintiffs may have to contend with these statute of limitations issues later in the case, but the Court declines to dismiss at this stage.

### 4. Consumer Act Claims

Walgreens laid out six general reasons that Plaintiffs' statutory claims fail across the board. For the reasons discussed below, Plaintiffs' arguments are denied.

First, Walgreens states that each of the consumer fraud claims acts require the Plaintiffs to plead some unconscionable, fraudulent, misleading, unfair, or deceptive conduct. Walgreens cites

their prior arguments as to the common law fraud claims as support. However, as discussed above, Plaintiffs adequately pleaded a fraudulent scheme.

Second, they argue Plaintiffs' consumer protection claims are deficient because Plaintiffs must prove causation. Citing their arguments on Plaintiffs' reasonable reliance, Walgreens argues that Plaintiffs have not met their burden. For the reasons discussed in Part II.A.3 of this Opinion, Plaintiffs adequately alleged their reasonable reliance on Walgreens' allegedly false statements that caused their harm.

Third, Walgreens argues that under the Illinois, Minnesota, New York, Nebraska, Florida and Washington acts, Plaintiffs must show a consumer nexus or public benefit to bringing suit. Walgreens does not develop this argument, besides citing one or two cases in the footnotes with zero explanation, and so the Court is left to presuppose what Walgreens intends to argue. Walgreens appears to argue there is no public benefit to this suit because it is a private contract dispute. Walgreens cites law that, under the Washington Consumer Protection Act ("WCPA"), "a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash. 2d 778, 790–91 (1986).

In Minnesota, the "public benefit requirement is not onerous," *Blue Cross & Blue Shield of Minn.*, No. 11–2529 (DWF/JJG), 2012 WL 1343147, at *5 (D. Minn. Apr. 18, 2012), but it is "a necessary element of a plaintiff's cause of action" under the statute. *Buetow v. A.L.S. Enter. Inc.*, 888 F. Supp. 2d 956, 960 (D. Minn. 2012). "Minnesota courts have not definitively delineated what factors are necessary to establish a public benefit" *id.*, but some factors include "the degree to which the defendants' alleged misrepresentations affected the public; the form of the alleged

misrepresentation; the kind of relief sought; and whether the alleged misrepresentations are ongoing." *Khoday v. Symantec Corp.*, 858 F. Supp. 2d 1004, 1017 (D. Minn. 2012).

In Nebraska, the Nebraska Supreme Court has held the Nebraska Consumer Protection Act only reaches conduct that "directly or indirectly affect[s] the people of the State of Nebraska." *Free Green Can, LLC v. Green Recycling Enters., LLC*, No. 10-cv-5764, 2011 WL 2470463, at *7 (N.D. Ill. Jun. 20, 2011) (citing *Nelson v. Lusterstone Surfacing Co.*, 605 N.W.2d 136, 141–42 (Neb. 2000) ("To be actionable under the CPA, therefore, we conclude that the unfair or deceptive act or practice must have an impact upon the public interest. The act is not available to redress a private wrong where the public interest in unaffected.")). Therefore, "Nebraska courts have refused to apply the CPA to isolated transactions between individuals that did not have an impact on consumers at large." *Id* (citing *Arthur v. Microsoft Corp.*, 676 N.W.2d 29, 36 (Neb. 2004).

To make out a *prima facie* case under the New York Consumer Protection Act, a plaintiff must demonstrate: (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result. *Chufen Chen v. Dunkin Brands, Inc.*, 954 F.3d 492, 500 (2d Cir. 2020). As to the first prong, "[p]rivate contract disputes unique to the parties ... would not fall within the ambit of the statute." *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 320 (Ct. App. 1995) (citations omitted).

In Florida, the purpose of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA") is to prevent an unfair practice "that offends established public policy and one that is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Midway Labs USA, LLC v. South Serv. Trading, S.A.*, No. 19-24857-CIV-GOODMAN, 2020 WL 2494608, at *3–5 (S.D. Fla. May 14, 2020) (citing *Sandshaker Lounge & Package Store LLC. v. RKR Beverage Inc.*, No. 317CV00686MCRCJK, 2018 WL 7351689, at *6 (N.D. Fla. Sept. 27, 2018)).

Under FDUTPA, "[a] 'consumer' is one who has engaged in the purchase of goods or services." *Id.* (citing *Leon v. Tapas & Tintos, Inc.,* 51 F. Supp. 3d 1290, 1297 (S.D. Fla. 2014)) (citations omitted). The parties do not dispute that Plaintiffs fit into this definition of consumer and, as discussed below, are litigating an unfair practice that harms public policy.

Lastly, as to Illinois, a consumer-nexus test applies to the ICFA. *Stericycle, Inc.,* 2020 WL 43017, at *5. The parties do not dispute that Plaintiffs are not consumers for the purposes of the ICFA. Therefore, Plaintiffs can only state a claim under the ICFA if they allege Walgreens' conduct was directed toward the market or gave rise to consumer protection. 815 ILCS 505; *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.,* 715 F. Supp. 2d 786, 792–93 (N.D. Ill. 2010). For a non-consumer to have standing under the ICFA based on harm to consumers, the complained-of conduct must "be of sufficient magnitude to be likely to affect the market generally...." *Williams Elecs. Games, Inc. v. Garrity,* 366 F.3d 569, 579 (7th Cir. 2004). Due to the above-discussed allegations, the Court finds that the complained-of conduct is sufficient to affect the market generally. While the Court is dismissing the Illinois claims for failing to sufficiently allege an Illinois connection, it declines to dismiss for this reason.

Plaintiffs satisfied their burden of alleging a public benefit of this suit. As discussed, it is not a mere contract dispute. Plaintiffs pled that "Walgreens' fraudulent conduct prevented Plaintiffs from obtaining more favorable prescription drug prices for its members." (Dkt 1 ¶¶ 115, 125). Surely, Plaintiffs charging their thousands of customers more as a result of Walgreens alleged fraudulent conduct is of great public interest and could bring a benefit to the public if Walgreens' conduct ceases as a result of this litigation.

Fourth, Walgreens argues Illinois, Massachusetts, Florida, and North Carolina specifically foreclose consumer-protection act suits based only on contractual breaches. However, as

discussed, this claim sounds in fraud, and not in a contractual breach. For this reason, this argument is unavailing.

Fifth, Walgreens argues Plaintiffs' claim under the IUDTPA, Minnesota, New York, Oregon, Washington and Nebraska's consumer protection statutes fail because those acts offer only injunctive relief. Walgreens states injunctive relief is not available here because, based on when Plaintiffs learned "for the first time" in 2019 that Walgreens' U&C prices should include PSC prices, (Dkt. 1. ¶¶ 2, 94), Plaintiffs could have asserted their supposed contract rights, but instead continued reimbursing Walgreens based on its reported U&C price. Walgreens essentially argues Plaintiffs lack standing to pursue injunctive relief. To have standing for prospective injunctive relief, a plaintiff must face a "real and immediate" threat of future injury as opposed to a threat that is merely "conjectural or hypothetical." *Simic v. City of Chicago*, 851 F.3d 734, 738 (7th Cir. 2017) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Unlike with damages, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects." *Id.* (citing *Lyons*, 461 U.S. at 95–96). In consumer protection cases, "proving the likelihood of future harm is difficult because once the consumer has knowledge about the defendant's actions, it can easily protect itself in the future by avoiding the harm." *Int'l Star Registry of Ill. v. ABC Radio Network, Inc.*, 451 F. Supp. 2d 982, 990 (N.D. Ill. 2006) (citations omitted).

Plaintiffs may seek injunctive relief. The general rule is consumer plaintiffs cannot seek injunctive relief once they are aware of a deceptive practice. *Forth*, 2018 WL 1235015, at *13 (discussing *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 740–41 (7th Cir. 2014) and its "finding that a pleading of deceptive sales practice, without more, does not entitle a consumer

plaintiff to injunctive relief"). However, a key difference in *Forth* (and the present case) is that "the cases barring deceived plaintiffs from seeking injunctive relief emphasize that the plaintiff at question 'made no allegation of risk of future harm.'" *Id.* (citing *Mednick v. Precor, Inc.*, No. 14 C 3624, 2016 WL 5390955, at *8 (N.D. Ill. Sept. 27, 2016)).

Plaintiffs sufficiently allege they face a "legitimate risk of future harm" due to Walgreens' ongoing fraudulent pricing practices. *Camasta*, 761 F.3d at 740. As alleged, Walgreens continues to report the inflated U&C prices and Plaintiffs must rely on Walgreens' submitted U&C prices to "calculate[] and pay[] Members' prescription reimbursements on both brand and generic claims," because Plaintiffs do not have access to the data necessary to calculate Walgreens' U&C prices. (Dkt. 1 ¶¶ 60, 83–84, 135, 149, 160). Because Plaintiffs face the possibility of future harm, they have standing to request injunctive relief.

Sixth, and finally, Walgreens claims Plaintiffs' Oregon and Idaho claims fail because Plaintiffs do not specifically allege which particular statutory provisions Walgreens allegedly violated. The cases Walgreens cite as authority are unpersuasive. In *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1139–40 (D. Or. 2014), the Court dismissed the claim for Oregon's Unlawful Trade Practices Act (UTPA) finding that the plaintiff pleaded a number of unspecific, vague allegations under the UTPA without specifying under which provision the Plaintiffs were proceeding. The defendants in that case had no possible way of ascertaining which of the dozens of provisions under the UTPA they had allegedly violated and so the court dismissed. *See also Deloe v. Dept. Stores Nat'l Bank*, 3:17–cv–00022–SB, 2017 WL 4052185, at *5 (D. Or. Aug. 18, 2017) (dismissing for same). Plaintiffs clearly stated a consumer fraud violation sufficient to apprise Walgreens under which section they are proceeding. Walgreens' argument that, because Plaintiffs do not allege any specific violations of the ICPA, the claim should be

dismissed are even less clear. Walgreens cites one case, *Taylor*, 149 Idaho at 846, for support. However, in *Taylor* there was a litany of issues with the ICPA claim. The Idaho Supreme Court stated that the plaintiff's "complaints fail to allege which specific prohibited unfair or deceptive practice they are meant to have engaged in." *Id*. This is simply not the case here. Walgreens cannot make out an argument that Plaintiffs' ICPA claims fail to state a claim and so they rely on dicta to apply a new rule to the ICPA that does not appear elsewhere. The Court declines to dismiss for a minor issue when Plaintiffs fairly pled Walgreens engaged in unfair business practices, especially when Walgreens dedicated a single sentence to developing this argument.

### C.     Claims against Walgreens Boots Alliance

Finally, Walgreens argues Plaintiffs' claims against WBA should be dismissed because WBA is a "parent holding company" that has never filled any prescriptions, submitted any reimbursement claims, advertised any programs, reported any U&C prices, or signed any contracts with Plaintiffs' agents. (Dkt. 52 at 22). Walgreens cites two cases as support, but both are unhelpful to their claims. One, that has already been discussed above, *Sears*, 912 F.2d at 893, does not match the factual scenario at issue here and does not support Walgreens' interpretation that a parent holding company cannot be liable for the actions of its subsidiary. And the court in *Surfside Non-Surgical Orthopedics P.A. v. Allscripts Healthcare Solutions, Inc.*, No. 18 C 566, 2019 WL 2357030, at *5 (N.D. Ill. Jun. 4, 2019) found no evidence the parent company had anything to do with the alleged wrongdoing. Here, however, Plaintiffs alleged that Walgreen Co. and WBA are integrated. As Plaintiffs correctly point out, dismissal is not warranted where the parent and subsidiary corporation are integrated entities. As a general rule, "a parent corporation may not be held to account for the liabilities of a subsidiary unless the legal separateness of parent and subsidiary has been disregarded in a wide range of corporate matters." *Desmond v. Chi. Boxed*

30

*Beef Distribs., Inc.*, 921 F. Supp. 2d 872, 885 (N.D. Ill. 2013); *see also Nicks v. Koch Meat Co.*, 260 F. Supp. 3d 942, 963 (N.D. Ill. 2017). Plaintiffs alleged here that Walgreen Co. and WBA are so integrated that the allegedly fraudulent scheme may be attributed to both entities. The Court denies the motion to dismiss WBA from the case.

### III.    Motion for Sanctions

The Court previously stated it would rule on the Motion for Sanctions within two weeks of the entering of its Order on the Motion to Dismiss. (*See* Dkt. 114). However, in order to move the case along, the Court resolves it now. Walgreens' Motion for Sanctions is denied.

Walgreens bring their Motion for Sanctions pursuant to Fed. R. Civ. P. 11 and 28 U.S.C. § 1927. 28 U.S.C. § 1927 provides "[a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." *See also Royce v. Michael R. Needle, P.C.*, 950 F.3d 939, 957 (7th Cir. 2020). Rule 11(b) requires an attorney or party "certify to the best of his knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that any pleading presented to the court is not presented for an improper purpose, that the claims therein have a legally sufficient basis, and the allegations and other factual contentions have evidentiary support." *Jimenez v. Madison Area Tech. College*, 321 F.3d 652, 656 (7th Cir. 2003). Under Rule 11(c), sanctions may be imposed on a party for "making arguments or filing claims that are frivolous, legally unreasonable, without foundation, or asserted for an improper purpose.*" Fries v. Helsper*, 146 F.3d 452, 458 (7th Cir. 1998) (defining "frivolous argument or claim" as "one that is baseless and made without a reasonable and competent inquiry."). The rule "is principally designed to prevent baseless filings." *Royce*, 950 F.3d at 957

(citing *Brunt v. Serv. Emps. Int'l Union*, 284 F.3d 715, 721 (7th Cir. 2002)). Rule 11 sanctions are to be imposed sparingly. *Hartmax Corp. v. Abboud*, 326 F.3d 862, 867 (7th Cir. 2003).

Walgreens' Motion for Sanctions is predicated on the argument that Plaintiffs' Complaints are frivolous and legally unreasonable for two main reasons: first, that Plaintiffs pled common law and statutory fraud claims based upon their PBM contracts, which directly contradict the fraud claims; and second, Plaintiffs' IUDTPA and ICFA claims were against black-letter law. Walgreens believes Plaintiffs' filings rise to the level of sanctionable conduct because they raised these and other pleading defects with Plaintiffs and demanded Plaintiffs withdraw their Complaints but Plaintiffs offered "a series of unconvincing excuses and recriminations against Defendants." (Dkt. 104 at 4).

Plaintiffs' Complaints are not frivolous. As discussed above, the PBMs are not required parties and the fraud claims are not predicated on the contracts, as much as Walgreens claims they are. While the Court agrees with Walgreens that the IUDPTA and ICFA claims were deficient, Plaintiffs are also correct that it is not a bright-line rule that guides these claims. *See Avery*, 835 N.E.2d at 854. A disagreement over law between parties does not make a filing sanctionable. Otherwise motions for sanctions would accompany every motion to dismiss. Plaintiffs may have been better served heeding Walgreens' advice on the Illinois statutory claims, yet the Court can hardly say the Complaints rise to the level of frivolous. In fact, the Court grants Plaintiffs another opportunity to amend their Complaints as to this claim.

The Court anticipates that this case will proceed through discovery and there will be many more filings, and likely a few disagreements over the law. The Court expects the parties to operate in good faith throughout the proceedings. Because Plaintiffs' Complaints are not frivolous and are legally sound, Walgreens' Motion for Sanctions is denied.

## CONCLUSION

Defendants' Motions to Dismiss [Dkts. 47, 57, 64, 87] are largely denied. The Court grants dismissal as to Plaintiffs' negligent misrepresentation, Illinois Uniform Deceptive Trade Practices Act, and Illinois Consumer Fraud and Deceptive Business Practices claims. Plaintiffs are granted leave to amend their Complaints consistent with this Opinion, if possible, within 21 days of the filing of this Opinion. Defendants Motion for Sanctions [Dkts. 99, 101] is denied.

Virginia M. Kendall
United States District Judge

Date: January 8, 2021