# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BCBSM, INC.**, *et al.*, | ) | Case No. 1:20-cv-01853 |
| | ) | |
| *Plaintiffs*, | ) | |
| | ) | Honorable Virginia M. Kendall |
| v. | ) | Honorable Sheila M. Finnegan |
| | ) | |
| **WALGREEN CO.**, *et al.* | ) | |
| | ) | Consolidated with: |
| *Defendants.* | ) | No. 1:20-cv-01929 |
| | ) | No. 1:20-cv-03332 |
| | ) | No. 1:20-cv-04738 |
| | ) | No. 1:20-cv-04940 |
| | ) | |
| | ) | |

## DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS III AND IV OF PLAINTIFFS' FIRST AMENDED COMPLAINT

Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co.*
*and Walgreens Boots Alliance, Inc.*

**TABLE OF CONTENTS**

Page

INTRODUCTION..................................................................................................... 1

ARGUMENT ........................................................................................................... 2

    A.    Plaintiffs Allege No Sufficient Connection to Illinois Consumers........................ 2

        1.    The Alleged Illinois Pharmacy Transactions Are Both Legally Irrelevant and Insufficiently Pleaded............................................................................ 3

        2.    Plaintiffs' Imprecisely Alleged Injuries to Illinois Insureds Cannot Support the Illinois Act Claims. .............................................................................. 8

    B.    Plaintiffs Badly Mischaracterize *Avery* and *Landau*, Cases that Foreclose Their Illinois Act Claims ................................................................................. 10

    C.    Plaintiffs Ignore the PBMs, Crucial Intermediaries that Further Attenuate Plaintiffs' Alleged Illinois Nexus ..................................................................... 13

CONCLUSION ..................................................................................................... 15

**TABLE OF AUTHORITIES**

Page(s)

**Cases**

*Avery v. State Farm Mut. Auto. Ins. Co.,*
216 Ill. 2d 100 (2005) ................................................................................................ *passim*

*Bonte v. U.S. Bank, N.A.,*
624 F.3d 461 (7th Cir. 2010) ............................................................................................2, 14

*Cosmetique, Inc. v. ValueClick, Inc.*
753 F. Supp. 2d 716 (N.D. Ill. 2010) ...............................................................................4, 7

*De Bouse v. Bayer AG,*
235 Ill. 2d 544 (2009) ...........................................................................................................10

*Flores v. United Airlines,*
No. 18 C 6571, 2021 WL 843415 (N.D. Ill. Mar. 5, 2021) .....................................7

*Forth v. Walgreen Co.,*
No. 17 C 2246, 2021 WL 1103345 (N.D. Ill. Mar. 23, 2021) .............................7, 9

*Green Light Nat'l, LLC v. Kent,*
No. 17-cv-6370, 2018 WL 4384298 (N.D. Ill. Sept. 14, 2018)...........................12

*Hab Carriers, Inc. v. Arrow Truck Sales, Inc.,*
No. 09 C 5200, 2011 WL 250401 (N.D. Ill. Jan. 25, 2011) .............................4, 5, 6

*Haught v. Motorola Mobility, Inc.,*
No. 12 C 2515, 2012 WL 3643831 (N.D. Ill. Aug. 23, 2012) ...............................10

*Landau v. CNA Financial Corp.,*
381 Ill. App. 3d 61 (1st Dist. 2008) .................................................................10, 11, 12, 15

*Menards, Inc. v. Countryside Indus., Inc.,*
No. 01 C 7142, 2004 WL 1336382 (N.D. Ill. June 14, 2004) .................................3

*Morrison v. YTB Int'l, Inc.,*
649 F.3d 533 (7th Cir. 2011) .............................................................................8, 12, 13, 15

*N. Ill. Ins. Agency, Inc. v. Leading Ins. Grp. Ins. Co., Ltd. (US),*
No. 13 C 50248, 2014 WL 2860703 (N.D. Ill. June 23, 2014) ..........................7

*Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.,*
631 F.3d 436 (7th Cir. 2011) ...........................................................................................7

*Serv. Corp. Int'l v. Stericycle, Inc.,*
  No. 19 C 1960, 2020 WL 43017 (N.D. Ill. Jan. 4, 2020) ....................................9, 11

*The Clearing Corp. v. Fin. & Energy Exch. Ltd.,*
  No. 09 CV 5383, 2010 WL 2836717 (N.D. Ill. July 16, 2010) ........................................13, 15

*West v. Act II Jewelry, LLC,*
  No. 15 C 5569, 2016 WL 1073095 (N.D. Ill. Mar. 18, 2016) .........................................13, 15

**Statutes**

Illinois Consumer Fraud and Deceptive Business Practices Act,
  815 ILCS 505/1, *et seq.*.........................................................................................................1

Illinois Uniform Deceptive Trade Practices Act,
  815 ILCS 510/1, *et seq.*.........................................................................................................1

**Rules**

Fed. R. Civ. P. 9.........................................................................................................7, 9

Fed. R. Civ. P. 12.........................................................................................................14, 15

**Other Sources**

Br. of Class Pl.-Appellee,
  *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005) (No. 91494),
  2003 WL 24298425 .........................................................................................................11

# INTRODUCTION

In their Opposition ("Opp'n"), [Dkt. 130](), Plaintiffs fail to save their claims under Illinois' consumer fraud statutes (the "Illinois Acts").[1] The First Amended Complaint ("FAC") expands Plaintiffs' allegations about the many things that Walgreens, an Illinois company, does in Illinois; but the revised pleading offers nothing new to demonstrate any connection between Walgreens' allegedly fraudulent practices and Illinois consumers, such that the purported fraud scheme occurred *primarily and substantially* in Illinois, as required to state a claim. The closest Plaintiffs come is to assert that some small, undefined number of insureds (not specifically alleged to reside in this state) maintained coverage through the non-Illinois Plaintiffs and may have filled some small, unspecified number of prescriptions in Illinois. An immaterial (and indeterminate) handful of alleged in-state Illinois transactions executed by Blue Cross Blue Shield insureds from states as distant as Arizona and Washington should not distract the Court's attention from the fact that the fraud actually alleged in this case *did not involve Plaintiffs' insureds at all*. Plaintiffs' insureds, wherever they lived or filled prescriptions, are not alleged to have received or acted on any deceptive communication—not in Illinois or anywhere else. Rather, Plaintiffs allege that Walgreens misreported usual and customary prices ("U&C") to non-Illinois third-party intermediaries, the pharmacy benefit managers ("PBMs"), who in turn allegedly communicated those prices to the non-Illinois Plaintiffs. In this case, any supposed Illinois nexus is even more attenuated than it was for the non-Illinois plaintiffs in *Avery v. State Farm*—who at least were alleged to have *directly* received the Illinois defendant's deceptive communications. *Avery v. State*

---

[1] Counts III and IV of the First Amended Complaint, [Dkt. 122]() (the "Illinois Act claims"), allege that Walgreen Co. ("Walgreens") and Walgreens Boots Alliance, Inc. ("WBA," and together with Walgreens, the "Defendants"), violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1, *et seq.* ("IUDTPA"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, *et seq.* ("ICFA," and together with IUDTPA, the "Illinois Acts").

*Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 188 (2005). No deceptive communication in this case is alleged to have been received, relied upon, or acted upon by anyone in Illinois. Moreover, neither Plaintiffs nor their insureds are adequately alleged to have suffered any harm in Illinois. While non-Illinois Plaintiffs might find it convenient to proceed *en masse* under Illinois' consumer laws (in addition to the many non-Illinois consumer laws they invoke in the First Amended Complaint), those laws do not apply here any more than they did in *Avery*. Plaintiffs' previously dismissed ICFA and IUDTPA claims should now be dismissed with prejudice.[2]

## ARGUMENT

### A.     Plaintiffs Allege No Sufficient Connection to Illinois Consumers

Illinois consumers are almost entirely absent from the Opposition, just as they are largely missing from the First Amended Complaint. *See* Mem. in Support of Defs.' Mot. to Dismiss Counts III & IV of Pls.' FAC, Dkt. 128 ("OB") at 6–7. Indeed, Plaintiffs do not dispute, and so concede, that Walgreens never deceived Illinois *consumers* about anything. Instead, as Plaintiffs acknowledge, the allegedly fraudulent transactions involved only the U&C prices Walgreens transmitted to, and the reimbursements it received from, the non-Illinois PBMs. *See* OB at 12–13; *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466–67 (7th Cir. 2010) (failure to respond to argument in opposition brief results in waiver); *see also* FAC ¶¶ 146, 161 (identifying the alleged fraudulent statements as U&C prices in reimbursement claims).

Plaintiffs condense the sum total of their allegations about Illinois consumers into a single sentence in the Opposition: "[M]embers of each Plan have purchased prescription drugs from Walgreens in Illinois, and Walgreens' deception regarding its true U&C prices of drugs discounted

---

[2] Plaintiffs claim that "the Court denied Walgreens' motion to dismiss . . . with respect to all claims except two: Claims III and IV for violation of the Illinois Acts." Opp'n at 3. In reality, the Court *also* dismissed Plaintiffs' negligent misrepresentation claim. *See* Mem. Op. & Order, Dkt. 121 ("MTD Op.") at 17, 33. Plaintiffs have not repleaded it, apparently content to abandon the claim.

by the PSC Program (and other similar programs) injured the Plans and their Members, including those based in Illinois." Opp'n at 6; *see also* FAC ¶¶ 155, 165 (nearly identical language). This conclusory assertion falls short because the Illinois Acts require *both* (1) a "nexus with Illinois consumers," *Menards, Inc. v. Countryside Indus., Inc.*, No. 01 C 7142, 2004 WL 1336382, at *2 (N.D. Ill. June 14, 2004); *see also N. Ill. Ins. Agency, Inc. v. Leading Ins. Grp. Ins. Co., Ltd. (US)*, No. 13 C 50248, 2014 WL 2860703, at *1 (N.D. Ill. June 23, 2014), *and* (2) fraudulent acts that occur primarily and substantially in Illinois. *Avery*, 216 Ill. 2d at 187. No amount of rhetorical spin about some individual insureds' *de minimis* Illinois prescription fills can transform the purported U&C misreporting scheme alleged in the First Amended Complaint into one that happened primarily and substantially in this state—not when all of the communications were received by non-Illinois PBMs who relayed the information to non-Illinois Plaintiffs.

1. The Alleged Illinois Pharmacy Transactions Are Both Legally Irrelevant and Insufficiently Pleaded.

In their haphazard attempt to save the Illinois Act claims by focusing on a few unspecified Illinois prescriptions, *see* Opp'n at 12, Plaintiffs lose sight of the need to connect the purported *fraud* to Illinois consumers. *See Avery*, 216 Ill. 2d at 187 ("the critical question in this case becomes whether the circumstances relating to plaintiffs' **disputed** transactions . . . occurred primarily and substantially in Illinois") (emphasis added). Even accepting Plaintiffs' scant allegations about Illinois pharmacy visits as true, Plaintiffs still merely assert that some individuals "filled prescriptions at Walgreens' Illinois pharmacies." Opp'n at 12. Plaintiffs do not (and cannot) allege that any consumers were defrauded in any way during those Illinois store visits. Instead, Plaintiffs argue that Walgreens reported inaccurate U&C prices *to the PBMs* and that Walgreens received higher reimbursements *from the PBMs* as a result. *See, e.g.*, Opp'n at 3; *see also* FAC ¶¶ 91, 93. An insured's transaction at a Walgreens' pharmacy is completely distinct from the allegedly

fraudulent PBM reimbursement process that happens behind the scenes, out of the insured's sight. *See* OB at 6.

The cases Plaintiffs cite only underscore the necessary connection between Illinois consumers and the purported fraud. In *Cosmetique, Inc. v. ValueClick, Inc.*, for example, the Court declined to dismiss an ICFA claim even though the plaintiff had not explicitly alleged that any Illinois consumers engaged in fraudulent transactions. *See* 753 F. Supp. 2d 716, 723 (N.D. Ill. 2010). The Court made clear, however, that it could reasonably infer the necessary connection between Illinois consumers and the fraudulent advertising from the plaintiff's allegations. *See id.* Critically, in *Cosmetique* (unlike this case) thousands of Illinois consumers were *themselves* potential victims of the defendant's fraudulent communications, having actually received and responded to the false advertising. "It is plausible," the Court held, "that of the 8,000 Illinois consumers [who responded to the fraudulent ads], at least one or more could have been allegedly deceived." *Id.* Nothing in Plaintiffs' First Amended Complaint supports an inference that insureds' isolated transactions at Illinois pharmacies furthered an Illinois-focused fraud scheme or that any Illinois consumer was harmed.

Plaintiffs argue that the Court must consider all the facts and circumstances of the allegedly fraudulent transactions, *see* Opp'n at 12, but they do not and cannot explain how those broadly construed transactions took place primarily and substantially in Illinois. *Hab Carriers, Inc. v. Arrow Truck Sales, Inc.*, is instructive. No. 09 C 5200, 2011 WL 250401 (N.D. Ill. Jan. 25, 2011); *see also* OB at 14. There, the plaintiff was an Illinois corporation with Illinois employees alleging that it "felt injury" in Illinois. 2011 WL 250401, at *5. It brought an ICFA claim based on misrepresentations related to its purchase of trucks in Missouri and Iowa. *See id.* Despite the Illinois-headquartered plaintiff's extensive ties to this state—more significant than any connection

between Illinois and these out-of-state Plaintiffs or their claims—this Court granted summary judgment in the defendant's favor. *See id.* at *5–6. The *Hab Carriers* plaintiff argued that, although most of the deception and fraudulent interactions took place out of state, its general manager answered some of the allegedly fraudulent phone calls in Illinois. *Id.* at *6. That relatively minor Illinois connection, this Court held, did *not* bring the plaintiff's claim within ICFA's territorial reach. Instead, "even taking the facts in the light most favorable to [the plaintiff] and accepting that . . . [the general manager] may have been on his cell phone in Illinois instead of in his Iowa office during at least one other key conversation, the circumstances relating to the alleged fraud did not take place primarily and substantially in Illinois." *Id.* (quotations, citation omitted). *Hab Carriers* emphasizes that incidental, immaterial Illinois contacts are not enough.

As *Hab Carriers* reflects, Illinois law looks at the overall alleged fraud scheme to determine whether it occurs primarily and substantially in this state. In this case, the alleged scheme, involving many millions of purported prescriptions filled by non-Illinois insureds outside this state, obviously and overwhelmingly took place outside of Illinois. However, even if the Court chose to focus narrowly on Plaintiffs' isolated subset of alleged Illinois pharmacy transactions and infer a link between those prescription fills and the alleged U&C misreporting scheme, each of those discrete alleged fraudulent transactions would *still* occur primarily and substantially outside Illinois. If one of the Plaintiffs' insureds happened to fill a prescription in Illinois, that local transaction (like all such transactions) triggered a series of *non*-Illinois communications and responsive actions, whereby a *non*-Illinois PBM received Walgreens' U&C price and transmitted it to a *non*-Illinois Plaintiff insurer, which then acted on it and allegedly experienced harm in its home state. *See* Opp'n at 3 (describing reimbursement transaction); OB at 5–6 (same). Taken "in the context of [Plaintiffs'] individual case," Opp'n at 12, none of the purportedly fraudulent

transactions that Plaintiffs allege happened primarily in Illinois. A smattering of alleged Illinois prescriptions, incidental to the larger purported U&C misreporting scheme, adds no more of an Illinois nexus to this case than the manager's Illinois phone calls in *Hab Carriers.*

Plaintiffs have no answer to *Hab Carriers*' logic. Their only attempt to distinguish the case is to argue irrelevantly that it "did not address [ ] a heightened pleading standard in the context of the Illinois Acts or otherwise." Opp'n at 14 n.4. Defendants never suggested that it did. Rather, Defendants cited *Hab Carriers* to support exactly the same bootstrapping argument set out above: that "BCBS of Arizona [cannot] use the five Illinois transactions it purports to plead with particularity to hold Walgreens liable for its insureds' millions of other transactions in Tucson and Phoenix." OB at 14.

Plaintiffs also failed to plead their insureds' purported "Illinois transactions" with particularity, an independent reason that the claims should be dismissed with prejudice. Plaintiffs cannot seriously dispute that, out of 29 Plaintiffs, only *one* alleges with any specificity whatsoever that any of its insureds filled prescriptions in Illinois. *See* OB at 12. Bizarrely, Plaintiffs do contend that they "provide *specific examples*" showing that "members of each Plan have purchased prescription drugs from Walgreens in Illinois." Opp'n at 12 (emphasis added). The paragraphs Plaintiffs cite, however, offer absolutely no support. Paragraphs 145, 149, 155, and 165 only parrot Plaintiffs' conclusory allegation that "members of each of Plaintiffs' health plans have purchased prescription drugs from Walgreens in Illinois" and that Plaintiffs have insureds "based in Illinois." Paragraph 7 alleges general background about the Prescription Savings Club ("PSC") program. Paragraphs 12–38 list all of the various non-Illinois Plaintiffs. And paragraph 43 alleges some of the states where Walgreens has stores. Not a single paragraph cited by Plaintiffs comes anywhere

close to alleging "specific examples" of purchases by Plaintiffs' insureds at Walgreens' Illinois pharmacies.

Instead, Plaintiffs argue that, because the First Amended Complaint now baldly alleges that "members of each of Plaintiffs' health plans have purchased prescription drugs from Walgreens in Illinois," FAC ¶¶ 145, 155, and have insureds "based in Illinois," *id.* ¶¶ 149, 165, Plaintiffs have established a more robust Illinois nexus and need plead no more. *See* Opp'n at 13. But these vague, conclusory allegations do not satisfy the "who, what, when, where, and how" standard that even Plaintiffs concede they must meet under Federal Rule of Civil Procedure 9(b). *See id.* (citation omitted).[3] As Plaintiffs allege, Florida Blue, for example, has nearly 4 million members, and Walgreens has 583 Illinois stores. FAC ¶¶ 14, 43. Thus, by pleading that unspecified members of Florida Blue purchased prescription drugs from Walgreens in Illinois, FAC ¶¶ 145, 155, Plaintiffs allege only that at least one of 4 million individuals filled a prescription in at least one of 583 Illinois stores at some point between 2007 and today. These imprecise allegations plainly fail to satisfy Federal Rule of Civil Procedure 9(b). *See, e.g.*, *Forth v. Walgreen Co.*, No. 17 C 2246, 2021 WL 1103345, at *4 (N.D. Ill. Mar. 23, 2021) (dismissing imprecisely pleaded amended complaint because "[t]o hold otherwise would allow Plaintiffs to substantially broaden the scope of this fraud action by making their allegations less specific, rather than more," a "result [that] would be contrary to the purposes of Rule 9(b)").[4]

---

[3] Plaintiffs suggest that, in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011), the court held that an ICFA plaintiff need not rely on Illinois data. Opp'n at 13. But *Pirelli* addressed only whether the plaintiff adequately pleaded fraud, *not* whether the plaintiff adequately pleaded an Illinois nexus. *See* 631 F.3d at 446.

[4] *See also Cosmetique*, 753 F. Supp. 2d at 720–21 (plaintiff "cannot identify specific statements to satisfy Rule 9(b) and then change the basis of its claim to a generalized accusation of a fraudulent scheme to which Defendants cannot effectively respond"); *see also Flores v. United Airlines*, No. 18 C 6571, 2021 WL 843415, at *6–7 (N.D. Ill. Mar. 5, 2021) (dismissing ICFA claim, in part because "Plaintiff alleges that she

Without these imprecisely pleaded allegations about "members of each of Plaintiffs' health plans," FAC ¶¶ 145, 155, the *only* Plaintiff (out of 29) left with *any* alleged Illinois transactions is BCBS of Arizona. *See* OB at 12. The Court already correctly held that the five transactions it alleged with any semblance of particularity are "plainly pleaded insufficiently to state a claim" under the Illinois Acts. MTD Op. at 21.[5] Nothing in the First Amended Complaint suggests that the Court should reach a different result now.

        2.     Plaintiffs' Imprecisely Alleged Injuries to Illinois Insureds Cannot Support the Illinois Act Claims.

Like the Illinois consumer nexus requirement itself, which is not found within ICFA's text, the relevance of Illinois-focused harm to the Illinois Acts comes through clearly in the case law. Plaintiffs nonetheless protest that Walgreens has created a "fictional requirement that [Plaintiffs] show specific harm took place *in Illinois*." Opp'n at 14. To support their false assertion, Plaintiffs note that the Illinois Acts do not specify harm felt within Illinois as a statutory element. *Id.* True enough, but the very cases Plaintiffs cite for support show that the location where a plaintiff suffers harm is, in fact, highly relevant to Illinois courts' determination whether a fraudulent scheme occurred primarily and substantially in this state. Losses incurred only or primarily outside Illinois counsel against applying the Illinois Acts. *See Avery*, 216 Ill. 2d at 188 ("Damage to Avery, if any, occurred in Louisiana."); *Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) ("Morrison

---

is a resident of Texas but includes no allegations as to where she was when she used United's website to purchase travel insurance").

[5] Plaintiffs misleadingly imply that their original complaint alleged only that Walgreens is an Illinois corporation with Illinois headquarters and Illinois stores. *See* Opp'n at 3. In fact, BCBS of Arizona's original complaint alleged *exactly the same* five Illinois transactions BCBS of Arizona alleges now. *Compare* FAC, Ex. 2 at 7, *with* No. 1:20-cv-4738, Dkt. 1, Ex. 2. Plaintiffs apparently now run from their original allegations, perhaps to suggest that the First Amended Complaint includes Illinois transactions the Court has not already considered and rejected. *See* MTD Op. at 21. But Plaintiffs highlighted in their original opposition these "five overcharges for prescriptions dispensed by Walgreens pharmacies located in Illinois," Pls.' Consolidated Mem. of Law in Opp'n to Defs.' Mot. to Dismiss, Dkt. 110 at 20, and the Court still correctly dismissed their Illinois Act claims.

sent payments *to* Illinois, which means that any loss occurred *in* Missouri."). Far from inventing

new elements, Defendants seek only to hold Plaintiffs to the standard that their own cases apply.

*See* OB at 14–15. While Plaintiffs question the need to allege that they were injured in Illinois,

they certainly do not suggest that they have been harmed in this state. *See* Opp'n at 14.

Even if Plaintiffs' few, vaguely alleged insureds "based in Illinois" were purportedly

harmed here due to higher alleged premiums or copays, Plaintiffs have no claims themselves under

the Illinois Acts.[6] Plaintiffs cannot bring claims based on other people's supposed Illinois injuries.

*See Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19 C 1960, 2020 WL 43017, at *1, 3–4 (N.D. Ill. Jan.

4, 2020) (finding plaintiff's ICFA claim lacked Illinois nexus even though plaintiff alleged that

purportedly fraudulent practice increased costs for its subsidiaries who "operate[] funeral homes

across the United States"); *see also* OB at 12–14.

The Opposition also confirms that, if any Illinois insured suffered harm, it was because of

Plaintiffs' business decisions, not Walgreens' conduct. Plaintiffs recouped their allegedly inflated

reimbursement payments at their insureds' expense. Crucially, Plaintiffs *do not dispute* that "they

allegedly passed on any damage they incurred in Illinois to their insureds." Opp'n at 15 (citing OB

at 14, as if Defendants in their Motion, rather than Plaintiffs in the First Amended Complaint, were

making the allegations, *see* FAC ¶ 163). Instead, Plaintiffs vaguely suggest that "the Plans—and

the market generally"—suffered other, more complicated injuries not caused by Plaintiffs' own

business decision to raise their insureds' rates. *See id.* If any Illinois insureds or "the market

generally" suffered anything other than the injuries Plaintiffs themselves caused, Plaintiffs—who

---

[6] Plaintiffs' allegation that Walgreens "injured [Plaintiffs'] Members, including those based in Illinois," FAC ¶¶ 149, 165, suffers from the same lack of particularity as their imprecise allegations about their insureds' Illinois purchases. For example, how many of Florida Blues' 4 million members were "based in" Illinois? When? Does a Florida Blue subscriber who is "based in" Illinois even pay co-payments or health insurance premiums from Illinois? The First Amended Complaint provides no answers, as it is required to do under Federal Rule of Civil Procedure 9(b). *See Forth*, 2021 WL 1103345, at *4.

bear the burden to plead and ultimately prove the alleged harm—have yet to identify the injuries. Without any adequately alleged harm, proximately caused by the defendant's alleged misconduct, there can be no viable ICFA claim. *See Avery*, 216 Ill. 2d at 195–203; *cf. De Bouse v. Bayer AG*, 235 Ill. 2d 544, 559–60 (2009) (rejecting "market theory" of Illinois Acts liability).

**B.     Plaintiffs Badly Mischaracterize *Avery* and *Landau*, Cases that Foreclose Their Illinois Act Claims**

Unable to allege a connection to Illinois consumers based on their own or their insureds' transactions, Plaintiffs next attempt to concoct an Illinois nexus by focusing on Walgreens' purported activities in the state—a tactic Plaintiffs already tried unsuccessfully in response to Walgreens' prior dismissal motions. *See* Opp'n at 4–11; *see also* Pls.' Consolidated Mem. of Law in Opp'n to Defs.' Mots. to Dismiss, Dkt. 83 at 25 & Dkt. 110 at 20. Again, no matter how many things Plaintiffs allege Walgreens, its subsidiaries, or its executives did in Illinois, *Avery* forecloses Plaintiffs' Illinois Act claims. Plaintiffs do not dispute *Avery*'s core holdings: (1) that the Illinois Acts have no "extraterritorial effect" and apply only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois," 216 Ill. 2d at 185–87; and (2) that an allegation that "a scheme to defraud was 'disseminated' from [a defendant's Illinois] headquarters is insufficient" to support Illinois Act claims. *Id.* at 189. Instead, Plaintiffs attempt to narrow *Avery*'s holdings beyond recognition. *See* Opp'n at 9–10. In Plaintiffs' reading, *Avery* forecloses Illinois Act claims *only* if the plaintiff alleges solely that a scheme to defraud was disseminated from the defendant's Illinois headquarters. *Id.* According to Plaintiffs, "dissemination of a fraudulent scheme" is a single fact to be pleaded, rather than a conclusion based on many varied facts associated with running a corporation in a particular place. *See id.*

The facts of *Avery* itself, along with the facts of cases like *Landau v. CNA Financial Corp.*, 381 Ill. App. 3d 61 (1st Dist. 2008); *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL

3643831, at \*3–5 (N.D. Ill. Aug. 23, 2012); and *Stericycle*, 2020 WL 43017, at \*3–4, put the lie to Plaintiffs' strained and narrow interpretation. In *Avery*, for example, the evidence at trial in fact demonstrated that "State Farm conceived, developed, implemented and directed its uniform scheme from its headquarters" in Illinois, "made the initial decision to specify [inferior] non-OEM crash parts" in Illinois, "continued to enforce the scheme" from Illinois, "created the deceptive . . . terminology" in Illinois, "misleadingly responded to complaints" in Illinois, and "made all policy and practice decisions regarding the monitoring, enforcement, and continuation of [the] scheme" in Illinois. Br. of Class Pl.-Appellee, *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100 (2005) (No. 91494), 2003 WL 24298425, at \*31–32. Yet these facts (which the Supreme Court of Illinois summarized with the shorthand conclusion that the "scheme to defraud was 'disseminated' from" Illinois, 216 Ill. 2d at 189) are nearly identical to the allegations Plaintiffs argue set their claims apart. *See* Opp'n at 4 ("Walgreens [and WAGDCO] administered, and continues to administer, its PSC Program" from Illinois); *id.* ("Walgreens developed the PSC Program" in Illinois); *id.* ("Walgreens made deceptive statements regarding its PSC programs in Illinois"); *id.* at 5 (WHI "created and issued [false] statements" in Illinois); *id.* at 5–6 (decisions about PSC "made by Walgreens' senior management in, and implemented out of, Illinois"). The plaintiff in *Landau* alleged even more facts about the defendant's Illinois activities, including that the defendant "consummat[ed]" the disputed transaction in Illinois, received initial payments in Illinois, and directed the plaintiff to send future payments to Illinois. *See* 381 Ill. App. 3d at 64–65. These categories of facts, too, are mirrored in Plaintiffs' First Amended Complaint. *See* Opp'n at 11 (alleging "contracts executed" and "payments received" in Illinois). Rather than address the parallels between their claims and those in *Landau*, Plaintiffs mischaracterize the case, contending incorrectly that "the *only* evidence presented was that the defendants disseminated their fraudulent

scheme from Illinois." *Id.* at 10. *Landau*, *Avery*, and the cases that followed confirm that plaintiffs who allege extensive Illinois activities by Illinois-based defendants (including orchestrating and projecting a fraud), do not have claims under the Illinois Acts if the actual fraudulent communications, reliance, and harm happened elsewhere. *See Landau*, 381 Ill. App. 3d at 65. Allegations that a fraudulent scheme was purportedly disseminated from Illinois are insufficient, whether the plaintiff pleads them in one conclusory sentence or 333 paragraphs of alleged facts.

Plaintiffs make much of the fact-specific nature of the Illinois-nexus analysis. *See* Opp'n at 9–10, 12. But Plaintiffs hope the Court will ignore that courts *routinely* dismiss Illinois Act claims where the sum and substance of a plaintiff's Illinois nexus pleading is that the defendant operates in Illinois and broadcasts a fraudulent scheme from this state to harm non-Illinois consumers in other states. *See* OB at 2 (collecting cases). The volume of purported factual detail describing a fraud scheme conceived in and disseminated from Illinois, but occurring primarily in another state, has no bearing on whether the plaintiff states a claim under *Avery* and the other leading authorities. This deficiency in Plaintiffs' allegations is particularly striking in light of the cases Plaintiffs cite for support. Unlike the plaintiffs in the referenced authorities, these Plaintiffs never even communicated with Walgreens regarding U&C prices in Illinois (or anywhere) and suffered no injury in Illinois. *Contra Morrison*, 649 F.3d at 537 (defendant "does not have offices or representatives in other states," the "only way to deal with [defendant] is through its headquarters in Illinois," and defendant conducted and plaintiffs attended "training sessions, regional meetings, and 'red carpet days'" in Illinois related to alleged pyramid scheme)[7]; *Green*

---

[7] Plaintiffs rely heavily on *Morrison*, *see* Opp'n at 8, but it is both factually *and legally* distinguishable. In *Morrison*, the plaintiffs alleged only a single consumer fraud count. *See* 649 F.3d at 534. Thus, the court framed the issue of ICFA's application solely as a question of choice-of-law—that is, whether ICFA or some other state's consumer protection act should apply to the plaintiffs' claim. *Id.* at 536 ("If the Illinois Consumer Fraud Act law does not apply because events were centered outside Illinois, then plaintiffs must rely on some other state's law."). Here, in contrast, Plaintiffs have alleged *14 additional* consumer fraud

*Light Nat'l, LLC v. Kent*, No. 17-cv-6370, 2018 WL 4384298, at *5 (N.D. Ill. Sept. 14, 2018) (plaintiff's main office in Illinois and deceptive marketing "result[ed] in irreparabl[e] injury to its business, reputation and good will in Illinois"); *West v. Act II Jewelry, LLC*, No. 15 C 5569, 2016 WL 1073095, at *2–3 (N.D. Ill. Mar. 18, 2016) (plaintiffs purchased products in Illinois or communicated *directly* with defendant in Illinois); *The Clearing Corp. v. Fin. & Energy Exch. Ltd.*, No. 09 CV 5383, 2010 WL 2836717, at *6 (N.D. Ill. July 16, 2010) (fraudulent misrepresentations made directly to counterclaim plaintiff in Illinois). As Plaintiffs' own cases demonstrate, nothing in the First Amended Complaint brought Plaintiffs' claims within the Illinois nexus requirement under the Illinois Acts.

### C. Plaintiffs Ignore the PBMs, Crucial Intermediaries that Further Attenuate Plaintiffs' Alleged Illinois Nexus

Walgreens only communicated U&C prices directly to, and received payments directly from, PBMs located outside Illinois. *Contra Morrison*, 649 F.3d at 537 (plaintiffs' "complaint alleges that they dealt directly with" defendant in Illinois); *West*, 2016 WL 1073095, at *2–3 (plaintiffs "had direct communications with [defendant] in Illinois," "purchased supplies directly from [defendant] in Illinois," and received orders "shipped directly from [defendant] in Illinois"); *Energy Exchange*, 2010 WL 2836717, at *6 (misrepresentations made "by Illinois employees . . . directly to" counterclaim plaintiff). Indeed, Walgreens reported U&C prices to the PBMs pursuant to contracts Walgreens negotiated and signed with the PBMs, and those PBMs then transmitted Plaintiffs' reimbursement payments to Walgreens. *See* [FAC](#) ¶¶ 58, 75; [OB](#) at 5–6. Plaintiffs do not dispute and thus concede that, for all they allege, the PBMs—which certain Plaintiffs recently

---

counts under other states' laws—notably, from the Plaintiffs' respective home states. *See* [FAC](#) ¶¶ 168–324. The issue here is not whether Illinois law applies to Plaintiffs' sole consumer fraud claim, but instead whether Plaintiffs can plead a duplicative claim already covered by their home states' laws. They cannot, under clear-cut Illinois law.

described as "ground zero for the bulk of the [alleged] fraud," OB at 6 (citation omitted)—are located *outside* Illinois, processed transactions *outside* Illinois, and viewed U&C prices *outside* Illinois. *See* OB 6–7, 12; *Bonte*, 624 F.3d at 466–67 (party waives argument to which it does not respond).

Rather than address this fundamental defect in their Illinois Act claims, Plaintiffs attempt to hide the non-Illinois PBMs' crucial role through exaggeration, mischaracterization, and misdirection. *First*, Plaintiffs erroneously suggest that this Court has already held that the PBMs can be entirely ignored. "With regard to Walgreens' focus on the conduct of the PBMs," Plaintiffs say, "this Court rejected Walgreens' previous attempt to insert the PBMs as alleged necessary parties in this litigation." Opp'n at 14 n.5. Plaintiffs misconstrue this Court's previous ruling. The Court did decide that the PBMs are not indispensable for joinder purposes, but it most certainly did *not* hold that they are irrelevant. *See* MTD Op. at 6–7 (denying Walgreens' motion to dismiss under Federal Rule of Civil Procedure 12(b)(7), but describing the PBMs as "intermediaries").

*Second*, while Plaintiffs argue in their brief that "Walgreens engaged in contact with the Plans . . . in Illinois," Opp'n at 1, Plaintiffs cite paragraphs from the First Amended Complaint that say no such thing. The First Amended Complaint lacks any allegation that Walgreens directly interacted *with Plaintiffs*—in Illinois or anywhere else. *Compare* Opp'n at 1, *with* FAC ¶¶ 145, 149, 155, 165. Instead, the cited paragraphs repeat Plaintiffs' descriptions of Walgreens' purported activities at its Illinois headquarters and Plaintiffs' vague, irrelevant allegations that unspecified insureds filled prescriptions somewhere, at some time, in Illinois or were "based in" Illinois. *See* FAC ¶¶ 145, 149, 155, 165. In fact, Walgreens has had no contact with the Plaintiffs regarding U&C reporting.

*Third*, Plaintiffs make much of "contracts executed" and "payments received" in Illinois. Opp'n at 11; *see also id.* at 6 (claiming "contracts at issue were negotiated in Illinois and [the] payments resulting from those agreements were sent to Illinois"). Plaintiffs' use of the passive voice is telling. *Plaintiffs* did not negotiate contracts with Walgreens. That was the PBMs. *See* FAC ¶¶ 145, 155. *Plaintiffs* did not reimburse Walgreens. That was the PBMs. *See* FAC ¶ 75. Moreover, as Plaintiffs have made abundantly clear, they allege fraud, *not* breach of Walgreens' PBM contracts. *See, e.g.*, Dkt. 83, at 5–7. Thus, unlike the plaintiffs in the cases Plaintiffs cite for support, these Plaintiffs cannot and do not allege that *they* directly contracted in or sent payments to Illinois—and Plaintiffs expressly disavow that Walgreens' PBM contracts are in any sense a basis for their statutory fraud claims. *Contra Morrison*, 649 F.3d at 537; *West*, 2016 WL 1073095, at *2–3; *Energy Exchange*, 2010 WL 2836717, at *6. Of course, even if Plaintiffs (and not the PBMs) *had* directly contracted with Walgreens and paid Walgreens (which they did not), such contacts would still be insufficient to establish an adequate Illinois nexus under the Illinois Acts when the alleged deception, reliance, and proximately caused harm all occurred completely outside this state. *See Avery*, 216 Ill. 2d at 188; *Landau*, 381 Ill. App. 3d at 64–65.

## CONCLUSION

After two pleadings, Plaintiffs still ask the Court to ignore Illinois law and apply the Illinois Acts to transactions that took place primarily and substantially *outside* Illinois. *Avery*, *Landau*, and their progeny preclude the extraterritorial application of the Illinois Acts to disputed transactions occurring primarily and substantially beyond this state's borders. For the foregoing reasons, Defendants respectfully request that the Court dismiss Counts III and IV of the First Amended Complaint with prejudice under Federal Rule of Civil Procedure 12(b)(6).

Dated: April 2, 2021

Respectfully submitted,

/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendants Walgreen Co. and*
*Walgreens Boots Alliance, Inc.*

**CERTIFICATE OF SERVICE**

I, Charles D. Zagnoli, hereby certify that the foregoing Defendants' Reply in Support of Their Motion to Dismiss Counts III and IV of Plaintiffs' First Amended Complaint was electronically filed on April 2, 2021, and will be served electronically via the Court's ECF Notice system upon the registered parties of record.

/s/ Charles D. Zagnoli

Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5522
Charles.Zagnoli@ropesgray.com

*Attorney for Defendants Walgreen Co. and Walgreens Boots Alliance, Inc.*