NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCBSM, INC, (d/b/a BLUE CROSS and BLUE SHIELD of MINNESOTA), HEALTH NEW YORK, INC, HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE), ASURIS NORTHWEST HEALTH, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., <br><br> *Defendants*. | No. 20 C 1853 <br> No. 20 C 1929 <br> No. 20 C 3332 <br> No. 20 C 4940 <br> No. 20 C 4738 <br><br> Judge Virginia M. Kendall |

## MEMORANDUM OPINION AND ORDER

The Plaintiffs in this case are health care plans offering comprehensive health care services and coverage, including prescription drug coverage, to their members in locations across the United States. Defendants are Walgreen Co. and Walgreens Boots Alliance, Inc. (together "Walgreens") who allegedly engaged in a fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices. On January 8, 2021, this Court dismissed without prejudice Plaintiffs' negligent misrepresentation claim, Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505, et seq.) ("ICFA") and Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq) ("IUDTPA") claims, but denied dismissal of the remaining claims. (Dkt. 121). On January 28, 2021, Plaintiffs filed an

1

Amended Complaint adding additional allegations as to the ICFA and IUDTPA claims. (Dkt. 122). Defendants now move to dismiss Plaintiffs' repleaded ICFA and IUDTPA claims, arguing that Plaintiffs have failed to state a claim. For the reasons discussed below, the Motion to Dismiss the ICFA and IUDTPA claims is denied.

## BACKGROUND

On a motion to dismiss under Rule 12(b)(6), the Court accepts the Complaint's well-pleaded factual allegations and draws all reasonable inferences in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The facts below come from Plaintiffs' Amended Complaint (Dkt. 122) and the Court accepts them as true for purposes of reviewing this Motion. *See Vinson v. Vermillion Cty., Ill.*, 776 F.3d 924, 925 (7th Cir. 2015). The Court has already discussed many of the relevant facts in its previous Opinion. (Dkt. 121 at 2–4).

At issue in the Motion to Dismiss is Plaintiff's Illinois claims. In the earlier Opinion, the Court dismissed the ICFA and IUDTPA claims because the "[t]he only alleged facts that tie the claim to Illinois are that Walgreens are headquartered here and have 583 drugstores in the state of Illinois." (*Id.* at 21, citing Dkt. 1 ¶¶ 24, 25, 28)). Plaintiffs have added allegations fleshing out the Illinois claim. In particular, Plaintiffs plead that Walgreens has administered, and continues to administer, its PSC Program from Walgreens' corporate headquarters in Deerfield, Illinois. (Dkt. 122 ¶¶ 145, 155). The decisions to not report its discounted prices as U&C to Plaintiffs and to conceal that decision from Plaintiffs were made by Walgreens' senior management in and implemented out of Illinois. (*Id.* at ¶¶ 145, 155). Walgreens has also issued statements from senior officials and made other representations about the PSC Program from and in the course of its Illinois operation which contributed to the fraud, concealment, and deception. (*Id.* at ¶¶ 145, 155).

2

WHI, which was Walgreen Co.'s wholly-owned subsidiary PBM during the initial years of Walgreens' fraudulent scheme, was at that time based in and operated out of Illinois. (*Id.* at ¶¶ 145, 155). In Illinois, WHI created and published a false policy regarding Walgreens' reporting of discounted prices through its Pharmacy Manual, which contained a U&C definition consistent with the NCPDP requirements and industry standards, and disseminated that false policy from Illinois. (*Id.* at ¶¶ 145, 155). Through its scheme, Walgreens secured hundreds of millions of dollars in payments from Plaintiffs, and these payments were sent to Walgreens' headquarters in Illinois. (*Id.* at ¶¶ 145, 155). Walgreens' PBM agreements were negotiated by Walgreens in Illinois. (*Id.* at ¶¶ 145, 155). Additionally, members of each of Plaintiffs' health plans have purchased prescription drugs from Walgreens in Illinois, (*id.* at ¶¶ 145, 155), and Walgreens' deceptive practices regarding its true U&C prices of drugs discounted by the PSC Program (and other similar programs) injured both Plaintiffs and their Members, including those based in Illinois. (*Id.* at ¶¶ 149, 165). Finally, Walgreens was subjected to remedial actions by the U.S. Government for related conduct in Illinois. (*Id.* at ¶ 98).

## DISCUSSION

The Court previously dismissed Plaintiffs' IUDTPA (815 ILCS 510, et seq.) and ICFA (815 ILCS 505, et seq.) claims "because Plaintiffs have not pleaded any of the unfair acts took place primarily and substantially in Illinois." (Dkt. 121 at 20). As the Court noted, the ICFA "does not have extraterritorial effect," and therefore applies only "if the circumstances that relate to the disputed transaction occur primarily and substantially in Illinois." (*Id.* (citing *Avery v. State Farm Mut. Auto Ins. Co.*, 835 N.E.2d 801, 853–54 (Ill. 2005)).

Walgreens argues two main defenses: that Plaintiffs cannot state a claim under the Illinois statutes based only on Walgreens' Illinois headquarters and that Plaintiffs' additional allegations

fail to establish an Illinois nexus. (Dkt. 128 at 9–15). As the Court previously discussed, "there is no single formula or bright-line test for determining whether a transaction occurs within this state. Rather, each case must be decided on its own facts." (Dkt. 121 at 20 (citing *Avery*, 835 N.E.2d at 854). In considering whether the dispute has occurred primarily and substantially in Illinois, the Illinois Supreme Court considers the following: (1) the claimant's residence; (2) the defendant's place of business; (3) the location of the relevant item that is the subject of the disputed transaction; (4) the location of the claimant's contacts with the defendant; (5) where the contracts at issue were executed; (6) the contract's choice of law provisions, if there are any; (7) where the allegedly deceptive statements were made; (8) where payments for services were to be sent; and (9) where complaints about the goods or services were to be directed. *Serv. Corp. Int'l v. Stericycle, Inc.*, No. 19 C 1960, 2020 WL 43017, at *3–4 (N.D Ill. Jan. 4, 2020) (Kendall, J) (citing *The Clearing Corp. v. Fin. and Energy Exch. Ltd.*, No. 09 C 5383, 2010 WL 2836717, *6 (N.D. Ill. July 16, 2010)).

Walgreens first argument, that it is insufficient for Plaintiffs to allege that Walgreens is headquartered in Illinois, was discussed extensively in this Courts' earlier Opinion. It is well-settled that Plaintiffs cannot state a claim under the Illinois Acts if the only allegation tying Walgreens to Illinois is that Walgreens is headquartered in Illinois. *See Morrison v. YTB Int'l, Inc.*, 649 F.3d 533, 538 (7th Cir. 2011) (discussing considerations in *Avery* and how only tie to Illinois was defendant's headquarters). In *Landau v. CNA Fin. Corp.*, 886 N.E.2d 405, 408–9 (1st Dist. 2008), a case Defendants rely upon, the Court dismissed where Plaintiff resided in Pennsylvania, bought her policy in Pennsylvania and only had contact with Defendants' agents in Pennsylvania. The only allegation linking Illinois was that she was deceived by marketing material conceived in Illinois. The *Landau* court found that the additional allegations Plaintiff had pleading

4

linking the deceptive conduct to Illinois were "activities that occur routinely in corporate headquarters" and thus were derivative of this factor. *Landau*, 886 N.E.2d at 409.

However, in the Amended Complaint, Plaintiffs have added allegations about Walgreens' conduct based in Illinois that go beyond the allegations included in the original Complaint. As discussed above, Plaintiffs have added ample allegations tying Defendant's deceptive conduct to Illinois. Plaintiffs plead that Walgreens administers its PSC Program from Walgreens' corporate headquarters in Deerfield, Illinois, (Dkt. 122 ¶¶ 145, 155), that the decision to not report its discounted prices as U&C to Plaintiffs were made by Walgreens' senior management in and implemented out of Illinois, (*id.* at ¶¶ 145, 155), Walgreens has issued statements from senior officials and made other representations about the PSC Program from and in the course of its Illinois operation, (*id.* at ¶¶ 145, 155), that WHI, which was Walgreen Co.'s wholly-owned subsidiary PBM during the initial years of Walgreens' fraudulent scheme, was at that time based in and operated out of Illinois and created and published a false policy regarding Walgreens' reporting of discounted priced in Illinois, (*id.* at ¶¶ 145, 155), that through its scheme, Walgreens secured millions of dollars in payments from Plaintiffs, and these payments were sent to Walgreens' headquarters in Illinois, (*id.* at ¶¶ 145, 155), that Walgreens' PBM agreements were negotiated by Walgreens in Illinois, (*id*. ¶¶ 145, 155), and that Walgreens was subjected to remedial actions by the U.S. Government for related conduct in Illinois. (*Id.* at ¶ 98). Under the factors outlined above, these allegations plead that Defendants' deceptive conduct occurred primarily and substantially in Illinois.

Using such a stringent analysis as the *Landau* court and ignoring many of the well-pleaded allegations because they relate to activities that occur at headquarters would render several of the factors Courts are to consider obsolete. Take for example Factor (2) the defendant's place of

5

business; Factor (3) the location of the relevant item that is the subject of the disputed transaction; Factor (4) the location of the claimant's contacts with the defendant; Factor (5) where the contracts at issue were executed; Factor (7) where the allegedly deceptive statements were made; Factor (8) where payments for services were to be sent; and Factor (9) where complaints about the goods or services were to be directed. Almost all of these are facts that would typically transpire at a defendant's headquarters, but that does not mean the Court should ignore them. Here, Plaintiffs have pled that Walgreens executed its PBM contracts in Illinois, that deceptive statements about the PSC Program were made from Illinois, that payments were to ultimately be sent to Illinois, and that the decision to not report the discounted prices as U&C, which is the heart of the fraud, was made in Illinois. The law is clear that there are several considerations that the Court may consider in determining whether the dispute has occurred primarily and substantially in Illinois and that no one factor is dispositive. *See Stericycle, Inc.*, 2020 WL 43017, at *3. Plaintiffs have added allegations that meet these additional considerations. While Plaintiffs' previous Complaint was plainly insufficient because the *only tie* was that Walgreens is headquartered in Illinois with no mention of the allegedly deceptive conduct, here there are numerous factors that tie the deceptive conduct to Illinois.

Defendants further argue that Plaintiffs cannot allege that they themselves suffered any injury in Illinois. Relying upon the holding in *Avery* that requires a plaintiff to prove "actual damages," as part of stating a *prima facie* case under the ICFA, Defendants claim that Plaintiffs' additional allegations that individuals living in Illinois suffered damages, "through increased copay, coinsurance, and deductible obligations, as well as increased premiums" are insufficient. (Dkt. 122 ¶¶ 163). However, while there is a requirement that the Plaintiff prove actual damages, there is simply no requirement that a Plaintiff must prove that the actual damages occurred *in*

*Illinois*. *Avery*, 835 N.E.2d at 854–55 (requiring actual damages but not explicitly requiring the damages occurred in Illinois). Where the damages occurred is a factor the Court considered in *Avery*, but again, it is not dispositive. Defendants conflate the actual damages requirement which is needed to state a *prima facie* claim with one of the non-dispositive factors of *Avery*. Plaintiffs have pled sufficiently pled actual damages that they incurred as a result of Defendants' deceptive conduct that took place in Illinois. (Dkt. 122 at ¶¶ 127, 137, 149, 150 166).

Finally, Defendants argue that Plaintiffs have failed to meet the heightened pleading standards of Federal Rule of Civil Procedure 9(b) because Plaintiff asserts that at least one of its insureds filled a prescription at a Walgreens in Illinois and Walgreens seeks to have Plaintiffs plead with particularity as to transactions that occurred in Illinois. Rule 9(b) undoubtedly applies to ICFA claims. *See Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 596 n. 80 (7th Cir. 2017) ("ICFA claims are evaluated under Rule 9(b)'s heightened pleading standard."). Pursuant to Rule 9(b), a plaintiff must "describe the who, what, when, where, and how of the fraud." The Court discussed Defendants' earlier attempts to dismiss Plaintiffs' claims for failure to plead with particularity in its January 8, 2021 Opinion. (See Dkt. 121 at 14 – 15). Defendants now seek to further the standards to include that the fraudulent acts that occurred in Illinois must be pled with particularity. First, "Walgreens is incorrect inasmuch as it suggests that [Plaintiffs] necessarily needed Illinois data to establish the existence of a fraudulent scheme." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 446 (7th Cir. 2011). Second, as discussed above, no one factor is dispositive. Plaintiffs have pleaded sufficiently to state a claim under the *Avery* test, including the who, what, where, when, why of the alleged fraud. The fact that the allegations as to particular consumer-based transactions that occurred in Illinois are not plead with particularity is not reason enough to dismiss the Illinois claims.

Walgreens, as in its earlier motions to dismiss, attempts to require Plaintiffs to plead more than necessary. However, this Court indicated previously that whether Defendants' conduct occurred primarily and substantially is a fact-intensive question that it was hesitant to dismiss without the benefit of discovery. (Dkt. 121 at 21). This is because whether a "putative nonresident plaintiff may bring an ICFA claim is not governed by a 'bright-line rule' but rather requires a 'highly fact-bound inquiry…'" *Stericycle, Inc.*, 2020 WL 43017, at *3 (citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396 (7th Cir. 2009)). Plaintiffs have pled the alleged fraud with particularity and have included additional allegations that meet the *Avery* factors. Other courts that have confronted similar allegations have allowed the Illinois claims to proceed past the motion to dismiss stage. *See e.g. Morrison*, 649 F.3d at 536–38; *Green Light Nat'l, LLC v. Kent*, No. 17-CV-6370, 2018 WL 4384298, at *5 (N.D. Ill. Sept. 14, 2018). The cases that Defendants rely upon, namely *Chrichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 396–97 (7th Cir. 2009); *Craigville Tele. Co. v. T-Mobile USA Inc.*, No. 19 C 7190, 2020 WL 6715435, at *10–11 (N.D. Ill. Nov. 16, 2020); *Stericycle, Inc.*, 2020 WL 43017, at *3–4; and *Haught v. Motorola Mobility, Inc.*, No. 12 C 2515, 2012 WL 3643831, at *3–5 (N.D. Ill. Aug. 23, 2012) were all cases where the only allegation linking the defendants to Illinois was the location of defendants' headquarters. The Court previously dismissed for this very reason but declines to dismiss where Plaintiffs have added more allegations connecting the deceptive conduct to Illinois.

## CONCLUSION

Defendants' Motion to Dismiss [Dkt. 127] the Plaintiffs' Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505, et seq.) ("ICFA") and Illinois Uniform Deceptive Trade Practices Act (815 ILCS 510, et seq) ("IUDTPA") claims is denied.

Virginia M. Kendall
United States District Judge

Date: June 15, 2021