**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| BCBSM, INC., *et al.*, | Case No. 1:20-cv-01853 |
| *Plaintiffs*, | Honorable Virginia M. Kendall<br>Honorable Sheila M. Finnegan |
| v. | |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | Consolidated with: |
| *Defendants*. | Case No. 1:20-cv-04738<br>Case No. 1:20-cv-03332<br>Case No. 1:20-cv-01929<br>Case No. 1:20-cv-04940 |

**STIPULATED ORDER REGARDING
ESI CASE MANAGEMENT PROTOCOL**

The procedures and protocols outlined in this Stipulated Order Regarding ESI Case Management Protocol (the "ESI Protocol" or "Order"), consistent with the Stipulated Protective Order in these consolidated actions, govern the production of electronically stored information ("ESI") and use of confidential discovery material by Plaintiffs and Defendants (collectively, the "Parties") in these consolidated actions. The Parties to this ESI Protocol will take reasonable steps to comply with these agreed-upon procedures.

1. **Purpose and Scope**

The Parties intend this Order to be interpreted such that, subject to the Federal Rules of Civil Procedure, responsive, non-privileged ESI is produced, while minimizing unnecessary burden and costs associated with the production. All productions made pursuant to this Order are subject to any protective orders or privilege orders entered in this proceeding, including the Stipulated Protective Order entered on May 25, 2021 [Dkt. 136]. This Order is not intended to be an exhaustive list of discovery obligations or rights of the Parties, and obligations or rights not addressed by this Order are subject to the relevant Federal Rules of Civil Procedure or to any

other stipulations or agreements between the parties, if applicable. The Parties agree to cooperate in good faith in the implementation of this Order.

The production specifications in this Order apply to documents and other materials that are produced in the first instance in these consolidated proceedings. To the extent any Party is required to or agrees to produce documents or other materials in these consolidated proceedings that originally were collected or produced in other cases or government investigations, such documents or materials maybe produced in the same format in which they originally were produced in the other cases or to the government.

## 2. ESI Custodians

The Parties agree to meet and confer in good faith to identify custodians whose electronic and hard copy files shall be preserved and searched for ESI and hard copy documents responsive to requests for production. The Parties agree that preservation of potentially relevant ESI will be reasonable and proportionate. Each Party reserves the right to subsequently add or remove custodians, subject to and consistent with the removing Party's obligations under the Federal Rules of Civil Procedure; provided that the adding or removing party gives advance notice of the addition or removal to the other party.

## 3. Identification of Responsive ESI

It is the right of the Producing Party (*i.e.*, the Party producing discovery material) to determine the best method of search and review and how the Producing Party will comply with its obligations under Fed. R. Civ. P. 26. The Parties recognize and agree that each Party will use one or more search methodologies to collect, review, and produce responsive, non-privileged ESI and other documents in response to discovery requests. Such methodologies include the use of search terms, filters, and technology-assisted review. The Parties agree to meet and confer in

good faith regarding the use of search terms to identify materials responsive to each other's requests for production. To the extent that a Producing Party chooses to search and review using a technology or methodology other than search terms (including, for instance, predictive coding), that Producing Party shall disclose its intent to use that technology and the name of the review tool; however, the Producing Party need not share other information about the methodology (including details of the settings or thresholds used for the methodology) unless and until the Receiving Party (*i.e.*, the Party receiving discovery material) makes a good faith allegation of a violation of Fed. R. Civ. P. 26.

The Parties shall attempt to resolve disputes about the adequacy of their search methodologies through a meet and confer and shall promptly raise any disputes that cannot be resolved with the Court. The Parties agree that the fact that a document is hit or captured by the application of any agreed upon search methodologies or search terms does not mean that such document is necessarily responsive to any propounded discovery request, non-privileged and validly subject to production, or otherwise relevant to these consolidated actions. Determinations of the discoverability, responsiveness, and privilege of the documents and materials hit or captured by the application of agreed search methodologies shall still be made by the Producing Party.

Any instant message files saved to work computers or servers in the ordinary course of business shall be collected and reviewed for production. No Party shall be obligated to preserve instant message communications to the extent that the Party's instant messaging or IT system is not calibrated or designed to store or save such messages in the ordinary course of business.

### a. Inaccessible or Unduly Burdensome ESI Sources

The Parties agree that the circumstances of this case do not warrant the preservation, collection, review, or production of the ESI types referenced in this Section because they anticipate that enough relevant information can be yielded from alternative sources and, as necessary and appropriate, supplemented with deposition discovery. Moreover, the remote possibility of additional relevant information existing in these sources is substantially outweighed by the burden and cost of preservation, collection, review and production of ESI from sources that are not reasonably accessible. The Parties agree that the following ESI does not require preservation: mobile phones (including BlackBerrys, iPhones, or Android devices) or other similar portable devices; iPads or other tablet computers, so long as any potentially responsive ESI (other than text messages) locally stored on such devices would be duplicated on another electronic source already subject to preservation, collection and review; backup tapes; disks; SAN; disaster recovery materials; voicemails, except for any voicemails that are digitized and forwarded to an email account; deleted, shadowed, damaged, residual, slack, fragmented, or other data only accessible by forensic methods and in "unallocated" space on hard drives; data stored in random access memory ("RAM"), temporary files, or other ephemeral data that is difficult to preserve without disabling operating systems; on-line access data such as temporary internet files, history, cache files, cookies, and the like, wherever located; data stored on photocopiers, scanners and fax machines; data in metadata fields that are frequently updated automatically, such as last-opened dates; server, system or network logs; logs of calls made from cellular or land-line phones; legacy data or data remaining from systems no longer in use that are unintelligible on the systems in use; computer programs, operating systems, computer activity logs, programming notes or instructions, batch files, system files, and miscellaneous files or file

fragments; and other forms of ESI whose preservation requires extraordinary affirmative measures that are not utilized in the ordinary course of business.

4. **Form of Production**

   a. **ESI Time Processing**

Each Party's ESI should be processed using a consistent Time Zone for all data. The Producing Party shall share the Time Zone selected for processing its data with the other Parties upon request.

   b. **Accompanying Data and Image Load Files**

The production of documents shall be accompanied by metadata and image load files in standard Concordance or other agreed, industry-accepted format (*i.e.*, DAT for metadata load files and OPT for image load files) using standard delimiters, including unitization of the TIFF files and the location of both the TIFF and native files. The Parties will cooperate to resolve technical issues and provide industry-standard productions and load file data to ensure document start/stop, parent/child, attachment, and threading relationships are maintained.

   c. **Searchable Text File Specifications**

For each document produced in TIFF format, a single, separate text file shall be provided along with the image files and the metadata discussed in Section 4(d). The text should not be provided as a field within the .DAT file. The text file name shall be the same as the Bates number of the first page of the document. File names shall not have any special characters or embedded spaces. Unless otherwise exempted in this Protocol, electronic text must be extracted directly from the native electronic file unless the document requires redaction, is an image file, or is any other native electronic file that does not contain text to extract (*e.g.*, non-searchable PDFs). In these instances, a text file shall be created using OCR and shall be produced in lieu of extracted text.

Extracted text shall be provided in UTF-8 format text format. The OCR software should maximize text quality over process speed. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### d. Metadata

Subject to Section 4(e), the Parties will provide the following metadata in their ESI production. Nothing in this Order requires the Parties to create, re-create, or supply metadata that is not maintained in the usual course of business, other than metadata that is technically necessary to comply with de-duplication and good practice standards for load files and custodial source data as agreed to by the Parties. The Parties shall use best efforts to collect ESI in a forensically sound manner that does not alter metadata or other file attributes.

i. For all ESI, the following metadata will be provided:

| All Custodians | Duplicate Filepath | Native File |
|---|---|---|
| Attachment | Endattach | OCR Path |
| Author | Endbates | Page Count |
| Begattach | File Extension | Parent Bates |
| Begbates | File Name | Producing Party |
| Confidentiality | File Path | Production Volume |
| Create Date | Hash | Redaction |
| Create Time | Last Modified By | Text Path |
| Custodian | Last Modified Date | |
| Document Type | Last Modified Time | |

6

ii.   For email, the same metadata identified above in Paragraph 4(d)(i) will be provided, as well as the following:

| Date Sent | To | Subject |
|---|---|---|
| Time Sent | Bcc | Date Received |
| From | CC | Time Received |

iii.   For hard copy documents, only the following fields will be provided:

| Begbates | Endbates | Production Volume |
|---|---|---|
| Custodian | OCR Path | |
| Confidentiality | Producing Party | |

e.  **Production Formats**

i.  **Hard Copy Documents**

Documents retained in hard copy form must be scanned and produced in single-page, black and white Group IV TIFF images (300 DPI resolution) with coded data contained in a separate file. The Producing Party shall also provide document-level Optical Character Recognition ("OCR") text files to accompany the TIFF format production. The Parties will use best efforts to unitize documents (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records), and documents should be produced in the order in which they are kept in the usual course of business. Multi-page OCR text for each document should also be provided and named with the Bates number of the first page of the document to which it corresponds. The OCR software should be set to the highest quality setting. Settings such as "auto-skewing" and "auto-rotation" should be turned on during

the OCR process. Documents that are redacted will be re-scanned using OCR software following redaction and only OCR text of the redacted document will be produced.

Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Receiving Party to request production of certain documents in color, the Receiving Party may request production of such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format, and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

### ii.  Non-Redacted ESI Not Produced in Native Form

Except as otherwise noted herein, for non-redacted ESI not produced in native format, the Parties agree to produce as single-page, black and white Group IV TIFF images (300 DPI resolution) with metadata contained in a separate file. Each page image file shall be named with the unique Bates number of the page of document, followed by the extension ".TIF." All electronic documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent email, and such attachments will bear Bates numbers that follow sequentially from the parent email. The Parties are not obligated to manually populate any of the metadata fields if such fields cannot be extracted from a document, with the exception of the following fields: BEGBATES, ENDBATES, BEGATTACH, ENDATTACH, and CUSTODIAN. To the extent documents have been de-duplicated, the CUSTODIAN field or a separate ALL CUSTODIANS field will list all custodians that had possession of the document.

Documents containing color need not be produced in color in the first instance. However, if good cause exists for the Receiving Party (*i.e.*, the Party receiving discovery material) to request production of certain documents in color, the Receiving Party may request production of

8

such documents in color by providing (1) a list of the Bates numbers of documents it requests to be produced in color format, and (2) an explanation of the need for production in color format. The Producing Party shall not unreasonably deny such requests.

To the extent that ESI contains tracked changes, comments, hidden spreadsheet rows, or other hidden content, the Producing Party will use reasonable efforts to image the ESI so that the tracked changes, comments, hidden spreadsheet rows, or other hidden content are visible in the produced image.

### iii. Redacted Files

For redacted files, the Parties agree to produce redacted single-page, black and white Group IV TIFF images with metadata contained in a separate file. All electronic documents attached to an email are to be produced contemporaneously and sequentially immediately after the parent email, and such attachments will bear Bates numbers that follow sequentially from the parent email. The metadata fields for a redacted document will comply with the requirements of Section 4(d), except to the extent (if any) that the metadata fields would reveal the redacted information, in which case the metadata fields may omit the redacted information. Metadata files shall contain the OCR or Optical Character Recognition text to avoid disclosure of the redacted text. To the extent documents have been de-duplicated, the CUSTODIAN field or a separate ALL CUSTODIANS field will list all custodians that had possession of the document. With the exception of highly sensitive competitive or propriety information or a natural person's personal financial or health information protected by applicable law, the Parties agree not to redact for relevance. All redactions will be labeled with a short description of the grounds for the redaction.

### iv. Native Files

PowerPoint and presentation files, Excel and spreadsheet files (including .CSV files), abd audio or visual media files shall be produced in the format in which the ESI was originally created (the "Native File"). TIFF images should also be produced for all PowerPoint or presentation files. Files produced in native format shall be named either (a) with a sequential Bates number followed by the file extension or (b) with a sequential Bates number followed by the Confidentiality designation, if applicable and as set forth in the Stipulated Protective Order, and the file extension. A placeholder TIFF with the contents "Document Produced in Native" or similar language and the confidentiality designation (if any) and corresponding Bates number shall be included for each native file produced. A relative file path to the Native File shall be provided in the metadata load file. The extractable metadata and text shall be produced in the same manner as other documents that originated in electronic form to the extent that metadata exists or is reasonably accessible or available for any files produced.

Other than as specifically set forth above, a Producing Party need not produce documents in native format. If good cause exists for the Receiving Party to request production of certain documents in native format, the Receiving Party may request production in native format by providing (1) a list of the Bates numbers of documents it requests to be produced in native format, and (2) an explanation of the need for reviewing such documents in native format. The producing party shall not unreasonably deny such requests.

Native Files containing content subject to redaction under the terms of this Order or the Stipulated Protective Order shall be produced in TIFF format to the extent reasonably

10

practicable. Spreadsheet files that require redaction to protect privileged or otherwise protected information but that are so large that conversion to an image file is impracticable may be redacted in native format, using a tool such as Blackout, such that the original metadata is preserved. With respect to spreadsheet files requiring redaction, the producing party may use its discretion in determining which production format is appropriate. To the extent any other types of Native Files contain content subject to redaction under the terms of this Order or the Stipulated Protective Order, and to the extent those files cannot reasonably be produced with the protected information redacted pursuant to the methods described in this paragraph, the Parties shall meet and confer regarding a reasonable alternative form of production.

### v. Database Records

If appropriate, a Producing Party shall identify and describe databases that contain ESI responsive to document requests. The Parties agree to meet and confer on reasonable forms of production for any responsive information contained in databases.

### vi. Social Media

ESI from social media websites (*e.g.*, LinkedIn, Facebook, Twitter) may be produced by capturing information through "screen shots" or "screen captures" and converting the information into images along with corresponding extracted text or OCR, unless the Parties agree to perform bulk exports of accounts, such as by exporting out a profile from Linkedin or downloading a copy of an individual's Facebook data or archive.

### f. Transmission of ESI

A Producing Party shall produce documents through the use of secure file transfer protocols (*e.g.*, FTP) or similar secure electronic transmission, unless such transmission method is not feasible or is impossible due to data size. Produced materials shall be

11

labeled with the Bates Number range(s) of the materials, and where not practicable to do so, the Bates Number range(s) may be provided in an accompanying letter. To the extent that secure file transfer is not readily available or is impractical due to data size, the Parties may produce documents in an electronic image form on CD-ROM, DVD, external hard drive, or such other readily available computer or electronic media as the Parties may agree upon.

To maximize the security of information in transit, any media on which documents are produced shall be encrypted by the Producing Party. The Producing Party shall transmit the encryption key or password to the Receiving Party, under separate cover, contemporaneously with sending the encrypted media.

### 5. Document Issues

#### a. Bates Numbering and Confidentiality Designations

Each page of a produced image shall have a legible, unique Bates number that includes an alpha prefix along with a fixed number (*e.g.*, ABC00000001) electronically "burned" onto the image at a location that does not unreasonably obliterate or obscure any information from the source document (*e.g.*, in the footer). Each TIFF image or native file assigned a Bates number shall be assigned a Bates number that is unique and maintains a constant length across the entire document production. No other legend or stamp will be placed on the document image other than confidentiality legends (where applicable) or redactions.

#### b. Attachments

The Parties agree to assess responsiveness, for purposes of production, at the family level. For purposes of this Order, this means that completely non-responsive documents attached

to an otherwise responsive, production-eligible document shall be produced in order that the entire, partially responsive, family is produced in full.

### c.  De-duplication

A Party is required to produce only a single copy of a responsive document, and the Parties shall make reasonable efforts to de-duplicate ESI. ESI will be de-duplicated horizontally across custodians, based upon MD5 or SHA-1 hash values at the document level. For emails with attachments, the hash value shall be generated based on the parent-child document grouping, and only email messages in which the parent document and all attachments are exactly the same will be considered duplicates.

### d.  Message Threading

The Parties agree to use industry standard message threading technology to withhold from review or production email messages where the content of those messages and any attachments is wholly contained within a later email message that will be reviewed for production. Upon request of a Receiving Party, a Producing Party shall identify the technology it is using to thread its document production. Any message threading technology used by a Party must ensure that an email will be suppressed only if its recipients (including cc and bcc recipients), subject, body text (excluding specified automatic footers and normalized to consolidate white space) and attachments are wholly included in another more complete email.

The Parties are required to preserve all suppressed documents and to produce in their entirety all non-privileged, responsive lesser inclusive emails with attachments that are not part of the more inclusive email.

For any email thread that includes (i) one or more messages that would be produced as non-privileged if the message(s) stood alone, without the remainder of the thread, and (ii) one

or more messages that would be withheld as privileged if the message(s) stood alone, without the remainder of the thread, a Producing Party shall redact only the message(s) described in subpart (ii) above and shall then produce the remainder of the thread without redactions. For the avoidance of doubt, the Parties will not withhold email threads described in the first sentence of this paragraph even if the material described in subpart (ii) above constitutes more than half of the given email thread. For the further avoidance of doubt, the Parties may withhold, in their entirety, any email threads that consist exclusively of lesser-included messages that would be withheld as privileged if the messages stood alone, without the remainder of the thread.

### 6. Privilege

#### a. Privilege Logs

i. The Parties agree that the following documents need not be included on a privilege log:

- Communications and other documents created on and after the filing of the Complaint;

- Communications exclusively between a Party and its outside counsel of record in these consolidated actions or in other litigation, to the extent the communications concern (A) U&C pricing practices and (B) the consolidated actions or the other litigation;

- Internal communications by, on behalf of, or with attorneys acting in a legal capacity within the legal department of a Party, to the extent the communications regard these

14

consolidated actions or other litigation concerning U&C pricing practices;

- Work product created by or for litigation counsel (i) in these consolidated actions after commencement of these consolidated actions or (ii) in other litigation concerning U&C pricing practices;

- Any communications regarding litigation holds in connection with these consolidated actions or with other litigation concerning U&C pricing practices;

- Each individual message within a given email string that is already reflected on the privilege log;

ii. Except as otherwise provided in Section 6(a)(i), the Parties agree that, for documents redacted or withheld from production on the basis of attorney-client privilege, work product doctrine, or any other applicable privilege, the Producing Party will prepare a summary log containing, for each document claimed as privileged, (i) a brief description of the document and the reason for it being withheld and (ii) an export of the metadata fields listed below to the extent such information exists and has not been suppressed or redacted for privilege. The Producing Party's privilege log must provide a unique identifier for each document listed as being subject to privilege in whole or in part, *e.g.*, ABC-priv-00000000l. The export should include the following metadata fields:

15

- **BEGNO (if not produced) or BEGBATES (if produced), ENDBATES (if produced)**, **BEGATTACH, ENDATTACH, CUSTODIAN, ALL CUSTODIANS**

- **FROM, TO, CC, BCC, SUBJECT, DATE SENT, DATE RECEIVED**

- **FILENAME, AUTHOR, CREATE DATE, PRIV CLAIM (that is, a field identifying the privilege or other immunity claimed for that particular document)**

iii. If the document claimed as privileged is all or a portion of an email message, the Producing Party shall list on the privilege log the data corresponding to the top-most (*i.e.*, most recent) message over which the Party asserts privilege.

iv. If the basis for privilege relates to an attorney, the Producing Party will indicate or designate on the log the attorney(s) on which the privilege assertion is based by placing an asterisk or other appropriate mark next to the name of the attorney(s) or (where no specific name is applicable) by indicating "[Company] Legal Department" or the name of the applicable law firm.

v. If the Receiving Party requires further information in order to determine the privilege status of a document, it shall explain in writing the need for such information and identify, by Bates number or other unique identifier, each document for which it seeks this information and what information is required. Within twelve (12) days of such a request, the Producing Party

16

must either (a) provide the requested information or (b) challenge the request. If a Party challenges a request for further information, the Parties shall meet and confer to try to reach a mutually agreeable solution. If they cannot agree, the Receiving Party shall file an appropriate application or motion with the Court.

vi. Once a Party has substantially completed its production of documents in these consolidated actions, then the Producing Party shall provide to the Receiving Party a privilege log corresponding to that production within sixty (60) days from the date of production unless good cause that could not have been anticipated necessitates additional time for the Producing Party to provide the privilege log. In the event the Producing Party requests additional time, it shall notify the Receiving Party on or before the sixty-day deadline for providing the privilege log how much additional time is needed to comply and of the reason(s) why the additional time is needed. The additional time requested to comply must be reasonable under the circumstances and in no event meant to cause delay.

vii. When a Party makes a supplemental document production that includes additional documents withheld on the basis of a privilege or work product protection, then the Producing Party shall provide to the Receiving Party an updated, revised privilege log including that production within two (2) weeks from the date of production, unless for good cause that could not have been anticipated the Producing Party requests additional time to provide the privilege log. In the event the Producing Party requests

17

additional time, it shall notify the Receiving Party on or before the two-week deadline for providing the privilege log how much additional time is needed to comply and of the reason(s) why the additional time is needed. The additional time requested to comply must be reasonable under the circumstances and in no event meant to cause delay.

b. **Litigation Holds.** The parties agree that they need not exchange litigation hold / retention instructions issued in these consolidated actions or any other litigation concerning U&C pricing practices.

## 7. <u>Third-Party Documents</u>

A Party that issues a non-Party subpoena ("Issuing Party") shall include a copy of this ESI Protocol with the subpoena and state that the Parties to these consolidated actions have requested that third parties produce documents in accordance with the specifications set forth herein. The Issuing Party shall produce to all adverse parties any documents obtained pursuant to a non-Party subpoena; the Issuing Party shall make any such production within seven (7) business days of receiving the production from the third party. Nothing in this ESI Protocol is intended or may be interpreted to narrow, expand, or otherwise affect the rights of the Parties or third parties to object to a subpoena.

## 8. <u>No Effect on Objections or Admissibility</u>

This ESI Protocol does not address, limit, or determine the relevance, discoverability, producibility, or admissibility of ESI. The Parties do not waive the right to seek any discovery, and the Parties do not waive or limit any objections to specific discovery requests or any grounds that a Party might have to move for an appropriate protective order. Nothing in this ESI Protocol shall be interpreted to require disclosure of materials that a Party contends are not discoverable

18

or are protected from disclosure by the attorney-client privilege, the work product doctrine, or any other applicable privilege. Nothing in this ESI Protocol shall be construed to affect the admissibility of any document or data. All objections to the admissibility of any document or data, except as to the authenticity of the documents produced by a Party as to which that Party stipulates, are preserved and may be asserted at any time.

9. **Good Faith**

The Parties shall make reasonable good faith efforts to comply with, and resolve any disagreements concerning compliance with, this ESI Protocol. If a Producing Party cannot comply with any material aspect of this ESI Protocol, such Party shall inform the Receiving Party in writing at or before the time of production as to why compliance with this ESI Protocol was unreasonable or not possible. No Party may seek relief from the Court concerning compliance with this ESI Protocol until it has first conferred with other affected Parties to these consolidated actions.

[*signature page follows*]

Dated: June 14, 2021

By: */s/ Jeffrey J. Bushofsky*
  Laura G. Hoey
  Jeffrey J. Bushofsky
  Charles D. Zagnoli
  **ROPES & GRAY LLP**
  191 N. Wacker Drive
  32nd Floor
  Chicago, IL 60606
  Telephone: (312) 845-1200
  Facsimile: (312) 845-5522
  Laura.Hoey@ropesgray.com
  Jeffrey.Bushofsky@ropesgray.com
  Charles.Zagnoli@ropesgray.com


*Attorneys for Defendants*

Respectfully submitted,

By: */s/ Kelly H. Hibbert*
  Kent A. Gardiner (D.C. Bar No. 432081)*
  Stephen J. McBrady (D.C. Bar No. 978847)*
  Kelly H. Hibbert (D.C. Bar No. 1006010)*
  Justin D. Kingsolver (N.D. Ill. General Bar No. 6320926)
  **CROWELL & MORING LLP**
  1001 Pennsylvania Ave. NW
  Washington, D.C. 20004
  Telephone: (202) 624-2500
  Facsimile: (202) 628-5116
  KGardiner@crowell.com
  SMcBrady@crowell.com
  KHibbert@crowell.com
  JKingsolver@crowell.com

*Admitted pro hac vice

  David L. Applegate (IL Bar #3122573)
  Matthew A. Blumenreich (IL Bar #6329458)
  **WILLIAMS MONTGOMERY & JOHN LTD.**
  Suite 6800 Willis Tower
  233 S. Wacker Drive
  Chicago, Illinois 60606
  Telephone: (312) 443-3200
  Facsimile: (312) 630-8500
  dla@willmont.com
  mab@willmont.com

*Attorneys for Plaintiffs*

SIGNED AND ENTERED this 15th day of June, 2021.

Honorable Virginia M. Kendall
United States District Judge

20