**THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

BCBSM, INC, (d/b/a BLUE CROSS and BLUE )
SHIELD of MINNESOTA), HEALTH NEW )
YORK, INC, HORIZON HEALTHCARE )
SERVICES, INC. (d/b/a HORIZON BLUE )
CROSS BLUE SHIELD OF NEW JERSEY), )
BLUE CROSS AND BLUE SHIELD OF )
ARIZONA, INC. (d/b/a BLUE CROSS BLUE )
SHIELD OF ARIZONA and d/b/a AZBLUE), )
ASURIS NORTHWEST HEALTH, *et al.*, )

                    *Plaintiffs*, )
    v. )

WALGREEN CO. and WALGREENS BOOTS )
ALLIANCE, INC., )

  *Defendants and Third-Party Plaintiffs*, )

    v. )

PRIME THERAPEUTICS LLC, )

          *Third-Party Defendant*. )

No. 20 C 1853
No. 20 C 1929
No. 20 C 3332
No. 20 C 4940
No. 20 C 4738

Judge Virginia M. Kendall

## MEMORANDUM OPINION AND ORDER

The Plaintiffs in this case are health care plans offering comprehensive health care services and coverage, including prescription drug coverage, to their members in locations across the United States. Defendants are Walgreen Co. and Walgreens Boots Alliance, Inc. (together "Walgreens") who allegedly engaged in a fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices. Walgreens now brings a Verified Counterclaim alleging that Plaintiffs have knowingly aided and abetted Crowell & Moring LLP's ("Crowell") breaches of its fiduciary duties to Walgreens, Crowell's former client. (Dkt. 149 at 179–202). Relatedly, Plaintiffs have filed a "Motion for Qualification of

Counsel" seeking an order that Crowell is qualified to serve as their attorneys in this action. (Dkt. 158). Walgreens also brings a Third-Party Complaint ("TPC") against Prime Therapeutics LLC ("Prime"), one of Plaintiffs' pharmacy benefit managers ("PBM"), seeking contribution and indemnification. (Dkt. 151).

Now before the Court are three motions. First, Walgreens moves to strike Plaintiffs' Motion for Qualification of Counsel. (Dkt. 163). Next, Plaintiffs move to dismiss Walgreens' Counterclaim. (Dkt. 187). Last, Prime moves to dismiss Walgreens Third-Party Complaint. (Dkt. 188). For the reasons set forth below, the Court grants Walgreens' Motion to Strike [163]; denies Plaintiffs' Motion to Dismiss Walgreens' Counterclaim [187]; and grants Prime's Motion to Dismiss Walgreens' Third-Party Complaint [188].

## **BACKGROUND**

### I. **Crowell and Walgreens' Attorney-Client Relationship**

On a motion to dismiss under Rule 12(b)(6), the Court accepts the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the non-moving party's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). Unless otherwise noted, the following factual allegations are taken from Walgreens' Verified Counterclaim, (Dkt. 149 at 179–202), and are assumed true for purposes of Plaintiffs' Motion to Dismiss, (Dkt. 187). *W. Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 675 (7th Cir. 2016).

#### A. **Crowell's Prior Representation of Walgreens**

In 2006, Walgreens launched its Prescription Savings Club ("PSC") program – an initiative that made prescription drugs more affordable for uninsured and underinsured consumers. (Dkt. 149 at 190 ¶ 54). After launching it nationwide in August 2008, Walgreens hired Crowell for legal

2

advice concerning the PSC program in 2008 and 2009. (*Id.* ¶¶ 55–56). Among other things, Crowell provided legal advice on how prescription prices under the PSC program might affect the usual and customary ("U&C") prices that Walgreens reports in insurance reimbursement claims. (*Id.* ¶ 55 (further explaining that U&C prices sometimes cap reimbursements paid by health insurers for insureds' prescription drugs)).

Walgreens first requested Crowell's legal advice concerning the PSC program in September 2008. (*Id.* ¶ 56). Crowell's assistance related to (1) a proposed pharmacy discount card and (2) a proposed enhancement to Walgreens' PSC program. (*Id.* ¶¶ 56–57). Crowell ultimately created and retained privileged work product for Walgreens which included information about the potential impact of discount cards on the U&C prices reported in Walgreens' reimbursement claims. (*Id.* at 191 ¶ 59). Walgreens again requested Crowell's legal advice in October 2008 after receiving a letter from Connecticut Medicaid regarding reporting PSC prices as U&C. (*Id.* ¶¶ 60–62). Crowell provided counsel regarding Walgreens' response to this inquiry by reviewing the agency's letter and reviewing and commenting on Walgreens' draft response. (*Id.* ¶¶ 62–63). Crowell later advised Walgreens on a separate question about U&C prices and PSC in January 2009. (*Id.* at 192 ¶ 65). Finally, in April 2009, Walgreens requested that Crowell conduct a national survey related to discount card programs and a proposed enhancement to PSC. (*Id.* ¶ 66 (further noting that Crowell delivered its work product in May and June 2009)).

Crowell received privileged and confidential information from Walgreens in connection with its work on these PSC and U&C matters, and Crowell created and retained privileged work product for Walgreens regarding the same. (*Id.* at 191–93 ¶¶ 58, 63, 70). In addition, Crowell submitted – and Walgreens paid – invoices for this work between October 2008 and July 2009. (*Id.* at 192 ¶ 67). Walgreens maintains that in light of these facts, it reasonably believed to exist

an attorney-client relationship between itself and Crowell between at least the fall of 2008 and mid-2009. (*Id.* ¶ 70). As a result, per Walgreens, Crowell (1) owes fiduciary duties to Walgreens as a former client, and (2) may not take a materially adverse position to Walgreens in any matter substantially related to the prior representation without Walgreens' written consent. (*Id.* at 193–94 ¶¶ 71, 76, 79 (referring to the ABA Model Rules of Professional Responsibility, the District of Columbia Rules of Professional Conduct, and the Illinois Rules of Professional Conduct)).

### B. Crowell's Alleged Breach of Fiduciary Duties

In March 2020, Walgreens received two pre-litigation demand letters from Crowell explaining Plaintiffs' "concern[] that Walgreens has overcharged them by failing to include PSC Program prices in its calculation of U&C prices." (*Id.* at 193 ¶¶ 73–74). Crowell subsequently filed suit on Plaintiffs' behalf alleging that Walgreens defrauded Plaintiffs by failing to include PSC prices in its U&C reporting – including in 2008 and 2009, when Crowell provided Walgreens legal advice about such reporting requirements. (*Id.* at 194 ¶¶ 77–78; *cf. id.* at 193 ¶¶ 72 ("[C]ertain Plaintiffs . . . retained Crowell and financially incentivized the law firm to switch sides and represent them *against* Walgreens on the very same issues as to which Crowell had previously advised Walgreens." (emphasis in original)), 75 ("As even Crowell's March 2020 letters on Plaintiffs' behalf make clear, Crowell's current representation of Plaintiffs is substantially related to Crowell's earlier representation of Walgreens.")).

Walgreens maintains that Crowell's representation of Plaintiffs in this action violates rules of professional responsibility, because Plaintiffs' claims relate to substantially similar subject matter of Crowell's prior representation of Walgreens. (*E.g.*, *id.* at 194 ¶¶ 76 ("The ABA, the District of Columbia, and Illinois all broadly prohibit lawyers from switching sides to sue a former client on the subject of a prior engagement."), 79 ("Crowell had an obligation to obtain informed

consent from both Walgreens and Plaintiffs before agreeing to this side-switching representation."); *see also id.* at 200–01 ¶¶ 103–07 (setting forth Crowell's fiduciary duty of loyalty)). Walgreens opines that Crowell might "expose its confidential and privileged information about PSC [to Plaintiffs] or use that information to Walgreens' disadvantage" in this litigation. (*Id.* at 195 ¶ 82). In addition, Walgreens claims that Crowell's breaches have proximately caused it to incur "significant expenses" – including while litigating against Crowell in a separate action for Crowell's "duty breaches in this and other cases." (*Id.* ¶ 81; *see generally id.* at 195–98 ¶¶ 85–95 (providing background on Walgreens' lawsuit against Crowell pending before the Superior Court of the District of Columbia)). The D.C. court recently denied Crowell's motion to dismiss Walgreens' complaint in that suit. (*Id.* at 198 ¶ 92). The court held, in relevant part, that "Walgreen[s] has set forth sufficient facts in the amended complaint to support a claim for breach of fiduciary duty that is plausible." (*Id.*).

### C.      Plaintiffs' Alleged Aiding and Abetting of Crowell's Breach

Plaintiffs continue to retain Crowell as counsel in the present litigation. (*Id.* at 199 ¶ 98). However, per Walgreens, Plaintiffs know that Crowell is in breach of its fiduciary duties to Walgreens and that they are "facilitating, encouraging, and assisting those breaches." (*Id.* at 201 ¶ 108). Walgreens highlights the following facts to support its claim that Plaintiffs are aware of Crowell's fiduciary breach. First, Walgreens notes that Crowell had an ethical obligation to inform Plaintiffs of its conflict of interest in this case. (*Id.* at 183 ¶ 15, 195 ¶ 83 ("If Crowell honored its ethical obligations to inform Plaintiffs of its conflict of interest, then Plaintiffs necessarily knew about Crowell's conflict.")). Second, Plaintiffs learned of the conflict through Walgreens' lawsuit against Crowell before the D.C. Superior Court – which pleads a claim for breach of fiduciary duty, survived a motion to dismiss, and has repeatedly garnered press from national news outlets.

(*Id.* at 197 ¶ 88 (explaining that Walgreens' suit "put Plaintiffs on notice of the facts underlying Crowell's breaches of its fiduciary duties to Walgreens"); *see also id.* at 195–98 ¶¶ 85–95). Finally, on July 8, 2021, Walgreens sent a cease-and-desist letter to Plaintiffs through their counsel – Crowell – documenting Crowell's alleged breaches of its fiduciary duties and Plaintiffs' role in aiding and abetting the breaches. (*Id.* at 184 ¶ 19, 199 ¶ 97). In that letter, Walgreens demanded that "each Plaintiff [ ] cease and desist from continuing to retain Crowell to pursue claims against Walgreens involving U&C price reporting issues." (*Id.* at 199 ¶ 97; *see also* Dkt. 149-2 at 1–3 (attaching Walgreens' letter to Plaintiffs, explaining that Crowell "previously provided legal advice to Walgreens regarding [the PSC], including the effect, if any, that prices offered to PSC members might have on Walgreens [U&C] prices")).

In light of the foregoing facts, Walgreens filed a Counterclaim asserting that Plaintiffs are "substantially and knowingly aiding and abetting Crowell's breaches of its fiduciary duties" to Walgreens by "retaining and compensating Crowell to pursue these [consolidated] cases in violation of its ethical duties; allowing Crowell to sign, file, and serve pleadings as their counsel; and providing Crowell with information and other assistance that allows Crowell to continue litigating these cases against" Walgreens. (Dkt. 149 at 199–200 ¶ 99; *see also id.* at 200 ¶ 100 (adding that Plaintiffs are financially compensating Crowell and have provided Crowell with "instructions and significant information, evidence, and other materials" to aid in its work on Plaintiffs' behalf), 200–02 ¶¶ 102–10 (pleading Count I, "Aiding & Abetting Breaches of Fiduciary Duties," against Plaintiffs)). In Walgreens' view, "Crowell's breaches would not be possible without Plaintiffs' active participation." (*Id.* at 200 ¶ 101).

### D. Plaintiffs Move to Qualify Counsel

On July 30, 2021 – after Walgreens filed its Verified Counterclaim – attorneys from Perkins Coie LLP ("Perkins Coie") entered appearances on behalf of Crowell, although it is not a party to this action. (*See* Dkts. 156–57; *see also* Dkts. 179–80 (Perkins Coie's supplemental appearances for Plaintiffs); Dkt. 183 at 5 n.5 ("[T]he local attorneys from Perkins Coie LLP . . . formally clarify that they represent . . . Plaintiffs too for purposes of the Motion to Qualify.")). On the same date, Perkins Coie filed four documents with the Court: (1) Plaintiffs' Motion for Qualification of Counsel, (Dkt. 158); (2) Plaintiffs' Motion for Leave to File under Seal, (Dkt. 159); (3) Plaintiffs' sealed Memorandum of Law in Support of Their Motion, (Dkt. 160); and (4) Plaintiffs' Motion for Leave to File Excess Pages, (Dkt. 161). Through Plaintiffs' Motion for Qualification of Counsel, Plaintiffs seek an order stating that no conflict of issue exists that warrants Crowell's dismissal or withdrawal from this case. (Dkt. 183 at 1). Walgreens now moves to strike Plaintiffs' motion and supporting filings on several grounds, including for its procedural impropriety. (Dkt. 163).

## II. Walgreens' Third-Party Complaint

The following factual allegations are taken from Walgreens' TPC, (Dkt. 151), and are assumed true for purposes of Prime's Motion to Dismiss, (Dkt. 188). *W. Bend Mut. Ins. Co.*, 844 F.3d at 675. Third-Party Defendant Prime is a PBM that is owned by and is the agent of several Plaintiffs in the underlying Complaint (the "Prime Plans"). (Dkt. 151 ¶¶ 1, 18, 21). The Prime Plans enlist Prime to adjudicate Walgreens' prescription drug reimbursement claims and administer prescription drug benefits on the Prime Plans' behalf. (*Id.* ¶ 27; *see also id.* ¶¶ 18, 25, 35). For example, when the Prime Plans' insureds fill their prescriptions at Walgreens, Walgreens submits reimbursement claims to Prime. (*Id.* ¶ 28). These reimbursement claims list applicable

U&C prices and other basic information about each transaction. (*Id.*). Prime evaluates Walgreens'
claims against coverage and payment criteria set by the Prime Plans, and ultimately remits payment
to Walgreens on behalf of the Prime Plans. (*Id.* ¶¶ 28, 30). Prime controls the flow of information
and payments between Walgreens and the Prime Plans throughout the claims process. (*Id.* ¶¶ 31–
32, 36 ("Only Prime knows and understands both how much the Prime Plans pay and how much
Walgreens receives for any reimbursement claim, and only Prime knows and understands how its
contracts with both Walgreens and the Prime Plans define U&C.")).

Between March 2008 and the present, two separate contracts governed Walgreens'
relationship with Prime. (*Id.* ¶ 42). The first of these contracts had an effective date of March 1,
2008 (the "2008 Agreement"). (*Id.* ¶ 42(a); Dkt. 151-1). The second had an effective date of
August 26, 2016 (the "2016 Agreement"). (Dkt. 151 ¶ 42(b); Dkt. 151-2). Both contracts defined
U&C to *exclude* PSC prices. (Dkt. 151 ¶¶ 41–42). Walgreens claims that it was common practice
among large pharmacies *not* to report discounted prices as their contractually-defined U&C prices,
(*id.* ¶¶ 40, 51–52), and further that Prime knew this was "standard industry practice," (*id.* ¶ 41; *see
also id.* ¶ 45 ("Prime representatives have admitted under oath that when Prime received pharmacy
pricing data as a middleman, 'Prime had no expectation of pharmacies to submit pricing from . . .
opt-in savings programs [like PSC] as their U&C pricing.' ")).

Although Prime knew that Walgreens excluded PSC prices from its U&C reporting, the
Prime Plans believed that Walgreens' reported U&C prices *included* PSC pricing. (*Id.* ¶ 47; *see
also id.* ¶¶ 2–7 ("Prime always knew that it was not receiving from Walgreens and passing along
to the Prime Plans U&C prices that incorporated PSC prices.")). Nonetheless, Prime never
informed the Prime Plaintiffs about Walgreens' price reporting policies or the industry standards
for U&C reporting. (*Id.* ¶ 4). Nor did Prime inform Walgreens that the Prime Plans expected

8

Walgreens to include PSC prices in its U&C reporting. (*Id.*). Walgreens argues that these failures on Prime's part violated the 2008 Agreement. (*Id.* ¶¶ 67, 297–98). Walgreens specifically highlights Section 3.3 of the 2008 Agreement, which reads:

> **Marketing Materials.** Prime will accurately describe and represent the role of Pharmacy [namely Walgreens] in providing services contemplated under this Agreement in all communications, including marketing and advertising materials, to Benefit Sponsors [such as the Prime Plans], potential Benefit Sponsors, and, if applicable, Covered Persons and potential Covered Persons.

(Dkt. 151-1 at 11). Walgreens argues that this "and other implicit or explicit provisions" required Prime to accurately inform the Prime Plans of Walgreens' U&C price reporting practices, including the fact that Walgreens excludes PSC prices from U&C. (Dkt. 151 ¶ 68). Walgreens claims that Prime negligently took or omitted to take actions related to its performance of Section 3.3 of the 2008 Agreement when it failed to accurately convey such information to the Prime Plans. (*Id.* ¶¶ 63, 69).

The Prime Plans have brought suit against Walgreens challenging Walgreens' PSC pricing practices in its U&C reporting. (*Id.* ¶¶ 68–69). According to Walgreens, the Prime Plans' suit is a direct result of Prime's alleged breach of the 2008 Agreement. (*Id.* ¶ 69). It argues that Prime "necessarily will have breached its obligations under Section 3.3" if Plaintiffs' claims ultimately have merit, (*id.* ¶ 298), resulting resulted from Prime's (1) "[f]ailing to inform the Prime Plans of Walgreens' actual U&C reporting obligations," (2) "[f]ailing to inform the Prime Plans for over a decade that Walgreens does not in fact include PSC pricing in its U&C reporting," and (3) "[f]ailing to inform the Prime Plans of Prime's own understanding of Walgreens' U&C reporting obligations," (*id.* ¶ 299). As such, Walgreens maintains that it is entitled to "**full** contribution from Prime" for "**any** liability" Walgreens might have to the Prime Plans in the underlying suit. (*Id.* ¶ 15 (emphasis added); *see also, e.g.*, *id.* ¶ 76 ("Should the Walgreens Parties be held liable to

Plaintiffs . . . [they] will be entitled to contribution from Prime for **all** liability the Walgreens Parties are found to owe the Prime Plans.") (emphasis added)).[1]

Walgreens further alleges under Section 8.2 of the 2008 Agreement, Prime must indemnify Walgreens for the Prime Plans' claims against Walgreens in this litigation. (Dkt. 151 ¶¶ 292–319). Section 8.2 provides as follows:

> **Indemnification by Prime.** Prime agrees to defend, indemnify and hold Pharmacy [Walgreens] harmless from and against all claims or suits asserted by a third party(ies) and related losses, damages and expenses, including but not limited to reasonable attorneys' fees, costs and expenses <u>to the extent they are arising out of or resulting from Prime's breach of or any negligent act or omission of Prime relating to this Agreement</u>.

(Dkt. 151-1 at 19 (emphasis added)). Prime "unequivocally refuse[d] to indemnify Walgreens for any attorneys' fees, court costs, other litigation costs, damages, fines, penalties, or other monetary relief related to Prime's role" as a PBM. (Dkt. 151 ¶ 72; *see also* Dkt. 151-3 at 2). As such, Walgreens alleges that Prime has anticipatorily repudiated its contractual indemnification obligations. (Dkt. 151 ¶ 73). Walgreens ultimately filed a TPC against Prime on July 26, 2021, bringing counts for contribution under state laws and common law (Counts I–X), (*id.* ¶¶ 74–291); a declaration of Prime's indemnity obligations under the 2008 Agreement (Count XI), (*id.* ¶¶ 292–305); and Prime's anticipatory repudiation of those obligations (Count XII) (*id.* ¶¶ 306–19).

---

[1] Walgreens' TPC repeatedly suggests that Prime should be held responsible for "any" liability found against Walgreens in the underlying suit. (*E.g.*, Dkt. 151 ¶¶ 11 ("If . . . the Prime Plans truly believed . . . that they were entitled to and were receiving [U&C prices that included PSC pricing], they were badly misled by Prime."); 14 ("Prime's misrepresentations to and deception of the Prime Plans regarding Walgreens' U&C reporting obligations and practices were the proximate cause of **any** harm the Prime Plans may have incurred." (emphasis added)); 47 ("Prime itself is **wholly to blame** for **any** purported misapprehension by the Prime Plans regarding Walgreens' U&C obligations and practices." (emphasis added)); 48 ("Prime is the **only plausible source of any delusion** on behalf of the Prime Plans that they were entitled to and received [U&C prices that included PSC pricing]." (emphasis added)); 59 ("If the Prime Plans mistakenly believed they were getting Walgreens' [U&C prices that included PSC pricing], that misunderstanding . . . certainly did not come from Walgreens."); 64 ("Prime is the chief intervening proximate cause of **any** harm [the Prime Plans] incurred." (emphasis added))).

## WALGREENS' MOTION TO STRIKE

On July 26, 2021, Walgreens brought a Counterclaim alleging that Plaintiffs are aiding and abetting Crowell's breach of fiduciary duties to Walgreens as Walgreens' former attorneys. (*See* Dkt. 149 at 179–202). Shortly thereafter, Plaintiffs filed a "Motion for Qualification of Counsel" (the "Motion"). (Dkt. 158). This Motion seeks an order from the Court setting forth that Crowell is qualified to serve as Plaintiffs' attorneys in this case on the grounds that (1) Crowell has no conflict of interest under Rule 1.9 of the ABA Model Rules of Professional Conduct, and (2) Walgreens has "waived, forfeited and relinquished any right to claim to the contrary." (Dkt. 160 at 2–3). Walgreens moved to strike the Motion, arguing, among other things, that it is incognizable under the Federal Rules and amounts to a request for an advisory opinion. (*E.g.*, Dkt. 163 ¶ 9 ("There is no such thing as a 'motion to qualify,' and Walgreens has not moved to disqualify Crowell.")). In opposition, Plaintiffs maintain that their Motion is procedurally proper, (Dkt. 183 at 7–10), and presents a justiciable question to the Court, (*id.* at 1 ("The parties and the Court should not be left in limbo with an accusation of ethical impropriety and the related threat of a motion to disqualify looming over the proceedings."), 10–12).

Plaintiffs suggest that "motions to qualify" are logical extensions of, or alternatives to, motions to disqualify. (*E.g.*, Dkt. 183 at 7 ("[T]he Court's inherent power to address conflict issues does not depend on *who* brings the issue to the attention of the Court or *how* it is brought to the Court's attention." (emphasis in original)); 9 ("A Motion to Qualify invokes precisely the same judicial authority as a Motion to Disqualify. . . . [T]he cases . . . leave no doubt that a Rule 1.9 conflict issue may properly be raised by Motion to Qualify or its equivalent.")). Plaintiffs further opine:

> The time-honored way to address a claim of conflict of interest is by filing a timely Motion to Disqualify. But if the party claiming the conflict does not bring a Motion

> to Disqualify, the issue may be brought to the Court's attention by any attorney, and certainly by a party or parties whose counsel is accused of acting improperly by representing them in the case. . . . Given the attorneys' ethical obligation to bring such matters to the Court's attention, it must be equally clear that counsel can do so in order to defend its own right to appear in the action, as well as to question its opponent's right to do so.

(*Id.* at 4–5). However, this assertion is not borne out by the law. Plaintiffs fail to cite a single case in which a court directly ruled on a preemptive motion to qualify akin to the Motion presently before the Court. For instance, Plaintiffs point to the Seventh Circuit's decision in *Schiessle v. Stephens*, 717 F.2d 417 (7th Cir. 1983) as support for their requested relief. While it is true that plaintiffs' law firm in that matter requested a "declaration of qualification as counsel," the issue in that case centered on defense counsel's cross-motion to disqualify. *Id.* at 419. There, the Seventh Circuit affirmed the district court's order of disqualification and said nothing about the propriety of plaintiffs' motion to qualify as a standalone motion. *See generally id.* Plaintiffs also refer the Court to dicta contained in *Healy v. Axelrod Const. Co. Defined Ben. Pension Plan & Tr.*, 155 F.R.D. 615 (N.D. Ill. 1994) (stating that a party "would have been well advised to early on seek an order regarding its qualification"). No motion to qualify was filed – let alone ruled upon – in that case, however, and so offers no support to Plaintiffs' claims here. *Id.* at 622. The other cases Plaintiffs cite are from outside this jurisdiction and are not on-point for similar reasons as *Schiessle* and *Healy*. *See Classic Indus., LP v. Mitsubishi Chem. FP Am., Inc.*, No. 3:07-cv-1201, 2009 WL 10677531, at *1–3 n.1 (N.D. Tex. Feb. 17, 2009) (applying legal standard for motions to disqualify; <u>party filed a motion to disqualify</u> "as a precaution 'to cure any procedural deficiencies or ripeness issues resulting from [opposing party's] preemptive qualification motion' "); *Eng'd Prods. Co. v. Donaldson Co., Inc.*, 290 F. Supp. 2d 974, 975 (N.D. Iowa 2003) (applying legal standard for disqualification motions; <u>cross-motion to disqualify counsel filed</u>); *NFC, Inc. v. Gen. Nutrition, Inc.*, 562 F. Supp. 332 (D. Mass. 1983) (same); *United States v. Standard Oil Co.*, 136

F. Supp. 345, 348 (S.D.N.Y. 1955) (same). Furthermore, the Court is unable to find any cases ruling on a motion to qualify counsel absent a cross-motion to disqualify, nor precedent otherwise recognizing the use of motions to qualify as procedurally sound.

In contrast to Plaintiffs' "motion to qualify," there is an extensive body of law governing motions to disqualify which is instructive here. (*Cf., e.g.*, Dkt. 160 at 15 (Plaintiffs' Motion setting forth legal framework for motions to disqualify)). Critically, the appropriate party to raise a conflict of interest issue through a motion to disqualify is "**the party that relevant rules of professional conduct were intended to protect**, that is, the current or former clients of the attorney." *E.g.*, *Perkins v. Cook Cnty.*, No. 09-cv-4930, 2010 WL 747570, at *2 (N.D. Ill. Mar. 2, 2010). *See also Thomas Betts Corp. v. Panduit Corp.*, No. 93-cv-4017, 1995 WL 319635, at *2 (N.D. Ill. May 25, 1995) (same). *Cf. Matter of Sandahl*, 980 F.2d 1118, 1121 (7th Cir. 1992) (noting that a party had no standing to enforce its opponent's right to the loyalty of counsel); *Lavaja v. Carter*, 153 Ill. App. 3d 317, 326 (1987) ("[Defendant] would have had no standing to challenge [attorney's] ability to represent both [plaintiffs and third-party defendants] without showing that this representation adversely affected his interest."); *Evink v. Pekin Ins. Co.*, 122 Ill.App.3d 246, 250 (1987) (stating same).

The American Bar Association's Model Rules of Professional Conduct generally govern the professional responsibilities of lawyers appearing before this Court. *See* N.D. Ill. L.R. 83.50. As relevant here, Model Rule 1.9 prohibits a lawyer from "represent[ing] another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of [the lawyer's] former client." Plaintiffs' motion concedes that it is *Walgreens'* right to loyal counsel that is potentially at stake. (*See generally* Dkt. 158 at 15–22). Further, the crux of Plaintiffs' argument is that *Walgreens'* rights are not being violated through Crowell's

representation of Plaintiffs. (*Id.* at 15–16). Thus, although Plaintiffs' motion is stylized as a "motion to qualify" purporting to protect Plaintiffs' own interests – it effectively places *Walgreens'* rights under the Model Rules at issue. The motion forces Walgreens into a position of having to preemptively justify why Crowell should in fact be *disqualified* pursuant to the Rules of Professional Conduct, and therefore places a "heavy burden" of proof on Walgreens that it has not yet sought out. *E.g.*, *PsyBio Therapeutics v. Corbin*, No. 20-cv-3340, 2021 WL 122713, at *1–2 (N.D. Ill. Jan. 13, 2021). Plaintiffs appear to be aware that this would be the ultimate result of their motion. (Dkt. 158 at 15 (setting forth legal standard for disqualification and suggesting that Walgreens should bear its burden because they have alleged wrongdoing by Crowell)). Yet just as Plaintiffs would have no standing to bring a motion to disqualify their own counsel to probe the scope of Walgreens' rights, *see Sandahl*, 980 F.2d at 1121, it cannot utilize the procedural tactic now before the Court to effectively do the same.

Review of the standard courts apply to motions for disqualification further highlights that Plaintiffs' preemptive motion is improper. Motions to disqualify are generally disfavored because disqualification "deprives a party of the representative of their choosing." *See, e.g.*, *PsyBio*, 2021 WL 122713, at *1–2 (quoting *RMB Fasteners, Ltd. v. Heads & Threads Int'l, Inc.*, 11-cv-2071, 2012 WL 245124, at *2 (N.D. Ill. Jan. 25, 2012)). They are "viewed with extreme caution for they can be misused as techniques of harassment." *Freeman v. Chi. Musical Instrument Co.*, 689 F.2d 715, 722 (7th Cir. 1982). Disqualification of an attorney is a "drastic measure which courts should hesitate to impose except when <u>absolutely necessary</u>." *Watkins v. Trans Union, LLC*, 869 F.3d 514, 519 (7th Cir. 2017) (emphasis added) (quoting *Freeman*, 689 F.2d at 719); *Owen v. Wangerin*, 985 F.2d 312, 317 (7th Cir. 1993); *Schiessle*, 717 F.2d at 419–20; *see also, e.g.*, *PsyBio*, 2021 WL 122713, at *1–2; *Bonds v. City of Chi.*, 451 F. Supp. 3d 900, 902 (N.D. Ill. 2020). Because of this,

14

parties seeking disqualification bear a heavy burden of proving facts required for disqualification under the Model Rules of Professional Conduct. *See, e.g.*, *Moore v. Club Exploria, LLC*, No. 19-cv-2504, 2021 WL 260227, at *8 (N.D. Ill. Jan. 26, 2021); *PsyBio*, 2021 WL 122713, at *1–2; *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, No. 10-cv-715, 2011 WL 1748607, at *5 (N.D. Ill. May 5, 2011). Even further, courts exercise discretion in deciding motions to disqualify. *Ross v. United States*, 910 F.2d 1422, 1432 (7th Cir. 1990); *see also, e.g.*, *Taylor v. Cook Cnty. Sherrif's Off.*, No. 13-cv-1856, 2020 WL 1047053, at *1 (N.D. Ill. Mar. 4, 2020). As such, even where an ethical violation *has* occurred, disqualification is not guaranteed. *See, e.g.*, *Singer v. PrimeSource Health Grp., LLC*, No. 17-cv-2127, 2018 WL 3036955, at *5 (N.D. Ill. June 19, 2018) (noting that "the court then determines whether disqualification is appropriate" when a violation is found); *Met. Life Ins. Co. v. Guardian Life Ins. Co. of Am.*, No. 06-cv-5812, 2009 WL 1439717, at *5 (N.D. Ill. May 18, 2009) ("[I]t is well-settled that disqualification does not flow automatically from a finding that a law firm violated a conflict of interest (citing *Schiessle*, 717 F.2d at 420)); *SWS Fin. Fund A*, 790 F. Supp. 1392, 1400 (N.D. Ill. 1992) (disqualification because of an ethical violation "is never automatic"). Plaintiffs' motion would wrongly require Walgreens to sustain this burden of proof even though it has not brought a motion to disqualify – opting instead to vindicate its claimed rights by other means, namely claims for breach of fiduciary duties and aiding and abetting the same.

In light of the foregoing, Plaintiffs' otion is not properly before the Court. There is no case law to suggest that a "motion to qualify" such as Plaintiffs' is recognized under the Federal Rules. Moreover, the motion would flip the legal standard governing disqualification on its head – effectively forcing Walgreens to argue a motion to disqualify that it has not brought and may never

bring. Accordingly, Walgreens' motion [163] is granted. Plaintiffs' Motion for Qualification of Counsel (Dkt. 158) and the accompanying filings, (Dkt. 159–161), are hereby stricken.

## PLAINTIFFS' AND PRIME'S MOTIONS TO DISMISS

### I. Legal Standard

"To survive a motion to dismiss under 12(b)(6), a complaint must 'state a claim to relief that is plausible on its face.' " *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams*, 742 F.3d at 728 (quoting *Ashcroft v. Iqbal*, 566 U.S. 662, 678 (2009)). "[I]t is not enough for a complaint to *avoid foreclosing* possible bases for relief; it must actually *suggest* that the plaintiff has a right to relief . . . by providing allegations that 'raise a right to relief above the speculative level.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 777 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555) (emphasis in original). The Court construes the complaint "in the light most favorable to the nonmoving party, accept[s] well-pleaded facts as true, and draw[s] all inferences in her favor." *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). "[L]egal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 566 U.S. at 678).

### II. Plaintiffs' Motion to Dismiss Walgreens' Counterclaim

Under Illinois law, an aiding and abetting claim has three elements: "(1) the party whom the defendant aids performed a wrongful act causing an injury, (2) the defendant is aware of his role when he provides the assistance, and (3) the defendant knowingly and substantially assisted the violation." *Fifth Third Mortg. Co. v. Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019) (citing

*Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir. 2006)); *see also, e.g.*, *Thornwood, Inc. v. Jenner & Block*, 799 N.E.2d 756, 767 (Ill. App. Ct. 2003); *Overwell Harvest Ltd. v. Widerhorn*, No. 17-cv-6086, 2019 WL 398700, at *6 (N.D. Ill. Jan. 31, 2019). Here, Walgreens claims that Plaintiffs have aided and abetted Crowell's breach of fiduciary duties under applicable rules of professional conduct. (*E.g.*, Dkt. 149 at 194 ¶ 79, 200 ¶ 101). In particular, Crowell is alleged to have taken a materially adverse position to Walgreens in a matter that is substantially related to its prior representation of Walgreens. (*Id.* at 194 ¶¶ 76–77). For their part, Plaintiffs now allegedly aid and abet this breach by "allowing, encouraging, compensating, and facilitating Crowell's representation of Plaintiffs in these actions." (*Id.* at 201 ¶ 109). Plaintiffs counter that Walgreens failed to state an aiding and abetting claim because Walgreens has not alleged facts suggesting that the Plaintiffs *knowingly* assisted in Crowell's purported breach. (Dkt. 192 at 5 ("Plaintiffs focus here on element 3 – the knowledge element – which Walgreens has failed to, and cannot, sufficiently plead.")). In Plaintiffs' view, Walgreens has only pled that Plaintiffs knew of an *alleged* breach of fiduciary duties which is insufficient to survive a motion to dismiss. (*Id.* at 9–13).

The Counterclaim alleges that Plaintiffs are "well aware" that Crowell's activity in this litigation is in violation of rules of professional conduct, and that Plaintiffs are "knowingly supporting and furthering" this misconduct. (Dkt. 149 ¶ 3; *see also id.* ¶¶ 20 (stating that Plaintiffs "undoubtedly" knew about Crowell's conflict of interest by April 2021), 84 ("Plaintiffs certainly know of Crowell's breaches."), 108 ("Plaintiffs know that Crowell is breaching its fiduciary duties to Walgreens.")). Walgreens opines that Plaintiffs learned of Crowell's breach through at least one of several alternative ways – including (a) from Crowell, which had an ethical obligation to inform Plaintiffs of this conflict of interest, (b) from extensive, national press coverage of

17

Walgreens' lawsuit against Crowell detailing the firm's breaches, and (c) from Walgreens itself, when Walgreens alerted Plaintiffs to Crowell's breaches. (*Id.* ¶¶ 83–97; *see also* Dkt. 204 at 8–9). These allegations, accepted as true, are sufficient to state a claim against Plaintiffs on an aiding and abetting theory. *See Hefferman*, 467 F.3d at 602 (reversing dismissal of aiding and abetting claim, finding allegation in complaint that defendant's participation in the underlying misconduct "was knowing and intentional" sufficient; explaining that knowledge is "permit[ted] to be alleged generally"). The *Hefferman* Court further noted that the knowledge element in an aiding and abetting claim can be alleged generally even under the heightened Rule 9 pleading standard for fraud actions – which does not apply in the present case, where no fraud claims are alleged. *Id.*, *See also, e.g.*, *Damian v. Courtright*, No. 21-cv-1694, 2021 WL 3144447, at *6 (N.D. Ill. July 26, 2021) (denying motion to dismiss aiding and abetting claim; "[w]hile Defendants assert that the complaint does not sufficiently allege the elements of knowledge and awareness, such elements may be alleged generally even under Rule 9(b)" (citing *Hefferman*, 467 F.3d at 601–02)); *PLB Invs. LLC v. Heartland Bank & Trust Co.*, No. 20-cv-1023, 2021 WL 492901, at *9 (N.D. Ill. Feb. 9, 2021) ("To state an aiding and abetting claim . . . . Plaintiffs may allege [Defendant's] knowledge generally.") (citing *Hefferman*, 467 F.3d at 601–02)); *Santore v. Swaminathan*, No. 17-cv-5742, 2018 WL 1124414, at *5 (N.D. Ill. Mar. 1, 2018) ("To the extent [Defendant] argues that Plaintiffs failed to allege his intent or knowledge with specificity, even under Rule 9(b) a plaintiff may plead a person's scienter generally." (citing *Hefferman*, 467 F.3d at 601)); *Gondeck v. A Clear Title & Escrow Exch., LLC*, No. 11-cv-6341, 2012 WL 5200091, at *4 (N.D. Ill. Oct. 22, 2012) (denying motion to dismiss aiding and abetting fraud claim where complaint "allege[d] that [defendant] was aware [of underlying misconduct by a third party] and yet failed to take any action to stop [it]").

Plaintiffs maintain that "[k]nowing of an *accusation* [of Crowell's breach of duties] is far different from knowing that the accusation is correct, either legally or factually" so as to satisfy the actual knowledge requirement. (Dkt. 192 at 10 (emphasis added)). However, neither one of the cases Plaintiffs cite for this point were decided on a motion to dismiss. *See BPI Energy Holdings, Inc. v. IEC (Montgomery), LLC*, 664 F.3d 131, 135 (7th Circ. 2011) (addressing a motion for summary judgment); *Man-Seok Choe v. Torres*, 525 F.3d 733 (9th Cir. 2008) (ruling on a habeas corpus appeal). Moreover, this argument raises a factual issue that is unfitting for a motion to dismiss. Walgreens has alleged that Plaintiffs knew of Crowell's fiduciary breach as Walgreens' former counsel, and Walgreens has provided a basis for that allegation by pointing to several ways in which Plaintiffs plausibly may have gained such knowledge. Walgreens need not plead more detail with respect to Plaintiffs' knowledge; rarely will a litigant be able to do so without the benefit of discovery. *See, e.g., Lansing v. Carroll*, 71 F. Supp. 3d 765, 772 (N.D. Ill. 2014) ("Where pleadings concern matters peculiarly within the knowledge of the defendants, conclusory pleading . . . should be liberally viewed" (citing *Brown v. Budz*, 398 F.3d 904, 914 (7th Cir. 2005))); *Trading Techs. Int'l, Inc. v. BCG Partners, Inc.*, 2011 WL 3946581, at *3 (N.D. Ill. Sept. 2, 2011) ("[T]he Court must be 'realistic' as to what [plaintiffs] could plead at [the motion to dismiss stage] . . . especially with respect to what another party knew.") (citing *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)); *Fed. Deposit Ins. Corp. v. Parzygnat*, No. 10-cv-7038, 2011 WL 3704731, at *8 (N.D. Ill. Aug. 23, 2011) ("Discovery is the best vehicle for exposing the veracity of [defendant's] argument that she lacked knowledge."). *Cf. Wilson v. Ryker*, 451 Fed. App'x 588, 590 (7th Cir. 2011) ("[I]n federal court under Rule 8, the rules are simple: Notice is what counts. Not facts; not elements of 'causes of action'; not legal theories.' ") (citing *Hefferman*, 467 F.3d at 600); *see also, e.g., Love. v. Ill. Dep't of Corr.*, No. 18-cv-6084, 2020 WL 1237200, at *7 (N.D.

Ill. Mar. 13, 2020) ("Plaintiffs 'need not lard their complaints with facts' . . . . Notice pleading suffices, and it is enough to plead knowledge 'generally.' ") (citing *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009)).  At this stage in the litigation, Walgreens need only *plausibly allege* Plaintiffs' actual knowledge.  Walgreens has met that burden.  Accordingly, Plaintiffs' motion [187] is denied.

### III.  <u>Prime's Motion to Dismiss Walgreens' Third-Party Complaint</u>

Walgreens brings several counts against Prime for contribution and indemnification for Prime's alleged role in "defraud[ing], misle[ading], and unfairly caus[ing] the Prime Plans' supposed injuries" in the underlying Complaint. (*See, e.g.*, Dkt. 151 ¶ 77).  Prime moves to dismiss the TPC pursuant to Rule 12(b)(1) on ripeness grounds and Rule 12(b)(6) for failure to state a claim. (*See generally* Dkt. 191).  For the following reasons, Prime's motion is granted.

#### A.  **Contribution Claims**

Counts I–IX assert contribution claims under the laws of nine states – each of which, with one exception discussed below, provide that the right to contribution exists only between <u>joint tortfeasors</u>. (*See* Dkt. 191 at 7).  For example, Count I asserts a claim for contribution under the Illinois Joint Tortfeasor Contribution Act (the "Illinois Contribution Act").  (Dkt. 151 at 21–26). The Illinois Contribution Act provides that "where [two] or more persons are subject to liability in tort arising out of the same injury . . . there is a right of contribution among them."  740 ILCS 100/2(a).  The law clarifies that "[t]he right of contribution exists <u>only</u> in favor of a tortfeasor who has paid more than his pro rata share of the <u>common liability</u>."  *Id.* § 2(b) (emphasis added).  *See also Muirfield Vill-Vernon Hills, LLC v. K. Reinke, Jr. & Co.*, 810 N.E.2d 235, 245 (Ill. App. Ct. 2004) (explaining that a party seeking contribution must allege that "it and the defendant in contribution are <u>both subject to liability in tort to the injured party</u>" (emphasis added)).  The other

state laws properly invoked by Walgreens here also require litigants to allege common liability to prevail on contribution claims.[2]  In addition, Walgreens does not contest that these laws plainly require it to plead common liability.

Prime moves to dismiss these claims on the basis that the TPC purports to shift <u>all</u> blame for the underlying lawsuit on to Prime.  (*See* Dkt. 191 at 5 ("Walgreens' allegations make clear that it is not seeking contribution from Prime—rather, it is attempting to evade liability entirely. . . . Contribution is a mechanism to split liability among joint tortfeasors, but Walgreens claims that the blame belongs to Prime alone.")).  In response, Walgreens maintains that it "specifically pleaded" that Prime "would be liable to [Walgreens] for Prime's *pro rata* share of the injury jointly caused."  (Dkt. 202 at 5 (citing Dkt. 151 ¶¶ 76, 97, 119, 141, 163, 185, 207, 229, 251, 272)).  However, the very allegations contained in Walgreens' TPC cited in support of this claim plainly controvert Walgreens' position.  Those paragraphs repeatedly state the following: "Should the Walgreens Parties be held liable to Plaintiffs . . . the Walgreens Parties will be entitled to contribution from Prime for **<u>all liability</u>** the Walgreens Parties are found to owe the Prime Plans." (*See, e.g.*, Dkt. 151 ¶ 76 (emphasis added)).  Several other allegations in the TPC would similarly place all liability on to Prime's shoulders.  Indeed, Walgreens pleaded that it is entitled to "**<u>full</u>** contribution from Prime" for "**<u>any</u>** liability" Walgreens might have to the Prime Plans in the underlying suit.  (*Id.* ¶ 15 (emphasis added); *see also, e.g.*, *id.* ¶¶ 11 ("If . . . the Prime Plans truly believed . . . that they were entitled to and were receiving [U&C prices that included PSC pricing],

---

[2] *See* N.J. Stat. Ann. 2A:53A-1, 2 (**Count II**) ("The right of contribution exists among joint tortfeasors," who are "two or more persons jointly or severally liable in tort"); N.C. Gen. Stat. Ann. § 1B-1(a) (**Count III**) ("[W]here two or more persons become jointly or severally liable in tort for the same injury . . . there is a right of contribution among them"); N.D. Cent. Code Ann. § 32-38-01(1) (**Count IV**) ("[I]f two or more persons become jointly or severally liable in tort for the same injury . . . there is a right of contribution"); Fla. Stat. Ann. § 768.31(2)(a) (**Count V**) ("[W]hen two or more persons become jointly or severally liable in tort . . . there is a right of contribution"); Idaho Code § 6–803(4) (**Count VI**) (defining joint tortfeasors as "two [] or more persons jointly or severally liable in tort"); Wash. Rev. Code Ann. § 4.22.040(1) (**Count VIII**) (same); Or. Rev. Stat. Ann. § 31.800(1) (**Count IX**) (same).

they were badly misled by Prime."); 14 ("Prime's misrepresentations to and deception of the Prime Plans regarding Walgreens' U&C reporting obligations and practices were the proximate cause of **any** harm the Prime Plans may have incurred." (emphasis added)); 47 ("Prime itself is **wholly to blame** for **any** purported misapprehension by the Prime Plans regarding Walgreens' U&C obligations and practices." (emphasis added)); 48 ("Prime is the **only plausible source of any delusion** on behalf of the Prime Plans that they were entitled to and received [U&C prices that included PSC pricing]." (emphasis added)); 59 ("If the Prime Plans mistakenly believed they were getting Walgreens' [U&C prices that included PSC pricing], that misunderstanding . . . certainly did not come from Walgreens."); 64 ("Prime is the chief intervening proximate cause of **any** harm [the Prime Plans] incurred." (emphasis added))). These allegations simply do not rise to allegations of common liability as is required under the relevant statutes. As such, Counts I–VI and VIII–IX must be dismissed for failure to state a claim.

Count VII invokes the Kansas contribution law, Kan. Stat. Ann. § 60–2413. The Kansas law only allows contribution for "[p]ersons jointly liable to another in contract" or "among judgment debtors." *Id.* Because Walgreens has not alleged mutual contractual liability in this case, and because Prime and Walgreens are not judgment debtors, Prime argues that Count VII must be dismissed. (Dkt. 191 at 9; Dkt. 207 at 5–6). Walgreens does not seriously contest this. (*See* Dkt. 191 at 9). Because the Kansas law does not establish contribution claims for joint tortfeasors – or parties otherwise in Prime and Walgreens' current position – Count VII must be dismissed.

Finally, Count X pleads contribution under common law, in the most general terms. (Dkt. 151 ¶¶ 270–91). Walgreens does not specify precisely what common law it purports to invoke – for example, federal common law or that of the states. (*See generally id.*; *see also* Dkt. 191 at 11

22

(arguing for dismissal of Count X because "no general federal common-law right to contribution exists")). Walgreens clarifies in its Opposition brief that Count X "invokes the common law of certain *states* whose law may govern parts of the Walgreens Parties' contribution claims under choice of law rules." (Dkt. 202 at 11 (citing case law from Nebraska, Kansas, and Minnesota state courts) (emphasis in original)). Even still, Walgreens fails to explain *which* state common laws support its claim beyond alluding to the states including in its string cite. In any case, Count X must be dismissed because common liability is an essential element for contribution claims in Nebraska, Minnesota, and Kansas, and Walgreens fails to allege common liability between itself and Prime. *Unified Sch. Dist. 467 v. Leland A. Gray Architects, LLC*, 112 F. Supp. 3d 1223, 1228–29 (D. Kan. 2015) ("Comparative implied indemnity is an equitable remedy available to a tortfeasor among other tortfeasors, who by settling with the plaintiff or paying a judgment, pays the other tortfeasors' share of liability."); *Harsh Int'l, Inc. v. Monfort Indus., Inc.*, 662 N.W.2d 574, 579 (Neb. 2003) ("A common liability is a necessary requirement for securing contribution."); *Nuessmeier Elec., Inc. v. Weiss Mfg. Co.*, 632 N.W.2d 248, 251 (Minn. Ct. App. 2001) ("The essential elements of a contribution claim [include] common liability of two or more actors to the injured party."). Walgreens therefore fails to adequately plead contribution under common law. Count X is therefore dismissed.

### B. Indemnification Claims

Through Counts XI and XII, Walgreens seeks to enforce its indemnification rights under its contract with Prime. (Dkt. 151 ¶¶ 292–319). Courts in this Circuit "regularly say that decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir.2003). *See also Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 538 (7th Cir. 2006) ("[A] dispute about an insurer's duty

to indemnify generally is not ripe for decision until the insured has been called on to pay."); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) ("Illinois treats arguments about the duty to indemnify as unripe until the insured has been held liable."); *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir.1995) ("[T]he duty to indemnify is not ripe for adjudication until the insured is in fact held liable in the underlying suit."); *Travelers Ins. Cos. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir.1992) ("[T]he determination of whether [defendant] has a duty to indemnify is not ripe until the underlying litigation is terminated."); *see also, e.g.*, *Covington Specialty Ins. Co. v. U.S. Venture, Inc.*, No. 20-cv-6177, 2021 WL 1428474, at *3 (N.D. Ill. Apr. 15, 2021) (citing *Lear Corp.*, 353 F.3d at 583) (dismissing counterclaim for indemnification without prejudice where defendants' liability had not been established); *Continental Casualty Co. v. Duckson*, 826 F. Supp. 2d 1086, 1103 (N.D. Ill. 2011) (same). In this case, Walgreens has yet to incur any actual liability in the underlying case. Thus, the issue of indemnification is premature. Therefore, Prime's motion to dismiss as it pertains to the duty to indemnify is granted. (*See* Dkt. 191 at 18–19; Dkt. 207 at 12–15).

## CONCLUSION

For the foregoing reasons, Walgreens' Motion to Strike [163] is granted, and Plaintiff's Motion and accompanying filings, (Dkts. 158–61), are hereby stricken; Plaintiffs' Motion to Dismiss Walgreens' Counterclaim [187] is denied; and Prime's Motion to Dismiss Walgreens' Third-Party Complaint [188] is granted.

Virginia M. Kendall
United States District Judge

Date: February 9, 2022

24