# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **BCBSM, INC.**, *et al.*, | ) | Case No. 1:20-cv-01853 |
| | ) | |
| Plaintiffs, | ) | Honorable Virginia M. Kendall |
| | ) | Honorable Sheila M. Finnegan |
| v. | ) | |
| | ) | |
| **WALGREEN CO.**, *et al.*, | ) | *Consolidated with*: |
| | ) | No. 1:20-cv-01929 |
| Defendants. | ) | No. 1:20-cv-03332 |
| | ) | No. 1:20-cv-04738 |
| | ) | No. 1:20-cv-04940 |

## PLAINTIFFS' ANSWER AND AFFIRMATIVE
## DEFENSES TO DEFENDANTS' COUNTERCLAIM

Plaintiffs,[1] by and through their undersigned counsel, hereby file their answer to the

Verified Counterclaim (ECF No. 149) submitted by Defendants Walgreen Co. ("Walgreens") and

Walgreens Boots Alliance, Inc. ("WBA" and, together with Walgreens, "Defendants"), as follows:

---

[1] Plaintiffs consist of: BCBSM, Inc. (d/b/a Blue Cross and Blue Shield of Minnesota); HMO Minnesota (d/b/a Blue Plus); Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue); Health Options, Inc. (d/b/a Florida Blue HMO); Blue Cross and Blue Shield of North Carolina; Blue Cross and Blue Shield of North Dakota; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Nebraska, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa); Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.; Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey); Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health); HealthNow New York Inc.; BlueCross BlueShield of Western New York, Inc. (f/k/a Blue Cross of Western New York); BlueShield of Northeastern New York; Blue Cross and Blue Shield of Arizona, Inc. (d/b/a BlueCross BlueShield of Arizona and d/b/a AZ Blue); Asuris Northwest Health; Blue Cross and Blue Shield of Kansas City; Cambia Health Solutions Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross and BlueShield of Oregon; Regence BlueCross and BlueShield of Utah; and Regence BlueShield of Washington (together, "Plaintiffs").

## **NATURE & SUMMARY OF THE ACTION**

1.  In 2008 and 2009, shortly after Walgreens launched its Prescription Savings Club ("PSC") nationwide, Walgreens hired Crowell & Moring LLP ("Crowell") for advice on whether the discounted prices offered to PSC members might impact the usual and customary ("U&C") prices Walgreens reported with its insurance reimbursement claims. As a result of that attorney-client relationship, Crowell owed its client, Walgreens, a fiduciary duty of loyalty—a duty that survives the termination of the attorney-client relationship and continues to bind Crowell today.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the

allegations set forth in ¶ 1 and, therefore, deny them.

2.  Astonishingly, Crowell now represents a group of health insurers accusing Crowell's client, Walgreens, of fraud related to the very subject matter of Crowell's prior legal advice to Walgreens: the effect of PSC prices on Walgreens' U&C reporting obligations. By cynically switching sides and bringing claims against its former client, Crowell breached (and is breaching) its fiduciary duties to Walgreens and has caused (and continues to cause) Walgreens significant harm.

**ANSWER:** Plaintiffs admit that the law firm of Crowell & Moring LLP represent the Plaintiffs

in the above-captioned case. Plaintiffs deny the remaining allegations in ¶ 2.

3.  Plaintiffs are well aware of these breaches by their Crowell attorneys; Plaintiffs are knowingly supporting and furthering Crowell's misconduct by continuing to retain the law firm over Walgreens' objections and in spite of an ongoing—and so far successful—lawsuit Walgreens filed against Crowell in Washington, D.C., where Crowell is headquartered and organized.

**ANSWER:** Plaintiffs admit that it has retained the law firm of Crowell & Moring LLP to represent

the Plaintiffs in the above-captioned case. Plaintiffs lack knowledge or information sufficient to

form a belief as to where Crowell is headquartered and organized and, therefore, deny these

allegations. Plaintiffs deny the remaining allegations in ¶ 3.

4.  Even if Crowell failed to notify Plaintiffs of its conflict of interest at the start of their relationship, as ethics rules required, Plaintiffs were put on notice of Crowell's breaches when Walgreens filed its pending suit against Crowell, and when the national legal press covered the lawsuit and the D.C. court's denial of Crowell's motion to dismiss it.

**ANSWER:** The allegations in ¶ 4 contain assertions of legal conclusions, to which no response

from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny

them.  Plaintiffs admit that they have become aware of Walgreens' lawsuit against Crowell in the Superior Court of the District of Columbia.  Plaintiffs deny the remaining allegations in ¶ 4.

5.      In addition, Walgreens sent Plaintiffs a letter dated July 8, 2021, documenting the conflict and requesting that Plaintiffs cease retaining Crowell to prosecute this action. By directing Crowell to prosecute these suits and paying Crowell to sue Walgreens, despite their knowledge of Crowell's misconduct, Plaintiffs knowingly aid and abet Crowell's ongoing breaches of its fiduciary duties. Plaintiffs are represented by competent non-Crowell Illinois counsel in this case and could reasonably proceed without the services of a law firm that represented Walgreens on the same subject matter at issue, during a period Plaintiffs themselves allege was pivotal to the alleged scheme and for which Plaintiffs expressly seek damages. Plaintiffs have refused to comply with Walgreens' request without explanation.

**ANSWER:**  Plaintiffs admit that they received a letter from Walgreens, dated July 8, 2021, that requested that Plaintiffs end their attorney/client relationship with Crowell & Moring LLP in the above-captioned.  Plaintiffs admit that Crowell continues to represent Plaintiffs in the above captioned case.  The allegations in ¶ 5 contain assertions of legal conclusions to which no response from Plaintiffs is required.  To the extent a response is required, Plaintiffs deny these allegations. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.  Plaintiffs deny the remaining allegations in ¶ 5.

## BACKGROUND

6.      Walgreens launched pilot versions of PSC in select markets in 2006 to make prescription drugs more affordable for uninsured and underinsured customers. Walgreens launched PSC nationwide in August 2008.

**ANSWER:**  Plaintiffs admit that Walgreens began operating its Prescription Savings Club ("PSC") in or around 2006.  Plaintiffs admit that, at some time thereafter, Walgreens began to operate the PSC program on a nationwide basis.  Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 6 and, therefore, deny them.

7.      In September 2008, just after the nationwide launch of PSC, Walgreens engaged lawyers from Crowell's headquarters office in Washington, D.C. Crowell is well known as a firm with significant health care industry expertise, including on reimbursement issues.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 7 and, therefore, deny them

8.      Walgreens specifically asked Crowell for legal advice regarding whether discounted prices it offered to PSC members would impact the U&C prices that Walgreens submits with its insurance reimbursement claims. To facilitate Crowell's advice, Walgreens provided Crowell with privileged and confidential information related to PSC and U&C, including Walgreens' own internal privileged legal analysis.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 8 and, therefore, deny them.

9.      ***That issue on which Crowell advised Walgreens is the central issue in this case, based on Plaintiffs' own complaint, signed by Crowell.*** Plaintiffs' pleadings in this case assert claims arising from and relating to the very subject matter of Crowell's legal advice to Walgreens. In fact, in their complaints Plaintiffs specifically allege events related to Walgreens' supposed fraud scheme that took place during the time when Crowell was advising Walgreens regarding U&C reporting and PSC prices. For example, in their operative complaint in this action [Dkt. 146] ("Complaint"), Plaintiffs describe the crucial initial strategy around PSC's creation and nationwide expansion in 2007 and 2008 (Complaint ¶¶ 7, 81–82), and Plaintiffs accuse Walgreens' investor relations division of making misleading statements about PSC beginning in 2008 (Complaint ¶ 97). Plaintiffs also seek damages dating back to the same time period. Plaintiffs even allege as a sample overcharge a specific transaction that occurred in September 2008—at the ***exact*** time Crowell was advising Walgreens on PSC and U&C (Complaint Exhibit 2 at 5).

**ANSWER:** Plaintiffs admit that they have filed the above-captioned lawsuit against Defendants for damages arising from Defendants' conduct with respect to Walgreens' PSC program. Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 9 and, therefore, deny those allegations.

10.     In October 2008, the State of Connecticut's Medicaid agency ("Connecticut Medicaid") questioned whether the state's regulations required Walgreens to submit its lower PSC prices as its U&C prices on reimbursement claims to Connecticut Medicaid. Once again, Walgreens engaged Crowell to advise on these issues and to review Walgreens' response to the state.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 10 and, therefore, deny them.

11.     After receiving Crowell's legal advice regarding its U&C price reporting obligations, and paying Crowell for that advice, Walgreens did not report, as its U&C prices, the discounted prices available exclusively to PSC members who affirmatively enrolled in PSC.

**ANSWER:**  Plaintiffs admit that Walgreens has consistently failed to report, as its U&C prices, the discounted prices available to PSC members.  Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 11 and, therefore, deny those allegations on that basis.

12.     Like Crowell, all of the major pharmacy benefit managers ("PBMs"), including Plaintiffs' affiliate and express agent Prime Therapeutics LLC ("Prime"), were fully aware that Walgreens and other national pharmacies did not report membership club and discount card prices as U&C. For more than a decade, the PBMs approved of, acquiesced in, consented to, and induced Walgreens' reliance with regard to its practice of *not* factoring PSC prices into its U&C reporting. Even if Plaintiffs' dubious claim of ignorance about Walgreens' U&C reporting practices were true, the knowledge and consent of Prime and the other PBMs is fully imputed to Plaintiffs as the principals in agency relationships with the PBMs.

**ANSWER:**  Plaintiffs deny the allegations in ¶ 12.

13.     Remarkably, despite all of this, Plaintiffs now claim to have only recently discovered Walgreens' industry-standard and contractually required practice of excluding PSC and other discount club prices from its reported U&C prices. With Crowell—Walgreens' former outside counsel—leading the charge and signing the complaints, Plaintiffs accuse Walgreens of fraud and seek hundreds of millions of dollars in supposed damages.

**ANSWER:**  Plaintiffs admit that they recently discovered Walgreens' conduct with respect to the PSC program and Walgreens' reporting of U&C prices.  This conduct is explained in detail in Plaintiffs' Second Amended Complaint in the above-captioned lawsuit, which is incorporated herein by reference.  Plaintiffs deny the remaining allegations in ¶ 13.

14.     Discovery will reveal whether Crowell brought the fraud theory to Plaintiffs, or *vice versa*. Either way, by no later than March 2020, Plaintiffs had engaged Crowell to represent them, as evidenced by pre-litigation demand letters from Crowell to Walgreens on certain Plaintiffs' behalf. Plaintiffs' engagement of Crowell triggered an intractable ethical conflict that Plaintiffs initially could have avoided simply by hiring a different law firm with similar expertise (one that had not advised Walgreens on the same topic) or later rectified by ending Crowell's representation and proceeding with another law firm—including one of the capable firms that have appeared as Illinois counsel for Plaintiffs here and for Health Care Service Corporation (the largest Blue Cross affiliate and Prime owner) in an identical action filed in the Circuit Court of Cook County.

**ANSWER:** Plaintiffs admit that the law firm of Crowell & Moring LLP represents Plaintiffs in the above-captioned lawsuit. Plaintiffs deny the remaining allegations in ¶ 14.

15. Under the American Bar Association ("ABA") Model Rules of Professional Conduct and the ethical rules adopted in the District of Columbia and Illinois, Crowell should have told Walgreens and Plaintiffs about its conflict of interest when Crowell took on Plaintiffs as clients in these suits, which happened no later than March 2020. Only after full disclosure and securing informed consent from both Walgreens and Plaintiffs (which Walgreens never would have provided) could Plaintiffs have properly retained Crowell to pursue these cases.

**ANSWER:** The allegations in ¶ 15 consist of legal conclusions to which no response is required. To the extent a response to these allegations is required, Plaintiffs deny them. Plaintiffs deny the remaining allegations in ¶ 15.

16. On February 19, 2021, Walgreens filed a replevin action against Crowell in the Superior Court of the District of Columbia. In that case, which was made public in March 2021, Walgreens sought the return of Crowell's files related to the "legal advice [it provided] to Walgreens in the fall of 2008 related to proposed modifications to PSC, as well as the possibility of offering other pharmacy discount cards to Walgreens' customers."

**ANSWER:** Plaintiffs admit that Walgreens has filed a lawsuit against Crowell & Moring LLP on or around February 19, 2021 in the Superior Court of the District of Columbia (the "DC Litigation"). Plaintiffs further admit that the lawsuit purports to seek the return of files related to Crowell's alleged prior representation of Walgreens. Plaintiffs deny the remaining allegations in ¶ 16. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

17. On April 6, 2021, Walgreens amended its complaint to assert that Crowell breached its fiduciary duties "through its current and continued representation of . . . health insurers [like Plaintiffs] against Walgreens regarding the same or substantially similar subject matter of Crowell's prior representation of Walgreens." Crowell presumably notified Plaintiffs regarding the lawsuit and Walgreens' allegations. In any event, the case was national news in the legal press.

**ANSWER:** Plaintiffs admit that Walgreens amended its complaint in the DC Litigation as described. The allegations in ¶ 17 contain allegations regarding Plaintiffs' privileged and confidential communications with its counsel, to which no response from Plaintiffs is required.

Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 17 and, therefore, deny those allegations.

18.     The D.C. suit (and Walgreens' amended complaint specifically) received significant coverage. For example, the National Law Journal twice reported on the action and specifically linked Walgreens' allegations regarding Crowell's breaches to Plaintiffs.

**ANSWER:**  Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 18 and, therefore, deny them.

19.     On July 8, 2021, Walgreens' counsel sent a cease and desist letter to Plaintiffs (through Crowell) documenting Crowell's ongoing breaches of its fiduciary duties and Plaintiffs' ongoing role in aiding and abetting the breaches.

**ANSWER:**  Plaintiffs admit that they received a letter through Crowell (Plaintiff's counsel), dated July 8, 2021, that was sent from Walgreens' counsel and that referenced the facts alleged in Defendants' Counterclaim.  The remaining allegations in ¶ 19 consist of legal conclusions to which no response from Plaintiffs is required.  To the extent a response to these allegations is required, Plaintiffs deny them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

20.     Although they should have known about Crowell's breaches by March 2020—and although they undoubtedly *did* know about Crowell's breaches no later than April of 2021— Plaintiffs continue to retain Crowell and to authorize, encourage, and assist Crowell in taking substantial steps to violate its fiduciary duties to Walgreens by pressing forward in this litigation. Notably, Plaintiffs are paying Crowell's fees or otherwise compensating Crowell financially for the express purpose of pursuing claims against Crowell's former client, on the subject matter of the law firm's prior representation.

**ANSWER:**  Plaintiffs admit that they continue to retain Crowell & Moring LLP as their counsel in the above-captioned case.  Plaintiffs further admit that they are compensating Crowell for its services in representing Plaintiffs.  The remaining allegations in ¶ 20 constitute assertions of legal conclusions or allegations directed at parties other than Plaintiffs, to which allegations no response is required from Plaintiffs.  To the extent a response to these allegations is required, Plaintiffs deny

them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

21.      By continuing to retain Crowell, pay Crowell for services that breach the law firm's duties to Walgreens, and actively assist Crowell in taking significant steps to prosecute this case on their behalf, Plaintiffs have knowingly aided and abetted (and continue to knowingly aid and abet) Crowell's breaches of its fiduciary duties to its former client, Walgreens. In this Verified Counterclaim, Walgreens seeks to recover damages for the injuries it has suffered and continues to suffer as a result of Plaintiffs' actions.

**ANSWER:**  Plaintiffs admit that they continue to retain Crowell & Moring LLP as their counsel in the above-captioned case.  Plaintiffs further admit that they are compensating Crowell for its services in representing Plaintiffs.  Plaintiffs further admit that Walgreens purports to recover damages for alleged injuries arising from Plaintiffs' alleged conduct.  The remaining allegations in ¶ 21 constitute either assertions of legal conclusions or allegations directed at parties other than Plaintiffs, to which no response is required from Plaintiffs.  To the extent a response to these allegations is required, Plaintiffs deny them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

## PARTIES

### A.      Plaintiffs / Verified Counterclaim Defendants

22.      Plaintiff / Verified Counterclaim Defendant BCBSM, Inc. (d/b/a Blue Cross and Blue Shield of Minnesota) ("BCBS of Minnesota") has represented in the Complaint that it is a Minnesota corporation with its principal place of business in Eagan, Minnesota.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 22.

23.      Plaintiff / Verified Counterclaim Defendant HMO Minnesota (d/b/a Blue Plus) ("HMO Minnesota") has represented in the Complaint that it is a Minnesota corporation with its principal place of business in Eagan, Minnesota.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 23.

24.      Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue) ("Florida Blue") has represented in the Complaint that it is a Florida corporation with its principal place of business in Jacksonville, Florida.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 24.

25.     Plaintiff / Verified Counterclaim Defendant Health Options, Inc. (d/b/a Florida Blue HMO) ("Florida Blue HMO") has represented in the Complaint that it is a Florida corporation with its principal place of business in Jacksonville, Florida.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 25.

26.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of North Carolina ("BCBS of North Carolina") has represented in the Complaint that it is a North Carolina corporation with its principal place of business in Durham, North Carolina.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 26.

27.     Plaintiff / Verified Counterclaim Defendant Blue Cross Blue Shield of North Dakota (f/k/a Noridian Mutual Insurance Company, d/b/a Blue Cross Blue Shield of North Dakota) ("BCBS of North Dakota") has represented in the Complaint that it is a North Dakota corporation with its principal place of business in Fargo, North Dakota.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 27.

28.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Alabama ("BCBS of Alabama") has represented in the Complaint that it is an Alabama corporation with its principal place of business in Birmingham, Alabama.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 28.

29.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Kansas, Inc. ("BCBS of Kansas") has represented in the Complaint that it is a Kansas corporation with its principal place of business in Topeka, Kansas.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 29.

30.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Nebraska, Inc. (d/b/a "Nebraska Blue") ("BCBS of Nebraska") has represented in the Complaint that it is a Nebraska corporation with its principal place of business in Omaha, Nebraska.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 30.

31.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Massachusetts, Inc. ("BCBS of Massachusetts") has represented in the Complaint that it is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 31.

32.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc. ("BCBS of Massachusetts HMO Blue") has represented in the

Complaint that it is a Massachusetts corporation with its principal place of business in Boston, Massachusetts.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 32. Plaintiffs further clarify that, as represented in the Second Amended Complaint (ECF No. 145) ¶ 194, BCBS of Massachusetts HMO Blue is a "charitable organization acting in furtherance of [its] core mission of providing Members with access to health care."

33. Plaintiff / Verified Counterclaim Defendant Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa) ("Wellmark") has represented in the Complaint that it is an Iowa corporation with its principal place of business in Des Moines, Iowa.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 33.

34. Plaintiffs / Verified Counterclaim Defendants Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; and Wellmark Value Health Plan, Inc. (collectively, "Wellmark of Iowa") has represented in the Complaint that they are Iowa corporations that each maintain a principal place of business in Des Moines, Iowa.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 34.

35. Plaintiff / Verified Counterclaim Defendant Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota) ("Wellmark of South Dakota") has represented in the Complaint that it is a South Dakota corporation with its principal place of business in Sioux Falls, South Dakota.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 35.

36. Plaintiff / Verified Counterclaim Defendant Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey) ("Horizon BCBSNJ") has represented in the Complaint that it is a New Jersey corporation with its principal place of business in Newark, New Jersey.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 36.

37. Plaintiff / Verified Counterclaim Defendant Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health) ("Horizon NJ Health") has represented in the Complaint that it is a New Jersey corporation with its principal place of business in Pennington, New Jersey.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 37.

38.     Plaintiff / Verified Counterclaim Defendant HealthNow New York Inc. ("HealthNow") has represented in the Complaint that it is a New York corporation with its principal place of business in Buffalo, New York.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 38.

39.     Plaintiff / Verified Counterclaim Defendant BlueCross BlueShield of Western New York, Inc. (f/k/a Blue Cross of Western New York) ("BCBS of Western New York") has represented in the Complaint that it is a New York corporation with its principal place of business in Buffalo, New York.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 39.

40.     Plaintiff / Verified Counterclaim Defendant BlueShield of Northeastern New York ("BS of Northeastern New York") has represented in the Complaint that it is a New York corporation with its principal place of business in New York, New York.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 40.

41.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Arizona, Inc. (d/b/a Blue Cross Blue Shield of Arizona and d/b/a AZBlue) ("BCBS of Arizona") has represented in the Complaint that it is an Arizona corporation with its principal place of business in Phoenix, Arizona.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 41.

42.     Plaintiff / Verified Counterclaim Defendant Asuris Northwest Health ("Asuris") has represented in the Complaint that it is a Washington corporation with its principal place of business in Seattle, Washington.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 42.

43.     Plaintiff / Verified Counterclaim Defendant Blue Cross and Blue Shield of Kansas City ("Blue KC") has represented in the Complaint that it is a Missouri corporation with its principal place of business in Kansas City, Missouri.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 43.

44.     Plaintiff / Verified Counterclaim Defendant Cambia Health Solutions, Inc. ("Cambia") has represented in the Complaint that it is an Oregon corporation with its principal place of business in Portland, Oregon.

**ANSWER:**  Plaintiffs admit the allegations contained in ¶ 44.

45.     Plaintiff / Verified Counterclaim Defendant Regence BlueShield of Idaho, Inc. ("RBSI") has represented in the Complaint that it is an Idaho corporation with its principal place of business in Lewiston, Idaho.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 45.

46.    Plaintiff / Verified Counterclaim Defendant Regence BlueCross and BlueShield of Oregon ("BCBS of Oregon") has represented in the Complaint that it is an Oregon corporation with its principal place of business in Portland, Oregon.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 46.

47.    Plaintiff / Verified Counterclaim Defendant Regence BlueCross and BlueShield of Utah ("BCBS of Utah") has represented in the Complaint that it is a Utah corporation with its principal place of business in Salt Lake City, Utah.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 47.

48.    Plaintiff / Verified Counterclaim Defendant Regence BlueShield of Washington ("RBS") has represented in the Complaint that it is a Washington corporation with its principal place of business in Seattle, Washington.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 48.

**B.    Defendant / Verified Counterclaim Plaintiff**

49.    Walgreen Co. ("Walgreens") is an Illinois corporation headquartered at 200 Wilmot Road in Deerfield, Illinois. Walgreens serves customers at approximately 9,000 retail pharmacies across the United States. During fiscal year 2020, Walgreens filled 287.6 million prescriptions and immunizations, employed more than 225,000 people, and worked with more than 85,000 health care service professionals. Walgreens serves approximately 8 million customers in its stores and online each day.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 49.

## JURISDICTION & VENUE

**A.    Jurisdiction**

50.    This Court has subject-matter jurisdiction over this Verified Counterclaim under 28 U.S.C. § 1332(a)(1) because Counterclaim Plaintiff Walgreens is a citizen of Illinois; Verified Counterclaim Defendants have represented in the Complaint that they are citizens of Alabama, Arizona, Florida, Idaho, Iowa, Kansas, Massachusetts, Minnesota, Missouri, Nebraska, New Jersey, New York, North Carolina, North Dakota, Oregon, South Dakota, Utah, and Washington; and the amount in controversy exceeds $75,000.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 50.

51.    This Court also has subject-matter jurisdiction over this Verified Counterclaim under 28 U.S.C. § 1367(a) because the Verified Counterclaim arises from the same facts and is part of the same case or controversy as Verified Counterclaim Defendants' consolidated complaint against Walgreens and Walgreens Boots Alliance, Inc. ("WBA").

**ANSWER:** Plaintiffs deny the allegations contained in ¶ 51.

52.     This Court has personal jurisdiction over Verified Counterclaim Defendants because they have voluntarily submitted to this Court's jurisdiction by filing their Complaint against Walgreens and WBA in this Court.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 52.

**B.     Venue**

53.     Venue is proper in the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to this Verified Counterclaim occurred in this judicial district.

**ANSWER:** Plaintiffs admit the allegations contained in ¶ 53.

## STATEMENT OF FACTS

**A.     Because Crowell Previously Advised Walgreens on PSC and U&C, Crowell Owes Walgreens Fiduciary Duties**

54.     In an effort to make prescriptions more affordable for uninsured and underinsured customers, Walgreens began to pilot PSC in April 2006. Walgreens launched PSC nationwide in August 2008.

**ANSWER:**    Plaintiffs admit that Walgreens began operating its Prescription Savings Club

("PSC") in or around 2006.  Plaintiffs admit that, at some time thereafter, Walgreens began to

operate the PSC program on a nationwide basis.  Plaintiffs lack knowledge or information

sufficient to form a belief as to the remaining allegations in ¶ 6 and deny those allegations on that

basis.

55.     In 2008 and 2009, Crowell provided Walgreens with legal advice regarding PSC,[2] including the effect, if any, that PSC prices might have on the U&C prices Walgreens submitted with its insurance reimbursement claims. Such U&C prices sometimes (but not always) act as a ceiling on the price paid by health insurers for their insureds' prescription drugs.

---

[2]     This Counterclaim provides a general description of Walgreens' communications with Crowell and Crowell's advice to Walgreens, without providing details of those communications, in order to meet the requirements of Fed. R. Civ. P. 8 without waiving privilege over or disclosing the contents of those communications.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the legal advice that Crowell allegedly provided to Walgreens and, therefore, deny these allegations. Plaintiffs admit that usual and customary ("U&C") prices act as a ceiling on the price paid by health insurers for their insureds' prescription drugs. Plaintiffs deny the remaining allegations in ¶ 55.

56.     In September 2008, Walgreens, through its in-house counsel, retained Crowell as outside counsel to provide legal advice to Walgreens related to (1) a proposed pharmacy discount card administered by a third party; and (2) a proposed enhancement to PSC.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 56 and, therefore, deny these allegations.

57.     On September 29, 2008, Crowell opened matter 104237.0000003, titled "Discount Card Program," to advise Walgreens on the proposed pharmacy discount card and the proposed enhancement to PSC.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 57 and, therefore, deny these allegations.

58.     In connection with Walgreens' request for Crowell to provide legal advice related to the proposed pharmacy discount card and the proposed PSC enhancement, Walgreens provided Crowell with privileged, confidential information.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 58 and, therefore, deny these allegations.

59.     In connection with Walgreens' request for Crowell to provide legal advice related to the proposed pharmacy discount card and the proposed PSC enhancement, Crowell created and retained privileged work product for Walgreens. This privileged work product included information about the potential impact of discount cards on the U&C prices Walgreens reported with its reimbursement claims.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 59 and, therefore, deny them.

60.     In October 2008, the State of Connecticut's Medicaid agency sent a letter to Walgreens questioning whether Walgreens should report its PSC prices to Connecticut Medicaid as its U&C prices.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 60 and, therefore, deny them.

61.     Once again, Walgreens' in-house counsel requested Crowell's legal advice, asking Crowell to advise Walgreens on how to respond to Connecticut Medicaid.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 61 and, therefore, deny them.

62.     On October 30, 2008, Crowell opened a second matter number, 104237.0000004, titled "U&C Issue," to provide legal advice regarding Connecticut Medicaid's inquiry about the potential effect of PSC prices on U&C prices, as well as on any further inquiries from other state agencies.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 62 and, therefore, deny them.

63.     In connection with Walgreens' request for Crowell to provide legal advice on the effect, if any, of PSC prices on the U&C prices Walgreens reported to Connecticut Medicaid, Walgreens provided Crowell with privileged, confidential information. Crowell also reviewed the letter from Connecticut Medicaid and reviewed and commented on Walgreens' draft response.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 63 and, therefore, deny them.

64.     In this lawsuit Crowell repeatedly has taken the position on Plaintiffs' behalf that Medicare and Medicaid reimbursement rules regarding U&C reporting are directly relevant to the dispute, and in some way help define Walgreens' reporting obligations to private insurers like Plaintiffs. (Complaint ¶¶ 2, 4–5, 54–55, 68, 87, 92, 98, 104). While Walgreens disagrees with Plaintiffs' unsupported position, it is material to the claims asserted by Crowell on Plaintiffs' behalf.

**ANSWER:** Plaintiffs admit that it has retained Crowell as its counsel in the above-captioned lawsuit. Plaintiffs admit it is Plaintiffs' position that Medicare and Medicaid reimbursement rules regarding U&C reporting are relevant to the dispute and help define Walgreens' reporting obligations to private insurers like Plaintiffs. Plaintiffs deny the remaining allegations in ¶ 64.

65.     In January 2009, Crowell advised Walgreens via email on a separate question related to U&C and PSC.

**ANSWER:**   Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 65 and, therefore, deny them.

66.     In April 2009, Walgreens requested that Crowell prepare a 50-state legal survey related to discount card programs and a proposed enhancement to PSC. Crowell delivered the 50-state legal survey in May 2009. In June 2009, Crowell provided Walgreens with a memorandum summarizing the survey's findings.

**ANSWER:**   Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 66 and, therefore, deny them.

67.     Between October 2008 and July 2009, Crowell submitted, and Walgreens paid, invoices for Crowell's work on matter number 104237.0000003 ("Discount Card Program") and matter number 104237.0000004 ("U&C Issue").

**ANSWER:**   Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 67 and, therefore, deny them.

68.     Barbara H. Ryland, one of the Crowell attorneys who billed time to the Walgreens "Discount Card Program" matter, still works for Crowell in its Washington, D.C., office as Senior Counsel in the Health Care Group.

**ANSWER:**   Plaintiffs admit that Barbara H. Ryland still works for Crowell in its Washington, D.C., office.   Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 68 and, therefore, deny them.

69.     In 2016, Walgreens even requested that Crowell re-send its prior legal advice on PSC and U&C, a request with which multiple Crowell lawyers (including one still at the firm) promptly complied. Crowell thus demonstrated that, at least as of 2016, Crowell still had access to the Walgreens client file and its privileged and confidential contents.

**ANSWER:**   Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 69 and, therefore, deny them.

70.     Walgreens reasonably believed that an attorney-client relationship existed between Walgreens and Crowell in at least the fall of 2008 and at least through mid-2009. During the course of this attorney-client relationship, Crowell acquired privileged and confidential information from Walgreens related to PSC and U&C, and created and retained privileged work product for Walgreens related to these same subjects.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 70 and, therefore, deny them.

71. As a result of that attorney-client relationship, Crowell owes fiduciary duties to Walgreens, its former client, by virtue of the trust and confidence Walgreens placed in Crowell as its law firm.

**ANSWER:** The allegations in ¶ 71 consist of legal conclusions to which no response is required from Plaintiffs. To an extent a response to these allegations is required, Plaintiffs deny them.

## B. Crowell Breached Its Duties to Walgreens

72. At some point before March 2, 2020, certain Plaintiffs—including Florida Blue, Blue Cross and Blue Shield of North Carolina, BCBSM, HMO Minnesota, Blue Cross and Blue Shield of Alabama, Blue Cross Blue Shield of North Dakota, Blue Cross Blue Shield of Kansas, and Blue Cross and Blue Shield of Nebraska—retained Crowell and financially incentivized the law firm to switch sides and represent them *against* Walgreens on the very same issues as to which Crowell had previously advised Walgreens.

**ANSWER:** Plaintiffs admit that some of the Plaintiffs retained Crowell before March 2, 2020 to represent the Plaintiffs in the above-captioned lawsuit. Plaintiffs lack knowledge or information sufficient to form a belief as to the remaining allegations in ¶ 72 and, therefore, deny them.

73. That day, Crowell sent a letter to Walgreens, indicating that, "[i]n light of recent litigation regarding Walgreens' alleged inaccurate calculations and reporting of [U&C] charges for certain pharmaceutical products," Plaintiffs were "concerned that Walgreens has overcharged them by failing to include PSC Program prices in its calculation of U&C prices."

**ANSWER:** Plaintiffs admit the allegations in ¶ 73.

74. Crowell sent a nearly identical letter to Walgreens the next day, March 3, 2020, on behalf of additional Plaintiffs, including Wellmark, Inc.; Wellmark of South Dakota, Inc.; Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; and Wellmark Value Health Plan, Inc. That letter also mentioned these Plaintiffs' purported concerns that "Walgreens has overcharged [them] by failing to include PSC Program prices in its calculation of U&C prices."

**ANSWER:** Plaintiffs admit the allegations in ¶ 74.

75. As even Crowell's March 2020 letters on Plaintiffs' behalf make clear, Crowell's current representation of Plaintiffs is substantially related to Crowell's earlier representation of Walgreens, and there is a substantial risk that the privileged and confidential information Walgreens provided to Crowell while Crowell represented Walgreens could materially advance Plaintiffs' position in these consolidated cases.

**ANSWER:** The allegations contained in ¶ 75 consist of legal conclusions to which no response

is required from Plaintiffs. To the extent a response is required, Plaintiffs deny the allegations in

¶ 75.

76. The ABA, the District of Columbia, and Illinois all broadly prohibit lawyers from switching sides to sue a former client on the subject of a prior engagement. When a lawyer has previously represented a client in a matter, the lawyer cannot represent a new client in the same or a substantially related matter in which the lawyer's new client has interests that are materially adverse to the lawyer's former client.

**ANSWER:** The allegations contained in ¶ 76 consist of legal conclusions to which no response

is required from Plaintiffs. To the extent a response is required, Plaintiffs deny the allegations in

¶ 76.

77. Yet, that is *exactly* what Crowell has done. In 2008 and 2009, the pivotal early days of Walgreens' purportedly fraudulent PSC program according to Plaintiffs' own Complaint, ***Crowell gave Walgreens legal advice about the effect of PSC prices on U&C reporting***. Now, Crowell is representing Plaintiffs in lawsuits against Walgreens seeking hundreds of millions of dollars in damages, asserting that Walgreens' failure to include PSC prices in its U&C reporting somehow constitutes a grievous, decade-long fraud scheme. Rather than suing Crowell as Walgreens' co-conspirator, which one might expect after reading Plaintiffs' overheated pleadings, Plaintiffs instead hired Walgreens' former health care lawyers to sue their other client.

**ANSWER:** Plaintiffs admit that they have retained Crowell as Plaintiffs' counsel in the above-

captioned case. Plaintiffs lack knowledge or information sufficient to form a belief as to the

allegations in ¶ 77 about Crowell's past dealings, if any, with Walgreens; Plaintiffs therefore deny

those allegations. Plaintiffs deny the remaining allegations in ¶ 77.

78. In fact, through Crowell Plaintiffs seek damages from Walgreens for its U&C price reporting in 2008 and 2009—exactly the same time that Crowell was providing Walgreens with privileged and confidential legal advice about its U&C price reporting.

**ANSWER:** Plaintiffs admit that they have retained Crowell as their counsel in the above-

captioned case. Plaintiffs further admit that they seek damages for its U&C price reporting for a

time period that includes 2008 and 2009. Plaintiffs lack knowledge or information sufficient to

form a belief as to the remaining allegations in ¶ 78 and, therefore, deny those allegations.

79.     Under the ABA Model Rules of Professional Responsibility, the District of Columbia Rules of Professional Conduct, and the Illinois Rules of Professional Conduct, Crowell had an obligation to obtain informed consent from both Walgreens and Plaintiffs before agreeing to this side-switching representation.

**ANSWER:**  The allegations contained in ¶ 79 consist of legal conclusions to which no response

is required from Plaintiffs.  To the extent a response is required, Plaintiffs deny the allegations in

¶ 79.

80.     Discovery will reveal whether Crowell discharged that obligation as to Plaintiffs. To be sure, Crowell did ***not*** discharge that obligation as to Walgreens.  If it had, Crowell would have known that Walgreens did not then—and does not now—consent to Crowell's disloyal representation of Plaintiffs.

**ANSWER:**  Plaintiffs lack knowledge or information sufficient to form a belief as to the

allegations in ¶ 80 and, therefore, deny them.

81.     Crowell's breaches have proximately caused Walgreens to incur significant expenses defending itself against the claims Crowell has brought on Plaintiffs' behalf; investigating the scope of Crowell's previous representation and attempting to remediate its breaches of its fiduciary duties, including by demanding that Crowell return Walgreens' privileged and confidential files related to its PSC strategy; and by litigating against Crowell in the Superior Court of the District of Columbia for its duty breaches in this and other cases.

**ANSWER:**  Plaintiffs admit that Defendants purport to seek recovery for expenses: defending

itself against Plaintiffs' claims in the above-captioned lawsuit; investigating and addressing

Defendants' alleged past contacts, if any, with Crowell; and initiating the DC Litigation against

Crowell.  Plaintiffs deny that they have engaged in any conduct that would entitle Defendants to

any relief.

82.     Crowell's breaches also create a substantial risk that Walgreens' former lawyers will expose its confidential and privileged information about PSC or use that information to Walgreens' disadvantage in these consolidated actions.

**ANSWER:**  Plaintiffs lack knowledge or information sufficient to form a belief as to the

allegations in ¶ 82 and, therefore, deny them.

**C.** **Plaintiffs Know that Crowell Breached Its Fiduciary Duties to Walgreens**

83.    If Crowell honored its ethical obligations to inform Plaintiffs of its conflict of interest, then Plaintiffs necessarily knew about Crowell's conflict by no later than early March 2020, when Plaintiffs instructed Crowell to send the two pre-litigation demand letters to Walgreens.

**ANSWER:**  The allegations contained in ¶ 83 contain legal conclusions to which no response is required from Plaintiffs.  To the extent a response to these allegations is required, Plaintiffs deny them.

84.    But even if Crowell flouted its ethical duties to Plaintiffs in the same way it flouted its duties to Walgreens, Plaintiffs certainly know of Crowell's breaches now.

**ANSWER**:  Plaintiffs deny the allegations in ¶ 84.

85.    In February 2021, Walgreens demanded that Crowell turn over Walgreens' client file from its 2008–2009 advice on PSC and U&C reporting. Incredibly, Crowell refused—asserting a bogus claim that Walgreens was never actually Crowell's client and that the files belonged to a former Walgreens subsidiary that had been sold to a third party. Unfortunately for Crowell, that third party later debunked Crowell's claim and confirmed that Crowell had represented Walgreens, not the subsidiary, and that the third party consented to the release of the client file in any event.

**ANSWER:**  Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 85 and, therefore, deny them.

86.    Walgreens was forced to file a replevin action against Crowell in the Superior Court of the District of Columbia. The court placed Walgreens' complaint on the public docket on March 18, 2021. In that suit, Walgreens pleaded facts establishing its prior attorney-client relationship with Crowell and indicating that Crowell advised Walgreens on matters related to PSC, and Walgreens accused Crowell of unjustly retaining Walgreens' client files.

**ANSWER:**  Plaintiffs admit that Walgreens filed a lawsuit against Crowell & Moring LLP on or around February 19, 2021 in the Superior Court of the District of Columbia (the "DC Litigation"). The remaining allegations contained in ¶ 86 consist of legal conclusions to which no response is required from Plaintiffs.  To the extent a response is required to these remaining allegations, Plaintiffs deny them.

87.    Walgreens' original complaint received attention in the national legal press, including a March 19, 2021, article in the National Law Journal that included all the facts necessary

for Plaintiffs to know that Crowell had breached its fiduciary duties to Walgreens—and that Plaintiffs thus were playing a substantial role in facilitating and assisting Crowell's ongoing breaches:

      a.      First, the article revealed the scope of Crowell's previous attorney-client relationship with Walgreens, reporting that, "[i]n 2008, Crowell provided legal services as part of a Walgreens initiative called the 'prescription savings club,' or PSC."

      b.      Next, the article made clear that Crowell's current representation of Plaintiffs in these consolidated cases is substantially related to and in conflict with Crowell's earlier representation of Walgreens, pointing out that "Crowell is adverse to Walgreens in a pending case in Illinois federal district court that confronts the prescription savings club."

      c.      Finally, the article specifically named BCBSM, Blue Cross and Blue Shield of Florida, and Blue Cross and Blue Shield of Massachusetts as "plaintiff[s] . . . in the fraud suit against Walgreens."

**ANSWER:**  Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 87 and, therefore, deny them.

    88.    Then, on April 6, 2021, Walgreens publicly filed an amended complaint in the D.C. action (attached as **Verified Counterclaim Exhibit 1**). That public amended complaint and the press coverage surrounding it again put Plaintiffs on notice of the facts underlying Crowell's breaches of its fiduciary duties to Walgreens and Plaintiffs' role in facilitating the ongoing breaches. The amended complaint detailed the scope of Crowell's earlier representation and the fact that Crowell previously advised Walgreens about any possible effect of PSC on U&C.

**ANSWER:**  Plaintiffs admit that Walgreens filed an amended complaint in the DC Litigation on or around April 6, 2021.  Plaintiffs deny the remaining allegations in ¶ 88.

    89.    Walgreens also explicitly pleaded a claim for breach of fiduciary duty, alleging that Crowell breached its fiduciary duties to Walgreens by "suing Walgreens, and otherwise acting adverse to it, on the very subject matter on which it had confidentially advised Walgreens."

**ANSWER:**  Plaintiffs admit that Walgreens' Amended Complaint in the DC Litigation purports to recover from Crowell for a breach of fiduciary duty.  Plaintiffs deny that they have engaged in any conduct that would entitle the Defendants to any relief.

    90.    Once again, these allegations received attention in the national legal press. Law360 published an article on April 6, 2021, quoting the amended complaint and reporting that Walgreens' "lawsuit says that after reviewing Walgreens' confidential data, a team of [Crowell]

attorneys . . . wrote a privileged memorandum on the potential impact its new program may have on retail drug prices and third-party payers, including insurers "

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 90 and, therefore, deny them.

91. In an article dated April 7, 2021, the National Law Journal once again linked Crowell's breaches of fiduciary duties to Walgreens to Plaintiffs' claims in these consolidated cases. The article quoted Walgreens' allegations that Crowell "was retained to advise Walgreens on 'all issues' concerning" PSC and that Crowell could use privileged and confidential information it obtained from Walgreens to more effectively represent clients against Walgreens. The article also once again explicitly named certain Plaintiffs—including Blue Cross and Blue Shield of Florida, Alabama, and North Carolina—as participants in the "suit Crowell filed [against Walgreens] last year in Illinois federal district court."

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 91 and, therefore, deny them.

92. The D.C. court denied Crowell's motion to dismiss Walgreens' complaint on June 17, 2021, holding in relevant part that "Walgreen[s] has set forth sufficient facts in the amended complaint to support a claim for breach of fiduciary duty that is plausible." The D.C. suit is now poised to begin discovery.

**ANSWER:** Plaintiffs admit Crowell's Motion to Dismiss in the D.C. Litigation was denied. Plaintiffs admit that discovery will likely occur in the future in the D.C. Litigation. Plaintiffs deny that they have engaged in any conduct that would entitle Defendants to any relief.

93. The D.C. court's denial of Crowell's motion to dismiss also drew attention in the national legal press. In an article dated June 21, 2021, Reuters summarized the parties' motion to dismiss arguments and the court's denial of the motion and provided a link to the court's opinion. Once again, the article recounted Walgreens' assertion that Crowell breached its fiduciary duties by representing parties adverse to Walgreens in matters substantially related to Crowell's former advice. And once again, the article noted that Crowell "is counsel to major national insurers in a civil action against Walgreens in Illinois federal district court."

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 93 and, therefore, deny them.

94. A Law360 article dated June 21, 2021, similarly reported the D.C. court's denial of Crowell's motion. The article noted Walgreens' allegations that Crowell had "counseled [Walgreens] on multiple legal issues related to its prescription drug membership program, but then sued Walgreens on behalf of Humana over the same program and *solicited other insurers* to sue

Walgreens in violation of D.C. professional rules" (emphasis added). The article then detailed the facts supporting Walgreens' breach of fiduciary duty claim.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations in ¶ 94 and, therefore, deny them.

95. Based on the public D.C. filings and related media coverage, Plaintiffs knew that Crowell was breaching its fiduciary duties to its former client, Walgreens, by no later than March or April 2021. Plaintiffs also knew that, by continuing to retain Crowell to litigate on their behalf, Plaintiffs were playing a substantial role in facilitating and assisting Crowell's breaches.

**ANSWER:** The allegations contained in ¶ 95 consist of legal conclusions to which no response is required from Plaintiffs. To the extent a response is required to these allegations, Plaintiffs deny them.

96. Plaintiffs also knew or should have known that Walgreens did not and does not consent to Crowell's representation of them.

**ANSWER:** Plaintiffs deny the allegations in ¶ 96.

97. On July 8, 2021, counsel for Walgreens sent a letter to Plaintiffs—through their counsel, Crowell—explaining Crowell's conflict; attaching Walgreens' amended complaint in the Superior Court of the District of Columbia and that court's decision denying Crowell's motion to dismiss; and demanding that "each Plaintiff [ ] cease and desist from continuing to retain Crowell to pursue claims against Walgreens involving U&C price reporting issues." (attached as **Verified Counterclaim Exhibit 2**.)

**ANSWER:** Plaintiffs admit that they received a letter from Walgreens, dated July 8, 2021, that requested that Plaintiffs end their attorney/client relationship with Crowell & Moring LLP in the above-captioned case. Plaintiffs deny that they have engaged in any conduct that would entitle Defendants to relief.

**D. Plaintiffs Continue to Knowingly Assist Crowell in Breaching Its Duties to Walgreens**

98. Despite their knowledge of Crowell's breaches, Plaintiffs continue to retain Crowell to litigate these consolidated cases on their behalf.

**ANSWER:** Plaintiffs admit that they continue to retain Crowell as their counsel in the above-captioned case. Plaintiffs deny the remaining allegations in ¶ 98.

99.     By retaining and compensating Crowell to pursue these cases in violation of its ethical duties; allowing Crowell to sign, file, and serve pleadings as their counsel; and providing Crowell with information and other assistance that allows Crowell to continue litigating these cases against its former client, Plaintiffs are substantially and knowingly aiding and abetting Crowell's breaches of its fiduciary duties to its former client, Walgreens.

a.     Between March 2020, when Crowell's representation of Plaintiffs had undoubtedly begun (triggering Crowell's ethical obligation to disclose its conflict of interest), and March 2021, when the D.C. court publicly docketed Walgreens' replevin action against Crowell, Plaintiffs have authorized Crowell to sign and file on their behalf five separate complaints, an amended complaint, two oppositions to motions to dismiss, and a consolidated first amended complaint. Plaintiffs have also authorized Crowell to represent them in Court and at a Rule 26(f) conference with Walgreens.

b.     Between March 19, 2021, when the first National Law Journal article specifically highlighted the connection between Crowell's breaches and Plaintiffs' suit, and July 8, 2021, when Walgreens sent Plaintiffs a cease-and-desist letter, Plaintiffs have authorized Crowell to sign and file on their behalf an additional opposition to a motion to dismiss and a consolidated second amended complaint and to sign and serve Plaintiffs' discovery requests.

c.     And since July 8, 2021, when Walgreens provided Plaintiffs indisputable actual notice of their continued aiding and abetting of Crowell's breaches, Plaintiffs have authorized Crowell to sign and serve discovery responses and highly confidential documents on Plaintiffs' behalf.

**ANSWER:**  Plaintiffs admit that Crowell continues to represent Plaintiffs in the above-captioned case.  Plaintiffs deny the remaining allegations in ¶ 99.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

100.     In connection with each of the actions described in Paragraph 99, Plaintiffs also necessarily provided Crowell with instructions and significant information, evidence, and other materials (including, for example, the contents of Plaintiffs' contracts with pharmacy benefit managers) to support the work that Crowell executed on Plaintiffs' behalf. And Plaintiffs are financially compensating Crowell to represent Plaintiffs and vigorously litigate against Walgreens, Crowell's former client.

**ANSWER:**  Plaintiffs admit that they are compensating Crowell for its representation of Plaintiffs in the above-captioned case.  The remaining allegations pertain to Plaintiffs' privileged and confidential communications with its counsel and therefore require no response from Plaintiffs.

101.     Plaintiffs are not merely aiding and abetting Crowell's breaches of its fiduciary duties to Walgreens by means of Plaintiffs' significant financial and substantive support; indeed,

Crowell's breaches would not be possible without Plaintiffs' active participation. If Plaintiffs proceeded with other counsel and declined Crowell's continued representation, Crowell could not continue breaching its fiduciary duties to Walgreens, at least with respect to these consolidated cases.

**ANSWER:** The allegations in ¶ 101 consist of legal conclusions to which no response is required.

To the extent a response to these allegations is required, Plaintiffs deny them.

## COUNT I

### Aiding & Abetting Breaches of Fiduciary Duties

102.    Walgreens incorporates by reference the allegations contained in Paragraphs 1 through 103 as if set forth fully herein.

**ANSWER:** Paragraph 102 requires no response from Plaintiffs. To the extent a response is required, Plaintiffs admit that Walgreens purports to incorporate the allegations contained in paragraphs 1 through 103 of its Counterclaim. Plaintiffs incorporate by reference each of their Answers to those paragraphs. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

103.    In at least 2008 and 2009, Walgreens engaged Crowell to provide legal advice regarding the effect of PSC on U&C.

**ANSWER:** Plaintiffs lack knowledge or information sufficient to form a belief as to the allegations set forth in ¶ 103 and, therefore, deny them. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

104.    As a result of that attorney-client relationship, Crowell owed its client, Walgreens, fiduciary duties, including a fiduciary duty of loyalty.

**ANSWER:** The allegations in ¶ 104 consist of legal conclusions to which no response from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny them. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

105.    These fiduciary duties survive the termination of the attorney-client relationship.

**ANSWER:** The allegations in ¶ 105 consist of legal conclusions to which no response from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny them. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

106.  Crowell breached and continues to breach its fiduciary duties to Walgreens by suing Walgreens and otherwise acting adversely to it on the very subject matter on which Crowell had confidentially advised Walgreens.

**ANSWER:** The allegations in ¶ 106 consist of legal conclusions to which no response from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny them. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

107.  Crowell's breaches proximately harmed (and continue to harm) Walgreens by causing it to incur significant costs investigating and attempting to remediate Crowell's breaches, defending itself in these consolidated cases, and prosecuting the D.C. action, and by creating a substantial risk that Crowell will expose Walgreens' confidential and privileged information about PSC or use that information to Walgreens' disadvantage.

**ANSWER:** The allegations in ¶ 107 consist of legal conclusions to which no response from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny them. Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

108.  Plaintiffs know that Crowell is breaching its fiduciary duties to Walgreens and that Plaintiffs are playing a substantial role in facilitating, encouraging, and assisting those breaches. Crowell had an ethical and professional duty to disclose its conflict of interest to Plaintiffs before representing them in this litigation; and public filings, press coverage, and Walgreens' letter of July 8, 2021, left no doubt that Crowell's representation of Plaintiffs in U&C litigation against Walgreens breached Crowell's fiduciary duties to Walgreens.

**ANSWER:** The allegations in ¶ 108 consist of legal conclusions to which no response from Plaintiffs is required. To the extent a response to these allegations is required, Plaintiffs deny

them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

109.    Despite all of this, Plaintiffs knowingly and substantially assisted—and continue to knowingly and substantially assist—Crowell's breaches by allowing, encouraging, compensating, and facilitating Crowell's representation of Plaintiffs in these actions.

**ANSWER:**  The allegations in ¶ 109 consist of legal conclusions to which no response from Plaintiffs is required.  To the extent a response to these allegations is required, Plaintiffs deny them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

110.    By engaging in the conduct alleged herein, Plaintiffs have aided and abetted—and continue to aid and abet—Crowell's breaches, proximately harming Walgreens and damaging it in an amount to be proven at trial, including without limitation the costs of defending against Plaintiffs' actions, the costs of pursuing this Verified Counterclaim, the costs of the D.C. litigation filed by Walgreens against Crowell directly for its ethical breaches, and the costs of Walgreens' investigation of Crowell's breaches and other pre-suit activities related to and addressing Crowell's professional misconduct.

**ANSWER:**  The allegations in ¶ 110 consist of legal conclusions to which no response from Plaintiffs is required.  To the extent a response to these allegations is required, Plaintiffs deny them.  Plaintiffs further deny that they have engaged in any conduct that would entitle Defendants to relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

a.    enter judgment in Plaintiffs' favor and rule that Defendants may take nothing on their Counterclaim;

b.    grant such other relief to Plaintiffs as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on Defendants' Counterclaim.

## **AFFIRMATIVE DEFENSES**

1.      Defendants have failed to state a claim upon which relief may be granted.

2.      Defendants' claims are barred by the doctrine of laches.

3.      Defendants' claims are barred by the doctrine of waiver.

4.      Defendants' claims are barred by the doctrine of unclean hands.

5.      Defendants have not suffered damages, have failed to mitigate their damages, or are barred from recovery under the doctrine of avoidable consequences.

6.      Defendants are not entitled to relief on their Counterclaim because any privileged and/or confidential information shared between Defendants and Crowell was subsequently disclosed and/or became generally known.

7.      Plaintiffs' conduct was privileged and/or legally justified.

8.      Any damages suffered by Defendants were caused by or contributed to by Defendants' own conduct.

DATE: Mar. 23, 2022                    Respectfully Submitted,


Of Counsel:                                By: */s/ Trisha M. Rich*
Timothy J. Conner                             Trisha M. Rich (IL Bar No. 6288544)
Holland & Knight LLP                          Holland & Knight LLP
50 N Laura Street                             150 N Riverside Plaza
Suite 3900                                    Suite 2700
Jacksonville, FL 32202                        Chicago, IL 60606
(904) 798-7362                                (312) 263-3600
timothy.conner@hklaw.com                      trisha.rich@hklaw.com

                                              Peter R. Jarvis
                                              Holland & Knight LLP
                                              601 SW Second Avenue
                                              Suite 1800
                                              Portland, OR 97204
                                              (503) 243-5877
                                              peter.jarvis@hklaw.com
                                              *admitted pro hac vice*

                                              *Counsel for Plaintiffs*