**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **BCBSM, INC.,** *et al.*, | ) | Case No. 1:20-cv-01853 |
| | ) | |
| *Plaintiffs / Counter-Defendants*, | ) | Honorable Virginia M. Kendall |
| | ) | Honorable Sheila M. Finnegan |
| v. | ) | |
| | ) | |
| **WALGREEN CO.,** | ) | *Consolidated with*: |
| | ) | No. 1:20-cv-01929 |
| *Defendant / Counterclaimant*, | ) | No. 1:20-cv-03332 |
| | ) | No. 1:20-cv-04738 |
| and | ) | No. 1:20-cv-04940 |
| | ) | No. 1:22-cv-01362 |
| **WALGREENS BOOTS ALLIANCE, INC.,** | ) | |
| | ) | |
| *Defendant.* | ) | |

---

| | |
|---|---|
| | ) |
| **WALGREEN CO. & WALGREENS** | ) |
| **BOOTS ALLIANCE, INC.,** | ) |
| | ) |
| *Third-Party Plaintiffs*, | ) |
| | ) |
| v. | ) |
| | ) |
| **PRIME THERAPEUTICS LLC,** | ) |
| | ) |
| *Third-Party Defendant.* | ) |
| | ) |

**DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION TO SEVER & STAY COUNTERCLAIM**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................i

BACKGROUND ..................................................................................................................... 3

ARGUMENT .......................................................................................................................... 6

    I.      The Court Should Not Sever Walgreens' Counterclaim......................................... 6

          A.      The Counterclaim and Plaintiffs' Claims Share Numerous Common Issues. .......................................................................................................... 6

          B.      The Counterclaim Has Already Facilitated Settlement; Severing Would Not Promote Judicial Economy. ................................................................... 8

          C.      Severing Will Increase, Not Avoid, the Chance of Undue Prejudice. ...... 10

          D.      The Counterclaim and Plaintiffs' Case Involve Overlapping Evidence... 12

          E.      The Counterclaim Arises from the Same Transactions and Occurrences as Plaintiffs' Claims. ............................................................................... 13

    II.     The Court Should not Stay the Counterclaim ..................................................... 14

CONCLUSION ..................................................................................................................... 15

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*BCBSM, Inc. v. Walgreen Co.*,
  512 F. Supp. 3d 837 (N.D. Ill. 2021) ....................................................................4, 6, 8

*Benitez v. Am. Standard Circuits, Inc.*,
  678 F. Supp. 2d 745 (N.D. Ill. 2010) ........................................................................13

*Compania Embotelladora del Pacifico v. Pepsi Cola Co.*,
  256 F.R.D. 131 (S.D.N.Y. 2009) .................................................................................8

*Davis v. Packer Eng'g*,
  2016 WL 11689521 (N.D. Ill. Nov. 14, 2016) ...........................................................11

*EDCare Mgmt., Inc. v. DeLisi*,
  50 A.3d 448 (D.C. Ct. App. 2012)..............................................................................10

*Gaffney v. Riverboat Servs. of Ind., Inc.*,
  451 F.3d 424 (7th Cir. 2006) .....................................................................................14

*Kimmel v. Cavalry Portfolio Servs., LLC*,
  747 F. Supp. 2d 427 (E.D. Pa. 2010) ..........................................................................8

*Pfizer Inc. v. Apotex Inc.*,
  640 F. Supp. 2d 1006 (N.D. Ill. 2009) .......................................................................14

*Preston v. Wiegand*,
  2021 WL 5447039 (N.D. Ill. Nov. 22, 2021) .........................................................11, 13

*Schulke v. Stryker Othopaedics*,
  2016 WL 3059114 (N.D. Ill. May 31, 2016) ................................................................9

*United Mine Workers v. Gibbs*,
  383 U.S. 715 (1966).................................................................................................3, 6

*United States ex rel. Proctor v. Safeway, Inc.*,
  30 F.4th 649 (7th Cir. 2022) ...................................................................................1, 6, 7

*United States ex rel. Schutte v. Supervalu Inc.*,
  9 F.4th 455 (7th Cir. 2021) .....................................................................................1, 6, 7

*White v. Coventry Health Care, Inc.*,
  2018 WL 1469025 (N.D. Ill. Mar. 26, 2018)..............................................................13

**Other Authorities**

Fed. R. Civ. P. Rule 30 ...............................................................................................................11

In Plaintiffs' operative Complaint, Plaintiffs placed at the very center of this case what Walgreen Co. ("Walgreens") knew about the definition of usual and customary ("U&C") pricing and when Walgreens knew it. Plaintiffs' fraud claims and Walgreens' defenses to those claims pivot on Walgreens' knowledge and intent about the meaning of U&C as it relates to Walgreens' Prescription Savings Club ("PSC") and other special pricing initiatives. As the Court knows, in 2008 and 2009 when Walgreens was rolling out PSC nationwide, Walgreens hired Plaintiffs' later-engaged lead counsel, Crowell & Moring LLP ("Crowell"), for advice on this central issue. Crowell's work on U&C issues for Walgreens, indeed the very fact that Walgreens sought such advice, is germane to Plaintiffs' case and to Walgreens' defenses. Under the Seventh Circuit's recent U&C-focused decisions in *Schutte* and *Proctor*,[1] if Walgreens *subjectively believed* it could properly omit PSC prices from U&C, that fact is critical to the resolution of Plaintiffs' claims. Walgreens' communications to Crowell related to the firm's U&C-focused legal advice offer key, contemporaneous evidence of Walgreens' subjective beliefs. And Crowell's advice to Walgreens undermines Plaintiffs' core allegation that some industry-standard definition of U&C required Walgreens to report savings program or discount-card prices. The jury in Plaintiffs' case-in-chief must hear about Crowell's work for Walgreens.

Unsurprisingly, the very same evidence supporting Walgreens' defense is also essential to Walgreens' counterclaim: Plaintiffs knowingly aided and abetted Crowell's breaches of fiduciary duty by engaging Crowell in the face of the firm's disloyalty to its former client and by suing Walgreens on the very same subject matter as Crowell's earlier U&C advice. Walgreens' counterclaim unquestionably arises from the same facts and circumstances as Plaintiffs' claims,

---

[1] *See United States ex rel. Schutte v. Supervalu Inc.*, 9 F.4th 455 (7th Cir. 2021); *United States ex rel. Proctor v. Safeway, Inc.*, 30 F.4th 649 (7th Cir. 2022).

making Walgreens' aiding and abetting claim compulsory. Plaintiffs have never even seriously argued otherwise (nor could they). In fact, the counterclaim could have and should have been consolidated with Plaintiffs' action under the Federal Rules if it had started out as a separate case. And Plaintiffs have been acutely aware of the situation since early 2021, both from February 2021 communications between counsel, discussed below, and Walgreens' long-pending defenses and counterclaim. Yet, Plaintiffs suddenly assert, long after Crowell's U&C advice became an issue in dispute, that the case should be torn in half, with Walgreens' closely related claim awaiting a future proceeding before a different jury and Walgreens' counterclaim discovery delayed indefinitely—despite the fact that the same requested evidence also supports Walgreens' defenses.

Plaintiffs are demanding that the Court preside over a needless multiplicity of jury trials to address a purported problem of Plaintiffs' own making. By hiring and then obdurately keeping on Crowell as their lead counsel in the face of Walgreens' aiding and abetting claim, Plaintiffs sowed the supposed chaos they now claim, over a year later, must be avoided. But Plaintiffs' supposed concerns are at best exaggerated, and *severance will not even fix the purported problem because Crowell's advice is squarely at issue throughout this case*, not just as it relates to Walgreens' counterclaim. Plaintiffs could have fixed their own contrived mess by hiring additional trial counsel—such as Stein Mitchell, a firm that is already in this case representing the new *CareFirst* Plaintiffs, has taken U&C cases to trial, and works hand-in-hand with Crowell in other U&C disputes, *including as co-counsel suing Walgreens* for another insurer. Instead, Plaintiffs engaged yet another firm, Holland & Knight, to deal only with the counterclaim, artificially emphasizing and magnifying false distinctions between Plaintiffs' claims and Walgreens' counterclaim, which are in truth intertwined and arise from the same facts and circumstances. Plaintiffs get to choose their counsel, but Plaintiffs' baroque procedural strategy is no excuse for refusing to engage in discovery or for needlessly splitting this case into two—all after the Court *consolidated* dozens of

Plaintiffs' claims arising under different states' laws.

Remarkably, Plaintiffs assert that their own choice of lawyers and their desire to avoid the (completely accurate) appearance of an ethical conflict somehow trump Walgreens' and this Court's basic interest in having a single fact-finder consider in one trial the same evidence that supports Walgreens' defenses and counterclaim. The Rules "strongly encourage[]" joinder of claims. *United Mine Workers v. Gibbs*, 383 U.S. 715, 724 (1966). Contrary to this Supreme Court guidance, severing Walgreens' counterclaim would be an imprudent and improper waste of judicial and jury resources. Doing so would lead to duplicative trials and the potential for inconsistent outcomes on the same issues. It would extend by months, at the very least, an already lengthy, complex, and costly proceeding. Regardless of Walgreens' compulsory counterclaim, *the fact of Crowell's U&C advice to Walgreens will be presented to the jury if this case reaches trial.* Thus, the purported prejudice that Plaintiffs seek to avoid will not even be reduced by severing Walgreens' counterclaim. With or without the counterclaim, Plaintiffs' jury will hear that the same law firm now suing Walgreens once represented the company and provided it with advice on the same topics at issue in this case. Neither logic nor the law supports Plaintiffs' approach, which is cumbersome, wasteful, and unfair to Walgreens, to the Court, and to an unnecessary second jury.

## BACKGROUND

Walgreens piloted PSC in April 2006 and launched it nationwide in 2008. *See* Countercl., Dkt. 148, at ¶ 54. Also in 2008, Walgreens retained Crowell to provide legal advice on how PSC prices might affect the U&C prices that Walgreens submits to private third-party payors like Plaintiffs. *See id.* ¶¶ 55-56. Walgreens provided Crowell with privileged and confidential information about PSC and other similar programs and Walgreens' understanding of and questions about their effect on U&C prices. *See id.* ¶¶ 55, 58. Between 2008 and 2009, Crowell repeatedly provided Walgreens with legal advice on PSC and U&C. *Id.* ¶¶ 55-67.

On March 18, 2020, Crowell sued Walgreens on behalf of sixteen Blue Cross and Blue Shield–affiliated insurers asserting claims related to Walgreens' U&C price-reporting practices—the same subject of Crowell's previous legal advice. *See* Dkt. 1. Over the next five months, Crowell filed similar complaints against Walgreens on behalf of four other groups of Blue Cross and Blue Shield–affiliated insurers. *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 845-46 (N.D. Ill. 2021). The Court consolidated all of the actions; on June 28, 2021, Crowell filed a Second Amended Complaint on behalf of twenty-nine health insurers ("Plaintiffs"), *see* Dkt. 146, accusing Walgreens of a decade-and-a-half-long scheme that Plaintiffs somehow just discovered, *see id.* ¶¶ 103, 115—despite a highly publicized 2017 case in this District alleging identical conduct by Walgreens (*Forth v. Walgreen Co.*, No. 1:17-cv-2246).

When Walgreens' counsel learned of Crowell's previous legal advice, they promptly informed Crowell that "it would be inappropriate for Crowell to continue as Plaintiffs' counsel." Feb. 25, 2021, Ltr. from J. Bushofsky, Dkt. 159-2, Ex. 13, at 1. Crowell brushed aside Walgreens' concerns. *See* Mar 1., 2021, Ltr. from T. Mason, Dkt. 159-2, Ex. 14, at 2. Walgreens' counsel also advised Plaintiffs that Crowell "previously provided legal advice to Walgreens regarding [PSC], including the effect, if any, that prices offered to PSC members might have on Walgreens' [U&C] prices." July 8, 2021, Ltr. from J. Bushofsky, Dkt. 148-2, at 2. Plaintiffs nonetheless continued to retain Crowell, whose partners remain Plaintiffs' lead trial counsel.

On July 26, 2021, Walgreens filed a counterclaim alleging that Plaintiffs are aiding and abetting Crowell's fiduciary-duty breaches. *See* Dkt. 148. In response, Plaintiffs filed a baseless "motion to qualify," urging this Court—rather than the Superior Court of the District of Columbia (the "D.C. Court") already considering the issue—to rule that Crowell breached no duties. *See* Dkt. 158. Plaintiffs also moved to dismiss. *See* Dkts. 187, 192. In neither motion did Plaintiffs ask the Court to sever or stay the counterclaim. The Court properly denied Plaintiffs' motion to dismiss

and struck their motion to qualify. *See* Dkt. 217. At no point did the Court suggest that discovery should be stayed or that the counterclaim should be severed. Following the Court's order, BCBS of Nebraska proposed to dismiss its claims in exchange for dismissal of Walgreens' counterclaim against it. The parties later filed a joint stipulation of dismissal. *See* Dkt. 292.

After the Court denied Plaintiffs' motions attacking the counterclaim, the parties submitted a Proposed Revised Discovery Schedule. *See* Dkt. 219. Plaintiffs noted that they were "considering the implications of the Court's" ruling, and they "reserve[d] the right to revisit the discovery schedule in the event circumstances change significantly," including if they "retain[ed] separate counsel to assist in their defense of the counterclaim or if a motion to sever/stay the counterclaim is filed." *Id.* at 1-2. But Plaintiffs did not file such a motion. Two months later, after the *CareFirst* Plaintiffs filed and the Court consolidated their claims, Plaintiffs' separate counterclaim counsel (along with Crowell) signed and submitted another scheduling proposal. *See* Dkt. 255. That proposal merely extended all deadlines by a month; it made no mention of a possible motion to sever or stay. *See id.* On June 7, 2022, Plaintiffs finally filed the instant Motion, Dkt. 286 ("Mot." or "Motion")—fully 16 months after Walgreens first placed Crowell's conflict at issue in this case.

In the meantime, after the Court denied their motion to dismiss, Plaintiffs essentially granted themselves a discovery stay. Walgreens served discovery requests related to the counterclaim, Plaintiffs' claims, and Walgreens' defenses on November 3, 2021. Plaintiffs finally responded to those requests, albeit inadequately, on April 15, 2022. In so doing, Plaintiffs refused even to identify the "person or persons . . . responsible for managing relationships with . . . outside counsel involved" in this case. Ex. A at 2.[2] Through June 30, 2022, Plaintiffs' counterclaim counsel

---

[2] The discovery responses attached here are representative of the other Plaintiffs' responses.

had not produced a single document in response to Walgreens' November 2021 requests.[3] Nonetheless, Plaintiffs now cynically assert that counterclaim discovery (not Plaintiffs' own dilatory conduct) will somehow unduly delay the case and "detract from the expeditious and efficient pursuit of Plaintiffs' claims." Mot. at 13-14. Plaintiffs' Motion is entirely without merit.

## ARGUMENT

The Federal Rules of Civil Procedure "strongly encourage[]" joinder of claims. *Gibbs*, 383 U.S. at 724. Consistent with that "impulse [ ] toward entertaining the broadest possible scope of action," *id.*, the Court should deny Plaintiffs' Motion. Walgreens' counterclaim, Plaintiffs' claims, and Walgreens' defenses all share overlapping facts, legal issues, witnesses, and evidence. All claims and defenses should be heard by the same jury at the same time.

## I.     THE COURT SHOULD NOT SEVER WALGREENS' COUNTERCLAIM

Plaintiffs offer a five-factor test to govern the Court's exercise of its discretion to sever. *See* Mot. at 9. Because the claims and counterclaim are not "discrete and separate," however, each of the five factors favors Walgreens' position against severing the case. *Id.* (citation omitted).

### A.     The Counterclaim and Plaintiffs' Claims Share Numerous Common Issues.

Even Plaintiffs' superficial description of the claims and counterclaim demonstrate that their factual and legal premises overlap. *See* Mot. at 4-5, 10. Plaintiffs accuse Walgreens of fraud, *see* Compl. ¶¶ 119-39; thus, Plaintiffs must prove, among other elements, that Walgreens knowingly made false statements. *See BCBSM*, 512 F. Supp. 3d at 850 (elements of Plaintiffs' fraud claims). Under recent binding precedent, the scienter element of Plaintiffs' claims is key. In *Schutte* and *Proctor*, the Seventh Circuit emphasized that "the U&C price definition is open to

---

[3] Plaintiffs' unilateral refusal to provide discovery supporting Walgreens' defenses and counterclaim is in line with Plaintiffs' general approach. By June 30, 2022, Walgreens had produced 150,312 documents and 843,436 pages. In contrast, the twenty-eight Plaintiffs remaining in the case collectively produced only 2,705 documents and 35,388 pages. Plaintiffs produced 1,046 documents, consisting of 21,876 pages, after the close of business on Friday, July 1, 2022. Walgreens continues to review that production.

multiple interpretations" so it would not be objectively "inconsistent with the text of the U&C price definition" to exclude from U&C a special price offered only to select customers. *See Schutte*, 9 F.4th at 468-70; *Proctor*, 30 F.4th at 659-60 ("an interpretation of U&C that excludes discounted prices available only to program participants is not inconsistent with the text of the U&C price definition") (cleaned up). Under *Schutte* and *Proctor*, Walgreens' consistent interpretation of U&C, informed by its communications with Crowell, was *objectively reasonable* as a matter of law. Accordingly, Plaintiffs must establish that Walgreens *knew* that its U&C interpretation, while objectively reasonable, was in fact false to prove fraud.

That same issue—what Walgreens knew and believed about its U&C-related obligations—is also at the heart of the counterclaim. As Plaintiffs concede, the key questions in the counterclaim are (1) whether Crowell breached its fiduciary duties to Walgreens by taking positions adverse to Walgreens in a matter substantially related to earlier advice; and (2) whether Plaintiffs knowingly aided and abetted Crowell's breaches. *See* Mot. at 4-5 To answer those questions, the jury will have to consider what privileged and confidential information Walgreens gave Crowell, what questions Walgreens asked about its U&C reporting obligations, and how Crowell responded.[4]

Counterclaim-related facts are also relevant to Walgreens' other key defenses:

- *Whether Walgreens made false statements*: Plaintiffs contend that Walgreens violated an industry-standard definition of U&C. *See, e.g.*, Compl. ¶ 66. Walgreens disagrees. *See, e.g.*, Defs.' Mot. to Dismiss, Dkt. 52, at 12-13. The advice that Crowell, a leading healthcare firm, provided to Walgreens at the start of the PSC program is highly relevant to whether an industry-standard definition of U&C even existed and, if so, what it was.

---

[4] Walgreens *does not* currently intend to assert a broad advice of counsel defense waiving privilege as to advice from non-Crowell lawyers. Rather, Walgreens will introduce Crowell's advice for the limited purpose of demonstrating whether an industry-standard definition of U&C exists (or did at the time of the 2008 PSC rollout) and what Walgreens knew about any such standard—from Crowell or otherwise. This is consistent with the D.C. Court's orders regarding Walgreens' narrow implied waiver in the D.C. Litigation. There, the court held that, although Walgreens had impliedly waived the privilege over *Crowell's* advice by suing Crowell for breaching its fiduciary duties, it had not waived privilege more broadly.

- *Statute of limitations*: To determine if Plaintiffs' claims are timely—an issue the Court noted Plaintiffs "may have to contend with . . . later in the case," *BCBSM*, 512 F. Supp. 3d at 859—a jury will consider when Plaintiffs were put on notice of their claims, including through any communications with Crowell. Those same communications could demonstrate when Plaintiffs learned of Crowell's fiduciary-duty breaches.

- *Reasonable reliance and related defenses*: What Crowell communicated to Plaintiffs about its previous representation of Walgreens and Walgreens' U&C pricing practices will inform not only the scope of Crowell's previous representation, but also whether Plaintiffs reasonably relied on Walgreens' U&C prices and whether Plaintiffs' claims are barred by the voluntary payment doctrine, acquiescence, ratification, or other affirmative defenses.

In these circumstances, when a claim and counterclaim "will require overlapping if not identical proof," *Compania Embotelladora del Pacifico v. Pepsi Cola Co.*, 256 F.R.D. 131, 133 (S.D.N.Y. 2009), such that "there is a likelihood that many issues . . . will be relevant to both" the claim and counterclaim, *Kimmel v. Cavalry Portfolio Servs., LLC*, 747 F. Supp. 2d 427, 435 (E.D. Pa. 2010), federal courts routinely decline to sever the counterclaim. This Court should do the same.

### B. The Counterclaim Has *Already* Facilitated Settlement; Severing Would Not Promote Judicial Economy.

In their rush to argue about judicial efficiency, Plaintiffs ignore whether severing the counterclaim will facilitate settlement. It will not. *See* Mot. at 9 (stating test); *id.* at 10-11 (ignoring it). Plaintiffs have a good reason to whistle past the issue: Plaintiffs know that the settlement factor strongly favors trying the claims and counterclaim together. In fact, the counterclaim has *already* facilitated settlement: Plaintiff BCBS of Nebraska voluntarily dismissed its claims against Walgreens with prejudice in exchange for Walgreens voluntarily dismissing its counterclaim, once it survived Plaintiffs' motion to dismiss. *See* Dkt. 292. Severing and staying the counterclaim will needlessly *discourage* similar settlements.

Plaintiffs' other arguments about judicial economy lack merit. Plaintiffs argue that this Court should defer to the D.C. Court because "judicial economy is not well-served by having two [factfinders] presiding over the same issues at the same time." Mot. at 11. But if the Court severs the counterclaim, two different juries in this Court will be forced to decide highly related issues of

law and fact. *See* Part I.A. Requiring two separate juries is a waste of resources and an invitation to inconsistent findings on the same issues. *Schulke v. Stryker Othopaedics*, 2016 WL 3059114, at *3 (N.D. Ill. May 31, 2016) (severance denied due to "risk of inconsistent judgments").

Plaintiffs also complain that the claims "are themselves expansive in scope" and require extensive and inefficient discovery. Mot. at 10. Plaintiffs ignore that the same discovery and evidence supporting the counterclaim also support Walgreens' defenses. *See* Parts I.A, I.D. Severing the counterclaim will make this litigation doubly inefficient because the parties will be required to conduct the same discovery and present the same evidence twice. *See Schulke*, 2016 WL 3059114, at *3 ("overlap between [ ] two cases" would force plaintiff to "double its efforts"). Moreover, if the case's scope and discovery's progress is inefficient, that is a problem of Plaintiffs' own making. Plaintiffs serially filed and then consolidated five separate suits with nineteen separate claims based on dozens of states' laws and alleged conduct that took place beginning a decade and a half ago, and Plaintiffs—not Walgreens—have dragged their feet in discovery. *See* Statement of Facts. Plaintiffs cannot use their own litigation tactics to prevent Walgreens from presenting highly related counterclaim evidence to the same jury hearing Plaintiffs' fraud claims and Walgreens' defenses. *Contra* Mot. at 10-11. Nor should Plaintiffs be heard to complain that counterclaim discovery will be "complex." *Id.* at 10. If discovery requires Plaintiffs to create "various walls to prevent different parties and counsel from viewing particular documents," *id.* at 11, that is only because Plaintiffs' chosen firm breached its fiduciary duties to Walgreens.

Finally, putting aside that Plaintiffs previously argued that "this Court is the *only* court empowered to decide" the ethical breaches underlying the counterclaim, Pls.' Opp. to Mot. to Strike, Dkt. 183, at 12, severing the counterclaim in favor of the D.C. Litigation will not promote judicial efficiency. Because the claims and counterclaim significantly overlap, if the claims and counterclaim are severed, the Court will inevitably be forced to expend time and resources

enforcing a false dichotomy between claim and counterclaim evidence and discovery. *See also* Part II. Moreover, the D.C. Litigation will not necessarily resolve the counterclaim here.[5] Crowell's fiduciary duty breach is just one element of Walgreens' aiding and abetting claim. *See* Dkt. 217 at 16-17. If Walgreens prevails in the D.C. Litigation, this Court will still need to decide whether and when Plaintiffs knew about Crowell's breach.

### C. Severing Will Increase, Not Avoid, the Chance of Undue Prejudice.

Plaintiffs assert they "should have their claims against Walgreens decided on the merits," Mot. at 11-12, but they argue that the counterclaim evidence will cause prejudice by distracting the jury. Plaintiffs put the cart before the horse. The counterclaim is inextricably intertwined with the merits of Plaintiffs' claims and Walgreens' defenses. A trial that excludes evidence about Walgreens' U&C interpretation, *including as reflected in Walgreens' 2008 and 2009 interactions with Crowell*, necessarily deprives Walgreens of a *defense* as well as a counterclaim. To decide Plaintiffs' claims and Walgreens' defenses "on the merits," *id.*, the jury must hear evidence about what Walgreens knew about PSC's effect on U&C pricing when Crowell was advising the company during a critical period that *Plaintiffs* have put at issue in this case. The jury must also learn whether an industry-standard U&C definition even existed and when Plaintiffs discovered Walgreens' alleged U&C pricing practices. That is the same evidence the jury must consider to decide the counterclaim. Granting Plaintiffs' motion to sever (and providing the additional evidentiary restrictions on Walgreens' defense that Plaintiffs imply are necessary) will foster undue prejudice, against Walgreens, not avoid it.

---

[5] Plaintiffs suggest, hypocritically, that the D.C. Litigation will prevent Walgreens from relitigating Crowell's fiduciary duty breaches—but only if Crowell prevails in the D.C. Court. *See* Mot. at 11. In this case's unique circumstances, however, issue preclusion runs both ways, if it applies: because of the "pre-existing substantive legal relationship" between Plaintiffs and Crowell, Plaintiffs will be equally bound if the D.C. Court rules in Walgreens' favor. *See, e.g.*, *EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448, 451 (D.C. Ct. App. 2012) (citing *Taylor v. Sturgell*, 553 U.S. 880, 894 (2008)).

Plaintiffs' cynical assertions about discovery problems and the advocate-witness rule also fail to establish undue prejudice or support a radical, wasteful division of this case into two proceedings. Plaintiffs' hypocrisy is striking. Walgreens' counsel first advised Plaintiffs and Crowell *a year-and-a-half ago,* that Crowell's continued representation could lead to the same practical and ethical concerns that Plaintiffs breathlessly raise now as if they just came up:

> Frankly, we also cannot imagine that Plaintiffs themselves would permit Crowell to proceed as lead counsel in a potential jury trial where (1) Crowell's own legal advice to Walgreens might be placed at issue and (2) current and former Crowell lawyers may be key witnesses testifying about Crowell's advice to Walgreens[.]

Feb. 25, 2021, Ltr. from J. Bushofsky, Dkt. 159-2, Ex. 13, at 1-2. In its response at the time, Crowell dismissed Walgreens' concerns and claimed that the advocate-witness rule was irrelevant to this case. Mar. 1, 2021, Ltr. from T. Mason, Dkt. 159-2, Ex. 14, at 2. Now Plaintiffs presume that Crowell attorneys will somehow be key witnesses, and they ask the Court to sever the counterclaim as a result. *See* Mot. at 11-12. However, as it turns out, none of the Crowell lawyers representing Plaintiffs in this litigation advised Walgreens in 2008 and 2009 (those lawyers have mostly moved on or are deceased), and any Crowell witness testifying regarding the firm's prior representation of Walgreens, whether or not designated pursuant to Rule 30(b)(6), can and should be a non-member of the Plaintiffs' trial team. More than a year after Walgreens brought it up as a *potential* issue, the advocate-witness rule is not implicated here.

In addition, the Court can minimize any conceivable prejudice to Plaintiffs by issuing limiting instructions and implementing routine case-management procedures. *See Preston v. Wiegand*, 2021 WL 5447039, at *4 (N.D. Ill. Nov. 22, 2021) (court is "capable of distinguishing the evidence" relevant to one claim from evidence relevant only to another); *Davis v. Packer Eng'g*, 2016 WL 11689521, at *4 (N.D. Ill. Nov. 14, 2016) (prejudice in non-severed trial can be avoided by carefully instructing "jury . . . about what evidence may and may not be taken into

account with respect to each . . . claim[]"). For example, Plaintiffs fret that, if the claim and counterclaim proceed together, Walgreens will examine Crowell's time records, which may reveal Plaintiffs' legal strategy. *See* Mot. at 6-7. But the parties can work together with the Court's guidance to avoid whatever vague concerns Plaintiffs supposedly have about such issues through redactions, motions *in limine*, limiting instructions, and other ordinary devices short of doubling the number of trials and juries. The Court need not take the drastic step of severing the case to save Plaintiffs from nebulous and hypothetical risks that Plaintiffs themselves caused.

### D. The Counterclaim and Plaintiffs' Case Involve Overlapping Evidence.

Plaintiffs baldly assert that the claims and counterclaim "will require entirely separate evidence and witnesses." Mot. at 12. Not true. Indeed, Plaintiffs' own description of the likely proofs undermines their argument. Plaintiffs concede that, to prove their claims, Plaintiffs will need to present evidence and witnesses "to establish the parties' knowledge with respect to" Walgreens' price-reporting practices. *Id.* at 13. Plaintiffs also concede that, to prove its counterclaim, Walgreens will need to present evidence and witnesses to establish "the scope of" Crowell's representation of Walgreens and "the information provided" as part of that attorney-client relationship. *Id.* But Plaintiffs ignore that those witnesses and that evidence are the same.

As described above, *see* Part I.A, the evidence demonstrating what privileged and confidential information Walgreens provided Crowell will be relevant both to the scope of their attorney-client relationship and what Walgreens knew and believed about PSC during the program's formative days. The same evidence demonstrating what legal advice Crowell and its industry-leading healthcare lawyers gave Walgreens will be relevant both to the scope of their attorney-client relationship and to the existence and content of Plaintiffs' asserted industry-standard U&C definition, as well as Walgreens' knowledge of it. The same witnesses who are competent to testify about Plaintiffs' knowledge of Crowell's representation of Walgreens are

likely also informed about Plaintiffs' initial notice (including from Crowell) of their claims.

If the claims, defenses, and counterclaim continue together, the jury will evaluate this evidence and hear these witnesses once, with full context; if the counterclaim is severed, the parties will duplicate efforts, presenting the same evidence and witnesses to a second jury at a separate trial, divorced from the broader relevant context. The Court should avoid that inefficiency. *Benitez v. Am. Standard Circuits, Inc.*, 678 F. Supp. 2d 745, 768-71 (N.D. Ill. 2010) (inefficient to require "two separate triers of fact to consider largely [the] same evidence").

### E. The Counterclaim Arises from the Same Transactions and Occurrences as Plaintiffs' Claims.

Plaintiffs misconstrue the transaction or occurrence test and oversimplify their claim to avoid the reality of their own pleading. Claims arise out of the same transaction or occurrence if they share a "logical relationship." *White v. Coventry Health Care, Inc.*, 2018 WL 1469024, at *2 (N.D. Ill. Mar. 26, 2018) (citation omitted). To determine whether claims are logically related, courts consider "whether the alleged conduct occurred during the same general time period, involved the same people and similar conduct, and implicated a system of decision-making or widely-held policy." *Id.* (cleaned up); *see Preston*, 2021 WL 5447039, at *3-4 (individual civil-rights claims arose out of same transaction or occurrence even though department fired plaintiffs at different times under different circumstances). Ignoring the authorities, Plaintiffs suggest that the test is met only if the underlying overlapping facts reflect identical events happening at precisely the same time—a position that defies experience and the law. *See* Mot. at 9-10. Setting aside that Plaintiffs' case stretches back to 2006 and expressly seeks damages for the 2008 and 2009 period when Crowell was advising Walgreens on issues central to Plaintiffs' fraud theory, Plaintiffs' interpretation of the transaction or occurrence test has no legal basis. Plaintiffs provide no support for their narrow interpretation, *see id.*, and none exists.

-13-

Because Plaintiffs' claims and Walgreens' counterclaim are logically related, they fully satisfy the transaction or occurrence test. First, the relevant facts do overlap and occurred at the same time: Crowell provided U&C advice to Walgreens on the identical subject matter of Plaintiffs' claims when Walgreens launched PSC, and Plaintiffs seek damages for the same period. *See* Compl. ¶ 81; Countercl. ¶¶ 9, 54-67. The fact that Plaintiffs' allegations cover a broader time period than the counterclaim does not mean that the conduct at issue does not overlap; it does. Second, the claims and counterclaim involve identical conduct: Walgreens' U&C reporting with respect to PSC. *Compare* Countercl. ¶¶ 8, 55-59, *with, e.g.*, Compl. ¶ 1. Third, the counterclaim implicates the advice Crowell provided Walgreens regarding its U&C reporting—the same issue at the core of Plaintiffs' claims. *Compare* Countercl. ¶¶ 8, 55-59, *with, e.g.*, Compl. ¶ 1.

## II.     THE COURT SHOULD NOT STAY THE COUNTERCLAIM

If the case is severed, which it should not be, there is no good reason to delay Walgreens' case against the Plaintiffs. Walgreens can prevail on its aiding and abetting claim regardless of the result of Plaintiffs' claims.[6] And, as Plaintiffs' own authority holds, pending litigation should rarely be stayed, and only then in cases of extreme hardship. *See Pfizer Inc. v. Apotex Inc.*, 640 F. Supp. 2d 1006, 1007 (N.D. Ill. 2009) (Mot. at 12). Any conceivable prejudice to Plaintiffs can easily be mitigated or avoided altogether, and any such risk is a result of Plaintiffs' own decision to retain conflicted counsel. The Court should deny the stay on these bases alone.

A stay will also complicate the issues and increase the burden on the parties and this Court.

---

[6] Plaintiffs' request to stay the counterclaim until their own claims are resolved is inconsistent with their request for severance. As Plaintiffs' cited case demonstrates, severance is appropriate only when "one claim [is] capable of resolution despite the outcome of the other claim." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (Mot. at 8-9). If (as Plaintiffs argue in support of severance) a jury can resolve the counterclaim regardless of the outcome of Plaintiffs' claims, there is no reason for the counterclaim and Plaintiffs' claims to proceed sequentially. Parallel proceedings should move ahead if the case is severed, and a single set of discovery should be developed for all claims and defenses.

As just one example, staying the counterclaim will require discovery on Plaintiffs' knowledge of Crowell's conflicts at a later date, duplicating ongoing discovery related to Walgreens' defenses. The Court likely also will be called on to police the wholly fictional boundaries Plaintiffs now seek to draw between claim and counterclaim evidence. Plaintiffs have already capriciously used that false distinction to withhold information critical to Walgreens' defenses.[7]

Waiting for the D.C. Court will not eliminate any perceived inefficiencies. If the Court stays the counterclaim until the D.C. Litigation reaches judgment, Walgreens will be hindered from fully developing its defenses and the Court will be embroiled in disputes about imaginary lines between the claims and counterclaim. The Court can avoid that morass by allowing the claims and counterclaim to proceed together or in parallel. Plaintiffs' concerns about "inconsistent decisions" are overblown, too. Mot. at 14-15. Plaintiffs concede that the D.C. Litigation is "well ahead of this one on discovery related to the Counterclaim." *Id.* at 11. This case will not beat the two-party D.C. Litigation to judgment: this matter has twenty-eight Plaintiffs, nineteen counts, a third-party complaint, and new *CareFirst* Plaintiffs who have yet to establish jurisdiction. Plaintiffs have not produced a meaningful set of documents and no depositions have been taken. Discovery should now proceed apace to support *all* of the overlapping claims and defenses in this matter, including the counterclaim.

## CONCLUSION

Defendants respectfully request that the Court deny Plaintiffs' Motion to sever and stay.

---

[7] In its first set of interrogatories, Walgreens requested information about when Plaintiffs first communicated with a law firm about the substance of their claims. *See* Ex. B at Pls.' Resp. & Obj. to Interrog. No. 3. Plaintiffs refused to respond. *See id.* Walgreens explained that the interrogatories were highly relevant *both* to its "statute-of-limitations and other defenses and its counterclaim." *See* Ex. C, Sept. 29, 2021, Ltr. from J. Bushofsky at 5, 7. According to Plaintiffs, however, Walgreens is not "entitled to any discovery whatsoever regarding Walgreens' counterclaim," even where that discovery is *also* germane to Walgreens' defenses. *See* Ex. E, Oct. 18, 2021, Ltr. from K. Hibbert at 1.

Dated: July 7, 2022

Respectfully submitted,

/s/ Jeffrey J. Bushofsky
Jeffrey J. Bushofsky
Laura G. Hoey
Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5562
Jeffrey.Bushofsky@ropesgray.com
Laura.Hoey@ropesgray.com
Charles.Zagnoli@ropesgray.com

*Attorneys for Defendant / Counterclaimant*
*Walgreen Co. & Defendant Walgreens Boots*
*Alliance, Inc.*

-1-

## CERTIFICATE OF SERVICE

I, Charles D. Zagnoli, hereby certify that the foregoing document was electronically filed on July 7, 2022, and will be served electronically via the Court's ECF Notice system upon the registered counsel of record.

/s/ Charles D. Zagnoli

Charles D. Zagnoli
**ROPES & GRAY LLP**
191 North Wacker Drive
32nd Floor
Chicago, Illinois 60606
Tel: (312) 845-1200
Fax: (312) 845-5562
Charles.Zagnoli@ropesgray.com

*Attorney for Defendant / Counterclaimant*
*Walgreen Co. & Defendant Walgreens Boots*
*Alliance, Inc.*