THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCBSM, INC., *et al.*, | ) | No. 20 C 1853 |
| | ) | |
| *Plaintiffs*, | ) | |
| v. | ) | Judge Virginia M. Kendall |
| | ) | |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) | |
| | ) | No. 20 C 1929 |
| | ) | No. 20 C 3332 |
| *Defendants.* | ) | No. 20 C 4940 |
| | ) | No. 20 C 4738 |
| | ) | No. 22 C 1362 |
| | ) | |

**MEMORANDUM OPINION & ORDER**

Plaintiffs[1] sued Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. (collectively "Walgreens") in March 2022 alleging state common-law claims and violations of various state consumer-protection statutes. *See CareFirst of Maryland, Inc. v. Walgreen Co.*, No. 22 C 1362, ECF 1 [hereinafter the "Complaint" in the "CareFirst Action"] ¶¶ 100–191. The CareFirst Action was then consolidated with this case, *BCBSM, Inc. v. Walgreen Co.*, No. 20 C 1853, joining four others. (Dkt. 251). Walgreens moved to dismiss the CareFirst Action for lack of subject-matter jurisdiction. (Dkt. 267). Plaintiffs opposed Walgreens' motion and moved to sever certain plaintiffs and their claims from the CareFirst Action and for leave to amend the Complaint. (Dkt. 289). Walgreens then moved to strike Plaintiffs' Reply in Support of their Motion to Sever and Amend. (Dkt. 305). For the following reasons, the Court denies Walgreens' motion to dismiss

---

[1] "Plaintiffs" refers collectively to CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc. ("GHMSI"); CareFirst BlueChoice, Inc.; Blue Cross and Blue Shield of South Carolina; BlueChoice HealthPlan of South Carolina, Inc.; Louisiana Health Service & Indemnity Company, d/b/a Blue Cross and Blue Shield of Louisiana; and HMO Louisiana, Inc. ("HMOLA"). (*See* Complaint at 1).

1

[267], denies Plaintiffs' motion to sever and grants leave to amend the complaint [289], and dismisses as moot Walgreens' motion to strike [305].

## BACKGROUND

Plaintiffs allege state common-law claims (Counts I–III) and violations of various state consumer-protection statutes (Counts IV–VIII).[2] (Complaint ¶¶ 100–191). No claims arise under federal law. Plaintiffs invoke diversity jurisdiction.[3] (*Id.* ¶ 29). Walgreens' actions allegedly cost Plaintiffs "hundreds of millions of dollars," putting the amount in controversy over $75,000. (*Id.* ¶ 1; *see also id.* ¶¶ 8, 11). Walgreens says the parties are not diverse.

Plaintiffs claim to be Maryland, Washington, D.C., South Carolina, and Louisiana citizens, and Defendants are citizens of Delaware and Illinois. (*Id.* ¶ 29). Walgreens challenges the citizenship of one plaintiff: Group Hospitalization and Medical Services, Inc. ("GHMSI"). (*See* dkt. 267 at 2). Plaintiffs state: "GHMSI is a congressionally chartered corporation with its principal place of business in Washington, D.C. GHMSI operates as a not for profit health services plan in two countries of Maryland, Northern Virginia, and the District of Columbia." (Complaint ¶ 13). Walgreens argues GHMSI is not a citizen of Washington, D.C. but is instead "stateless" because it is a federally chartered corporation, destroying complete diversity. (Dkt. 267 at 2).

Walgreens moves to dismiss the CareFirst Action for lack of subject-matter jurisdiction. (*Id.*) Plaintiffs attempt to "moot" the alleged jurisdictional defect by asking the Court to (1) sever

---

[2] Specifically, Plaintiffs allege fraud (Count I), fraudulent non-disclosure (Count II), and unjust-enrichment (Count III), as well as violations of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510 *et seq.* (Count IV); the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505 *et seq.* (Count V); the Maryland Consumer Protection Act, MD. COM. LAW CODE § 13-101 *et seq.* (Count VI); the Virginia Consumer Protection Act, VA. CODE §§ 59.1–200 (Count VII); and the South Carolina Unfair Trade Practices Act, S.C. CODE ANN. § 39-5-10 *et seq.* (Count VIII). (Complaint ¶¶ 130–192).

[3] While Plaintiffs also invoked 28 U.S.C. § 1367, (Complaint ¶ 29), which confers supplemental jurisdiction, the Court must first have "an independent basis for federal jurisdiction" before it can exercise supplemental jurisdiction over related claims. *Peacock v. Thomas*, 516 U.S. 349, 355 (1996). Jurisdiction pursuant to § 1367 therefore depends on satisfying the § 1332 requirements.

2

the "concededly diverse South Carolina and Louisiana claims" from the others; (2) grant Plaintiffs "leave to amend their complaint to assert a cause of action under the Racketeer Influenced and Corrupt Organizations (RICO) Act," thereby providing federal-question jurisdiction over that action; and (3) allowing Plaintiffs' claims to proceed, briefly, in two separate actions until consolidating these two actions back into the present consolidated case.[4] (Dkt. 289 at 1–3).

Walgreens opposed Plaintiffs' motion and argued Plaintiffs had conceded the lack of subject-matter jurisdiction by waiving all arguments they might have made. (Dkt. 296). Plaintiffs filed their reply in support of their motion to sever and amend, which addressed subject-matter jurisdiction substantively for the first time. (Dkt. 302). Walgreens moves to strike those portions of Plaintiffs' Reply raising arguments on the merits of subject-matter jurisdiction. (Dkt. 305). All three related motions are now before this Court.

## LEGAL STANDARD

Courts resolving Rule 12(b)(1) facial challenges to subject-matter jurisdiction employ the same "plausibility" standard used to evaluate Rule 12(b)(6) motions to dismiss. *Silha v. ACT, Inc.*, 807 F.3d 169, 174 (7th Cir. 2015). The Court accepts all well-pleaded facts alleged in the complaint as true and draws all reasonable inferences in plaintiffs' favor. *Gociman v. Loyola Univ. Chi.*, 41 F.4th 873, 881 (7th Cir. 2022). "The party invoking diversity jurisdiction . . . bears the burden of showing its existence." *Page v. Democratic Nat'l Comm.*, 2 F.4th 630, 634 (7th Cir. 2021). But federal courts also "must make their own inquiry to ensure that all statutory requirements are met before exercising jurisdiction." *Id.* (citing *Great Southern Fire Proof Hotel Co. v. Jones*, 117 U.S. 449, 453 (1900)).

---

[4] Plaintiffs' Response brief/Motion to Sever and Amend responded to Walgreens' jurisdictional arguments by noting only they "dispute" those arguments and stating in a footnote: "To the extent that, in the future, Walgreens reasserts its argument that GHMSI cannot invoke diversity of citizenship to litigate in federal court, the CareFirst Plaintiffs reserve all grounds to oppose Walgreens' entirely incorrect position." (Dkt. 289 at 2 n.2).

3

## DISCUSSION

A.  **Subject-Matter Jurisdiction**

Under the current version of the relevant jurisdictional statute, federal courts can exercise diversity jurisdiction when two requirements are met: (1) the "matter in controversy exceeds the sum or value of $75,000," and (2) the dispute is "between citizens of different states."[5] 28 U.S.C. § 1331(a)(1). To satisfy the latter statutory requirement, no plaintiff may share any defendant's citizenship. *Page*, 2 F.4th at 636; *see also Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806). Yet "[s]ome individuals or entities are not considered to be citizens of any state." *Page*, 2 F.4th at 635; *see also Newman-Green, Inc. v. Alfonzo-Larrain, et al.*, 490 U.S. 826, 828 (1989) (holding U.S. citizen domiciled abroad was "stateless" for diversity purposes). A stateless individual or entity is neither a citizen of any state nor of a foreign state and thus falls outside § 1332 jurisdiction. *Page*, 2 F.4th at 636. A stateless party's presence in an action destroys complete diversity "just as much as a defendant who shares citizenship with a plaintiff." *Id.*

Congress defines the citizenship of artificial entities, such as corporations. *United Steelworkers of America, AFL-CIO v. R. H. Bouligny, Inc.*, 382 U.S. 145, 153 (1965). The current version of the diversity-jurisdiction statute states: "[A] corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business." § 1332(c)(1); *see also Page*, 2 F.4th at 635 ("When it comes to corporations . . . the diversity statute itself makes clear that a corporation is a citizen of both its state of incorporation and the state in which it maintains its 'principal place of business.'"); *cf. Hertz Corp. v. Friend*, 559 U.S. 77, 80–81 (2010) (defining "principal place of business" as the

---

[5] The statute provides for diversity of citizenship in a few other situations, but those are not relevant here. *See* 28 U.S.C. § 1332(a)(2)–(4).

corporation's "nerve center" or "the place where the corporation's high level officers direct, control, and coordinate the corporation's activities").

Walgreens does not dispute that GHMSI is a corporation with its principal place of business in Washington, D.C. but argues that GHMSI nevertheless has no state citizenship because it is congressionally chartered and thus not incorporated under the laws of any state.[6] (Dkt. 267 at 5–6 (citing Complaint ¶ 13)). In support, it relies on *Bankers Trust Co. v. Texas & Pacific Railway Co.*, 241 U.S. 295 (1916), for the proposition that a federally chartered corporation has no state citizenship and is stateless per se for diversity purposes.

In *Bankers Trust*, the defendant Texas & Pacific Railway Company was "a corporation created and existing under the laws of the United States, [with] its principal place of business and its principal operating and general offices in the northern district of Texas." *Id.* at 301. After concluding no federal-question jurisdiction existed, the Court considered diversity jurisdiction, which turned on whether the defendant was a citizen of Texas. *Id.* at 308–09. The Court concluded the company was "not a citizen of any state" because "[i]t was incorporated under acts of Congress, not under state laws; and its activities and operations were not to be confined to a single state, but to be carried on, as in fact they are, in different states." *Id.* at 309.

But when *Bankers Trust* was decided in 1916, Congress had not yet spoken on the state citizenship of corporations in general under any statute.[7] Then, unlike now, the common law

---

[6] Walgreens stops short of acknowledging GHMSI's principal place of business is Washington, D.C. Instead, Walgreens anticipates an argument from Plaintiffs that Congress established Washington, D.C., as GHMSI's "legal domicile" and attacks this as insufficient to establish its citizenship. (Dkt. 267 at 7 n.3). Walgreens is correct that "GHMSI's Washington, D.C. domicile establishes neither its state of incorporation nor its principal place of business." (*Id.*) But GHMSI specifically alleged that its *principal place of business is in Washington, D.C.* (Complaint ¶ 13). Walgreens does not challenge the truth of this factual allegation.

[7] The text of the jurisdictional statute gave no insight into corporate citizenship. *See, e.g.*, the text of the Judicial Code, § 24, ¶ 1 in 1916: "The district courts shall have original jurisdiction as follows: (1) First. Of all suits of a civil nature . . . where the matter in controversy exceeds, exclusive of interests and costs, the sum or value of three thousand dollars, and (a) arises under the Constitution or laws of the United States, or treaties made, or which shall be made under their authority, or (b) is between citizens of different States, or (c) is between citizens of a State and foreign

5

governed the citizenship of most corporate entities, and under the common law of the time, corporations were citizens only of their state of incorporation. *See Hertz Corp. v. Friend*, 559 U.S. 77, 84–86 (2010) (recounting evolution of corporate citizenship at common law); *Louisville, C. & C.R. Co. v. Letson*, 43 U.S. (2 How.) 497, 558 (1844) (deeming for the first time a corporation as an artificial person of the State by which it had been created under that State's laws). So, if corporations were citizens of their state of incorporation, and federally chartered corporations were not incorporated under the laws of any state, the *Bankers Trust* Court logically concluded that—at common law—federal corporations were stateless unless and until Congress said otherwise. *Bankers Trust Co.*, 241 U.S. at 310. After all, Congress could codify a federally chartered entity's state citizenship for diversity purposes if it desired (and had done for national banks). *Id.* (citing § 24, ¶ 16 of the Judicial Code).

Congress remained silent on general corporate citizenship through the mid-twentieth century until amending the diversity-jurisdiction statute in 1958. *See* Act of July 25, 1958, Pub. L. 85-554, § 2, 72 Stat. 415.[8] For the first time, a corporation could have *two* citizenships—one defined by its state of incorporation and the other by the state where it maintained its principal place of business. *Hertz Corp.*, 559 U.S. at 88 ("[I]n 1958, Congress both codified the courts' traditional place of incorporation test and also enacted into law . . . 'principal place of business' language."). Both tests of corporate citizenship remain in effect. § 1332(c)(1).

While *Bankers Trust* held that federally chartered corporations lacked state citizenship as they had no state of incorporation, this remained true only so long as Congress had not statutorily

---

States, citizens, or subjects." Mallory, John A., Compiler. Tit. 120 U.S. COMP. STAT. ANN. § 991 (Jud. Code, § 24) (West 1916).

[8] The Act amended 28 U.S.C. § 1332(c) to read: "For the purposes of this section and section 1441 of this title, a corporation shall be deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." Act of July 25, 1958, Pub. L. 85-554, § 2, 72 Stat. 415.

6

defined corporate citizenship. In 1916, "there [was] no ground upon which the company [could] be deemed a citizen of Texas" at common law or by statute. *Bankers Trust*, 241 U.S. at 310. Now the jurisdictional statute provides such a ground for all corporations based on their principal place of business. Nothing in § 1332(c)(1) predicates the second test of corporate citizenship on satisfying the first. Here, then, GHMSI may have no state of incorporation, but it maintains its principal place of business in Washington, D.C. Under a plain reading of § 1332(c)(1), it is therefore a citizen of Washington, D.C. and is not stateless for diversity purposes.

Walgreens nevertheless argues GHMSI is stateless per se under *Bankers Trust* because more recent Seventh Circuit precedent has "recognized the *Bankers Trust* holding in *Hukic v. Aurora Loan Services*." (Dkt. 267 at 6). Walgreens, however, overstates the significance of dicta in *Hukic*. In that case, the court considered whether diversity jurisdiction existed where the defendant LLC's sole member was Lehman Brothers Bank, a federally chartered savings association. 588 F.3d 420, 427 (7th Cir. 2009). Discussing state citizenship, the Seventh Circuit mentioned the *Bankers Trust* holding "that a corporation chartered pursuant to an Act of Congress with activities in different states . . . was not a citizen of any state for diversity purposes." *Id.* at 428. The court then noted the 1958 codification of the two general statutory grounds for corporate citizenship. *Id.* But it also stated that,

> [w]ith *Bankers' Trust* in the background, many courts concluded that 28 U.S.C. § 1332(c)(1) applied only to state corporations and not to federally chartered corporations or associations. The result for these courts was that, unless a specific statutory provision dictated otherwise, a federally chartered savings association was not a citizen of any state, meaning it was not eligible for diversity jurisdiction; courts sometimes recognized an exception if activities were localized in one state.

*Id.* (citations omitted). The court then discussed the complexity of state citizenship in the specific case of the defendant LLC but ultimately concluded that federal-question jurisdiction existed, so

7

there was no need to decide the citizenship question. *Id.* at 428–29. The Seventh Circuit's discussion of *Bankers Trust* in *Hukic* was only dicta because the court made no holding about the defendant's citizenship. Moreover, the court merely acknowledged other courts' holdings, neither endorsing nor rejecting them.[9] The court did not address whether, in its own view, the "specific statutory provision" of § 1332(c)(1) deeming a corporation a citizen of the state of its principal place of business superseded *Bankers Trust*. *See id.* at 428.

The *Hukic* court noted the "exception" courts have sometimes recognized to *Bankers Trust*. 588 F.3d at 428 (citing cases). This doctrine and its relevance merits further elaboration. The court referred to a body of caselaw that suggests a limited exception to *Bankers Trust*'s per se stateless holding may exist where a federally chartered corporation is localized to a single state—the "localization" doctrine. The D.C. Circuit observed that even after the 1958 amendment, some district courts "stuck by the rule excluding federally chartered corporations altogether from diversity jurisdiction. According to those courts, it is a corollary of the *Bankers Trust* rule that a federally chartered corporation the activities of which are limited to a single state is to be deemed a citizen of that state."[10] *A.I. Trade Fin., Inc. v. Petra Int'l Banking Corp.*, 62 F.3d 1454, 1458 (D.C. Cir. 1995) (citing *Bankers Trust*, 241 U.S. at 309 (noting corporation's activities "were not to be confined to a single State, but to be carried on, as in fact they are, in different States")).

---

[9] A court in this district characterized *Hukic* as "reconfirm[ing]" the *Bankers Trust* holding. *See Fed. Home Loan Bank of Chi. v. Banc of Am. Funding Corp.*, 760 F. Supp. 2d 807, 808–09 (N.D. Ill. 2011). But as explained, this overstates *Hukic*, as yet another district court within the Seventh Circuit's jurisdiction recognized: "Defendants characterize this language [in *Hukic*] as the Seventh Circuit citing these cases [adhering to *Bankers Trust*] with approval. That reading is overly generous; the language—which is dicta—is better characterized as simply noting in passing the holding of the cited cases without comment." *Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Secs., Inc.*, No. 10-cv-1463, 2011 WL 2133539, at *3 n.5 (S.D. Ind. May 25, 2011).

[10] Like the Seventh Circuit in *Hukic*, the D.C. Circuit made no holding as to the 1958 amendment's effect on *Bankers Trust* or whether the "localization" doctrine should still be recognized. *See A.I. Trade Fin., Inc.*, 62 F.3d at 1459 ("The parties have not addressed this issue, and we are therefore reluctant to rule upon it. Nor need we decide whether the district court properly exercised diversity jurisdiction . . . ."). The court instead found federal-question jurisdiction existed. *Id.* at 1467.

Courts finding federally chartered entities stateless for diversity purposes have interpreted the localization doctrine as the only exception to the *Bankers Trust* holding without addressing the effect of the principal-place-of-business text of § 1332(c)(1).[11] Yet the "localization" doctrine was itself judicially created to achieve the same result for public policy reasons before the statute's enactment. The Third Circuit then endorsed the doctrine to give effect to this public policy in a specific situation where a federally chartered corporation clearly had its principal place of business in a particular state, but the statute could not be applied due to the timing of its enactment.

In 1956, shortly before the codification of corporate citizenship in general, an Oregon district court created what became known as the "localization" doctrine as an exception to *Bankers Trust*'s general rule that federal corporations were per se stateless. *Arlington Cmty. Fed. Credit Union v. Berkley Reg'l Ins. Co.*, 57 F. Supp. 3d 589, 593 (E.D. Va. 2014). The Oregon court reasoned that the common law, including in *Bankers Trust*, had distinguished "a federal corporation authorized to transact its business in several states"—which had no state citizenship— from "a federal corporation localized to a single state." *Elwert v. Pac. First Fed. Sav. & Loan Ass'n of Tacoma, Wash.*, 138 F. Supp. 395, 401 (D. Or. 1956). For the latter category, the district court accepted the "rationale of citizenship by reason of localization." *Id.* The court reasoned that Congress's intent in enacting 28 U.S.C. § 1348—which deemed national banks as citizens of their

---

[11] *See, e.g.*, *Fed. Home Loan Bank of Chi. v. Banc of America Funding Corp.*, 760 F. Supp. 2d 807, 808–09 (N.D. Ill. 2011) (finding *Hukic* "reconfirmed" *Bankers Trust* and determining bank's extensive out-of-state activities caused it to fall "well outside of the limited exception recognized in some cases for 'localized' federally chartered corporations"); *Am. Airlines Fed. Credit Union v. Eck*, No. 18 C 599, 2018 WL 2332065, at *2 (N.D. Ill. May 23, 2018) ("In *Hukic*, the Seventh Circuit neither adopted nor expressed any opinion on the viability of the localization doctrine; nevertheless, the Court will, in the instant case, assess whether AAFCU's activities are localized in Texas . . . because the localization doctrine appears to be widely accepted . . . ."); *Fed. Home Loan Bank of Indianapolis v. Banc of Am. Mortg. Secs., Inc.*, No. 10-cv-1463, 2011 WL 2133539, at *3–*4 (S.D. Ind. May 25, 2011) (noting parties agreed *Bankers Trust*'s "general rule" remained effective and finding entity's activities spanned two states and thus fell outside localization exception); *Philadelphia Indemnity Ins. Co. v. U.S. Olympic Comm.*, No. 19-cv-1231, 2020 WL 4783516, at *3–*4 (D. Colo. Aug. 18, 2020) (stating without further analysis that "§ 1332(c) is inapplicable" to federally chartered corporations and collecting district-court cases applying *Bankers Trust*'s general rule and the limited localization doctrine exception).

state of location—was consistent with a more general congressional approval of early federal common law that had recognized "localization" in one state as a basis for state citizenship of federally chartered entities. *Id.* at 401–02 (citing *Orange Nat'l Bank v. Traver*, 7 F. 146, 148–49 (D. Or. 1881); *Mfrs. Nat'l Bank v. Baack*, 2 Abb. U.S. 232 (S.D.N.Y. 1871)). For the *Elwert* Court, Congress "did not intend to abolish the said common law" by codifying only the citizenship of national banks to the exclusion of other types of federally chartered entities. *Id.* at 402. Rather, Congress generally intended federal corporations "localized within one single state" to be considered citizens of that state. *Id.* This approach therefore endorsed a narrow common-law pathway for federally chartered entities' state citizenship that was still consistent with *Bankers Trust*'s holding. *See Bankers Trust*, 241 U.S. at 309 ("[Defendant's] activities and operations were not to be confined to a single state, but to be carried on, as in fact they are, in different states.").

The Third Circuit in 1959—shortly after the 1958 amendment—adopted the Oregon district court's common-law localization exception, being "mindful that the present direction of public policy is toward greater recognition of local corporate activity as equivalent to citizenship for diversity purposes." *Feuchtwanger Corp. v. Lake Hiawatha Fed. Credit Union*, 272 F.2d 453, 455 (3d Cir. 1959). The court found Congress's intent in enacting § 1332(c) with "principal place of business" language was consistent with the Oregon district court's rationale that Congress approved of corporate "localization" as a basis for corporate state citizenship generally. *Id.* at 455–56. The Third Circuit could not, however, straightforwardly apply the statute's principal-place-of-business grounds for citizenship in that case. *Id.* at 456. The law was passed on July 25, 1958, and the court was reviewing a case "filed October 31, 1957." *Id.* The statute came too late to apply in this case. Rather than find a highly localized federal corporation "stateless," when Congress had just authorized a related basis for state citizenship, the court seemed to endorse the "localization"

doctrine to give effect to Congress's intent under the statute when it could not apply that statute directly. *See id.* ("Thus, *for the future*, [because of § 1332(c)] localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." (emphasis added)); *see also Arlington Cmty. Fed. Credit Union*, 57 F. Supp. 3d at 593 ("[T]he Third Circuit found Congress' 1958 amendment of 28 U.S.C. § 1332 probative of 'the present direction of public policy . . .' because Congress deemed state corporations citizens of both their states of incorporation and their principal places of business.").

Some courts have followed the Third Circuit and continued to apply the judicially created localization doctrine without considering the principal place of business as a basis for citizenship grounded in statute. Against the backdrop of *Bankers Trust* and its general rule for federal corporations, these courts have supposed Congress intended § 1332(c) to apply only to state-chartered corporations, and that federally chartered entities were still stateless unless they met the localization test endorsed by the Third Circuit.[12] They have concluded this despite the *Feuchtwanger* Court's supposition that the jurisdictional statute would provide a basis going forward for state citizenship of federal corporations, even with "localizations less extreme" than in that case, where the party operated within a single state. 272 F.2d at 456. Walgreens argues this Court should follow these courts' holdings. But their decisions are not binding. And as explained, the Seventh Circuit has taken no position on the issue. *See Hukic*, 588 F.3d at 428–29.

---

[12] *See, e.g.*, *N. Va. Foot & Ankle Assocs., LLC v. Pentagon Fed. Credit Union*, No. 10-cv-1640, 2011 WL 280983, at *2 (D. Md. Jan. 26, 2011) ("In 1958, in response to the ballooning dockets of the federal courts, Congress modified how the citizenship of a *state-chartered* corporation was determined . . . ." (emphasis added)); *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (accepting *Feuchtwanger* localization doctrine and expanding it to allow for some limited out-of-state activities for highly localized national corporations); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 31 (3d Cir. 1981) (summarizing *Feuchtwanger* holding that federally chartered corporation has "citizenship of state where based"); *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005) (adopting *Feuchtwanger*'s holding as the "seminal case establishing the 'localization' exception to the rule of national citizenship" and applying localization test to defendant).

doctrine to give effect to Congress's intent under the statute when it could not apply that statute directly. *See id.* ("Thus, *for the future*, [because of § 1332(c)] localizations less extreme than we have in this case will suffice to establish corporate citizenship in the administration of diversity jurisdiction." (emphasis added)); *see also Arlington Cmty. Fed. Credit Union*, 57 F. Supp. 3d at 593 ("[T]he Third Circuit found Congress' 1958 amendment of 28 U.S.C. § 1332 probative of 'the present direction of public policy . . .' because Congress deemed state corporations citizens of both their states of incorporation and their principal places of business.").

Some courts have followed the Third Circuit and continued to apply the judicially created localization doctrine without considering the principal place of business as a basis for citizenship grounded in statute. Against the backdrop of *Bankers Trust* and its general rule for federal corporations, these courts have supposed Congress intended § 1332(c) to apply only to state-chartered corporations, and that federally chartered entities were still stateless unless they met the localization test endorsed by the Third Circuit.[12] They have concluded this despite the *Feuchtwanger* Court's supposition that the jurisdictional statute would provide a basis going forward for state citizenship of federal corporations, even with "localizations less extreme" than in that case, where the party operated within a single state. 272 F.2d at 456. Walgreens argues this Court should follow these courts' holdings. But their decisions are not binding. And as explained, the Seventh Circuit has taken no position on the issue. *See Hukic*, 588 F.3d at 428–29.

---

[12] *See, e.g.*, *N. Va. Foot & Ankle Assocs., LLC v. Pentagon Fed. Credit Union*, No. 10-cv-1640, 2011 WL 280983, at *2 (D. Md. Jan. 26, 2011) ("In 1958, in response to the ballooning dockets of the federal courts, Congress modified how the citizenship of a *state-chartered* corporation was determined . . . ." (emphasis added)); *Loyola Fed. Sav. Bank v. Fickling*, 58 F.3d 603, 606 (11th Cir. 1995) (accepting *Feuchtwanger* localization doctrine and expanding it to allow for some limited out-of-state activities for highly localized national corporations); *Trent Realty Assocs. v. First Fed. Sav. & Loan Ass'n of Philadelphia*, 657 F.2d 29, 31 (3d Cir. 1981) (summarizing *Feuchtwanger* holding that federally chartered corporation has "citizenship of state where based"); *Auriemma Consulting Grp., Inc. v. Universal Sav. Bank*, 367 F. Supp. 2d 311, 313 (E.D.N.Y. 2005) (adopting *Feuchtwanger*'s holding as the "seminal case establishing the 'localization' exception to the rule of national citizenship" and applying localization test to defendant).

In the absence of controlling authority, this Court agrees instead with the Fourth Circuit's rationale in a recent case directly on point. *See Navy Federal Credit Union v. LTD Financial Services, LP*, 972 F.3d 344, 350 (4th Cir. 2020). In *Navy Federal*, the Fourth Circuit found the jurisdictional statute defines state citizenship for all corporations. *Id.* Congress declared: "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated *and* of the State or foreign state where it has its principal place of business." § 1332(c)(1). The court explained:

> The plain meaning of *and* in context here is "in addition to," and when we add something to nothing, something remains. Section 1332(c)(1) thus requires us to interpret *and* to give effect to the second clause even when the first clause does not specify a citizenship. . . . [T]his approach to § 1332(c)(1) is supported by the Supreme Court's holding in *Bankers Trust Co. v. Texas & Pacific Railway Co.*, 241 U.S. 295 (1916). There, the Court asked whether the common law, the constitution, or the legislature spoke to the issue of corporate citizenship. But with no existing constitutional or legislative provision on point, the Court found a federal corporation not diverse under then-existing federal-common-law rules. *Id.* at 309−10. Congress has since plainly provided a general rule for corporate citizenship, and that text grants a federal corporation the citizenship of its principal place of business.

*Id.*

In reaching this conclusion, the court considered the effect of the two clauses within § 1332(c)(1) joined by "and" to provide two independent grounds for corporate citizenship. *Id.* at 356. Opponents in this case had argued "and" meant "along with," such that the "principal place of business" grounds for citizenship became operative only when the "state of incorporation" designation applied. *Id.* The court disagreed, finding "[t]hree structural and contextual features of § 1332(c)(1) confirm[ed]" the conjunctive meaning of "and" to be "in addition to," providing two independent bases for corporate citizenship. *Id.* at 357–59. First, the two clauses are structurally independent. *Id.* at 357. Second, the "clauses' logical independence confirms their structural

independence." *Id.* Third, "and" is used to indicate "in addition to" in other contexts of § 1332. *Id.* at 358–59.

The Fourth Circuit's rationale is persuasive and leads to the simple conclusion that GHMSI is a citizen of Washington, D.C. because its principal place of business is located there. *Bankers Trust* and *Hukic* are not inconsistent with this conclusion—GHMSI is not stateless for diversity purposes because by enacting § 1332(c), Congress defined general corporate citizenship to include the state where its principal place of business is located *in addition to* the state of incorporation.[13] Therefore, the parties here are completely diverse—no party is stateless, and no plaintiff shares citizenship with any defendant. All requirements of § 1332 are satisfied, so this Court has subject-matter jurisdiction over the CareFirst Action. The Court therefore denies Walgreens' Rule 12(b)(1) motion to dismiss for lack of jurisdiction.

### B. Plaintiffs' Motion to Sever and for Leave to Amend Complaint

Having satisfied the threshold jurisdictional issue, the Court can address the parties' remaining motions. First, the Plaintiffs ask the Court to "sever the concededly diverse South Carolina and Louisiana claims from the CareFirst Plaintiffs' claims and to grant the CareFirst Plaintiffs leave to amend their complaint to assert a cause of action under the Racketeer Influenced and Corrupt Organization (RICO) Act." (Dkt. 289 at 1). After accomplishing this, Plaintiffs propose to reconsolidate both severed actions back with this action. (Dkt. 289 at 2 n.2). Plaintiffs argue these procedural mechanisms would thus moot Walgreens' purported jurisdictional challenge. (*Id.* at 2–3).

---

[13] Though not dispositive, the Court also notes another district court has recognized GHMSI as a citizen of Washington, D.C. under § 1332(c). *See Grp. Hospitalization & Med. Servs., Inc. v. Richardson*, 946 F. Supp. 50, 52 (D.D.C. 1996) ("It is undisputed that plaintiff is a citizen of the District of Columbia, where it has its principal place of business, 28 U.S.C. § 1332(c) . . . ."). The Court found no case where GHMSI was stateless for diversity purposes.

"The court may sever any claim against a party." Fed. R. Civ. P. 21. "Rule 21 severance creates two discrete, independent actions, which then proceed as separate suits . . . ." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 441 (7th Cir. 2006). A district court has broad discretion whether to sever a claim under Rule 21. *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000). Because the Court has determined that diversity jurisdiction exists, severance is unnecessary. It would not simplify the proceedings but would instead add the procedural complications of two new, separate actions that Plaintiffs would only move to reconsolidate once again with the current action. The Court denies Plaintiffs' Rule 21 motion to sever.

Courts may also grant a party leave to amend its pleadings and "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Courts should generally grant such leave "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Com'n*, 377 F.3d 682, 687 (7th Cir. 2004) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs' motion for leave to amend the CareFirst Complaint assumes the Court grants their simultaneous motion to sever the CareFirst into two separate actions. (*See* dkt. 289-2, Exhibit B (proposed complaint by South Carolina and Louisiana plaintiffs); dkt. 289-1, Exhibit A (proposed amended complaint by CareFirst plaintiffs, adding RICO claims)). Plaintiffs, however, presented their proposal to sever as a response to Walgreens' motion to dismiss for lack of subject-matter jurisdiction. As the Court determined diversity jurisdiction exists, there is no need to sever these claims.[14]

---

[14] And indeed, had this Court agreed with Walgreens and found subject-matter jurisdiction never existed over the CareFirst Action, the Court would have been obliged to dismiss the action without reaching Plaintiffs' motions to

It likewise appears unnecessary for Plaintiffs to add a RICO claim at this point, if they only wanted to preserve the CareFirst plaintiffs' action under federal-question jurisdiction. It is unclear whether all Plaintiffs collectively intend to add the RICO claim. (*See* dkt. 289-1, 289-2). Nevertheless, given the Court's liberal allowance for amended pleadings, Plaintiffs may—if they still wish after the Court's denial of the Motion to Sever this action—amend their complaint in the CareFirst action. The Court does not, however, adopt Plaintiffs' proposed amended complaint, (dkt. 289-1), because it does not include all Plaintiffs in the CareFirst Action. The Court thus grants Plaintiffs thirty (30) days to file an amended complaint, if they choose.

C. **Walgreens' Motion to Strike Plaintiffs' Reply**

Walgreens moves to strike sections II and III of Plaintiffs' brief, which addressed subject-matter jurisdiction for the first time, asserting Plaintiffs had waived the arguments. (Dkt. 305). Courts in this district have allowed motions to strike reply briefs that first introduced substantive arguments not advanced in opening briefs. *See, e.g.*, *Trudeau v. Lanoue*, No. 04 C 7165, 2006 WL 516579, at *2 (N.D. Ill. Mar. 2, 2006). Generally, parties may not introduce new arguments in a reply brief. *See Aliwoli v. Gilmore*, 127 F.3d 632, 635 (7th Cir. 1997) ("The reply brief is not the appropriate vehicle for presenting new arguments or legal theories to the court." (quoting *United States v. Feinberg*, 89 F.3d 333, 340–41 (7th Cir. 1996))).

Walgreens argues Plaintiffs forfeited any potential arguments in their favor by failing to respond to the merits of its argument regarding subject-matter jurisdiction. (Dkt. 305 at 4–5). Indeed, Plaintiffs helped neither themselves nor the Court by failing to respond on the merits of Walgreens' motion to dismiss. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011)

---

sever and amend. *See, e.g.*, *Vici Mktg., LLC v. United Mktg. Grp., LLC*, No. 15-cv-11614, 2017 U.S. Dist. LEXIS 119234 (N.D. Ill. July 31, 2017) (Kendall, J.) (denying non-diverse plaintiffs' motion for leave to amend complaint and add federal claim when court lacked diversity jurisdiction at time of filing).

15

("Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiff's research and try to discover whether there might be something to say against the defendants' reasoning." (quoting *Kirksey v. R.J. Reynolds Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999))). The Court would be well within its discretion to strike those sections of Plaintiffs' Reply that first raised arguments on the merits of diversity jurisdiction. However, given the "independent duty to ensure that this case is properly in federal court," the Court has chosen to resolve Walgreens' motion to dismiss by careful and independent consideration of its arguments. *Cothron v. White Castle Sys., Inc.*, 20 F.4th 1156, 1160 (7th Cir. 2021) (internal quotation and citation omitted). The Court dismisses Walgreens' Motion to Strike [305] as moot.

## CONCLUSION

In conclusion, the Court denies Walgreens' Rule 12(b)(1) Motion [267] and finds diversity jurisdiction exists because GHMSI is a citizen of Washington, D.C. The Court denies in part and grants in part Plaintiffs' Motion to Sever and for Leave to Amend the Complaint [289]; it is not necessary to sever the CareFirst action into two separate actions, but Plaintiffs have thirty (30) days to amend their complaint if they choose. Finally, the Court dismisses as moot Walgreens' Motion to Strike Plaintiffs' Reply [305].

_____
Virginia M. Kendall
United States District Judge

Date: November 22, 2022