THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCBSM, INC., *et al.*, | )<br>) |
| *Plaintiffs/Counter-Defendants*, | )<br>) |
| v. | )<br>) No. 20 C 1853 |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | )<br>)<br>) |
| | ) Judge Virginia M. Kendall |
| *Defendants/Counter-Plaintiffs.* | )<br>) |
| | ) Consolidated with: |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) No. 20 C 1929<br>) No. 20 C 3332<br>) No. 20 C 4940 |
| *Defendants/Third-Party Plaintiffs*, | ) No. 20 C 4738<br>) No. 22 C 1362 |
| v. | )<br>) |
| PRIME THERAPEUTICS LLC, | )<br>) |
| *Third-Party Defendant.* | )<br>) |

**ORDER**

The Plaintiffs in this case are health care plans offering comprehensive health care services and coverage, including prescription drug coverage, to their members in locations across the United States. Defendants are Walgreen Co. and Walgreens Boots Alliance, Inc. (together "Walgreens") who allegedly engaged in a fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices. Walgreens brings a counterclaim alleging that Plaintiffs—by retaining Crowell & Moring LLP ("Crowell") to prosecute their claims and maintaining Crowell as lead counsel throughout this action— knowingly aided and abetted Crowell's breach of its fiduciary duties to Walgreens, Crowell's former client. (Dkt. 149 at 179–202). Plaintiffs move to sever Walgreens' counterclaim and stay

1

related proceedings until both Plaintiffs' main claims and Walgreens' suit against Crowell pending before the D.C. Superior Court (the "D.C. Litigation") have been resolved. (Dkt. 285). For the following reasons, the Court grants in part Plaintiffs' Motion [285] and orders the counterclaim severed into a separate action and stayed until resolution of the D.C. Litigation.

## BACKGROUND

The Court has detailed the factual background of Plaintiffs' main claims and Walgreens' counterclaim in previous opinions. *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 846–47 (N.D. Ill. 2021) (recounting main claims' allegations in Order denying Walgreens' motion to dismiss); *BCBSM, Inc. v. Walgreen Co.*, No. 20 C 1853, 2022 WL 393596, at *1–*3 (N.D. Ill. Feb. 9, 2022) (recounting relevant background in Order denying Plaintiffs' motion to dismiss Walgreens' counterclaim). The Court assumes familiarity with this case's history and will briefly summarize the relevant factual allegations and procedural history.

In 2006, Walgreens piloted its Prescription Savings Club ("PSC") program—an initiative making prescription drugs more affordable for uninsured and underinsured consumers. (Dkt. 149 at 190 ¶ 54). After launching it nationwide in August 2008, Walgreens hired Crowell for legal advice concerning the PSC program starting in September 2008 and ending June 2009. (*Id.* at 190–92 ¶¶ 55–66). Among other things, Crowell provided legal advice on how prescription prices under the PSC program might affect the usual and customary ("U&C") prices that Walgreens reports in insurance reimbursement claims. (*Id.* at 190 ¶ 55; 191 ¶¶ 59–63; 192 ¶ 65–66).

In March 2020, Walgreens received two pre-litigation demand letters from Crowell explaining Plaintiffs' "concern[ ] that Walgreens has overcharged them by failing to include PSC Program prices in its calculation of U&C prices." (*Id.* at 193 ¶¶ 73–74). Crowell subsequently filed suit on Plaintiffs' behalf alleging that Walgreens defrauded Plaintiffs by failing to include PSC

2

prices in its U&C price reporting—including in 2008 and 2009, when Crowell gave Walgreens legal advice about such reporting requirements. (*Id.* at 194 ¶¶ 77–78; *cf. id.* at 193 ¶¶ 72).

Walgreens sued Crowell for breach of its fiduciary duty of loyalty to its former client and for replevin arising out of Crowell's duty to provide Walgreens with copies of its client file. (Dkt. 148-1 at 1 ¶ 2, First Amended Complaint, *Walgreen Co. v. Crowell & Moring LLP*, Civil Case No. 2021 0861 (D.C. Sup. Ct. Apr. 6, 2021) [hereinafter "D.C. Litigation"]). That lawsuit remains pending.

In July 2021, Walgreens filed its counterclaim against Plaintiffs, alleging that Plaintiffs knew Crowell breached and continues to breach its fiduciary duties to Walgreens, and that Plaintiffs are "facilitating, encouraging, and assisting those breaches." (Dkt. 149 at 201 ¶ 108). This Court denied Plaintiffs' motion to dismiss Walgreens' counterclaim. *See BCBSM, Inc.*, 2022 WL 393596, at *8–*9. Plaintiffs now move to sever Walgreens' counterclaim and to stay proceedings in that separate action until Plaintiffs' main claims against Walgreens and the D.C. Litigation are both resolved. (Dkt. 285).

## LEGAL STANDARD

District courts have broad discretion under Rule 21 to sever any claim against a party and resolve it in a separate action. Fed. R. Civ. P. 21; *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006) (citing *Rice v. Sunrise Express, Inc.*, 209 F.3d 1008, 1016 (7th Cir. 2000)). Severance of claims is permissible "so long as the two claims are 'discrete and separate,'" meaning one claim is "capable of resolution despite the outcome of the other claim." *Id.* (citing *Rice*, 209 F.3d at 1016). Courts weigh several factors in determining whether to sever:

> (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be

avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims.

*Cantu v. Ken Nelson Auto Mall, Inc.*, No. 09 C 50256, 2010 WL 3882482, at *3 (N.D. Ill. Sept. 29, 2010) (citing *In re High Fructose Corn Syrup Antitrust Litigation*, 293 F. Supp. 2d 854, 862 (C.D. Ill. 2003)).

Additionally, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Tex. Indep. Producers & Royalty Owners Ass'n v. E.P.A.*, 410 F.3d 964, 980 (7th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts generally consider three factors in evaluating a motion to stay: "(1) whether a stay will unduly prejudice or tactically disadvantage the non-moving party; (2) whether a stay will simplify the issues in question and streamline the trial; and (3) whether a stay will reduce the burden of litigation on the parties and the court." *See, e.g.*, *Tel. Sci. Corp. v. Asset Recovery Sols., LLC*, No. 15 C 5182, 2016 WL 47916, at *2 (N.D. Ill. Jan. 5, 2016).

## DISCUSSION

### I. Motion to Sever Counterclaim

Walgreens' counterclaim is discrete and separate from Plaintiffs' claims. Walgreens has conceded that it "can prevail on its aiding and abetting claim regardless of the result of Plaintiffs' claims," belying any purported interdependence. (Dkt. 297 at 14). Whether Plaintiffs, by retaining Crowell, knowingly aided and abetted a breach of Crowell's fiduciary duty is independent of whether Walgreens deceptively overcharged Plaintiffs for prescription reimbursements. Neither claim involves interrelated legal issues. Rather, both claims implicate certain overlapping *factual*

4

*evidence*, but the claims fall under separate bodies of law, so this evidence applies differently to the respective claims.

Specifically, Walgreens' counterclaim implicates the privileged legal advice Crowell gave Walgreens about the effect of its newly launched PSC on its reported U&C prices for prescription drugs. (Dkt. 149 at 181–82 ¶¶ 7–11; *id.* at 190–91 ¶¶ 55–63; *id.* at 192 ¶¶ 65–67). Walgreens alleges this legal advice and work product regarded the same subject matter as the claims Plaintiffs now advance—through Crowell—against Walgreens, so the advice is evidence of Crowell's breach of its fiduciary duty under professional legal ethics rules. (*Id.* at 193–94 ¶¶ 75–79). Walgreens' aiding-and-abetting counterclaim is contingent on proving Crowell's breach. (*Id.* at 195 ¶¶ 83–84). On the other hand, Plaintiffs intend to prove Walgreens knowingly overcharged them for prescription drugs, so Crowell's legal advice to Walgreens on its U&C prices may be relevant to the scienter element of fraud, both from Plaintiffs' perspective and as an affirmative defense. (Dkt. 297 at 7 ("Plaintiffs must establish that Walgreens *knew* that its U&C interpretation . . . was in fact false to prove fraud."); *see also id.* at 7 n.4 ("Walgreens will introduce Crowell's advice for the limited purpose of demonstrating whether an industry-standard definition of U&C exists (or did at the time of the 2008 PSC rollout) and what Walgreens knew about any such standard—from Crowell or otherwise.")).

Walgreens contends there is substantial overlap between evidence Plaintiffs need to prove their fraud claims, evidence Walgreens will use for its affirmative defense to fraud, and evidence germane to Walgreens' aiding-and-abetting counterclaim. (Dkt. 297 at 6–7). Per Walgreens, this overlap means the claims and counterclaim are not "discrete and separate." *Id.* Walgreens overstates both the overlap and its significance to the issue of severance. Mere overlap of a small

portion of factual evidence relevant to discrete elements of two separate claims—each founded on different bodies of law—does not make those claims interrelated. *See Gaffney*, 451 F.3d at 443.

In *Gaffney*, the Seventh Circuit explained that severed claims relying on different legal frameworks were discrete and separate, despite involving the same underlying facts. *Id.* The claims in that case arose out of the termination of two codefendants' whistleblower employees where one codefendant directed the other to fire the employees. *Id.* The claim against the first codefendant required analysis of the operative whistleblower statute, and the claim against the second involved interpreting the terms of the two codefendants' contractual relationship. *Id.* The first codefendant's liability for wrongful discharge under the whistleblower statute was therefore independent of the second codefendant's contractual liability for the same act of termination. *Id.* The claims were severable despite the same underlying facts and overlapping evidence; resolution of one claim would not affect the other. *Id.*

As in *Gaffney*, both claims here are independent despite implicating some of the same evidence. Whether Walgreens fraudulently overcharged Plaintiffs for prescriptions does not depend on whether Plaintiffs knowingly aided and abetted Crowell to breach its fiduciary duty to Walgreens, and vice versa. This is so even when the substantive legal advice Crowell gave Walgreens is relevant to both claims. The evidence goes to different elements of each claim, and the jury will evaluate this evidence for different purposes under distinct legal frameworks.

Because the Court finds the two claims are discrete and separate, there is discretion to sever here. Moreover, in weighing the five factors bearing on severance that both parties have discussed, the Court finds the balance favors severance in this case.

**1. Severance Serves Judicial Economy**

Conservation of judicial resources is the strongest factor favoring severance, particularly in combination with Plaintiffs' Motion to Stay, discussed below. The counterclaim requires establishing Crowell breached its duty to Walgreens. That issue will resolve a significant part of the counterclaim. Resolution of that issue has been progressing before the D.C. Superior Court for over a year-and-a-half, and discovery is well advanced. In contrast, discovery of the counterclaim has not progressed as far in this Court, and policing the parties' discovery of the main claims has already expended significant judicial resources.

By severing the counterclaim from the action and staying those proceedings until after the D.C. Litigation has resolved a significant element, the Court and the parties will not have to duplicate discovery. If Crowell prevails, the counterclaim will fall, obviating the need for additional contentious and complex discovery involving sensitive issues of attorney-client privilege between Crowell and Plaintiffs.[1] If Walgreens prevails, the issues before this Court will be streamlined, and discovery can focus on the remaining issues, such as Plaintiffs' knowledge of the scope of Crowell's prior representation of Walgreens before and during the pendency of the main claims. The latter element of the aiding-and-abetting claim has no bearing on the main claims, so delaying related discovery will not prejudice either party.

Walgreens contends severance discourages settlement, pointing to the sole plaintiff—of twenty-nine original plaintiffs—that entered into a joint stipulation of dismissal after this Court denied Plaintiffs' motion to dismiss the counterclaim. (Dkt. 297 at 8). Only one settlement

---

[1] Walgreens insists the Court should disregard Plaintiffs' complaints that counterclaim discovery—which necessarily involves highly sensitive attorney-client privilege issues and investigation into Plaintiffs' communications with Crowell about the main claims—will be complex and difficult to manage. (Dkt. 297 at 9). Walgreens says Plaintiffs brought this on themselves "because Plaintiffs' chosen firm breached its fiduciary duties to Walgreens." (*Id.*) That may be Walgreens' position, but the counterclaim's merits have not yet been proven. For now, Walgreens' discovery into Plaintiffs' privileged communications with Crowell about the main claims will clearly be a difficult process for the Court to oversee. It will be simpler to proceed with it separately from the main trial and after the merits of Crowell's alleged breach have been determined.

followed the counterclaim's survival months ago, so it is not likely that more will follow solely because the action remains unified. Severance, moreover, does not make settlement any less probable. Severance does not eliminate the counterclaim; parties may still jointly stipulate dismissal from the respective actions as a condition of settlement.

Walgreens also argues it is inefficient for two juries to decide "highly related issues of law and fact," wasting judicial resources and inviting inconsistent findings. (Dkt. 297 at 8–9). But as explained, there is no risk that presenting evidence of Crowell's work for Walgreens in severed trials would lead to inconsistent findings by different juries. The evidence serves distinct purposes to answer different legal questions.

Finally, Walgreens argues that "[s]evering the counterclaim will make this litigation doubly inefficient because the parties will be required to conduct the same discovery and present the same evidence twice." (Dkt. 297 at 9). Not so. For the main claims and the first element of the counterclaim, Walgreens proposes presenting evidence *that it already possesses*—Crowell's legal advice. Meanwhile, additional discovery relevant to the first element of the counterclaim—Crowell's alleged breach—is already proceeding in the D.C. Litigation. In contrast, the discovery Walgreens currently seeks against Plaintiffs for its counterclaim relates to Plaintiffs' *knowledge of the scope of Crowell's representation of Walgreens* when retaining Crowell and going forward. (*See* dkt. 286, Ex. A (Walgreens' requests for admission)). Discovery related to the counterclaim's second element can move forward separately if Walgreens prevails in the D.C. Litigation. It has no bearing on the main claims. Though two separate juries might then hear the same evidence of Crowell's representation of Walgreens, the overlap is not so extensive as to negate the efficiency of conducting counterclaim discovery only once, cumulatively, between the litigation before the D.C. Superior Court (as to the first element) and this Court (as to the second).

The Court finds judicial economy is served by severing the counterclaim from the main claim, so that the D.C. Litigation can resolve a significant portion of the counterclaim and avoid duplicating discovery efforts in this Court on that issue.

**2. Severance Avoids Prejudice**

Should both the main claims and counterclaim proceed to trial, putting Plaintiffs' attorneys on the witness stand to testify about their firm's representation of Walgreens in 2008–09 and their firm's decision in 2020 to represent Plaintiffs in this action would unduly prejudice Plaintiffs if the same jury is also tasked with deciding the merits of Plaintiffs' claims. Precisely because of such concerns about prejudice, attorneys generally cannot participate as both an advocate and a witness in a single proceeding. *See United States v. Marshall*, 75 F.3d 1097, 1106 (7th Cir. 1996). This rule recognizes that an attorney may not be a fully objective witness, that the trier of fact "may confuse the roles of advocate and witness and erroneously grant testimonial weight to an attorney's arguments," and that fairness or the appearance of fairness could be compromised. *United States v. Ewing*, 979 F.2d 1234, 1236 (7th Cir. 1992) (quoting *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983)). Severance avoids the thorny issues arising when attorneys are called to testify as witnesses against their own clients in the same litigation.

Walgreens protests that it will be unduly prejudiced if it cannot present evidence of Crowell's 2008–09 legal advice, relevant to its affirmative defense and its counterclaim. (Dkt. 297 at 10 ("A trial that excludes evidence about Walgreens' U&C interpretation, *including as reflected in Walgreens' 2008 and 2009 interactions with Crowell*, necessarily deprives Walgreens of a *defense* as well as a counterclaim.")). Walgreens hides the ball. Plaintiffs have not objected to Walgreens presenting as an affirmative defense whatever evidence it possesses regarding the substance of Crowell's legal advice. Nothing currently prevents Walgreens from presenting this

9

evidence in the context of its defense to the main claims, as well as in the separate context of its counterclaim in another proceeding.

### 3. Claims Do Not Arise Out of Same Transaction or Occurrence

Plaintiffs' main claims against Walgreens arise from the prices Walgreens charged Plaintiffs for prescription drug reimbursements over several years—a series of transactions. Walgreens' counterclaim arises from Plaintiffs' decision to retain Crowell to prosecute its fraud claims—a separate, unique transaction from the series of Plaintiffs' transactions with Walgreens. That Walgreens had previously engaged Crowell on the question of its U&C pricing is yet another transaction between Walgreens and a third party. Despite common underlying factual matter— Walgreens' U&C pricing structure and Crowell's representation of the parties—these transactions each arose independently of one another. As discussed, there may be some evidence stemming from Crowell's work for Walgreens that is relevant to both the main claims and counterclaim. This does not mean these claims all arise from the same transaction. In any event, the overlap in factual evidence is relatively narrow and will be used for different purposes in each claim.

### 4. Claims Share Few Common Questions of Fact, No Common Questions of Law

As discussed, evidence of Crowell's advice to Walgreens may be relevant both to the main claims and the counterclaim. But this factual evidence will be presented in two different legal contexts: what Walgreens knew or reasonably believed about the propriety of its U&C pricing, relevant to the scienter element of fraud, and the scope of Crowell's prior representation of Walgreens, relevant to its ethical duties to a former client. Some common issues of fact overlap, but the questions of law do not. And there is not such substantial overlap of evidence common to both claims that they necessarily be heard in one proceeding.

### 5. Claims Require Mostly Different Witnesses and Evidence

Again, the main claims will require Plaintiffs to produce evidence Walgreens knew its prices were fraudulent, which will involve Walgreens' employees' testimony and documentary evidence that is largely separate from the evidence required to prove Walgreens' counterclaim. In the counterclaim, Walgreens will need to examine Plaintiffs' employees and documentary evidence to determine what Plaintiffs knew of Crowell's representation of Walgreens (1) when Plaintiffs began privileged communications with Crowell attorneys about this litigation and (2) throughout the development of Walgreens' counterclaim. Further, the counterclaim will involve witnesses from Crowell to testify about their communications with their client about the litigation of the main claims. This testimony would not be available in relation to the main claims while Plaintiffs maintain their attorney-client privilege. The bodies of evidence for the respective claims will not overlap unless Walgreens chooses to introduce evidence of its own discussions with Crowell about their 2008–09 legal advice. Even then, the overlap will not be extensive.

In sum, the Court finds severance warranted in this case because the counterclaim is discrete and separate from the main claims, and severance will serve judicial economy and avoid prejudice.

**II.     Motion to Stay Proceedings in Counterclaim Action**

In conjunction with the Court's order of severance, the Court also stays proceedings in the counterclaim pending resolution of the D.C. Litigation, which will resolve whether Crowell breached its fiduciary duty to Walgreens. For the reasons discussed, the Court finds this will simplify the issues before the Court, streamline the trial of the counterclaim, and reduce the burden of litigation on the parties and the Court by avoiding the needless duplication of discovery on the issue of Crowell's alleged breach. Further, there will be no undue prejudice to Walgreens by

staying these proceedings, as discovery into Plaintiffs' knowledge of Crowell's work for Walgreens does not relate to any of the main claims or their defenses.

At this time, the Court does not decide whether proceedings in the counterclaim should remain stayed until resolution of Plaintiffs' main claims. Nor is it necessary to decide this aspect of the Court's trial calendar now. The parties may revisit this question after the D.C. Litigation concludes if—as expected—proceedings there are resolved before the Plaintiffs' main claims.

## CONCLUSION

In conclusion, the Court grants in part Plaintiffs' Motion [285] and orders Walgreens' counterclaim severed from the Plaintiffs' claims in this action, to be tried separately. The Court further orders all proceedings in the severed action stayed until Walgreens' pending action against Crowell & Moring LLP before the D.C. Superior Court is resolved.

_____
Virginia M. Kendall
United States District Judge

Date: November 22, 2022