THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BCBSM, INC., *et al.*, | ) | |
| | ) | |
| *Plaintiffs/Counter-Defendants*, | ) | |
| v. | ) | |
| | ) | |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) | No. 20 C 1853 |
| | ) | |
| *Defendants/Counter-Plaintiffs.* | ) | Judge Virginia M. Kendall |
| | ) | |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) | Consolidated with: |
| | ) | No. 20 C 1929 |
| | ) | No. 20 C 3332 |
| *Defendants/Third-Party Plaintiffs*, | ) | No. 20 C 4940 |
| | ) | No. 20 C 4738 |
| v. | ) | No. 22 C 1362 |
| | ) | |
| PRIME THERAPEUTICS LLC and OMEDARX, INC. | ) | |
| | ) | |
| *Third-Party Defendants*. | ) | |

**MEMORANDUM OPINION AND ORDER**

Walgreen Co. and Walgreens Boots Alliance, Inc. (together "Walgreens") are defendants in this consolidated case brought by health care plans alleging that Walgreens fraudulently overcharged them for prescription drug reimbursements. Walgreens has filed third-party complaints against the pharmacy benefit managers ("PBMs") that intermediate these reimbursement claims. (*See* dkts. 259, 322). Walgreens seeks contribution from the PBMs as joint tortfeasors in the alternative to its denial of liability for the health care plans' purported losses.

1

(Dkt. 259 ¶ 3; Dkt. 322 ¶ 3). Third-Party Defendant OmedaRx, Inc.[1] moves to dismiss the Third-Party Complaint ("TPC") against it for failure to state a claim and lack of personal jurisdiction. (Dkt. 370). For the following reasons, the Motion is denied. [370]

## BACKGROUND

Plaintiffs in this consolidated action are health insurers offering comprehensive health care services and coverage, including prescription drug coverage, to their members across the country. They sued Walgreens for allegedly engaging in a fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices. *See, e.g.*, *BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837 (N.D. Ill. 2021); *BCBSM, Inc. v. Walgreen Co.*, 2021 WL 2434889 (N.D. Ill. June 15, 2021).

Throughout this litigation, Walgreens has argued that, if it is liable to the Plaintiffs, then its PBMs—claims-processing intermediaries between Walgreens and the Plaintiffs—are joint tortfeasors. In July 2021, Walgreens filed its TPC against a Minnesota-based PBM, Prime Therapeutics LLC, for contribution as a joint tortfeasor. (Dkts. 151, 152). This Court dismissed the Prime TPC for failure to state a claim. *See BCBSM, Inc. v. Walgreen Co.*, 2022 WL 393596, at *3–5, *9–10 (N.D. Ill. Feb. 9, 2022). Walgreens filed an Amended Third-Party Complaint against Prime, and those claims proceed. (Dkt. 259).

In August 2022, this Court granted Walgreens leave to file a similar TPC against Oregon-based PBM OmedaRx, Inc. (Dkt. 319); *see also BCBSM, Inc. v. Walgreen Co.*, 2023 WL 358783 (N.D. Ill. Jan. 23, 2023) (denying motion to vacate August 2022 order granting leave to file third-party complaint). Walgreens now seeks contribution under Oregon and Idaho law from OmedaRx

---

[1] OmedaRx was formerly known as Regence Rx, Inc. (Dkt. 322 at 1). Throughout its Third-Party Complaint and its brief in opposition to the motion to dismiss, Walgreens refers to the third-party defendant as Regence Rx. (*See generally* dkts. 322, 393). OmedaRx uses the entity's current name. (Dkts. 370, 411). For consistency with the case caption and the entity's current name, the Court will refer to the third-party defendant as OmedaRx.

as a joint tortfeasor. (Dkts. 321, 322). OmedaRx served as the PBM between Walgreens and certain regional Blue Cross Blue Shield-affiliated health plans, referred to as the "Cambia Plaintiffs."[2] (Dkt. 322 ¶¶ 1, 32, 35). OmedaRx is a wholly owned affiliate of Plaintiff Cambia Health Solutions, which also owns the other Cambia Plaintiffs. (*Id.* ¶ 41).

The Cambia Plaintiffs—along with the other named Plaintiffs in this consolidated action—allege that Walgreens reported inaccurate "usual and customary" ("U&C") prices for prescription-reimbursement claims. (*Id.* ¶ 2). In commercial transactions, U&C prices are typically defined by contract and often cap the rates that health insurers pay for prescription reimbursements. (*Id.*)

In 2006, Walgreens began its Prescription Savings Club ("PSC"), a membership program making prescriptions available at lower costs to uninsured or underinsured customers for an annual fee. (Dkt. 322 ¶¶ 2, 50). Walgreens did not report the prices available to PSC members in its U&C pricing to the insurers. (*Id.* ¶ 51). Plaintiffs allege that Walgreens' U&C pricing should have included the prices available to PSC members. (*Id.* ¶¶ 2, 51). As a result, Plaintiffs claim Walgreens overcharged them. (*Id.* ¶ 51). They have brought various state-law claims of fraud, fraudulent nondisclosure, and statutory consumer-protection violations against Walgreens on this basis. (*See generally* dkts. 145, 146).

OmedaRx adjudicated Walgreens' reimbursement claims from the Cambia Plaintiffs. (Dkt. 322 ¶¶ 41–42). When a plan member of one of the Cambia Plaintiffs used insurance to fill a prescription at a Walgreens pharmacy, Walgreens transmitted the reimbursement claim—listing the U&C price for that drug and other data about the transaction—to OmedaRx. (*Id.* ¶ 42). OmedaRx adjudicated the claim on the insurer's behalf, evaluating the claim against the relevant

---

[2] The "Cambia Plaintiffs" include Cambia Health Solutions, Inc.; Asuris Northwest Health; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; and Regence BlueShield of Washington. (Dkt. 322 ¶ 32).

insurance plan's coverage and payment criteria. (*Id.*) OmedaRx then conveyed information about the claim to the insurer, received the insurer's reimbursement payments, and remitted payment to Walgreens. (*Id.*)

Two separate sets of confidential contracts governed the relationship between the Cambia Plaintiffs and Walgreens: (1) Walgreens' contracts with OmedaRx (directly or with subcontractor PBMs);[3] and (2) OmedaRx's contracts with the Cambia Plaintiffs. (Dkt. 322 ¶ 45). Only OmedaRx knew the contents of each set of contracts, including how each entity defined U&C pricing. (*Id.* ¶ 46). Walgreens' contracts with OmedaRx excluded the PSC and other savings-program or discount-card prices from its U&C pricing definition. (*Id.* ¶¶ 48–49, 52). Section 1.11 of the 2009 Agreement between them stated:

> Customary Charge ("U/C") is the lowest price the Pharmacy would charge to a cash-paying customer with no insurance for an identical pharmaceutical good or service on the date and at the location that the prescription is dispensed. This includes sales, specials, "loss leaders," and promotional prices set by the Pharmacy. *This excludes the Prescription Savings Club, a discounted prescription buying program for individuals who have no prescription drug coverage or any other type of program requiring a membership fee to participate.*

(*Id.* ¶ 52 (emphasis added)). Similarly, Section 1.13 of the 2012 Agreement between them stated:

> Usual and Customary ("U/C") means the amount charged to a customer paying cash for prescription, with no additional prescription coverage, by the dispensing pharmacy at the time of dispensing, exclusive of sales tax or other discounts claimed. *This also excludes the Prescription Savings Club, a discounted prescription buying program for individuals who have no prescription drug coverage or any other type of program requiring a membership fee to participate.*

(*Id.* ¶ 53 (emphasis added)).

OmedaRx did not inform the Cambia Plaintiffs that Walgreens' U&C definition excluded the PSC prices. (*Id.* ¶¶ 55–56). Walgreens alleges that OmedaRx knew or should have known that

---

[3] OmedaRx entered two direct contracts with Walgreens: one in 2009 (the "2009 Agreement") and one in 2012 (the "2012 Agreement"). (Dkt. 322 ¶¶ 10–11).

4

the Cambia Plaintiffs expected Walgreens' U&C prices to include its PSC prices, when OmedaRx knew they did not. (*Id.* ¶ 56). This both contributed to the alleged harm the Cambia Plaintiffs suffered in reliance on their understanding of the U&C definition, as well as denied Walgreens an opportunity to rectify or mitigate this harm. (*Id.* ¶ 57).

As relevant to the jurisdictional arguments here, OmedaRx negotiated and entered a series of long-term contracts with Walgreens, an Illinois corporation. (*Id.* ¶ 38). The contracts contemplated OmedaRx's ongoing transmittal of notices and reimbursement of claims to Walgreens' headquarters in Illinois. (*Id.*) OmedaRx performed its contracts in Illinois and transmitted "millions of dollars in payments" to Walgreens' headquarters in Illinois. (*Id.* ¶ 39). These payments include the allegedly fraudulent overcharges suffered by the Cambia Plaintiffs. Additionally, whenever a customer with a health plan from one of the Cambia Plaintiffs filled a prescription at a Walgreens pharmacy in Illinois, OmedaRx transmitted the relevant coverage information and claims data to that Illinois pharmacy. (*Id.* ¶ 39).

Walgreens seeks contribution from OmedaRx as a joint tortfeasor if any of the Cambia Plaintiffs prevails against it. (*Id.* ¶ 3). It brings one count for contribution under Oregon law, O.R.S. §§ 31.600, 31.605, 31.800, and one count for contribution under Idaho law, Idaho Code § 6-803. (*Id.* ¶¶ 60–76). OmedaRx moves to dismiss the TPC under Rule 12(b)(2) and Rule 12(b)(6). (Dkt. 370).

## LEGAL STANDARD

On a Rule 12(b)(2) motion to dismiss, the Court assumes the plaintiff's asserted facts are true and resolves factual disputes in its favor. *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 392 (7th Cir. 2020) (citing *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010)). The plaintiff bears the burden of demonstrating personal jurisdiction when challenged. *John*

5

*Crane, Inc. v. Shein L. Ctr., Ltd.*, 891 F.3d 692, 695 (7th Cir. 2018) (citing *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 491 (7th Cir. 2014)). Where, as here, there has been no jurisdictional hearing, the plaintiff need only set forth a prima facie showing of jurisdiction. *Id.* The Court reads "the complaint liberally, in its entirety, and with every inference drawn in favor" of the plaintiff to decide whether a prima facie case for personal jurisdiction exists. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reins. Co.*, 440 F.3d 870, 877–78 (7th Cir. 2006).

Likewise, on a Rule 12(b)(6) motion to dismiss the Court accepts all well-pleaded facts as true and "draw[s] reasonable inferences favor of the plaintiff." *Kap Holdings, LLC v. Mar-Cone Appliance Parts Co.*, 55 F.4th 517, 523 (7th Cir. 2022). The complaint's "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), must offer more than "labels and conclusions" or "a formulaic recitation of the elements." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a defendant's motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

**A.      Personal Jurisdiction**

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Walden v. Fiore*, 571 U.S. 277, 283 (2014) (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014) (citing Fed. R. Civ. P. 4(k)(1)(A))). Illinois's long-arm statute grants jurisdiction over nonresidents coextensive with the federal standard for due process. 735 ILCS 5/2-209(c); *John Crane, Inc.*, 891 F.3d at 695. Federal due process "constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden*, 571 U.S. at 283 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291 (1980)). For this Court to exercise

6

personal jurisdiction, the nonresident defendant—here, OmedaRx—must have "minimum contacts" with Illinois "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations omitted).

Personal jurisdiction may be general or specific. *Rogers v. City of Hobart*, 996 F.3d 812, 818 (7th Cir. 2021). Walgreens alleges that OmedaRx, an Oregon corporation, is subject to specific personal jurisdiction in Illinois. (Dkt. 322 ¶ 37). This requires Walgreens to show that:

> (1) the defendant has purposefully directed [its] activities at the forum state or purposefully availed [itself] of the privilege of conducting business in the state;
> (2) the alleged injury arises out of or relates to the defendant's forum-related activities; and
> (3) any exercise of personal jurisdiction must comport with traditional notions of fair play and substantial justice.

*Rogers v. City of Hobart*, 996 F.3d 812, 819 (7th Cir. 2021).

The first prong of this test is satisfied when out-of-state defendants "purposefully 'reach[ ] out beyond' their State and into another by, for example, entering a contractual relationship that 'envisioned continuing and wide-reaching contacts' in the forum States." *Walden v. Fiore*, 571 U.S. 277, 285 (2014) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479–80 (1985)). Here, OmedaRx entered such a contractual relationship with Walgreens. OmedaRx purposely contracted with Walgreens, an Illinois company, through at least two long-term agreements to adjudicate prescription-reimbursement claims for the Cambia Plaintiffs' insureds. In performing those contracts, OmedaRx directed payments—the alleged overcharges that injured the Cambia Plaintiffs—to Walgreens' Illinois headquarters. It likewise directed "notices" about claims processing to Walgreens' Illinois headquarters pursuant to those contracts. OmedaRx also sent claims-related information to Walgreens pharmacies in Illinois for individual transactions

7

originating there. OmedaRx purposefully availed itself of the privilege of doing business in Illinois through its contractual relationship with Walgreens. *See Burger King Corp.*, 471 U.S. at 479–80.

Next, the defendant's minimum contacts with the forum state must be "suit-related." *Curry*, 949 F.3d at 400 (citing *Advanced Tactical Ordnance Sys., LLC v. Real Action Paintball, Inc.*, 751 F.3d 796, 801 (2014)). "There must be a 'connection between the forum and the specific claims at issue.'" *Id.* (citing *Bristol-Myers Squibb Co. v. Sup. Ct. of Calif.*, 582 U.S. 255, 265 (2017)). Here, Walgreens claims OmedaRx is liable for contribution as a joint tortfeasor because the contractual relationship between them governed the allegedly fraudulent transactions at the heart of this case. According to Walgreens, OmedaRx knew the U&C definitions in the Walgreens-OmedaRx contracts excluded the PSC prices. It also knew or should have known of the Cambia Plaintiffs' U&C pricing expectations through their own set of confidential contracts. Under its Walgreens contracts, OmedaRx adjudicated and conveyed Walgreens' reimbursement claims—based on fraudulent pricing—to the Cambia Plaintiffs. It then remitted (inflated) payments from the Cambia Plaintiffs back to Walgreens in Illinois. The Cambia Plaintiffs' alleged injuries from Walgreens' fraudulent overcharges necessarily arise from OmedaRx's business dealings with Walgreens in Illinois. Without the contractual link that OmedaRx purposely established with Walgreens in Illinois, Walgreens could not have injured the Cambia Plaintiffs through its pricing scheme.

Finally, the exercise of jurisdiction must not offend "traditional notions of fair play and substantial justice." *Curry*, 949 F.3d at 402 (citing *Int'l Shoe*, 326 at 316). When the plaintiff has "made a threshold showing of minimum contacts, that showing is generally defeated only where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (citing *Burger King*, 471 U.S. at 477). Here, OmedaRx has not provided any case—much less a compelling one—that litigating in Illinois is unfair. *See id.*

8

(citing such relevant fairness considerations as the burden on the defendant, the forum state's interest in the dispute, the plaintiff's interest in obtaining convenient and effective relief, and interstate judicial economy). After all, Cambia Health Solutions—which owns OmedaRx—chose to sue Walgreens in Illinois for the pricing scheme. OmedaRx proclaims that it has "folded [its] operations into the regional health plans of Cambia Health Solutions." (Dkt. 322 ¶ 35). It shares representation with the Cambia Plaintiffs. It is hardly a burden for OmedaRx to litigate in the same action as its parent company.[4] Moreover, judicial economy favors resolving any third-party defendant's liability for the Cambia Plaintiffs' injuries together in the same action.

In sum, the Court has specific personal jurisdiction over OmedaRx because it purposefully availed itself of the privilege of transacting business in Illinois, and the purported injuries in this case arose from OmedaRx's contacts with the forum state.

**B.   Contribution Claims**

   **1.  Right of Contribution and Rule 14**

Walgreens brings two counts of contribution as a joint tortfeasor against OmedaRx, one under Oregon law and one under Idaho law. Both states recognize a right of contribution among joint tortfeasors.[5] OmedaRx first argues that Walgreens has brought its contribution claims too early. Oregon law bars the right of contribution until a joint tortfeasor has discharged the common liability through payment of a judgment against it. Or. Rev. Stat. § 31.810(4); *Aetna Cas. Sur. Co. v. Or. Health Scis. Univ.*, 793 P.2d 320, 323–24 (Or. 1990). Similarly, under Idaho law the right

---

[4] Walgreens also argues that the Cambia Plaintiffs' jurisdictional contacts with Illinois are imputed to OmedaRx because there is a principal-agent relationship between the entities. (*See* dkt. 393 at 7). Because the Court has already found sufficient minimum contacts exist, there is no need to reach Walgreens' argument here.

[5] Or. Rev. Stat. § 31.800(1) ("[W]here two or more persons become jointly or severally liable in tort for the same injury to person or property or for the same wrongful death, there is a right of contribution among them even though judgment has not been recovered against all or any of them. There is no right of contribution from a person who is not liable in tort to the claimant."); Idaho Code § 6-803(1) ("The right of contribution exists among joint tortfeasors, but a joint tortfeasor is not entitled to a money judgment for contribution until he has by payment discharged the common liability or has paid more than his pro rata share thereof.").

of contribution accrues only after a joint tortfeasor has paid more than its pro rata share of a judgment. Idaho Code § 6-803(1); *Hydraulic & Air Equip. Co. v. Mobil Oil Corp.*, 785 P.2d 947, 949 (Idaho 1989).

But when state law recognizes a substantive right of contribution that may accrue in the future, Rule 14 accelerates the adjudication of liability amongst joint tortfeasors in federal court. *See* Fed. R. Civ. P. 14(a)(1) ("A defending party may, as third-party plaintiff, serve a summons and complaint on a nonparty who is *or may be liable to it* for all or part of the claim against it." (emphasis added)).[6] True, Walgreens must first pay more than its pro rata share of judgment to the Cambia Plaintiffs before enforcing any judgment against OmedaRx. But the parties' comparative share of liability—if any—to the Cambia Plaintiffs can be determined in the same action.[7]

Per Rule 14, Walgreens' contribution claims are not procedurally barred. But Walgreens must show that the possibility exists for a right of contribution to accrue. At this stage, it must plausibly allege OmedaRx's liability in tort to the Cambia Plaintiffs. Walgreens has pleaded three alternative theories of tort liability under each state's respective laws: negligent misrepresentation, consumer fraud under consumer-protection statutes, and common-law fraud. (Dkt. 322 ¶¶ 63, 71). Each contribution count requires at least one viable theory of tort liability.

---

[6] *See also* 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1448 (3d ed. Apr. 2022 update) ("Rule 14 allows litigants in federal court to seek relief against joint tortfeasors when the governing substantive law recognizes a right of contribution."); *id.* § 1451 ("The words 'may be liable' mean that defendant is permitted to join someone against whom a cause of action has not yet accrued, provided that the claim is contingent upon the success of the plaintiff's action and will accrue when defendant's liability is determined in the main action or plaintiff's claim is satisfied."). *See also Magnuson v. Fairmont Foods Co.*, 442 F.2d 95, 99 (7th Cir. 1971) (recognizing procedural effect of Rule 14 permitting impleader where defendant seeks contribution from alleged joint tortfeasor and governing state substantive law recognizes right of contribution).

[7] *See* 6 Wright, Miller & Kane, *Federal Practice & Procedure* § 1448 ("Moreover, it is not critical that state substantive law does not recognize a right of contribution until the original defendant has paid more than his pro rata share. Any judgment on the third-party claim does not become enforceable until after the common liability has been discharged by the original defendant. Impleader under Rule 14 merely accelerates the determination of liability and does not have the effect of enlarging any substantive rights."); *Andrulonis v. United States*, 26 F.3d 1224, 1233 (2d Cir. 1994) (holding federal impleader rule permits defendant to implead a joint tortfeasor for contribution before the right to contribution accrues because third party may be liable to defendant for share of plaintiff's primary judgment).

2. **Contribution Under Oregon Law (Count I)**

   a. **Negligent Misrepresentation**

Walgreens first alleges that OmedaRx is liable to the Cambia Plaintiffs for negligent misrepresentation under Oregon law. (Dkt. 322 ¶ 63(a)). Generally, the economic-loss doctrine "bars a party that has suffered a purely economic loss from bringing a negligence action against the party that caused the loss." *Harris v. Suniga*, 180 P.3d 12, 14 (Or. 2008). Oregon law recognizes, however, that "under some circumstances, one may be liable for economic loss sustained by others who rely on one's representations negligently made." *Onita Pac. Corp. v. Trs. of Bronson*, 843 P.2d 890, 896 (Or. 1992). Despite recognizing the tort, Oregon has not fully adopted the rule stated in the Restatement (Second) of Torts § 552.[8] *Id.* (holding that the Restatement "is close to the mark" but eschewing the black-letter rule in favor of developing "the scope of the duty and the scope of recovery on a case-by-case basis").

When two parties have contracted with each other—as OmedaRx and the Cambia Plaintiffs have here—a duty must exist between them "independent of the contract and without reference to the specific terms of the contract" for tort liability to be imposed. *Conway v. Pac. Univ.*, 924 P.2d 818, 822 (Or. 1996) (en banc) (quoting *Georgetown Realty, Inc. v. Home Ins. Co.*, 831 P.2d 7, 14 (Or. 1992) (en banc)). In *Conway v. Pacific University*, the Oregon Supreme Court discussed the type of relationship between contracting parties that gives rise to the requisite duty:

---

[8] (1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.
(2) Except as stated in Subsection (3), the liability stated in Subsection (1) is limited to loss suffered
   (a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and
   (b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction . . . .
Restatement (Second) of Torts § 552 (1977).

11

> In Oregon, the tort of negligent misrepresentation requires that one party in a relationship owe a duty 'beyond the common law duty to exercise reasonable care to prevent foreseeable harm' to the other party. Under *Onita*, that kind of heightened duty arises when one party is acting, at least in part, to further the economic interests of the other party. In other words, for the duty to avoid making negligent misrepresentations to arise, the parties must be in a "special relationship," in which the party sought to be held liable had some obligation to pursue the interests of the other party.

924 P.2d 818, 822 (Or. 1996) (quoting *Onita*, 843 P.2d at 896). Whether a duty exists outside contractual obligations thus requires analyzing the parties' relationship. *Id.* at 823. The court recognized that a heightened duty of care exists between, for example, lawyers and their clients, physicians and their patients, and—in certain cases—professionals like architects or engineers and their clients. *Id.* at 823 (collecting cases). It also noted that "[o]ther types of relationships also may carry a heightened duty of care," such as "agents in a typical principal-agent relationship." *Id.* at 823 (collecting cases).

Oregon appellate courts have further distilled from *Onita* and *Conway* that a "special relationship" is defined by certain criteria:

> (1) One party relinquishes control over matters, usually financial, and entrusts them to the other party; (2) The party with control is authorized to exercise independent judgment; (3) in order to further the other party's interests; and (4) The relationship either is, or resembles, other relationships "in which the law imposes a duty on parties to conduct themselves reasonably, so as to protect the other parties to the relationship."

*Bell v. Pub. Emps. Ret. Bd.*, 247 P.3d 319, 326 (Or. Ct. App. 2010) (internal citations omitted); *see also W. Prop. Holdings, LLC v. Aequitas Cap. Mgmt., Inc.*, 392 P.3d 770, 779 (Or. Ct. App. 2017) (same).

Here, to avoid the economic-loss doctrine foreclosing its negligence theory of liability, Walgreens must plead facts consistent with a special relationship between OmedaRx and the

12

Cambia Plaintiffs that would support the existence of a heightened duty apart from their mutual contractual obligations. It has not done so.

First, Walgreens claims a special relationship exists because OmedaRx "is in the business of supplying information to the Cambia Plaintiffs to guide them in their payment of reimbursement transactions." (Dkt. 322 ¶ 63(a)(viii)). But this allegation merely recites the rule in the Restatement (Second) of Torts § 552(1), which the Oregon Supreme Court has held to be "close" but not the true test of whether a special relationship exists. *Onita*, 843 P.2d at 896. And on its own, it simply restates OmedaRx's contractual obligation to the Cambia Plaintiffs. Oregon law requires more to establish a special relationship. *See Conway*, 924 P.2d at 822; *Bell*, 247 P.3d at 326.

Walgreens relies on *Lindstrand v. Transamerica Title Insurance Co.*, 874 P.2d 82, 85 (Or. Ct. App. 1994), for the proposition that OmedaRx has a duty to the Cambia Plaintiffs as a "nongratuitous supplier of information." (Dkt. 393 at 11). But that case predates both *Conway* and *Bell*, which clarify the analysis for finding a special relationship between contracting entities. Walgreens also cites to a decision where this Court previously held that PBMs are in the business of supplying information to others and thus unprotected by the economic-loss doctrine. (*Id.* (citing *Hotel Emps. & Rest. Emps. Intern. Union Welfare Fund v. Sav-Rx*, 2007 WL 1423863, at *3 (N.D. Ill. May 10, 2007)). But that case applied Illinois law. Here, Walgreens alleges OmedaRx's liability in tort under Oregon law, so Oregon caselaw defines the scope of the requisite special relationship.

Walgreens argues in the alternative that OmedaRx is the Cambia Plaintiff's agent. An agent-principal relationship may give rise to a heightened duty of care. *See Conway*, 924 P.2d at 823. OmedaRx is a wholly owned affiliate of Cambia Health Solutions, which also owns all other Cambia Plaintiffs. (Dkt. 322 ¶¶ 35, 41). In the TPC, Walgreens refers to the Cambia Plaintiffs as

13

OmedaRx's "owners and principals." (Dkt. 322 ¶ 23(b)). Walgreens also states in its opposition brief that OmedaRx is the Cambia Plaintiffs' agent. (Dkt. 393 at 7, 11 n.3). But Walgreens must plead more than mere "labels and conclusions." *Twombly*, 550 U.S. at 555. The fact that one of the Cambia Plaintiffs owns OmedaRx and contracted with it (as a separate corporate entity) to adjudicate reimbursement claims is insufficient to show a principal-agent relationship existed between them. This relationship says nothing of the degree of control that the Cambia Plaintiffs— or even Cambia Health Systems, as owner—had over OmedaRx, nor the extent to which OmedaRx agreed to act on behalf of the Cambia Plaintiffs. *See Vaughn v. First Transit, Inc.*, 206 P.3d 181, 186 (Or. 2009) (en banc) ("Agency does not result, for example, when an individual (or entity) simply agrees to provide services for another, even if the other person—through contract—is able to establish general standards for performance and in that way 'control' the individual."). The TPC lacks sufficient facts to show a principal-agent relationship existed between the Cambia Plaintiffs and OmedaRx.

Walgreens has not shown a special relationship existed between OmedaRx and the Cambia Plaintiffs beyond their mutual contractual obligations. *See Conway*, 924 P.2d at 822–23. It has failed to plead or argue any of the *Bell* factors for a special relationship. *Bell*, 247 P.3d at 326. Walgreens' theory of OmedaRx's liability to the Cambia Plaintiffs for negligent misrepresentation therefore fails.

### b. Consumer Fraud Under Oregon Unlawful Trade Practices Act

Walgreens next argues that OmedaRx is liable to the Cambia Plaintiffs for consumer fraud by violating the Oregon Unlawful Trade Practices Act (OUTPA), Or. Rev. Stat. §§ 646.605, *et seq.* (Dkt. 322 ¶ 63(b)). Specifically, Walgreens claims OmedaRx violated three subsections of the OUTPA:

14

> A person engages in an unlawful practice if in the course of the person's business, vocation or occupation the person does any of the following: . . .
> (j) Makes false or misleading representations of fact concerning the reasons for, existence of, or amounts of price reductions. . . .
> (s) Makes false or misleading representations of fact concerning the offering price of, or the person's cost for real estate, goods or services. . . .
> (u) Engages in any other unfair or deceptive conduct in trade or commerce.

Or. Rev. Stat. § 646.608(1). OmedaRx argues that (1) any potential OUTPA claims are time-barred; (2) Walgreens fails to allege sufficient facts to support its claims; and (3) the TPC fails to meet Rule 9(b)'s heightened pleading requirement for claims sounding in fraud.

First, the statute of limitations does not foreclose Walgreens' OUTPA theory of liability. The OUTPA provides a one-year statute of limitations, which begins to run "when the plaintiff knows or should have known of the allegedly unlawful conduct." Or. Rev. Stat. § 646.638(6); *Morris v. Dental Care Today, P.C.*, 473 P.3d 1137, 1139 (Or. Ct. App. 2020) (citing *Pearson v. Philip Morris, Inc.*, 361 P.3d 3 (Or. 2015)). This statute of limitations would apply if the Cambia Plaintiffs were seeking to collect against OmedaRx directly. But Walgreens' *contribution claim* is not governed by the OUTPA's statute of limitations. The statute of limitations for contribution claims is two years, and it has not yet begun, much less expired. *See* Or. Rev. Stat. §§ 31.810(3), (5).[9] OmedaRx (wisely) abandoned this argument in its reply brief.

Second, OmedaRx attacks the sufficiency of Walgreens' factual allegations under each subsection of the OUTPA. The Court agrees that Walgreens cannot show a violation under subsection 1(u), the "catch-all" subsection. The OUTPA does not allow suit under subsection 1(u) unless "the Attorney General has first established a rule in accordance with the provisions of ORS

---

[9] "If there is a judgment for the injury or wrongful death against the tortfeasor seeking contribution, any separate action by the tortfeasor to enforce contribution must be commenced within two years after the judgment has become final by lapse of time for appeal or after appellate review." Or. Rev. Stat. § 31.810(3).
"The running of the statute of limitations applicable to a claimant's right of recovery against the tortfeasor shall not operate to bar recovery of contribution against the tortfeasor . . . ." Or. Rev. Stat. § 31.810(5).

chapter 183 declaring the conduct to be unfair or deceptive in trade or commerce." Or. Rev. Stat. § 646.608(4). The TPC fails to name any applicable rule established by the Oregon Attorney General, and Walgreens has failed to respond to this critical deficiency. (*See* dkt. 411 at 11 n.2).

Walgreens has, however, sufficiently alleged plausible violations under subsections 1(j) and 1(s). The OUTPA defines a "representation" as "any manifestation of any assertion by words or conduct, including, but not limited to, a failure to disclose a fact." Or. Rev. Stat. § 646.608(2). Walgreens alleges that OmedaRx knew the U&C prices in Walgreens' reimbursement claims did not include the lower PSC prices available to PSC members. It failed to disclose this fact to the Cambia Plaintiffs. This critical omission regarding reduced prices for prescription drugs satisfies subsection 1(j). Likewise, OmedaRx misrepresented to the Cambia Plaintiffs the true offering price of Walgreens' prescription drugs under subsection 1(s). Though OmedaRx argues that subsection 1(s) refers only to misrepresentations of OmedaRx's *own* goods or services—i.e., the overhead for adjudicating claims pursuant to its contracts—the statute's language is not so restrictive. OmedaRx violates the OUTPA by failing to disclose "the offering price of . . . goods or services." The statute does not specify that the misrepresentation must concern the defendant's own offering price of its goods or services but includes goods or services generally. In the context of claims-processing adjudication, it follows that an intermediary could violate the OUTPA by knowingly passing along fraudulently inflated charges for drugs, even if that intermediary was not selling them itself.

Third, OmedaRx contends that Walgreens has not met Rule 9(b)'s heightened pleading standard for fraud. Claims brought in federal court under state consumer-protection statutes sounding in fraud must meet the pleading standard of Rule 9(b). *Kearney v. Equilon Enterprises, LLC*, 65 F. Supp. 1033, 1041 (D. Or. 2014) (citing *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124–25 (9th Cir. 2009)). Walgreens agrees that the underlying claims sound in fraud and that

16

Rule 9(b) pleading standards apply. Rule 9(b) requires the plaintiff to "state with particularity the circumstances constituting fraud." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Doing so ordinarily involves describing the "'who, what, when, where, and how' of the fraud—'the first paragraph of any news story.'" *Id.* at 441–42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 854 (7th Cir. 2009)). But courts should not "take an overly rigid view of the formulation," as the requisite information may vary depending on the case. *Id.* at 442 (collecting cases).

OmedaRx claims Walgreens "fails to allege both *why* OmedaRx committed this alleged fraud and *how* OmedaRx, rather than Walgreens, caused and benefitted from the submission of fraudulent U&C claims." (Dkt. 370 at 8–9). But neither the OUTPA nor common-law fraud requires the tortfeasor to derive a benefit from the fraudulent activity.[10] OmedaRx has cited no legal support for its assertion that Walgreens must allege why OmedaRx committed the fraud or how it benefited from the scheme. It cites only to *Kearney v. Equilon Enterprises, LLC*, 65 F. Supp. 3d 1033 (D. Or. 2014), for the general Rule 9(b) pleading standard. That court dismissed OUTPA claims, finding the plaintiff failed to plead fraud with particularity. *See id.* at 1043–45 (finding the "who" and "where" of the fraud was less than specific, the "what" was disputed and unclear, and the "when" was not clearly specified—only the "how" was sufficiently pleaded).

Here, by contrast, Walgreens meets the Rule 9(b) pleading standard for fraud. The TPC clearly explains that OmedaRx was aware of, and facilitated through its contractual relationships, Walgreens' scheme to overcharge the Cambia Plaintiffs for prescription-drug reimbursements. It

---

[10] *See Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1209, *adhered to on reconsideration*, 256 P.3d 100 (Or. 2011) ("The essential elements of common-law fraud are: the defendant made a material misrepresentation that was false; the defendant did so knowing that the representation was false; the defendant intended the plaintiff to rely on the misrepresentation; the plaintiff justifiably relied on the misrepresentation; and the plaintiff was damaged as a result of that reliance.").

17

did so throughout the contractual period as the parties' PBM. The "first paragraph of the news story" is complete. This Court has likewise found the Plaintiffs' similar allegations against Walgreens met the Rule 9(b) standard. *See BCBSM, Inc. v. Walgreen Co.*, 512 F. Supp. 3d 837, 851–52 (N.D. Ill. 2021).

Walgreens therefore has pleaded a viable theory of OmedaRx's liability under the OUTPA, Or. Rev. Stat. §§ 646.608(1)(j), (s). Its contribution claim under Oregon law on that theory survives OmedaRx's motion to dismiss.

### c. Common-Law Fraud

Though Walgreens need only plead one viable alternative theory of tort liability to support its Oregon contribution claim, the Court finds its common-law fraud theory also survives. In challenging the common-law fraud theory, OmedaRx relies entirely on its argument regarding Rule 9(b)'s heightened pleading standards as discussed in the OUTPA context. Walgreens' TPC repeats nearly verbatim the same allegations to plead common-law fraud as stated for the OUTPA violations. Because the Court finds the TPC satisfies Rule 9(b) and the OUTPA theory survives, so too does the common-law fraud theory of liability.

In sum, Walgreens has sufficiently pleaded a contribution claim under Oregon law against OmedaRx as a joint tortfeasor. Although its negligent-misrepresentation theory of liability fails, Walgreens has stated viable theories of OmedaRx's liability to the Cambia Plaintiffs for violations of the OUTPA, Or. Rev. Stat. §§ 646.608(1)(j), (s), and for common-law fraud.

### 3. Contribution Under Idaho Law (Count II)

Although "[t]he right of contribution exists among joint tortfeasors" under Idaho law, the statute defines a "joint tortfeasor" as "one (1) of two (2) or more persons jointly or severally liable in tort for the same injury to person or property . . . ." Idaho Code §§ 6-803(1), (4). The Idaho

legislature has significantly restricted the operation of joint and several liability. *See Idaho Dep't of Labor v. Sunset Marts, Inc.*, 91 P.3d 1111, 1116–17 (Idaho 2004); *see also* Idaho Code § 6-803(3) (limiting common-law doctrine by statute). Under Idaho law, parties can be held jointly and severally liable only when "acting in concert," which means "pursuing a common plan or design which results in the commission of an intentional or reckless tortious act."[11] Idaho Code § 6-803(5); *see also Horner v. Sani-Top, Inc.*, 141 P.3d 1099, 1104 (Idaho 2006).

OmedaRx argues that Walgreens has failed to allege any facts showing a common plan or design between itself and OmedaRx to commit the underlying tortious acts. But Walgreens alleged that OmedaRx "substantially assisted or encouraged Walgreens to continue submitting allegedly false U&C prices by continuing to adjudicate reimbursement claims based on the allegedly false U&C prices." (Dkt. 322 ¶ 23(a)). Further, OmedaRx signed contracts with Walgreens directing Walgreens *not* to report PSC or other club program prices as U&C prices. (*Id.*) These allegations plausibly describe a common plan to conceal Walgreens' true prescription drug prices from the Cambia Plaintiffs. If, through its contract negotiations and discussions about U&C pricing, OmedaRx directed Walgreens to exclude the PSC prices, then it clearly acted in concert with Walgreens to conceal the true price from the Cambia Plaintiffs. Notably, however, Walgreens will bear the burden of proof at a later stage to show the existence of a common plan between itself and OmedaRx to prevail on its contribution claim under Idaho law.[12]

---

[11] A party may also be held jointly and severally liable when it acts as an agent of another tortfeasor. Idaho Code § 6-803(5). But this is not relevant here, as Walgreens does not allege that OmedaRx was Walgreens' agent in committing the acts that led to the Cambia Plaintiffs' injury.

[12] Walgreens cursorily suggests that "[e]ven if Walgreens and [OmedaRx] are not jointly and severally liable under Idaho law, they may be under the law of some other state." (Dkt. 393 at 15). But Idaho's contribution statute is clear—the right of contribution exists among joint tortfeasors; joint tortfeasors are limited to those jointly and severally liable; joint and several liability is limited to causes of action within the statute's subsection (5), which dictates joint and several liability applies *only* when the tortfeasors are "acting in concert" or as an agent of another. §§ 6-803(1), (3), (4), (5). There can be no right of contribution under Idaho law unless Walgreens satisfies all statutory elements.

19

Alternatively, OmedaRx asserts—without support—that Walgreens has failed to allege that OmedaRx's actions proximately caused the Cambia Plaintiffs' injuries. For a right to contribution to accrue, the wrongful conduct of each tortfeasor must be "a proximate cause of an indivisible injury." *Athay v. Stacey*, 128 P.3d 897, 907 (Idaho 2005). Along with being underdeveloped, this argument makes no sense. The TPC explains that OmedaRx was the critical link between Walgreens and the Cambia Plaintiffs. It knew Walgreens did not include its PSC prices in the U&C pricing. It also knew or should have known the Cambia Plaintiffs' understanding of the U&C definition yet failed to disclose Walgreens' true prescription prices. It knowingly adjudicated claims for fraudulently inflated prescription reimbursements, causing the Cambia Plaintiffs to pay overcharged prices. OmedaRx, thus, proximately caused the Cambia Plaintiffs' injury.

OmedaRx does not challenge the sufficiency of any of Walgreens' three alternative theories of OmedaRx's liability in tort to the Cambia Plaintiffs under Idaho law. Walgreens' second contribution count against OmedaRx as a joint tortfeasor thus survives the motion to dismiss.

## CONCLUSION

The Court denies OmedaRx's Motion to Dismiss Walgreens' Third-Party Complaint under Rule 12(b)(2) and Rule 12(b)(6).

Virginia M. Kendall
United States District Judge

Date: May 23, 2023