**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| BCBSM, INC., *et al.*,<br><br>    *Plaintiffs*,<br><br>         v.<br><br>WALGREEN CO. & WALGREENS BOOTS<br>ALLIANCE, INC.,<br><br>    *Defendants*. | Case No. 1:20-cv-01853<br><br><br>Honorable Virginia M. Kendall<br>Honorable Sheila M. Finnegan<br><br>Related Cases:<br>Case No. 1:20-cv-04738<br>Case No. 1:20-cv-03332<br>Case No. 1:20-cv-01929<br>Case No. 1:20-cv-04940<br>Case No. 1:22-cv-01362 |
| WALGREEN CO. & WALGREENS BOOTS<br>ALLIANCE, INC.,<br><br>    *Third-Party Plaintiffs*,<br><br>         v.<br><br>PRIME THERAPEUTICS LLC & OMEDARX, INC.,<br><br>    *Third-Party Defendants*. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANTS'
MOTION FOR ATTORNEYS' FEES AND EXPENSES**

i

## **TABLE OF CONTENTS**

FACTUAL BACKGROUND ............................................................................................................. 2

ARGUMENT ................................................................................................................................... 3

   I.    Walgreens' Motion for Attorneys' Fees Should be Denied Because Plaintiffs' Objections Were Substantially Justified. .......................................................................................................... 3

      A.    Interrogatories and Requests for Production Seeking Information Pertaining to Exhibits Prepared at the Direction of Counsel (ROG 10, RFPs 38 & 39). ........................................ 4

      B.    Interrogatories Seeking Information Regarding Common Interest or Joint Defense Agreements, Litigation Financing or Contingent Attorney Fee Agreements, and Insurance Agreements or Policies (ROGs 13, 14 & 16) .......................................................................... 6

      C.    Interrogatory Seeking Financial Information Regarding Prime Therapeutics LLC .................... 9

      D.    Requests for Admission Seeking Legal Concessions. ........................................................... 10

   II.   Walgreens' Request for Attorney's Fees Incurred After the Motion was Granted Are Not Permitted Under the Law. .......................................................................................................... 11

   III.   Walgreens' Motion for Attorneys' Fees Should be Denied Because Walgreens Failed to Provide Proof of Actual Fees Incurred. ................................................................................................. 13

CONCLUSION .............................................................................................................................. 17

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Brown v. Patelco Credit Union*,
    No. 09-CV-5393, 2011 WL 4375865 (N.D. Ill. Sept. 20, 2011) ........................................ 14

*Debartolo v. Health and Welfare Dept. of Const. and Gen. Laborers' Dist. Council of
    Chicago and Vicinity*,
    No. 09 CV 0039, 2012 WL 205906 (N.D. Ill. Jan. 24, 2012) ........................................... 15

*Doe v. Lexington-Fayette Urb. Cnty. Gov't*,
    407 F.3d 755 (6th Cir. 2005) ............................................................................................ 4

*Frazier v. Se. Pa. Transp. Auth.*,
    161 F.R.D. 309 (E.D. Pa. 1995) ....................................................................................... 9

*Harper v. City of Chicago Heights*,
    223 F.3d 593 (7th Cir. 2000) ........................................................................................... 14

*Hensley v. Eckerhart*,
    461 U.S. 424 (1983) ......................................................................................................... 14

*Hubert v. Oswego Junction Enters. LLC*,
    No. 21 CV 3360, 2023 WL 2933052 (N.D. Ill. Apr. 13, 2023) ......................................... 5

*Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*,
    259 F.R.D. 323 (N.D. Ill. 2009) ..............................................................................*passim*

*Nelson v. Ricoh, USA*,
    No. 17-11390, 2018 WL 6728392 (E.D. Mich. March 1, 2018) ....................................... 13

*Pable v. Chicago Transit Authority*,
    No. 19 CV 7868, 2023 WL 5955832 (N.D. Ill. Aug. 16, 2023) ........................................ 11

*Rickels v. City of S. Bend, Ind.*,
    33 F.3d 785 (7th Cir. 1994) ............................................................................................... 3

*Small v. Richard Wolf Med. Instruments, Corp.*,
    264 F.3d 702 (7th Cir. 2001) ............................................................................................ 15

*Towne Place Condo Ass'n v. Phila. Indem. Ins. Co.*,
    284 F. Supp. 3d 889 (N.D. Ill. 2018) ................................................................................ 5

*United States v. Nobles*,
    422 U.S. 225 (1975) ........................................................................................................... 5

*Watkins v. Trans Union, LLC*,
    No. 2:14-cv-00135-WTL-MJD, 2019 WL 336674 (S.D. Ind. Jan. 28, 2019) .................... 14

**Other Authorities**

Fed. R. Civ. P. 37 ................................................................................................ 1, 2, 3, 11, 12, 13

Fed. R. Civ. P. 26 ................................................................................................................. 4

Fed. R. Civ. P. 36 ............................................................................................................... 11

Spread Pricing 101, National Community Pharmacists Association, available at
    https://ncpa.org/spread-pricing-101 (accessed Feb. 7, 2023) ................................................. 9

Plaintiffs[1] oppose Defendants Walgreen Co. and Walgreens Boots Alliance, Inc.'s (collectively, "Walgreens") Motion to for Attorneys' Fees (ECF 472) ("Motion"). At issue here was a good-faith effort to resolve genuine discovery disputes. Plaintiffs put forth cogent arguments, well-supported by case law and a declaration from counsel. While the Court ultimately granted the motion, the bases upon which the Court relied did not reflect bad faith or a disregard for clear, bright-line discovery rules. Rather, the Court reached conclusions favoring discovery based on the "magnitude" of the case, the "enormous damages being sought," and it compelled evidence the Court agreed was "irrelevant" in large part, but nevertheless found discoverable on a nuanced alternative basis. The Court's rulings reflected a balancing of factors that in the Court's reasonable judgment weighed in favor of discovery. But this balancing reflects that these issues raised close questions that reflect "a 'genuine dispute,' or 'that reasonable people could differ as to the appropriateness of the contested action.'" *Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 327 (N.D. Ill. 2009) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565 (1988)). Therefore, Plaintiffs' objections to Walgreens' discovery requests at issue in its Motion to Compel, filed January 23, 2023 (ECF 407) ("MTC"), were substantially justified, fitting squarely within the well-recognized exception to an award of attorney's fees under Rule 37(a)(5)(A)(ii).

---

[1] Plaintiffs are BCBSM, Inc. (d/b/a Blue Cross and Blue shield of Minnesota); HMO Minnesota (d/b/a Blue Plus); Health Options, Inc. (d/b/a Florida Blue HMO); Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue); Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Kansas City, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa); Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.; Blue Cross and Blue Shield of Arizona, Inc. (d/b/a Blue Cross Blue Shield of Arizona and d/b/a AZBLUE); Asuris Northwest Health; Cambia Health Solutions, Inc.; Regence BlueShield of Idaho, Inc.; Regence BlueCross BlueShield of Oregon; Regence BlueCross BlueShield of Utah; Regence BlueShield; HealthNow New York, Inc.; Highmark Western New York, Inc. (f/k/a Blue Cross of Western New York); Northeastern New York (f/k/a BlueShield of Northeastern New York); Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey); and Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health).

As a result, Walgreens' Motion is entirely unsupported. Moreover, parties should not be discouraged from protecting the type of information sought by Walgreens, which included privileged or attorney work product, as well as confidential financial information. Even if the Court grants Walgreens' Motion, the Court should reduce or strike Walgreens' requested fees incurred after the Court ruled on the MTC, as these are not permitted by law; are not adequately supported; and are excessive, redundant, or unnecessary. In fact, reminiscent of the reimbursement claims at issue in this case, Walgreens' fee request is grossly inflated. As just one example, under Rule 37, a party is not entitled to fees or costs incurred after the motion to compel was granted. Yet, over a third of the fees sought by Walgreens were incurred after the Court granted the MTC. For these reasons, as more fully explained below, Plaintiffs respectfully request that this Court deny Walgreens' Motion for Attorneys' Fees.

## **FACTUAL BACKGROUND**

Walgreens' underlying MTC addressed the following written discovery requests: Interrogatories (ROGs) 10, 13, 14, 16, and 26; Requests for Production (RFPs) 38 and 39; and Requests for Admission (RFAs) 148-160. Plaintiffs first answered ROGs 10, 13, 14, and 16 and RFPs 38 and 39 on July 13, 2021, raising objections on the grounds of privilege and work product protection, that the information sought was irrelevant or already in Walgreens' possession, or that the requests were unduly burdensome and overly broad. After sitting on these discovery responses for over a year, Walgreens challenged these objections and requested that Plaintiffs provide additional information to justify their objections. Despite Walgreens' unreasonable delay in raising its concerns, Plaintiffs participated in the meet and confer process in good faith, and articulated their position that the requested discovery was impermissible under the Federal Rules.

It is undisputed that Plaintiffs and Walgreens exchanged numerous letters and engaged in

multiple meet-and-confers in an attempt to resolve disputes concerning the discovery Walgreens sought. *See, e.g.*, MTC (ECF 407), at 3; Decl. of C. Zagnoli (ECF 377). Throughout this process, the parties were able to reach a resolution on many of Plaintiffs' objections and Plaintiffs agreed to produce a substantial amount of information and materials in response to several of Walgreens' discovery requests. The parties had their most significant meet-and-confer on these issues on October 28, 2022. *See* Ltr. From T. Farrell to K. Hibbert (Nov. 17, 2022) (ECF 377-18), 6-7. Nevertheless, following these discussions, Walgreens moved to compel production on the discovery requests at issue, without pursuing further attempts to resolve the issues with Plaintiffs.

Briefing on the MTC was completed on February 28, 2023. This Court issued an Order granting the motion on May 31, 2023. ECF 453 ("Order").

## ARGUMENT

**I. Walgreens' Motion for Attorneys' Fees Should be Denied Because Plaintiffs' Objections Were Substantially Justified.**

Federal Rule of Civil Procedure 37 provides that "the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A). But the Rule also provides that "the court must not order this payment if . . . the opposing party's nondisclosure, response, or objection was substantially justified . . . ." *Id.* at 37(a)(5)(A)(ii).

"The Supreme Court has stated that, in the context of Rule 37, 'substantially justified' does not mean 'justified to a high degree,' but rather … that there is a 'genuine dispute,' or 'that reasonable people could differ as to the appropriateness of the contested action.'" *Lorillard*, 259 F.R.D. at 327 (quoting *Pierce*, 487 U.S. at 565); *see also Rickels v. City of S. Bend, Ind.*, 33 F.3d 785, 786–87 (7th Cir. 1994) (explaining objecting party does not pay if their position was

3

"substantially justified").  Plaintiffs' objections to the discovery requests at issue in Walgreens' MTC were substantially justified.  While only persuasive authority, the Sixth Circuit has developed a test to determine whether the party was "substantially justified."  *Lorillard*, 259 F.R.D. at 327.

> The first factor is whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; the second factor is whether the adversary was prejudiced by the party's failure to cooperate in discovery; the third factor is whether the party was warned that failure to cooperate could lead to the sanction; and the fourth factor in regard to a dismissal is when less drastic sanctions were first imposed or considered.

*Doe v. Lexington-Fayette Urb. Cnty. Gov't*, 407 F.3d 755, 766 (6th Cir. 2005).  The first factor weighs in favor of Plaintiffs.[2]  Plaintiffs' objections were made in good faith and based on reasonable interpretations of the applicable law.

### A. Interrogatories and Requests for Production Seeking Information Pertaining to Exhibits Prepared at the Direction of Counsel (ROG 10, RFPs 38 & 39).

Plaintiffs objected to ROG 10 and RFPs 38 and 39, all seeking information and documents pertaining to Exhibit 2 of Plaintiffs' Amended Complaint (identifying exemplar overcharges made by Walgreens), on the grounds that the exhibit was created at the direction of counsel in anticipation of litigation and, thus, protected as work product.  *See* Plaintiffs' Opp. to Walgreens' Mot. to Compel (ECF 418) ("Opp."), 2-4.  Plaintiffs' based their objection on the well-founded attorney work product doctrine that "the mental impressions, conclusions, opinions, or legal theories of [Plaintiffs'] attorney or other representative concerning the litigation" was off limits pursuant to Federal Rule of Civil Procedure 26(b)(3)(B) and 26(b)(4)(D), as well as this Circuit's

---

[2] This Court has modified the test to discount the weight, if any, given to the second and third factors. *Lorillard,* 259 F.R.D. at 327.  The fourth factor is not at issue here.  To the extent this Court considers at all the second and third factors of the Sixth Circuit's "substantially justified" test, these also weigh in favor of Plaintiffs.  Walgreens has suffered no prejudice as a result of Plaintiffs' objections to the requested discovery.  Fact discovery in this case is essentially on hold pending the ruling on Walgreens' motion to compel related to document collection and review, so Plaintiffs actions have had no impact on the case schedule.  Further, Plaintiffs have provided the discovery sought by Walgreens through its Motion, following this Court's Order on May 31, 2023.  Finally, with regard to the third factor, no warning was provided to Plaintiffs regarding the risk that attorney's fees may be awarded.

case law. *See, e.g.*, *United States v. Nobles*, 422 U.S. 225, 238 n.11 (1975); *Towne Place Condo Ass'n v. Phila. Indem. Ins. Co.*, 284 F. Supp. 3d 889, 899 (N.D. Ill. 2018). The information sought was provided by consulting experts, which is generally protected by the attorney work doctrine. Pursuant to that doctrine, Plaintiffs contended that any information regarding the compilation of Exhibit 2 or documents used to prepared Exhibit 2 (not Exhibit 2 itself) was protected from disclosure. Although Plaintiffs supported their position with case law, as well as an affidavit from Plaintiffs' counsel, the Court disagreed on the merits of that argument. Order (ECF 453), at 16.

In *Rogers v. Quality Carriers, Inc.*, defendants similarly objected to disclosure of redacted information in an incident report compiled immediately after an automobile accident based on attorney work product. No. 4:15-cv-22, 2017 WL 2641055, at *1 (N.D. Ind. June 19, 2017). The redacted information, defendants argued, "came into existence because of a claim likely to lead to litigation." *Id.* The court "found that the report was not attorney work product because the form itself was not completed by counsel and did not include any legal theories or legal opinions" and ordered the unredacted document to be produced. *Id.* Nevertheless, the court denied plaintiff's request for fees and costs "because Defendants put forth a cogent argument, supported by caselaw, that the [incident report] was protected by the attorney-client privilege and work product document . . . ."[3] *Id.* at *3; *see also Hubert v. Oswego Junction Enters. LLC*, No. 21 CV 3360, 2023 WL 2933052, at *1 (N.D. Ill. Apr. 13, 2023) (finding an award of fees and costs unjust where a party relied on former counsel's advice about the application of the attorney client privilege or work product doctrine and explaining that "[l]awyers generally are reluctant to turn over documents they believe may be protected by the attorney client privilege or work product doctrine without a court

---

[3] The court also weighed favorably the fact that the redacted document had been produced and included on defendants' privilege log. *Id.* Plaintiffs' privilege log in this case, however, was not due to be disclosed to Walgreens at the time of Walgreens' MTC.

order"). The same is true for Plaintiffs here, who asserted a good faith argument for protection from disclosure of any information or documents pertaining to work performed by a consulting expert at the direction of counsel in anticipation of litigation.

### B. Interrogatories Seeking Information Regarding Common Interest or Joint Defense Agreements, Litigation Financing or Contingent Attorney Fee Agreements, and Insurance Agreements or Policies (ROGs 13, 14 & 16).

Plaintiffs objected to ROGs 13, 14, and 16 on the basis that the interrogatories potentially sought privileged information that was otherwise irrelevant to the claims and defenses asserted in this case. *See* Pls' Objs. and Resps. to First Set of Interrogs. (ECF 408-2). ROG 13 sought information regarding:

> any common interest agreement, joint defense agreement, or other agreement or arrangement under which [Plaintiffs] assert a joint attorney-client privilege with any other person (including any other Plaintiffs in this lawsuit) in which the privileged communications relate to U&C Prices, Discount Programs (including PSC), or any other matter at issue in this Action . . . .

*Id.* ROG 14 asked Plaintiffs to

> [i]dentify and describe any litigation financing or funding arrangement or agreement, contingent attorneys' fee arrangement or agreement, or other arrangement or agreement under which any part of the attorneys' fees or other costs arising from or relating to this Action will be paid or advanced by any third party . . . .

*Id.* And ROG 16 requested information regarding insurance contracts or policies, indemnification agreements or obligations "that will or may cover any part of your costs related to this Action, including costs for the defense of any counterclaims or third-party claims asserted against you." *Id.* Walgreens argued that the information sought via ROGs 13, 14, and 16 was relevant to (i) Walgreens' affirmative defense that Plaintiffs' claims are time-barred (ROGs 13, 14, 16); (ii) "the calculation of Plaintiffs' supposed damages" for both overpayments and attorneys' fees (ROGs

14, 16); and (iii) Walgreens' ability "to explore witnesses' credibility and bias" (ROG 13). *See* MTC (ECF 407), at 11.

With regard to ROG 13, Plaintiffs had already agreed to provide information pertaining to the identities of the parties and the timing of any common interest or joint defense agreement, *see* Opp. (ECF 418), at 6, and the Court held that both were relevant. *See* Order (ECF 453), at 8-10. As to ROG 14, Plaintiffs had provided separate sworn testimony in response to another interrogatory regarding the (i) date of [Plaintiffs'] first communications with any law firm about the substance of these claims and (ii) the date when Plaintiffs first obtained information suggesting that Walgreens' submission of U&C prices excluded Walgreens' discounted prescription drug prices, which arguably obviated the need for discovery of the same information via any existing common interest or joint defense agreements. Further, Plaintiffs argued that Walgreens was not entitled to information in these agreements for the purposes of calculating damages because no attorneys' fees had been awarded in the case.

The Court disagreed with these arguments, and in the Court's judgment, considering that "[ROG 14] seeks information beyond what was sought in these other interrogatories" and because "[i]n a case of this magnitude, Walgreens is entitled to understand the scope of its fee exposure, at least as memorialized in agreements." *Id.* at 11-12. But this Court's reliance on the magnitude of the case as the determining factor demonstrates that "reasonable people could differ as to the appropriateness of the contested action," and therefore, the argument was substantially justified. *See, e.g.*, *Lorillard*, 259 F.R.D. at 327. With regard to ROG 16, Plaintiffs argued that they had already answered in the negative the question of whether they had insurance agreements covering the costs of this Action in their initial disclosures; however, the Court found that "sworn responses to that effect is appropriate." Order (ECF 453), at 13. Thus, the Court ruled that even though

accurate factual information had been already been provided, the better course of action would be to provide the same statement under oath. But the Court's ruling was based on the form in which the information was provided, not a withholding of information or a failure to provide it, a distinction upon which reasonable people might justifiably disagree. Awarding fees based on such a distinction would be promoting form over substance.

Again, even though the Court disagreed with the merits of Plaintiffs' arguments, the arguments were made in good faith and cited supporting case law. This case is distinguishable from cases in which this Court has granted motions for attorneys' fees. For example, in *In re: Local TV Adver. Antitrust Litig.*, despite reaching agreements regarding the production of certain materials and responses to several requests through multiple rounds of meet and confer, the defendants ultimately failed to honor their agreements. No. 18 C 6785, 2023 WL 5659926, at *2 (N.D. Ill. Aug. 31, 2023). Defendants additionally refused to confirm whether certain materials sought even existed. *Id.* at *4. Because this Court found that defendant Nexstar Group failed to provide a "compelling reason that the information is not discoverable, either by asserting a privilege or by explaining that searching for such whitepapers would impose an undue burden," it granted the motion for fees. *Id.* at *7.

Similarly, in *Life After Hate, Inc. v. Free Radicals Project, Inc.*, this Court granted plaintiff's motion for discovery sanctions where defendants withheld information with no basis at all, defendants gave false or misleading testimony and responses, and defendants repeatedly contradicted themselves throughout the discovery process. No. 18-C-6967, 2020 WL 5848429, at *5 (N.D. Ill. Oct. 1, 2020). The Court found that "Defendants ha[d] engaged in a pattern of deceptive behavior intended to harm Plaintiff." *Id.* Conversely here, Plaintiffs supported their objections with relevant authority, provided truthful responses and were transparent about their

positions, and have willingly and diligently participated in discovery for 3.5 years. Accordingly, Walgreens has failed to demonstrate it is entitled to fees and expenses related to its motion to compel.

### C. *Interrogatory Seeking Financial Information Regarding Prime Therapeutics LLC.*

Plaintiffs objected to ROG 26 on the ground that it sought irrelevant information that was not proportional to the needs of the case. ROG 26 sought "projected and actual annual revenues and profits [Plaintiffs] have received from owning an equity interest, ownership interest, or debt interest" in third-party Defendant Prime Therapeutics LLC ("Prime"). Plaintiffs were responsive to Walgreens' inquiries regarding this interrogatory, provided their position, and supported that position with case law and other case documents. *See Frazier v. Se. Pa. Transp. Auth.*, 161 F.R.D. 309, 314 (E.D. Pa. 1995) (denying an award of costs and expenses where the party's position was "ultimately unconvincing, [but] not completely without basis in the law"). Walgreens argued that the information sought was relevant to damages and to bias.

In response, Plaintiffs asserted that Walgreens' position – that Prime's contracts with Plaintiffs included spread pricing[4] – was disavowed by the record in the case. Specifically, this was addressed in Prime's Answer to Walgreens' Third-Party Complaint, Prime's answers to Walgreens' interrogatories on the issue, and the production of the actual contracts between Plaintiffs and Prime which show that spread pricing was not used. *See* Opp. (ECF 418), at 8-9. The Court found that "[g]iven the enormous damages being sought against Walgreens, it would be inappropriate to deny discovery of the facts at issue where there is a reasonable theory of relevancy,

---

[4] Spread pricing is a practice by which some PBMs charge a price to health plans that is different than the PBM collects from its network pharmacy for a prescription. The PBM in this system could keep the difference, or spread, of the transaction as its own profit. *See* Spread Pricing 101, National Community Pharmacists Association, available at https://ncpa.org/spread-pricing-101 (accessed Feb. 7, 2023).

and especially where this would require resolving a factual dispute in Plaintiffs' favor based on an ambiguous record." Order (ECF 453), at 6. Again, this ruling appears to turn, not on clear, bright-line case law, but rather a judgment based on the magnitude of the damages at issue – one upon which reasonable people might easily differ. And certainly not one that reflects bad faith or a failure to cooperate in discovery.

With regard to bias, the Court agreed with Plaintiffs' argument that "the historical benefits [Plaintiffs'] received from Prime are irrelevant to bias today since they predate their testimony," but noted that "such benefits could shed light on contemporaneous statements and documents." *Id.* at 7. The Court concluded that, "[i]n any event, this argument goes to the weight of the evidence in establishing bias," and allowed the discovery on that narrow basis. *Id.* Here, although the Court agreed with Plaintiffs' main argument that the discovery sought was, in large part irrelevant, it found a narrow basis on which to lean in favor of allowing discovery. But the Court's agreement that the request was in the main irrelevant demonstrates that Plaintiffs' objections were substantially justified.

### D. *Requests for Admission Seeking Legal Concessions.*

Plaintiffs objected to several RFAs propounded by Walgreens that sought admissions regarding which legal theories Plaintiffs intend to pursue in this litigation. *See* Opp. (ECF 418), at 12-13. Specifically, as this Court noted in its Order:

> RFAs Nos. 149, 151, 154, and 157 seek admissions about Plaintiffs' intent to prove these varying degrees of Walgreens' mental state under their consumer fraud and protection claims. RFAs Nos. 152, 155, and 158 seek similar admissions regarding Plaintiffs' ability to recover damages under those claims. Finally, RFAs Nos. 159-160 seek admissions on whether Plaintiffs are asserting non-*scienter* theories under these consumer fraud and protection claims.

Order (ECF 453), at 17-18 (emphasis in original). Plaintiffs objected to these contention requests on the grounds that they sought legal conclusions, that they sought privileged information

10

regarding trial counsel's strategy, and were premature.  Opp. (ECF 418), at 12.  The Court held

that the Requests "ask questions based on different *factual* scenarios, which falls squarely within

Rule 36's allowance of requests for admission about 'the application of law to fact.'"  Order (ECF

453), at 19 (emphasis in original).  The Court also disagreed that responding to the Requests would

"reveal anything about counsel's opinions, impressions, or directions about those issues."  *Id.* at

20.  Finally, the Court determined that the Requests were not premature because "Walgreens has

shown a reasonable need at this advanced stage of the case to know the scope of Plaintiffs' claims

for discovery and pleading purposes." *Id.*

Whether the requests were seeking legal conclusions or "the application of law to fact," is

a subtle and nuanced distinction upon which reasonable people might differ.  Plaintiffs' objections

were supported by legal authority and made in good faith, even though they were not ultimately

successful.  None of the indicia of bad faith or deceptive behavior are evident here to suggest that

Plaintiffs' objections were frivolous in nature or not based on cogent legal positions.  Accordingly,

the Court should deny Walgreens' Motion.

## II.   Walgreens' Request for Attorney's Fees Incurred After the Motion was Granted Are Not Permitted Under the Law.

Plaintiffs' objections to the discovery requests at issue in Walgreens' MTC were

substantially justified.  But even if the Court finds that the exceptions identified in Rule 37(a)(5)(A)

do not apply here, Walgreens' requested fee amount must be reduced to account for fees not

permitted under the law.  Rule 37 requires "the party or deponent whose conduct necessitated the

motion, the party or attorney advising that conduct, or both to pay the movant's reasonable

expenses *incurred in making the motion*, including attorney's fees." *Lorillard*, 259 F.R.D. at 329

(quoting Fed. R. Civ. P. 37(a)(5)(A)) (emphasis in original).  The movant is, however, "not entitled

to fees or costs incurred after the motion to compel was granted." *Pable v. Chicago Transit*

*Authority*, No. 19 CV 7868, 2023 WL 5955832, at *4 (N.D. Ill. Aug. 16, 2023) (citing *Hubert*, 2023 WL 2933052, at *2 (holding that "time spent after the Court had ruled on Plaintiff's Motion does not justify an award of attorneys' fees or costs under Rule 37(a)(5)(A)")). Walgreens' Motion was granted on May 31, 2023. *See* Order (ECF 453). Fees sought by Walgreens for work performed after the Court's ruling was issued total $34,867.60. The request for any fees after the Motion was granted must be denied.

Walgreens seeks an award of attorneys' fees that includes almost 50 hours of work performed after the Court's ruling was issued. *See* Decl. of T. Farrell, Ex. A (ECF 471-1). This work, according to Exhibit A, fall into several different categories summarized below.

1. Review of the Court's May 31, 2023, Order by five different associates, two partners, and one counsel (totaling $3,466.80 in fees);

2. Internal correspondence regarding Walgreens' Motion for Attorneys' Fees (totaling $3,817.60 in fees);

3. Research and analysis related to Walgreens' Motion for Attorneys' Fees (totaling $8,880.80 in fees);

4. Revision and editing of Walgreens' Motion for Attorneys' Fees and Declaration (totaling $9,330.40 in fees);

5. Review of billing entries (totaling $5,016.80 in fees); and

6. Tasks unrelated to Walgreens' MTC or Walgreens' Motion for Attorneys' Fees (totaling $4,355.20 in fees). These include:

   a. "Review prior successful motions for JJB fees." (.7 hours, $772.80)

   b. "Correspond with opposing counsel regarding deadline to supplement discovery responses following order granting motion to compel." (.2 hours, $156.80)

   c. "Emails regarding supplemental responses followoing [sic] compel order." (.5 hours, $552.00)

   d. "Attention to deficiency letters and status, timing for upcoming motion for fees on fees for motion to compel and potential new motion." (1 hour, $1,104.00)

e. "Correspond with Ropes team regarding strategy related to Plaintiffs discovery supplements after motion to compel." (.4 hours, $313.60)

f. "Correspond with team regarding Crowell's requested extension on Initial Plaintiffs' deadlines to respond to requests following May order granting Walgreens' motion to compel." (.3 hours, $235.20)

g. "Analyze reports on Initial Plaintiffs' compelled discovery responses." (.8 hours, $672.00)

h. "Coordinate analysis of Plaintiffs' amended responses and objections to discovery requests covered by successful MTC." (.5 hours, $392.00)

i. "Coordinate analysis of Plaintiffs' served supplemental responses and objections to discovery requests following Judge Finnegan's order granting motion to compel." (.2 hours, $156.80)

All of the categories outlined above and all of time entries followed the Court's ruling on Walgreens' Motion and are, thus, "descendent costs" that are "wholly separate from effort expended in bringing the motion itself" and, therefore, "do[] not fall within Rule 37." *Lorillard*, 259 F.R.D. at 329 (denying request for fees associated with "preparing and submitting the Agreed Order"). Accordingly, the entirety of Walgreens' request for attorneys' fees following the Court's ruling on May 31, 2023, (*i.e.*, the fees not "*incurred in making the motion*") should be denied.

## III. Walgreens' Motion for Attorneys' Fees Should be Denied Because Walgreens Failed to Provide Proof of Actual Fees Incurred.

It appears that while Ropes & Gray has negotiated an "alternative fee arrangement" which includes, at least in part, discounted rates with Walgreens, its motion seeks "total value of the work performed on the Motions." *See* Decl. of T. Farrell (ECF 471), at ¶¶ 4-5. But Walgreens cannot agree to discounted rates and then ask this Court to award inflated "total value" rates that were never incurred or paid. "The fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." *Nelson v. Ricoh, USA*, No. 17-11390, 2018 WL 6728392, at *2 (E.D. Mich. March 1, 2018) (quoting *Hensley v. Eckerhart*,

461 U.S. 424, 437 (1983)). "The applicant should exercise 'billing judgment' with respect to hours worked . . . and should maintain billing time records in a manner that will enable a reviewing court to identify distinct claims." *Hensley*, 461 U.S. at 437.

Walgreens has failed to submit any proof of actual billing rates in similar cases or any similar cases in the district to support the requested rate. *See Watkins v. Trans Union, LLC*, Case No. 2:14-cv-00135-WTL-MJD, 2019 WL 336674, at *4 (S.D. Ind. Jan. 28, 2019) (holding that movant failed to provide evidence of "usual billing rates in similar cases, or any similar cases in this district to support the requested rate" of $400 per hour and finding that $250 per hour was a reasonable fee); *see also Brown v. Patelco Credit Union*, No. 09-CV-5393, 2011 WL 4375865, at *2 (N.D. Ill. Sept. 20, 2011) ("An attorney's market rate is the rate that lawyers of similar ability and experience in the community normally charge their paying clients for the kind of work in question."). And Mr. Farrell's affidavit alone is insufficient. *See Harper v. City of Chicago Heights*, 223 F.3d 593, 604 (7th Cir. 2000) ("While an attorney's self-serving affidavit alone cannot establish the market rate for that attorney's services, such affidavits in conjunction with other evidence of the rates charged by comparable lawyers is sufficient to satisfy the plaintiffs' burden."). Even more troubling, Walgreens has not submitted any proof that the fees it seeks were actually incurred – meaning, they were billed and paid by Walgreens. In Mr. Farrell's Declaration, he states only that the fees requested represent the "total value of the work performed on the Motions through September 8, 2023 . . . ." ECF 471 at ¶ 4. Moreover, Walgreens and Ropes & Gray "have negotiated an alternative fee arrangement" which includes, at least in part, discounted rates. *Id.* at ¶ 5. Notably, Mr. Farrell does not describe the alternative fee arrangement with any specificity nor does he affirmatively state that the fees were actually billed to Walgreens and paid. Because of Walgreens' failure to adequately support its requested fees, its Motion should be

14

denied.

## IV. Walgreens' Requested Attorneys' Fees Are Excessive, Redundant, or Otherwise Unnecessary.

"In determining the reasonable number of hours, the court should exclude hours that are 'excessive, redundant or otherwise unnecessary.'" *Small v. Richard Wolf Med. Instruments, Corp.*, 264 F.3d 702, 708 (7th Cir. 2001). A substantial portion of Walgreens' requested attorneys' fees are objectively excessive. First, Walgreens claims fees related to the work of eight (8) associates, two (2) partners, one (1) counsel, and one (1) paralegal – all for one motion to compel – without justification for the need for so many attorneys and personnel. *See* Decl. of T. Farrell, Ex. A (ECF 471-1). Second, Walgreens also claims fees associated with preparation of its Reply in Support of its MTC that total over triple times the number of hours spent on Walgreens' MTC itself.[5] *See id.* (requesting fees for 21 hours billed for Motion to Compel and 66.3 hours for Reply). Given the relative simplicity of Walgreens' Reply compared to its MTC, the tripling of the number of hours claimed is objectively unreasonable and amounts to excessiveness. The Court "may adjust the fee award upward or downward, depending on a variety of factors, including the time and labor required, the novelty and difficulty of the issues, the legal skill required, reputation of the attorneys, and awards in similar cases." *Debartolo v. Health and Welfare Dept. of Const. and Gen. Laborers' Dist. Council of Chicago and Vicinity*, No. 09 CV 0039, 2012 WL 205906, at *1 (N.D. Ill. Jan. 24, 2012) (internal citations omitted). The Court should adjust the fee here, if award, downward.

## <u>CONCLUSION</u>

For all the foregoing reasons, Plaintiffs respectfully request that this Court deny Defendants' Motion for Attorney's Fees and Expenses in its entirety.

---

[5] While Plaintiffs contend that this amount of time spent drafting Walgreens' Reply is excessive, it is noteworthy that Walgreens spent this much time responding to Plaintiffs' arguments that Walgreens contends were not "substantially justified."

Dated: September 25, 2023

Respectfully submitted,

By: */s/ Kelly H. Hibbert*

David L. Applegate (IL Bar# 3122573)
Brigid E. Kennedy (IL Bar # 6201446
**WILLIAMS BARBER & MOREL LTD.**
Suite 6800 Willis Tower
233 S. Wacker Drive
Chicago, Illinois 60606
Telephone: (312) 443-3200
Facsimile: (312) 630-8500
dla@williamsbarbermorel.com
bek@williamsbarbermorel.com

Kent A. Gardiner (D.C. Bar No. 432081)*
Stephen J. McBrady (D.C. Bar No. 978847)*
Kelly H. Hibbert (D.C. Bar No. 1006010)*
Jed Wulfekotte (D.C. Bar No. 977671)*
Justin D. Kingsolver (N.D. Ill. Bar No. 6320926)
**CROWELL & MORING LLP**
1001 Pennsylvania Ave. NW
Washington, D.C. 20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116
KGardiner@crowell.com
SMcBrady@crowell.com
KHibbert@crowell.com
JWulfekotte@crowell.com
JKingsolver@crowell.com

*\* Admitted pro hac vice*

*Attorneys for Initial Plaintiffs & Third-Party Defendant OmedaRx, Inc.*

## CERTIFICATE OF SERVICE

I, Kelly H. Hibbert, an attorney authorized to practice before this Court, hereby certify that the foregoing Opposition to Defendants' Motion for Attorney's Fees was electronically filed on September 25, 2023, and will be served electronically via the Court's ECF Notice system upon the registered parties and counsel of record.

Dated: September 25, 2023                    */s/ Kelly H. Hibbert*