THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCBSM, INC, (d/b/a BLUE CROSS and BLUE SHIELD of MINNESOTA), HEALTH NEW YORK, INC, HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE), ASURIS NORTHWEST HEALTH, et al., <br><br>*Plaintiffs*, <br><br>v. <br><br>WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., <br><br>*Defendants and Third-Party Plaintiffs*, <br><br>v. <br><br>PRIME THERAPEUTICS LLC, <br><br>*Third-Party Defendant*. | No. 20 C 1853 <br> No. 20 C 1929 <br> No. 20 C 3332 <br> No. 20 C 4940 <br> No. 20 C 4738 <br><br> Chief Judge Virginia M. Kendall |

**OPINION AND ORDER**

On August 21, 2024, this Court denied Initial Plaintiffs[1] and Additional[2] Plaintiffs' Motion for Leave to Amend Their Complaint to Conform to the Evidence. (Dkt. 571). Now, Additional Plaintiffs move for reconsideration, arguing that the Court's grounds for denying leave to amend did not apply to them. (Dkt. 573). For the following reasons, Additional Plaintiffs' Motion for Reconsideration [573] is denied.

**BACKGROUND**

Though the Court assumes familiarity with the facts of this case from its previous Order, (Dkt. 571 at 2), the procedural posture is complicated and bears repeating because it is relevant to Additional Plaintiffs' Motion. (*See generally* Dkt. 573). Initial Plaintiffs filed their Complaint in August 2020 (Dkt. 1). After the Court granted in part Walgreen's motion to dismiss, (Dkt. 121), Initial Plaintiffs filed their Second Amended Complaint in January 2021. (Dkt. 122). Additional Plaintiffs filed their Complaint in March 2022. (Dkt. 243). Because their cases involved the same issues of fact and law as well as "similar discovery . . . and similar evidence," Additional Plaintiffs moved that same month to consolidate their suit with that of Initial Plaintiffs (Dkt. 243 at 6).

---

[1] Initial Plaintiffs include the following parties: BCBSM, Inc. (d/b/a Blue Cross and Blue shield of Minnesota); HMO Minnesota (d/b/a Blue Plus); Health Options, Inc. (d/b/a Florida Blue HMO); Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue); Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa); Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.; Blue Cross and Blue Shield of Arizona, Inc. (d/b/a Blue Cross Blue Shield of Arizona and d/b/a AZBLUE); Blue Cross and Blue Shield of Kansas City, Inc.; HealthNow New York, Inc.; Highmark Western New York, Inc. (f/k/a Blue Cross of Western New York); Northeastern New York (f/k/a BlueShield of Northeastern New York); Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey); and Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health).

[2] Additional Plaintiffs include the following parties: CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Blue Cross and Blue Shield of South Carolina; BlueChoice HealthPlan of South Carolina, Inc.; Louisiana Health Service & Indemnity Company, d/b/a/ Blue Cross and Blue Shield of Louisiana; and HMO Louisiana, Inc.

2

In July 2021, Walgreen filed a Third-Party Complaint (TPC) against Prime Therapeutics, L.L.C. ("Prime") for Contribution. (Dkt. 151). Prime is a pharmacy benefit manager (PMB) that serves as an intermediary for certain Blue Cross-affiliated health insurance plans, including many of Initial Plaintiffs' plans, (Dkt. 227) and two of Additional Plaintiffs' plans. (Dkt. 573). The Court dismissed Walgreen's TPC in February 2022, (Dkt. 217), and then granted in part Walgreen's motion to file an Amended TPC in April 2022 (one month after Additional Plaintiffs filed their Complaint). (Dkt. 253). In the Court's Order granting leave to file the Amended TPC, the Court highlighted that some of Walgreen's claims against Prime were futile because Initial and Additional Plaintiffs had brought claims solely under intentional theories of tort liability requiring scienter. (*Id.* at 4). This meant, as the Court explained in its ruling, that Prime could not be held liable under Illinois laws that preclude tortfeasors (here, Walgreen allegedly) from seeking contribution for intentional tortious conduct (here, intentional fraud asserted by Initial and Additional Plaintiffs). (*Id.* at 3–4). Consequently, in April 2022, Walgreen amended its TPC but excluded those claims, which were barred, against Prime. (Dkt. 259). In May 2022, the Court granted Additional Plaintiffs thirty days to amend their Complaint after Walgreen moved to dismiss on jurisdictional grounds. (Dkt. 360 at 15). Additional Plaintiffs did not to amend. (Dkt. 578 at 3).

In January 2023, Walgreen sent requests for admission (RFAs) to Initial Plaintiffs asking them to admit whether they had "abandoned or declined to pursue claims based on reckless, negligent, or otherwise unintentional conduct." (*See* Dkt. 407). In overruling Initial Plaintiffs' objections to the RFAs, Magistrate Judge Finnegan wrote: "Walgreen[] has shown a reasonable need *at this advanced stage of the case* to know the scope of Plaintiffs' claims for discovery and pleading purposes" (Dkt. 453) (emphasis added). Initial Plaintiffs served their responses in July

3

2023. (Dkt. 561 at 6). These responses still did not answer whether Initial Plaintiffs were pursuing claims beyond intentional fraud. (*Id.* at 7). When Walgreen served identical RFAs to Additional Plaintiffs in September 2023, Additional Plaintiffs promptly served responses, but they were similarly deficient and did not indicate what avenues of relief Additional Plaintiffs were pursuing. (*Id.*) After Walgreen sent them a letter saying as much in May 2024, Additional Plaintiffs supplemented their responses to correct the deficiencies. (*Id.* at 7).

In June 2024—more than two years after the Court's April 2022 ruling (Dkt. 253) that state law barred Walgreen's contribution claims against Prime because the only allegations against them were for intentional fraud—Additional Plaintiffs moved jointly with Initial Plaintiffs to amend their Complaints to plead new scienter theories based on nonintentional conduct. (Dkt. 552). In August 2024, the Court denied the motion, citing undue delay and prejudice. (Dkt. 571). Now, Additional Plaintiff's move for reconsideration arguing the Court's previous order did not sufficiently address their arguments.

## LEGAL STANDARD

Motions for reconsideration under Rule 54(b) are generally disfavored and serve the limited purpose of "bring[ing] to the Court's attention a manifest error of law or fact or newly discovered evidence." *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). Thus, "a motion to reconsider is only appropriate where a court has misunderstood a party, where the court has made a decision outside the adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered." *Tapia-Rendon v. United Tape & Finishing Co. Inc.*, 2024 WL 406513, at *2 (N.D. Ill. Feb. 2, 2024) (quoting *Broaddus v. Shields*, 665 F.3d 846, 860 (7th Cir. 2011), *overruled in part on other grounds by Hill*

4

*v. Tangherlini*, 724 F.3d 965 (7th Cir. 2013)). The party seeking reconsideration "bears a heavy burden," and such motions "are not at the disposal of parties who want to 'rehash' old arguments." *Patrick v. City of Chicago*, 103 F. Supp. 3d, 907, 912 (N.D. Ill. 2015) (citation omitted); *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Thus, "a proper motion to reconsider does more than take umbrage and restate the arguments that were initially rejected." *Goings v. Brookman*, 2023 WL 2989435, at *1 (S.D. Ill. Apr. 18, 2023) (citing *Cnty. of McHenry v. Ins. Co. of the W.*, 438 F.3d 813, 819 (7th Cir. 2006), *as amended* (Apr. 11, 2006)).

## DISCUSSION

Additional Plaintiffs' chief argument is that this Court's Order, denying Initial *and* Additional Plaintiffs' motion to amend their complaints, was overbroad. (Dkt. 573 at 1). Additional Plaintiffs argue that the Court's rationale for denying the motion, principally that Plaintiffs delayed without explanation and that the proposed amendments would result in expansive discovery efforts and expenses, applies only to Initial Plaintiffs and not to Additional Plaintiffs. (Dkt. 573 at 2). The Court disagrees.

Under Rule 15, a federal district court "should freely give leave [to amend] when justice so requires" after the first amendment as a matter of course. Fed. R. Civ. P. 15(a)(2). "The Supreme Court has interpreted [Rule 15] to require a district court to allow [an] amendment unless there is a good reason—futility, undue delay, undue prejudice, or bad faith—for denying leave to amend." *Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357–58 (7th Cir. 2015) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *Zimmerman v. Bornick*, 25 F.4th 491, 494 (7th Cir. 2022) ("[A] court should deny leave to amend only if it is certain that amendment would be futile or otherwise unwarranted."). Undue delay can arise when a plaintiff seeks leave to amend "deep into

5

the litigation" where discovery is well underway or finished, or where the parties and Court have already invested significant resources in refining the issues, such as multiple rounds of dispositive motion briefing. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 687 (7th Cir. 2014). The Court considers both the length of the delay and any reasons the movant offers to explain why the delay occurred. *Tamari v. Bache & Co. (Lebanon) S.A.L.*, 838 F.2d 904, 909 (7th Cir. 1988) ("The longer the delay in seeking leave to amend, the likelier . . . both that the delay is inexcusable . . . and that granting leave to amend will, by further delaying the lawsuit, impair the public interest in the prompt resolution of legal disputes.").

Additional Plaintiffs, therefore, put the Court in an unenviable position: evaluating, once again, whether their delay was due to Additional Plaintiffs' "legitimate ignorance," lack of diligence, or, worse, "procedural gamesmanship." *McCoy*, 760 F3d at 687. Additional Plaintiffs provide no explanation for why they waited two years to seek leave to amend their complaint. Instead, Additional Plaintiffs merely highlight that *at least* they did not wait as long as Initial Plaintiffs did. (Dkt. 573 at 1–2, 3). And while this is true (Initial Plaintiffs filed their complaint two years earlier than Additional Plaintiffs), (Dkt. 1), this is a distinction without a meaningful difference. The Court put both Initial and Additional Plaintiffs on notice that their pleading was insufficient in April 2022—over two years prior to Plaintiffs jointly seeking to amend—when it found that Initial Plaintiffs' pleading failed to assert nonintentional scienter theories against Walgreen. (Dkt. 253 at 4). In making its prior decision, the Court cited to Initial Plaintiffs' allegations, which, for purposes of that portion of the ruling, were identical to the claims Additional Plaintiffs made in its complaint against Walgreen. Compl., *Carefirst of Md., Inc. v. Walgreen Co.*, No. 1:22-cv-01362 (N.D. Ill. filed Mar. 15, 2022), Dkt. 1. This makes Additional Plaintiffs' failure to even attempt to explain their delay more troubling. *See Hindo v. Univ. of Health Sciences/The*

6

*Chicago Med. Sch.*, 65 F.3d 608, 615 (7th Cir. 1995) ("[a] denial is particularly warranted in instances in which the plaintiff has failed to provide an explanation as to why the amendment did not take place sooner."); *Feldman v. Allegheny Int'l, Inc.*, 850 F.2d 1217, 1226 (7th Cir. 1988) (denying leave to amend where party "gave no explanation why this theory could not have been alleged sooner . . . since the facts upon which it is predicated had been in the complaint all along"). A month after explaining that Plaintiffs' failure to plead nonintentional fraud foreclosed some of Walgreen's contribution claims against Prime, the Court gave Additional Plaintiffs the chance to amend their Complaint. (Dkt. 360 at 15), an opportunity Additional Plaintiffs did not take. Additional Plaintiffs' failure to even attempt to offer an excuse for their delay weighed in favor of denying Additional Plaintiffs' motion for leave to amend.

Further, by failing to seek leave to amend even after Judge Finnegan granted Walgreen's Motion to Compel against Initial Plaintiffs, Additional Plaintiffs were, at the very least, not diligent in pursuing the claims they seek to raise in the proposed amendment. (*See* Dkt. 561 at 4–6). Additional Plaintiffs responded to Walgreen's RFAs by refusing to answer questions based on identical objections to the ones Judge Finnegan had previously overruled. (Dkt. 561 at 6). Not until May 2024 did Additional Plaintiffs supplement their responses to the RFAs admitting that they were pursuing fraud claims under nonintentional scienter theories, after Walgreen sent a letter explaining Judge Finnegan had overruled those same objections when Initial Plaintiffs raised them. (*Id.*; Dkt. 552 at 447). Thus, Additional Plaintiffs were content waiting for Walgreen to force them to admit that they sought to plead new, different legal theories, while discovery had been ongoing for at least 9 months (according to Additional Plaintiffs), (Dkt. 573 at 8), and as much as 18 months (according to Walgreen) (Dkt. 578 at 10). Moreover, this undermines Additional Plaintiff's claim that they played no part in the discovery disputes between Walgreen and Initial Plaintiffs, (Dkt.

7

573 at 3), and, more importantly, shows that Additional Plaintiffs had no problem letting the case drag on unnecessarily before seeking leave to amend.

Nevertheless, undue delay alone is typically "insufficient ground to warrant a denial of leave to amend the complaint." *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 793 (7th Cir. 2004); *see also George 8 v. Kraft Foods Global, Inc.*, 641 F.3d 786, 791 (7th Cir. 2011). Besides undue prejudice and dilatory motives, *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008), another factor courts considers is whether the party's proposed amendment would burden judicial resources. *Perrian v. O'Grady*, 958 F.2d 192, 195 (7th Cir. 1992) (citations omitted) ("The burden to the judicial system can justify a denial of a motion to amend 'even if the amendment would cause no hardship at all to the opposing party.' "); *Tamari* 838 F.2d 904 at 909 ("[T]he burden to the judicial system from allowing parties to change theories in midstream is a pertinent factor and may in appropriate cases justify a refusal to allow an amendment even if the amendment would cause no hardship at all to the opposing party.").

Here, the Court's Order correctly emphasized that Additional Plaintiffs' proposed amendment *would* waste judicial resources and extend discovery. (Dkt. 571 at 4). Walgreen previously underscored that whether Additional Plaintiffs are adding other theories of recovery would inform Walgreen's defense preparation. (Dkt. 561 at 5). According to Walgreen, understanding the full scope of allegations leveled against them "[would] critically define and narrow the issues for various matters and tasks—depositions, expert reports and testimony, summary judgment briefing, jury instructions, trial evidence, and opening statements." (Dkt. 407 at 14). Furthermore, Walgreen declared its document production substantially complete in February 2024. (Dkt. 561 at 13). No doubt if the Court permitted Additional Plaintiff to "change

8

theories in midstream," it would require expanding the scope of discovery, and expending additional efforts and judicial resources. *Tamari* 838 F.2d 904 at 909.

Moreover, by expanding the scope of discovery this late, Additional Plaintiffs' proposed amendment would also unduly prejudice Walgreen, contrary to what they claim. (Dkt. 573 at 2). With respect to Walgreen's third-party contribution claims against Prime, Additional Plaintiffs argue that, because only two Additional Plaintiffs worked with Prime for only two years, and Walgreen has not sought to assert any claims against Prime pertaining to Additional Plaintiffs, the issue of undue prejudice is "entirely irrelevant." (Dkt. 573 at 3–4). While it may be true that Walgreen has yet to file claims against Prime that relate to Additional Plaintiffs, this very well could be because Additional Plaintiffs have not been given an opportunity to amend their Complaint. If Additional Plaintiff are given such an opportunity, then the same prejudice argument concerning Walgreen's third-party contribution claims against Prime that applied to Initial Plaintiffs would also apply here. (*See* Dkt. 561 at 14) ("if Plaintiffs' Motion is granted, Walgreens will need to seek leave to amend its third-party complaint against Prime, resulting in the parties and the Court expending more resources."). Though the Court acknowledges that Initial Plaintiffs' proposed amendment would likely prejudice Walgreen *more* than Additional Plaintiffs' proposed amendment (both because Walgreen already abandoned its third-party contribution claims against Prime and Initial Plaintiffs have more accounts with Prime than Additional Plaintiffs), this does not excuse Additional Plaintiffs' undue delay in seeking leave to amend and the undue prejudice that the proposed amendment would nonetheless cause to Walgreen.

Finally, Walgreen correctly points out that motions for reconsideration "are not appropriate vehicles" for generally "arguing issues or presenting evidence that [were or] could have been raised during the pendency of the motion presently under reconsideration." *Anderson v. Holy See*, 934

9

F.Supp.2d 954, 957 (N.D. Ill. 2013), *aff'd sub nom. Anderson v. Catholic Bishop of Chicago,* 759 F.3d 645 (7th Cir. 2014). Such is the case here. Additional Plaintiffs rehash very similar arguments to ones they put forth in their Reply supporting the original motion for leave to amend. (*See generally* Dkt. 563). Because Additional Plaintiffs reuse many of the arguments already raised in their original motion for leave to amend, much of the Court's analysis from its August 2024 Order denying that motion also applies here. (Dkt. 571). Like in their original motion (Dkt. 552), here, Additional Plaintiffs neither point to newly discovered evidence to explain their significant delay in seeking leave to amend, nor do they offer any other explanation as to why they waited two years to move to amend their Complaint to add their new scienter theories. (*See* Dkt. 573). Additional Plaintiffs do not present any new case law or facts that would suggest this Court's apprehension of the issues in its original Order was mistaken. Accordingly, the Court finds no manifest error, and its original ruling stands. The Court thus denies Additional Plaintiffs' Motion for Reconsideration. (Dkt. 573).

## CONCLUSION

For the reasons stated above, Additional Plaintiffs' Motion for Reconsideration [573] is denied.

_____
Virginia M. Kendall
United States District Judge

Date: November 22, 2024