# THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| BCBSM, INC, (d/b/a BLUE CROSS and BLUE SHIELD of MINNESOTA), HEALTH NEW YORK, INC, HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE), ASURIS NORTHWEST HEALTH, et al., | ) ) ) ) ) ) ) ) ) | |
| *Plaintiffs*, | ) ) | No. 20 C 1853 <br> No. 20 C 1929 <br> No. 20 C 3332 <br> No. 20 C 4940 <br> No. 20 C 4738 |
| v. | ) ) | |
| WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., | ) ) ) | Chief Judge Virginia M. Kendall |
| *Defendants and Third-Party Plaintiffs*, | ) ) ) | |
| v. | ) ) | |
| PRIME THERAPEUTICS LLC, | ) ) | |
| *Third-Party Defendant*. | ) | |

## MEMORANDUM OPINION AND ORDER

This consolidated lawsuit stems from Initial Plaintiffs' claims of common law fraud, consumer fraud, deceptive trade practices, and unjust enrichment against Defendants Walgreen

1

Co. and Walgreens Boots Alliance, Inc.[1] After seven Additional Plaintiffs[2] filed a nearly identical

complaint, *see CareFirst of Md., Inc., et al. v. Walgreen Co., et al.*, No. 1:22-cv-12 01362 (N.D.

Ill.), the cases were consolidated in this action and then superseded by their operative second

amended complaint. (*See* Dkt. 145); (Dkt. 272).

Pending before the Court is Defendant Walgreen Co. and Walgreens Boots Alliance, Inc.'s

Motion for Protective Order, (Dkt. 599), and Initial Plaintiffs' Cross-Motion to Compel (Dkt. 607).

Both Motions relate to the same underlying discovery dispute concerning Walgreens' responses

to requests for documents associated with previous Walgreens litigation, Walgreens prescription

drug prices, and their retention policies. For the following reasons, the Court grants Defendant's

Motion for Protective Order [599] and denies Initial Plaintiffs' Cross-Motion to Compel [607].

## BACKGROUND

This litigation centers on Walgreens' allegedly fraudulent handling of reimbursements

from prescriptions purchased by customers who Plaintiffs insure. (Dkt. 622 at 1). Plaintiffs allege

that Walgreens fraudulently offered lower prices on certain prescription drugs to enrollees of

Walgreens' members-only Prescription Savings Club ("PSC"), without reporting such lower

prices when seeking reimbursement through so-called third-party intermediary pharmacy benefit

---

[1] "Walgreens" refers to Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. "Initial Plaintiffs" refers to BCBSM, Inc. (d/b/a Blue Cross and Blue shield of Minnesota); HMO Minnesota (d/b/a Blue Plus); Health Options, Inc. (d/b/a Florida Blue HMO); Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue); Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa); Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.; Blue Cross and Blue Shield of Arizona, Inc. (d/b/a Blue Cross Blue Shield of Arizona and d/b/a AZBLUE); Blue Cross and Blue Shield of Kansas City, Inc.; HealthNow New York, Inc.; Highmark Western New York, Inc. (f/k/a Blue Cross of Western New York); Northeastern New York (f/k/a BlueShield of Northeastern New York); Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey); and Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health). (Dkt. 636 at 1).
[2] CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Blue Cross and Blue Shield of South Carolina; BlueChoice HealthPlan of South Carolina, Inc.; Louisiana Health Service & Indemnity Company, d/b/a/ Blue Cross and Blue Shield of Louisiana, and HMO Louisiana, Inc. (Dkt. 568 at 1).

managers for prescriptions purchased by Plaintiffs' insureds. (Dkt. 602 at 2); (Dkt. 620 at 1). Walgreens allegedly accomplished this fraud by excluding the discounted savings club prices from its Usual and Customary ("UC") price calculations. As a result, Plaintiffs claim that Walgreens massively overcharged them. (*See* Dkt. 145).

After a drawn-out discovery process, which included the Court appointing a Special Master to oversee Plaintiffs' document review, (Dkt. 450), the latest skirmish concerns Walgreens' objections to producing material from a previous case involving Defendants, *U.S. ex rel. Baker v. Walgreens, Inc.*, No. 12 Civ. 0300 (S.D.N.Y. 2012) (the "Baker" suit), reimbursement information for Walgreens' government payors (i.e., Medicare and Medicaid), documents about its drug prices, and information regarding its retention policies. (*See generally* Dkt. 599; Dkt. 611).

## I.     Origins of Parties' Discovery Disputes

In June 2021, Initial Plaintiffs served their first discovery requests on Walgreens. (Dkt. 602 ¶ 6). Relevant here, Walgreens objected, writing: "Defendants will not search for or produce Documents or other materials related to reimbursement claims submitted to *government payors*." (Dkt. 602-1 at 2, Exhibit A, Objections to Initial Plaintiffs' Document Production) (emphasis added). Walgreens also objected to re-producing discovery it produced in a previous case, *Baker* (*Id.* at 4–5)—a case in which it was alleged Walgreens violated the Anti-Kickback Statute by inducing, among others, Medicare beneficiaries to self-refer their business exclusively to Walgreens' pharmacies. *See U.S. ex rel. Baker*, No. 12 Civ. 0300. After many rounds of negotiating, by the end of October, the parties had defined the scope of their respective document reviews and production. (Dkt. 601 at 3). Initial Plaintiffs never challenged Walgreens objection. (Dkt. 601 at 3). Walgreens began to perform that review in reliance on the parties' negotiations, including Walgreens' unchallenged objections. (*Id.*)

## II.    Plaintiffs' Discovery Objections

In January 2024, over two years after the parties had agreed upon the scope of document review and production, Initial Plaintiffs raised concerns about "serious deficiencies" in Walgreens' document production. (Dkt. 602-4 at 1, Exhibit D). Initial Plaintiffs claimed that the productions contained "very few emails dated earlier than 2011" and no PSC formularies (i.e., documents that list the prices Walgreens offered for drugs included in the discount program) created before 2018; they asked Walgreens to provide the details of its document preservation going back to the earliest U&C-related litigation. (Dkt. 602-4 at 2).

In February 2024, Walgreens declined to compile the requested information, explaining that Plaintiffs had alleged no facts suggesting Walgreens had violated a discovery rule. (Dkt. 602-5 at 1, Exhibit E). Walgreens further clarified that it made sense that few pre-2011 documents existed because its duty to preserve documents did not begin until mid-2012, when it received a Civil Investigative Demand (CID) from the United States Attorney's Office for the Southern District of New York. (*Id.*); (Dkt. 626 ¶ 4). Regarding the PSC formularies, Walgreens claimed that it had performed an exhaustive search for those documents during negotiations and motion practice in a prior arbitration with Humana Inc. (Dkt. 601 at 4).  Walgreens confirmed for the Initial Plaintiffs that it had produced, in this action, the results of that exhaustive search. (*Id.*)  The parties attempted to resolve the matter over the next several months. (Dkt. 601 at 5). Initial Plaintiffs sent Walgreens a number of correspondences asking specific questions regarding its production of documents in *Baker*. (Dkt. 622-6 at 125, Exhibit E).

On July 26, 2024, during a Zoom call between the parties to resolve ongoing document production disputes, Walgreens' 2021 objections came to a head. (*See* Dkt. 602-10 at 1, Exhibit J). Walgreens noted that it had long-ago refused to produce documents related solely to

government reimbursement programs. (*Id.*) Initial Plaintiffs characterized their previous objection as "general," claiming it did not shield Walgreens from producing documents relating to *Baker*. (*Id.* at 2). Walgreens also stated that while it had produced documents for managed government payor programs, it had maintained it would not produce documents related exclusively to non-managed government payor programs like Medicare and Medicaid. That Walgreens intentionally excluded non-managed payor program documentation was apparently news to Initial Plaintiffs, despite Walgreens clear objection in 2021. (Dkt. 622 at 6); (Dkt. 602 at 4–5).

Subsequently, Initial Plaintiffs alleged that they, in fact, *were* aware that Walgreens had objected to producing *Baker*-related documents, but had assumed it had withdrawn the objection. (Dkt. 602 ¶ 16); (Dkt. 626 ¶ 13). Further, according to Walgreens, Initial Plaintiffs expressly negotiated to carve out managed government payor programs from Walgreens' objections, but not non-managed programs. (Dkt. 601 at 6). Initial Plaintiffs dispute this. (Dkt 622 at 7, n. 7). Walgreens maintained it would not produce the documents citing, in part, Rule 26(b)(1)'s proportionality standard. (*Id.*)

In September 2024, Walgreens disclosed the fact that there were four witnesses used in *Baker* as document custodians who were not used in this action. (Dkt. 622 at 7). The newly disclosed *Baker* witnesses included John Miyazaki, Colin Watts, Chris Smith, and Rebecca Sieracki. (*Id.*) Fact discovery is set to close September 19, 2025. (Dkt. 669).

Walgreens now seeks a protective order declaring it need not produce: (a) any additional documents contained in or statistics about Walgreens' *Baker* productions, or add any more custodians from its *Baker* productions as custodians in this case; (b) any statistics or information about Walgreens' review of documents related to government programs, or any more such documents beyond those already produced by Walgreens; (c) any further information confirming

the non-existence of additional pre-2018 PSC formularies or information about Walgreens' search for those formularies; or (d) any information about or copies of Walgreens' document destruction or retention policies.

Initial Plaintiffs seek to compel Walgreens to produce documents in each of the same categories. They request that the Court require Walgreens to produce:

> (1) All documents Walgreens produced in *Baker* concerning: (a) government-payor prescription drug programs and (b) the custodial files of John Miyazaki and Colin Watts

> (2) Walgreens' document retention policy(ies) related to (i) electronic communications, including email, instant messages, text messages, voicemails, calendar entries, and any other electronic communications used by Walgreens employees between January 1, 2007 and March 18, 2020, and (ii) the PSC program formularies or price lists; and

> (3) Information regarding litigation holds (i) in place from January 1, 2007 until March 18, 2020 for the following Walgreens employees: Scott Schuler, Erica Reaves, Joseph Bosco, and Steve Szewcyzk, and (ii) from January 1, 2007 until December 31, 2018 for any network drives or other repositories where Walgreens' PSC program formularies or price lists are or were saved.

(Dkt. 611 at 1).

## LEGAL STANDARD

### I.      Protective Order

The Supreme Court has long established that "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). Federal Rule of Civil Procedure 26(b)(1) provides that:

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative

> access to relevant information, the parties' resources, the importance
> of the discovery in resolving the issues, and whether the burden or
> expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible
> in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Rule 26 further states that a court may issue a protective order "for good

cause . . . to protect a party or person from annoyance, embarrassment, oppression, or undue

burden or expense." Fed. R. Civ. P. 26(c)(1). Before issuing the requested protective order, the

Court must independently determine whether "good cause" exists to issue the order. *See, e.g.,*

*Lacruze v. Zatecky*, 2022 WL 17849769, at *1 (S.D. Ind. Dec. 21, 2022); *Citizens First Nat. Bank*

*of Princeton v. Cincinnati Ins. Co.*, 178 F.3d 943, 945 (7th Cir. 1999). The burden to show good

cause for a protective order is upon the party seeking the order. *See General Dynamics Corp. v.*

*Selb Mfg. Co.*, 481 F.2d 1204, 1212 (8th Cir. 1973).

## II.      Motion to Compel

Under Rule 37, a party may compel discovery under whenever another party fails to

respond to a discovery request, or when its response is insufficient. Fed. R. Civ. P. 37(a).  Courts

have "extremely broad discretion" in controlling discovery, *Jones v. City of Elkhart*, 737 F.3d

1107, 1115 (7th Cir. 2013), and resolving discovery disputes, *Scott v. Chuhak & Tecson, P.C.*,

725 F.3d 772, 785 (7th Cir. 2013). The party moving to compel discovery bears the initial burden

to establish a request's relevance, then the burden shifts to the objecting party to show why the

request is improper. *See Mendez v. City of Chicago*, 2020 WL 4736399, at *3 (N.D. Ill. Aug. 14,

2020).

## DISCUSSION
### a.  *Baker* Production

Initial Plaintiffs request the Court to compel Defendants to produce: "[a]ll documents

Walgreens produced in *Baker* concerning: (a) government-payor prescription drug programs and

(b) the custodial files of John Miyazaki and Colin Watts." (Dkt. 611 at 1). Walgreens seeks a protective order declaring it need not produce the documents or add any more custodians from *Baker* to this action. (Dkt. 601 at 8).

Walgreens' position is straightforward: the parties negotiated the discovery scope in 2021 and Walgreens objected at least three separate times to producing certain *Baker*-related material then, but received no response; in the intervening three years, Walgreens reviewed over 500,000 documents and produced 250,000 documents, with over 13,000 of those produced documents dating from the pre-2011 time period; in doing so, Walgreens produced *Baker* documents to the extent they fell within the agreed search parameters; consequently, going back to search through for more *Baker* documents after Initial Plaintiffs failed to respond to their objection would be disproportionate and costly. (Dkt. 601 at 2–7) (Dkt. 602 at 3–5). Because Walgreens has established requisite good cause, the Court grants its request for the protective order as to any additional documents contained in or statistics about Walgreens' *Baker* productions; Walgreens also need not add any more custodians from its *Baker* productions as custodians in this case.

To start, Initial Plaintiffs waited three years to raise their request for documents associated with the *Baker* matter and do not indicate why. (Dkt. 601 at 10). In August 2021, Walgreens responded to Initial Plaintiffs' request for "[a]ll Documents relating to any civil litigation, civil investigation, or regulatory investigation referencing or relating to Walgreens' reporting of U&C prices or reimbursements resulting from Walgreens' reporting of U&C prices." (Dkt. 602-1 at 41). Initial Plaintiffs also specifically requested all documents from *Baker*. (*Id.*) In clear terms, Walgreens objected, asserting that the material was irrelevant because it was based on an unlawfully inducing federal insurers to refer business to Walgreens—a completely different legal theory from the case at bar. (*Id.* at 42). Refusing to produce such documents when Walgreens did

not get a response is consistent with their discovery obligations. *See Feit Elec. Co., Inc. v. CFL Techs. LLC*, 2023 WL 3436346, at *9 (N.D. Ill. May 12, 2023) (A "served party has the option of providing appropriate written objections and leaving it to the party seeking discovery to file a motion to compel.").

Neither in their Motion to Compel nor their Response brief to Walgreens' Motion for Protective Order do Initial Plaintiffs provide a valid reason why they did not respond to Walgreens original 2021 objections, aside from assuming it had withdrawn the objection.[3] (*See* Dkt. 622); (Dkt. 611). This is true despite Initial Plaintiffs seemingly acknowledging that it understood the parameters of Walgreens' objection in a September 2021 meeting. (Dkt. 626 ¶ 13). Instead, Initial Plaintiffs fast-forward to late 2023 where they raise general grievances about Defendants' lack of pre-2011 document production. (Dkt. 622 at 2).

Never mind that the original request itself was overbroad, *See LKQ Corp. v. Kia Motors Am., Inc.*, 345 F.R.D. 152, 161–62 (N.D. Ill. 2023) ("[M]ere speculation or suspicion of misconduct is insufficient to justify discovery on discovery"), Walgreens did not get a response to the objection until mid-2024. By then, Walgreens had nearly finished its document discovery, having reviewed over 500,000 documents, produced over 250,000, archived the databases containing the raw *Baker* productions, and declared substantial completion of its document review in February 2024 (Dkt. 620 at 2)—this alone could serve as a basis to deny Initial Plaintiffs' request for *Baker*-related documents. *See Medicines Co. v. Mylan Inc.*, 2013 WL 120245, at *2–3 (N.D. Ill. Jan. 9, 2013) (denying motion to compel "[b]ecause of [plaintiff's] unreasonable and

---

[3] It remains unclear why Initial Plaintiffs claimed that they did not know about Walgreens' objection to producing government payor programs. The parties discussed the objection in September 2021. (Dkt. 602 ¶ 6); (Dkt. 622 at 7, n. 7). Walgreens claims that Defendants specifically requested it produce documents related to the Federal Employee Program ("FEP") and the Federal Employee Health Benefits Program ("FEHBP"). (Dkt. 601 at 3). Walgreens agreed but maintained it would not produce other documents relating to government payor programs. (*Id.*); (Dkt. 622 at 7).

inexplicable delay in the face of [defendant's] long-standing and unwavering objections"); *Olive Can Co. v. Martin*, 906 F.2d 1147, 1152 (7th Cir. 1990) (district court did not abuse its discretion by prohibiting further discovery on matter after discovery had been ongoing for 5 years).

While it is possible that Walgreens' search of previously unreviewed *Baker* documents would produce at least some relevant material[4], the Court must balance the likelihood of finding responsive documents with the burden it imposes on the party. *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). Under the previously agreed upon search parameters, Walgreens reviewed 21,000 *Baker* documents still accessible to it and found only one unproduced document hitting on a government payor–related term and discussing U&C's meaning. (Dkt. 620 at 6).

Initial Plaintiffs' revised request for "[a]ll documents Walgreens produced in *Baker* concerning: (a) government-payor prescription drug programs and (b) the custodial files of John Miyazaki and Colin Watts," (Dkt. 620 at 2) is also disproportionate. *See Gross v. Chapman*, 2020 WL 4336062, at *3 (N.D. Ill. July 28, 2020) (even if plaintiffs can show relevance of documents sought, court is obligated consider proportionality under Rule 26(b)(1)). Their Motion categorically demands all government-payor or custodian-derived documents produced in separate litigation, regardless of whether the documents are relevant to this litigation. (Dkt. 611 at 1); *see Perius v. Abbott Lab'ys*, 2008 WL 3889942, at *5 (N.D. Ill. Aug. 20, 2008) (denying motion to compel where movant sought documents containing facts which were only tangentially related to his claim). In this district, courts disfavor so-called " 'cloned discovery' requests" which seek all documents produced or received during other litigation or investigations. *See In re Outpatient Med. Ctr. Emp. Antitrust Litig.*, 2023 WL 4181198, at *6 (N.D. Ill. June 26, 2023).

---

[4] Though the cause of action in *Baker* was different than the instant case, it still concerned Walgreens' understanding of U&C pricing, which is relevant here. (Dkt. 611 at 7). Walgreens, however, has already produced *Baker* documents consistent with the parties' negotiated terms for document review. (Dkt. 601 at 11).

Finally, Initial Plaintiffs' request is also costly. To comply, Walgreens estimates that it would have to re-review 80,000 documents costing $1.1 million to $1.4 million. (Dkt. 602 ¶ 23). Additionally, Walgreens archived the databases containing its full *Baker* productions, as *Baker* settled in 2019 and other U&C litigation against Walgreens passed out of its fact-discovery phases or ended. (*Id.* ¶ 24). Reopening these to review new documents would cost around $70,000 not including fees and costs to attorneys. (*Id.*)

Granting Initial Plaintiffs' Motion would reward their failure to respond to Walgreens' 2021 objection and impose high costs on Defendants for what could very well amount to a fishing expedition, considering *Baker* was brought under legal theories not at play here.

### b. Walgreens' Document Retention Policies

Next, Initial Plaintiffs move to compel Walgreens to produce information regarding Walgreens' document retention policies related to electronic communications, including email, instant messages, text messages, voicemails, calendar entries, and any other electronic communications used by Walgreens employees between January 1, 2007 and March 18, 2020. (Dkt. 611 at 1). Additionally, they also seek responsive documents regarding any litigation holds (i) in place from January 1, 2007 until March 18, 2020 for Scott Schuler, Erica Reaves, Joseph Bosco, and Steve Szewcyzk—all Walgreens employees. (*Id.*) Initial Plaintiffs claim understanding these policies "would shed light on Walgreens' supposed lack of documents and other important materials missing from Walgreens' production, relating to Walgreens' core decision-making regarding its U&C pricing." (Dkt. 611 at 1). Walgreens seeks a protective order from requests for "any information about or copies of Walgreens' document destruction or retention policies." (Dkt. 601 at 8).

11

Discovery on discovery requests are generally disfavored. *See, e.g.*, *LKQ Corp.*, 345 F.R.D. at 161; *Murff v. Kervan*, 2024 WL 2941933, at \*1 (S.D. Ind. May 24, 2024) (discovery on discovery "bring[s] resolution of the dispute to a standstill"). Mere speculation of misconduct in discovery is inadequate for a court to grant such requests. *LKQ Corp.*, 345 F.R.D. at 161; *see also Hubbard v. Potter*, 247 F.R.D. 27, 29 (D.D.C. 2008) ("Speculation that there is more will not suffice.").

Here, Initial Plaintiffs have not demonstrated a sufficient basis for the Court to allow this sort of discovery on discovery. First, the parties expressly agreed in their ESI Case Management Protocol that such discovery measures were not permitted. (Dkt. 140 at 18) ("The parties agree that they need not exchange litigation hold / retention instructions issued in these consolidated actions or any other litigation concerning U&C pricing practices."). Second, that Walgreens produced fewer documents prior to 2011 than in the years after makes sense given that they did not receive the CID until 2012, arguably the event that triggered its duty to preserve. (Dkt. 620 at 12). *Trask–Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008) ("The duty to preserve documents arises when a party has a reason to anticipate litigation.").

The chief basis for their request is that Walgreens stated in an interrogatory that at least one witness, Scott Schuler, "had conversations" with third-party intermediary pharmacy benefit managers concerning the shopper save program. (Dkt. 611 at 12). They write that they "assum[e]" that "at least some of these 'conversations' were in writing." (*Id.*) This is the sort of speculation which does not warrant the Court to compel discovery on discovery. *See e.g. Potter*, 247 F.R.D. at 29 ("[I]f the theoretical possibility that more documents exist sufficed to justify additional discovery, discovery would never end."); *Chapman*, 2020 WL 4336062, at \*2 ("A requesting party has the burden of proving a specific discovery deficiency in the responding party's production.").

Walgreens has produced over 13,000 documents from before 2010. (Dkt. 620 at 14). The Court will not require Walgreens to continue discovery based on Initial Plaintiffs' "assum[ption]" that records of these conversations exist. (Dkt. 611 at 12).

The Court, therefore, grants Walgreens' Motion as to producing documents relating to its retention policies and litigation holds over the prescribed dates, (Dkt. 601 at 8), and denies Initial Plaintiffs' Motion as to the same. (Dkt. 611 at 1).

### c.  PSC Formularies or Price Lists

Finally, Initial Plaintiffs also move to compel Walgreens to produce Walgreens PSC program formularies or price lists and, from January 1, 2007 until December 31, 2018, information for any network drives or other repositories where Walgreens' PSC program formularies or price lists are or were saved. (Dkt. 611 at 1). Walgreens seeks a protective order as to the requested information. (Dkt. 601 at 8).

PSC formularies are documents that list the prices Walgreens offered for drugs included in Walgreens' discount shopper program. (Dkt. 611 at 13). Contrary to Initial Plaintiffs' claim, Walgreens shows in its briefing that it has produced some PSC formularies that existed prior to 2018. (Dkt. 602-9 at 5). Specifically, in a correspondence between the parties' attorneys, Walgreens explained that it has already performed an exhaustive search for those documents as a result of negotiations and motion practice in a prior arbitration with Humana Inc. (Dkt. 601 at 4). It provides a sample of produced documents. (Dkt. 602-9, Attachment 1).

Initial Plaintiffs' claim seems instead to *assume* that a proper search would have produced more documents. (*See* Dkt. 611 at 13). This sort of assumption, however, is typically insufficient to warrant granting a motion to compel. For example, in *Carlock ex rel. Andreatta-Carlock v. Williamson*, a district court explained that when a plaintiff assumes the existence of documents,

13

"[d]efendants are left in the uncomfortable position of trying to prove a negative." 2011 WL 308608, at *4 (C.D. Ill. Jan. 27, 2011). Here, the case is similar as Walgreens has already performed a search of these formularies and has stated that "it is not withholding any pre-2018 PSC formularies about which it is aware." (Dkt. 601 at 14); *see Metcalf v. Ross*, 2021 WL 1577799, at *2 (N.D. Ill. Apr. 22, 2021) ("Courts do not accept mere speculation in a vague motion to compel.").

Accordingly, the Court grants Walgreens' Motion for Protective Order as to additional pre-2018 PSC formularies or information about Walgreens' search for those formularies. Initial Plaintiffs' Motion as to these formularies is denied. (Dkt. 611).

## CONCLUSION

For the reasons stated above, the Court grants Walgreens' Motion for Protective Order [599] and denies Initial Plaintiffs' Motion to Compel [607].

_____
Virginia M. Kendall
United States District Judge

Date: July 17, 2025

14