THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCBSM, INC, (d/b/a BLUE CROSS and BLUE SHIELD of MINNESOTA), HEALTH NEW YORK, INC, HORIZON HEALTHCARE SERVICES, INC. (d/b/a HORIZON BLUE CROSS BLUE SHIELD OF NEW JERSEY), BLUE CROSS AND BLUE SHIELD OF ARIZONA, INC. (d/b/a BLUE CROSS BLUE SHIELD OF ARIZONA and d/b/a AZBLUE), ASURIS NORTHWEST HEALTH, et al., <br><br> *Plaintiffs*, <br><br> v. <br><br> WALGREEN CO. and WALGREENS BOOTS ALLIANCE, INC., <br><br> *Defendants and Third-Party Plaintiffs*, <br><br> v. <br><br> PRIME THERAPEUTICS LLC, <br><br> *Third-Party Defendant*. | No. 20 C 1853 <br> No. 20 C 1929 <br> No. 20 C 3332 <br> No. 20 C 4940 <br> No. 20 C 4738 <br><br> Chief Judge Virginia M. Kendall |

**MEMORANDUM OPINION AND ORDER**

This consolidated lawsuit stems from Initial Plaintiffs' claims of common law fraud, consumer fraud, deceptive trade practices, and unjust enrichment against Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. After seven Additional Plaintiffs[1] filed a nearly identical complaint, *see CareFirst of Md., Inc., et al. v. Walgreen Co., et al.*, No. 1:22-cv-12 01362 (N.D.

---

[1] CareFirst of Maryland, Inc.; Group Hospitalization and Medical Services, Inc.; CareFirst BlueChoice, Inc.; Blue Cross and Blue Shield of South Carolina; BlueChoice HealthPlan of South Carolina, Inc.; Louisiana Health Service & Indemnity Company, d/b/a/ Blue Cross and Blue Shield of Louisiana, and HMO Louisiana, Inc. (Dkt. 568 at 1).

1

Ill.), the cases were consolidated in this action and then superseded by their operative second amended complaint. (*See* Dkt. 145); (Dkt. 272).[2]

On May 2, 2023, this Court appointed Dr. Maura R. Grossman as Special Master to address and resolve the issues raised in Walgreens' Motion to Compel Document Discovery and Related Metrics. (Dkt. 450). Both parties now move for sanctions relating to the opposing party's conduct during discovery under the Special Master's guidance. (Dkt. 643); (Dkt. 649). Walgreens seeks to dismiss Initial Plaintiffs' claims or alternatively (1) to preclude Initial Plaintiffs from pursuing damages, interest, or costs accrued after their substantial-completion declaration and (2) allow adverse inference jury instructions. (Dkt. 643 at 2); (Dkt. 647 at 3). Walgreens also requests costs and fees from Initial Plaintiffs associated with the remediation process in the amount of $4,100,747, or, in the alternative, for Initial Plaintiffs to pay Walgreens' reasonable attorney's fees and expenses incurred in connection with filing its Motion to Compel. (Dkt. 647 at 37-38). Initial Plaintiffs requests costs and fees from Walgreens associated with the remediation process in the amount of $3,010,271. (Dkt. 649 at 1); (Dkt. 658 at 3). For the reasons stated below, the Court grants Walgreens' Motion in part [643] and denies Initial Plaintiffs' Motion [649].

## BACKGROUND

### I.   Overview of the Dispute

---

[2] "Walgreens" refers to Defendants Walgreen Co. and Walgreens Boots Alliance, Inc. "Initial Plaintiffs" refers to BCBSM, Inc. (d/b/a Blue Cross and Blue shield of Minnesota); HMO Minnesota (d/b/a Blue Plus); Health Options, Inc. (d/b/a Florida Blue HMO); Blue Cross and Blue Shield of North Carolina; Blue Cross Blue Shield of North Dakota; Blue Cross and Blue Shield of Florida, Inc. (d/b/a Florida Blue); Blue Cross and Blue Shield of Alabama; Blue Cross and Blue Shield of Kansas, Inc.; Blue Cross and Blue Shield of Massachusetts, Inc.; Blue Cross and Blue Shield of Massachusetts HMO Blue, Inc.; Wellmark, Inc. (d/b/a Wellmark Blue Cross and Blue Shield and d/b/a Wellmark Blue Cross and Blue Shield of Iowa); Wellmark of South Dakota, Inc. (d/b/a Wellmark Blue Cross and Blue Shield of South Dakota); Wellmark Health Plan of Iowa, Inc.; Wellmark Synergy Health, Inc.; Wellmark Value Health Plan, Inc.; Blue Cross and Blue Shield of Arizona, Inc. (d/b/a Blue Cross Blue Shield of Arizona and d/b/a AZBLUE); Blue Cross and Blue Shield of Kansas City, Inc.; HealthNow New York, Inc.; Highmark Western New York, Inc. (f/k/a Blue Cross of Western New York); Northeastern New York (f/k/a BlueShield of Northeastern New York); Horizon Healthcare Services, Inc. (d/b/a Horizon Blue Cross Blue Shield of New Jersey); and Horizon Healthcare of New Jersey, Inc. (d/b/a Horizon NJ Health). (Dkt. 636 at 1).

The parties' Motions stem from a discovery dispute, which culminated in a two-year remediation process. Walgreens claims that Initial Plaintiffs withheld responsive, case-critical materials, while knowing that they had produced these materials to CVS in a very similar, previous matter. (Dkt. 647 at 1). According to Walgreens, Initial Plaintiffs declared that they had substantially completed document production yet had provided less than 18,000 of the 470,000 documents that they eventually produced and that Walgreens was entitled to receive. (Dkt. 647 at 10). In their Motion, Initial Plaintiffs allege that Walgreens manipulated the Special Master process in bad faith to inflate the number of responsive documents, which Initial Plaintiffs had failed to identify, to strengthen Walgreens' collateral relief Motion. (Dkt. 658 at 13–14).

A. **Problems Before the Special Master**

The details of the discovery issues which led to the pending Motions are as follows: In May 2021, Walgreens served its first Requests for Production (RFPs) on Initial Plaintiffs. (Dkt. 642 at 4). Initial Plaintiffs responded to Walgreens' RFPs in July 2021. (Dkt. 662, Exhibit 4). On June 15, 2021, Court entered the parties' Stipulated Order regarding Electronically Stored Information ("ESI") Case Management Protocol on June 15, 2021. (Dkt. 140, Stipulated Order). The parties agreed that

> each Party will use one or more search methodologies to collect, review, and produce responsive, non-privileged ESI and other documents in response to discovery requests. Such methodologies include the use of search terms, filters, and technology-assisted review.

(*Id.* at 2). Because of the large number of documents that hit on the agreed search terms, Initial Plaintiffs engaged a third-party litigation support vendor, Consilio, to provide, maintain, and support Initial Plaintiffs in their document review and productions, including the use of a technology-assisted review ("TAR") search method. (Dkt. 681 at 5; Dkt. 658 at 4). Specifically,

they relied on a program commonly referred to as a "Continuous Active Learning," ("CAL"). (Dkt. 681 at 5). This technology involves the creation of a computer model/algorithm that is updated during the review for the purpose of identifying potentially responsive documents as documents are reviewed and coded for training purposes. (*Id.*) On December 24, 2021, Initial Plaintiffs sent a letter to clarify and confirm the scope of their agreed upon responsive documents to Walgreens' RFPs. (Dkt. 655-18 at 257, Exhibit 18 – Letter from Monica R. Sterling).

To utilize the program, Initial Plaintiffs had to train the computer model by having attorneys review and code documents for responsiveness. (*Id.*) This process began in October 2021. (*Id.*) Initial Plaintiffs created an algorithm in their TAR model, which the program continually updated, to identify responsive documents, while attorney reviewers coded documents as either responsive or non-responsive. (Dkt. 658 at 4). Initial Plaintiffs claim this human review was "intentionally overbroad" because the scope of responsiveness was still being negotiated, the sample data set was incomplete, and contract attorneys had to conduct additional review. (*Id.*) During this process, Initial Plaintiffs calculated a "cut-off" score of 64. (*Id.* at 6). This meant that the program learned to identify any document, which received a responsiveness score of 64 or above. (*Id.*)

Through July 2022, Walgreens challenged the slow pace of document production. (Dkt. 662, Exhibit 5 – July 19, 2022 Letter). On July 19, 2022, Walgreens requested Initial Plaintiffs produce all documents related to another litigation involving U&C pricing—*Blue Cross & Blue Shield of Alabama, et al. v. CVS Health Corp., et al.*, 1:20-cv-236- WES-PAS (D.R.I.) (the "CVS litigation"). In early August 2022, Walgreens expanded their requests for production and requested Initial Plaintiffs to add additional custodians to the case. (Dkt. 658 at 7).

4

On August 22, 2022, in a joint status report, Initial Plaintiffs stated that their document productions were substantially completed, with less than 18,000 documents produced (i.e., 621 document per plaintiff). (Dkt. 647 at 5); (Dkt. 317 at 2, Joint Status Report). Specifically, they stated:

> Although Plaintiffs/Counter-Defendants have agreed to collect and produced documents from a small number of additional custodians, their *overall document productions* are substantially complete Additionally, the Initial Plaintiffs/Counter-Defendants have collected and run analytical search terms for over 3,033,940 documents, have trained and applied a Continuous Active Learning model on over 2,944,145 documents, and have performed a manual review of 103,384 documents for responsiveness to Defendants' discovery requests. The Initial Plaintiffs/Counter-Defendants have put *exceptional care* into collecting and reviewing documents to ensure that the documents produced *are truly responsive*, and will continue to do so through the completion of discovery.

(Dkt. 317 at 2–3) (emphasis added). At this time, Walgreens understood that a subset of Initial Plaintiffs had produced 140,000 responsive documents in the CVS litigation. According to Walgreens, Initial Plaintiffs' partial production confirmed that documents from the CVS litigation were almost entirely responsive. Walgreens asserts these documents would have appeared in any properly run collection and review, because the documents were possessed by the custodians and hit on the search terms that the parties had agreed upon for Initial Plaintiffs' review. (Dkt. 647 at 6).

On November 17, 2022, Walgreens identified two documents from the CVS litigation, which it claimed Initial Plaintiffs should have produced but had not. (Dkt. 681 at 2). Initial Plaintiffs admitted to missing these documents because their coding system had scored them below the 64-point threshold. (Dkt. 681 at 8). Once they learned of problems with their model, Initial Plaintiffs adjusted the model so it would more liberally identify responsive documents. (Dkt. 283 at 9). On December 21, 2022, Walgreens filed a Motion to Compel Document Discovery and

5

Related Metrics. (Dkt. 374) ("First Motion to Compel"). The motion sought clarity on Initial Plaintiffs' use of TAR, the addition of new document custodians, and the production of all remaining responsive documents. (Dkt. 647 at 6). Between August 2022 and March 2023, Initial Plaintiffs produced over 280,000 additional documents. (Dkt. 662 at 8). In March 2023, Initial Plaintiffs claimed again that they officially declared substantial completion of document production. (Dkt. 682 ¶ 31, Kelly Hibbert Declaration). In the midst of addressing Initial Plaintiffs' production deficiencies, Walgreens filed a second Motion to Compel in January 2023 for outstanding responses to interrogatories, requests for production, and requests for admission. (Dkt. 407) ("Second Motion to Compel"). Magistrate Judge Finnegan granted the Second Motion to Compel in May 2023, (Dkt. 453), and this Court ordered Initial Plaintiffs to pay Walgreens' attorney's fees and expenses related to that Motion. (Dkt. 487).

### B. Court Appoints Special Master Dr. Maura Grossman

On May 2, 2023, Magistrate Judge Finnegan appointed Dr. Maura Grossman ("Special Master") to investigate Initial Plaintiffs' document review model. (Dkt. 450, Appointment Order; Dkt. 658 at 6). In a letter to the Special Master, Walgreens provided evidence that Initial Plaintiffs' criteria for selecting documents responsive to Walgreens' discovery requests were systemically flawed. (Dkt. 655-10, Exhibit 10 – September 22, 2023 Email to Special Master). In July 2023, the Special Master ordered Initial Plaintiffs to complete a Preliminary Diagnostic Protocol ("PDP") to test their productions' adequacy. (Dkt. 465). The PDP had two phases: one in which the Special Master collected information about Initial Plaintiffs' document review and another in which Initial Plaintiffs reviewed their own methods for identifying responsive documents. (Dkt. 658 at 6–7). As part of phase one, the Special Master created a diagnostic test relying on Initial

Plaintiffs' determinations of whether a document was responsive to Walgreens' discovery requests. (Dkt. 674 at 2).

Following Initial Plaintiffs' completion of the first phase of the PDP, the Special Master expressed concern to the parties that Initial Plaintiffs' PDP raised "serious questions about the adequacy of [their] productions." (Dkt. 655-11 at 21, Exhibit 11 – Email from Special Master to Parties). She underscored the "huge discrepancy" between the number of responsive documents that Initial Plaintiffs had anticipated and the actual number produced. (*Id.*) She questioned how Initial Plaintiffs could have possibly declared their original production substantially complete "under these circumstances." (*Id.* at 22). The Special Master further questioned why Initial Plaintiffs' "coding criteria for responsiveness changed (i.e., narrowed) so significantly" during their initial review of document production and phase one of the PDP. (*Id.*)

Initial Plaintiffs admitted that their formulas for identifying responsive documents had changed, which could account for the discrepancy. (Dkt. 681 at 8–9). They also admitted that some previously unproduced documents were "material misses." (Dkt. 662-15 at 7, Exhibit 15 – Kelly Hibbert September 24, 2023 Letter). After re-reviewing their initial PDP sample, Initial Plaintiffs retroactively reduced their projection of how many responsive documents remained unproduced as of August 2022. (Dkt. 653 ¶ 30, Kirk Declaration; Dkt. 662-12 at 1, Exhibit 12 – August 28, 2023 Special Master Email). The PDP sample was what that they relied on to declare their production "substantially complete." (*Id.* at ¶ 31). The Special Master dismissed this re-review. (*Id.* at ¶ 39). The Special Master also noted that Initial Plaintiffs' review process did not resemble a true CAL model as Initial Plaintiffs had claimed to the Court. (Dkt. 652 ¶ 20).

On January 5, 2024, the Special Master established a remediation protocol (the "Remediation Protocol"), (Dkt. 507), after consulting with both parties on how it should be

7

designed. (*See, e.g.,* Dkt. 662-14, Exhibit 14 – September 12, 2023 Special Master Email). The Special Master found that the results of the PDP suggested there were a substantial number of unproduced responsive documents collected from the initial set of custodians. (Dkt. 507 at 2). Under the Remediation Protocol, which both parties agreed to, Walgreens would review specified samples of documents in two sets and code for responsiveness using the definition set forth by Initial Plaintiffs in the beginning of discovery. (*Id.* at ¶¶ 2-3, 13). Upon completion of the reviews, Walgreens would provide Initial Plaintiffs with their responsiveness coding determinations, and Initial Plaintiffs would update their TAR model based solely on Walgreens' responsiveness determinations. (*Id.* at ¶¶ 9, 11, 16, 18). The Remediation Protocol required Initial Plaintiffs to produce any documents coded as responsive by Walgreens that were not previously produced, accounting for privilege issues. (*Id.* at ¶¶ 12, 19). The Remediation Protocol included a verification stage wherein the Special Master would meet with the parties to discuss whether additional training and review were necessary. (*Id.* at ¶ 20). Magistrate Judge Finnegan recognized that the Court granted Walgreens' First Motion to Compel on January 5, 2024 to the extent that the Special Master ordered Initial Plaintiffs to complete the Remediation Protocol and produce all responsive documents identified through that process unless privileged. (Dkt. 539).

On February 7, 2025, the Special Master ended the Remediation Protocol. (Dkt. 639). Walgreens' efforts in the Protocol uncovered another 77,003 responsive documents. (Dkt. 647 at 10). Though the parties had added additional custodians, most of these documents came from existing custodians and were thus already in Initial Plaintiffs' possession before August 2022. (Dkt. 653 ¶ 43).

**DISCUSSION**

    I.    **Walgreens's Motion**

Walgreens claims that Initial Plaintiffs failed to meet their discovery obligations by withholding responsive documents and implementing an inadequate review process that systematically under-identified responsive documents. (*See* Dkt. 647 at 1–2). Additionally, Walgreens asserts that Initial Plaintiffs falsely declared "substantial completion" of document production, "while knowing full well that a subset of [Initial Plaintiffs] had previously produced exponentially *more* responsive" documents in the CVS litigation. (*Id.*). This conduct, Walgreens contends, resulted in a two-year Special Master remediation, which cost Walgreens millions of dollars. Walgreens seeks sanctions under several discovery rules, including Rule 37(a)(5)(A), Rule 26(g), Rule 37(c), and the Court's inherent authority. (Dkt. 647 at 13, 38). For the reasons stated below, the Court grants Walgreens Motion in part.

    **A. Attorney's Fees and Expenses under Rule (37)(a)(5)(A)**

Walgreens requests that they be reimbursed for the expense of having to bring their First Motion to Compel. Under Rule 37(a)(5)(A), if a motion to compel is granted, "the court must, after giving an opportunity to be heard, require the party . . . whose conduct necessitated the motion . . . to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. Proc. 37(a)(5)(A); *see also, e.g.*, *Gevas v. Wexford Health Sources*, No. 20 C 50146, 2021 WL 5795308, at *8 (N.D. Ill. Dec. 7, 2021). The fee-shifting is automatic: if the motion to compel is granted a court *must* require the party to pay the movant's reasonable expenses and attorney's fees incurred in making the motion unless (1) the motion was filed before the parties attempted to resolve their discovery dispute without court intervention; (2) the opposing party's nondisclosure, responses, or objections were substantially justified; or (3) other circumstances

9

make the award of expenses unjust. Fed. R. Civ. P. 37(a)(5)(A)(i)–(iii). The rule "presumptively requires every loser to make good the victor's costs," *Rickels v. City of South Bend, Ind.*, 33 F.3d 785, 786 (7th Cir. 1994), and the burden is on the defendants to prove that one of the Rule 37 exceptions applies. *See Lorillard Tobacco Co. v. Elston Self Serv. Wholesale Groceries, Inc.*, 259 F.R.D. 323, 327 (N.D. Ill. 2009).

There is no dispute that Walgreens filed their First Motion to Compel after conferring with Initial Plaintiffs and attempting to obtain the remaining responsive documents without involvement from the Court. (Dkt. 374 at 2). The issue lies with whether Initial Plaintiffs were "substantially justified" in their nondisclosure, responses, or objections and whether there are any circumstances making the award of expenses unjust. Fed. R. Civ. Proc. 37(a)(5)(A)(ii-iii). Walgreens' memorandum in support of its Motion for Sanctions specifically cites and relies upon Rule 37(a)(5)(A). (Dkt. 647 at 38-40). Initial Plaintiffs never addressed Rule 37(a)(5)(A) in their 35-page response brief. (Dkt. 681). And nowhere in their brief did they argue that their actions were substantially justified or that an award of attorney's fees under Rule 37(a)(5)(A) would be unjust. So, they have forfeited their objections to sanctions under this Rule. *Kenall Mfg. Co. v. Cooper Lighting*, LLC, 354 F. Supp. 3d 877, 883 (N.D. Ill. 2018); *see also Henry v. Hulett*, 969 F.3d 769, 785-86 (7th Cir. 2020).

For the sake of completeness and to resolve a clear basis upon which Walgreens sought sanctions, and this Court can impose sanctions, the Court addresses this rule. The Court focuses on the more than 350,000 responsive documents that Walgreens eventually produced after Walgreens filed its First Motion to Compel, many of which were only identified through the Remediation Protocol. (Dkt. 662 at 8); (Dkt. 647 at 39). These were required to be produced years ago, when Walgreens first requested them. (Dkt. 662, Exhibit 4).

10

A party's resistance to discovery is substantially justified if there is a "genuine dispute," or if "reasonable people could differ as to the appropriateness of the contested action." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). In the Court's view, the Special Master's findings in the Remediation Protocol speak to whether Initial Plaintiffs were substantially justified in their delayed productions. During the in-depth PDP process the Special Master pointed out several "red flags" and "discrepancies" within Initial Plaintiffs' review: Initial Plaintiffs produced less than 10% of the responsive documents they expected to find in their initial production; inexplicably narrowed their coding criteria for responsiveness during the review; made simple math errors; and failed to manually review over 500,000 documents they excluded from the TAR process. (Dkt. 655-11 at 21-23). The Court agrees with the Special Master that these issues raised "serious questions about the adequacy of [Initial Plaintiffs'] productions." (*Id.* at 21). The Special Master ultimately concluded that a substantial number of additional responsive documents likely had still not been produced. (Dkt. 507 at 2). Untimely disclosures and discovery responses are generally not substantially justified. *DR Distributors, LLC v. 21 Century Smoking, Inc.*, 513 F. Supp. 3d 839, 960 (N.D. Ill. 2021). The Special Master's finding that Initial Plaintiffs failed to produce responsive documents three years into litigation shows that Initial Plaintiffs were not substantially justified under Rule 37(a)(5)(A)(ii).

Whether the imposition of sanctions would be "unjust" is within the broad discretion of the district court. *Trs. of Chicago Reg'l Council of Carpenters Pension Fund v. Drive Constr., Inc.*, 2022 WL 16635554, at *4 (N.D. Ill. Nov. 2, 2022). The "unjust circumstances" standard focuses on the conduct of the moving party. *Lorillard Tobacco Co.*, 259 F.R.D. at 328 n.1. Initial Plaintiffs represented to Walgreens that their document productions were substantially complete after producing only 18,000 documents, then admitted that they failed to produce documents they knew

11

were responsive. Further, Initial Plaintiffs continued to withhold responsive documents throughout the Remediation Protocol, despite being put on notice of the deficiencies in their review process. (Dkt. 655-11 at 21). There is nothing unjust in requiring a party that has repeatedly failed to produce relevant and responsive documents to pay the attorneys' fees of the party that was required to litigate the issue. *DR Distributors, LLC*, 513 F.Supp.32 at 971. The Court finds no injustice in awarding expenses for the First Motion to Compel.

A key purpose of awarding fees and expenses under Rule 37(a)(5)(A) is to deter abuses of the discovery process, *see In re Sulfuric Acid Antitrust Litig.*, 231 F.R.D. 320, 330 (N.D. Ill. 2005) (citing 7 Moore's Federal Practice § 37.23[1], at 37–42); *Gevas*, 2021 WL 5795308, at *8, and to "promote voluntary discovery without the need for motion practice," *Ill. Tool Works, Inc. v. Metro Mark Prods., Ltd.*, 43 F.Supp.2d 951, 960 (N.D. Ill. 1999). If Initial Plaintiffs did not have to bear the costs created by their own deficient productions, there would be little reason for them not to repeat their behavior in the future. This is especially true here, where the Court has granted two motions to compel against Initial Plaintiffs. (Dkt. 453). Initial Plaintiffs have no excuse for their repeated discovery malfeasance, and justice requires an award to make Walgreens whole. *Rickels*, 33 F.3d at 786. The Court finds that Initial Plaintiffs have not met their burden of proving they fit into one of Rule 37(a)(5)(A)'s exceptions and thus, applies the presumptive fee-shifting in favor of Walgreens. Walgreens' request for an award of their expenses and attorney's fees associated with bringing their motion to compel is granted.

### B. Further Sanctions Are Not Warranted

The Court finds that fee-shifting under Rule 37(a)(5)(A) adequately addresses Initial Plaintiffs' discovery failures. The additional sanctions Walgreens seeks—dismissal, preclusion of

Initial Plaintiffs' obtaining damages and costs, and adverse jury instructions—are either not warranted or not available under the law.

Since Rule 37(a)(5)(A) provides a basis for a remedy, the Court does not need to rely on its inherent authority to order sanctions. When conduct could be adequately addressed under the Federal Rules of Civil Procedure or a specific statute, a court should generally rely on those rules or statutes to impose sanctions and remedies rather than on its inherent authority. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 50 (1991). Even if the Court elected to use its inherent authority, an award of attorney's fees would be the appropriate sanction, not dismissal. Dismissal of a case with prejudice is a "severe sanction," which requires the Court to find misconduct by a preponderance of the evidence. *Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 778 (7th Cir. 2016); *see also Long v. Steepro*, 213 F.3d 983, 986 (7th Cir. 2000) (Seventh Circuit is "particularly vigilant in requiring proportionality where the draconian sanction of dismissal is imposed.") (citations modified). To dismiss a case based on discovery abuse requires the Court to find a "party's actions displayed willfulness, bad faith, or fault*.*" *Collins v. Illinois*, 554 F.3d 693, 696 (7th Cir. 2009); *see also Jones v. Bremen High Sch. Dist. 228*, 2010 WL 2106640, at *8 (N.D. Ill. May 25, 2010) ("To find bad faith, a court must determine that the party intended to withhold unfavorable information."). Dismissal of Initial Plaintiffs' case is not warranted here. Nothing from the record shows that Initial Plaintiffs acted in bad faith; rather, it seems that they were negligent or perhaps even reckless in their document review and production.

Similarly, awarding adverse jury instructions to sanction Initial Plaintiffs is not warranted here. Rule 37(c)(1)(B) permits a court to sanction a party by informing the jury of their failure by weighing the party's duty to preserve the evidence, the extent to which they breached it (including if there was willfulness or bad faith involved), the prejudice incurred, and whether the sanction

13

itself may unduly prejudice a party. *MacNeil Auto. Prods., Ltd. v. Cannon Auto. Ltd.*, 715 F. Supp. 2d 786, 800 (N.D. Ill. 2010). Here, such a measure is also unwarranted given that Initial Plaintiffs eventually cured their deficient productions.

Finally, Rule 26(g) is not applicable here. Rule 26(g) provides that every discovery response must be signed by at least one attorney of record, and by signing, "an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry" the responses are complete, correct, and consistent with the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(g)(1). "If a certification violates this rule without substantial justification, the court, on motion or on its own, must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." Fed. R. Civ. P. 26(g)(3).

Walgreens argues that Initial Plaintiffs made an improper certification when they represented in an August 2022 Joint Status Report that their productions were "substantially complete." (Dkt. 647 at 14). They assert that Initial Plaintiffs could not have conducted a reasonable inquiry before making this certification given the failures of their document review and productions. *Id.* at 14-15. Walgreens misunderstands the law. Initial Plaintiffs' signatures on the August 2022 Joint Status Report was not a certification under Rule 26(g), which only applies to discovery requests, responses, or objections. Fed. R. Civ. P. 26(g)(3)(1). A status report does not fall into any of these categories. *Pressley v. City of S. Milwaukee*, 2022 WL 3603556, at *20 (E.D. Wis. Aug. 23, 2022) ("Rule 26(g) applies to false certifications of *discovery* demands or responses, not statements in court filings.") (emphasis in original); *Beck v. Am. Honda Fin. Corp.*, 2014 WL 4099844, at *3 (C.D. Ill. Aug. 20, 2014) (Rule 26(g) does not apply to a signed discovery plan). Accordingly, the Court declines to award sanctions under Rule 26(g).

14

In sum, the Court finds that awarding attorney's fees and costs under Rule 37(a)(5)(A) is a more appropriate remedy and declines to order sanctions on the other grounds raised by Walgreens.

## II. Initial Plaintiff's Motion

Initial Plaintiffs allege that Walgreens "manipulat[ed] the special master process to its benefit" so that it could "control the outcome of the Remediation Process without any guardrails, verification process, or checks and balances." (Dkt. 658 at 2–3). They claim that Walgreens violated and manipulated the Remediation Protocol by over-coding documents as responsive with a broader interpretation of "responsive" than what the Remediation Protocol required. Initial Plaintiffs seek collateral relief in the form of attorney's fees and costs under Rule 37(b), Rule 16(f), or the Court's inherent authority. For the reasons below, the Court denies Initial Plaintiffs' Motion.

Rule 37(b) provides for sanctions against a party who fails to comply with a court's discovery order. Rule 37 discovery abuse sanctions are appropriate when the noncompliant party has acted willfully, in bad faith, or is otherwise at fault. *Melendez v. Ill. Bell Tel. Co.*, 79 F.3d 661, 671 (7th Cir. 1996). The Court may, in its discretion, impose various sanctions. Fed. R. Civ. P. 37(b)(2)(A). In addition to, or instead of sanctions, "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." *Id*. at 37(b)(2)(C). Similarly, Rule 16(f) allows a court to issue sanctions against a party or attorney who "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(1)(C). Sanctions are not warranted where the party did not violate any court order. *See Daniels v. Spencer Gifts*, 2012 WL 488099, at *8 (N.D. Ill. Feb. 14, 2012).

Initial Plaintiffs base their Motion on allegations that Walgreens violated the Remediation Protocol by over-coding documents as responsive. (Dkt. 658 at 3, 10, 11, 15, 20, 35). They claim

15

that Walgreens coded non-responsive documents as "within scope," and that "within scope" was impermissibly broader than the definition of "responsive" set forth in the Remediation Protocol. (*Id.* at 20). According to Initial Plaintiffs, this alleged over-coding violated the Remediation Protocol, delayed litigation, and drove up costs. (*Id.* at 30-31). Their allegations are contradicted by the record. Initial Plaintiffs conflate Walgreens' use of the term "within scope," which Walgreens simply used to describe documents that were responsive as defined by the Remediation Protocol, (Dkt. 676 ¶ 7, Kirk Declaration), with deliberate over-coding. Initial Plaintiffs knew that Walgreens was using this short-hand and took no issue with it (Dkt. 676, Exhibit 4 – April 23, 2024 Initial Plaintiffs Email). The only "evidence" Initial Plaintiffs offer of Walgreens' alleged disobedience are disagreements about specific documents that were coded as responsive. (Dkt. 658 at 21-30). The Court gives no credence to these claims given that the Remediation Protocol used the responsiveness definition provided by Initial Plaintiffs. This is a blatant attempt by Initial Plaintiffs to relitigate the definition of responsiveness and avoid blame for failing to timely identify and produce the tens of thousands of additional responsive documents uncovered through the Remediation Protocol. The Court rejects these baseless allegations. Walgreens followed the Remediation Protocol, and the Court will not sanction them for obeying Court orders.

     Initial Plaintiffs spend a bulk of their 35-page Motion reciting grievances about the terms of the Remediation Protocol which they participated in drafting. For example, they complain that the Special Master made small modifications to the Remediation Protocol, (Dkt. at 658 at 32-33), and that it was costly for them to review the identified responsive documents for privilege. (*Id.* at 10-12). The Court cannot, and will not, issue sanctions just because Initial Plaintiffs do not like the outcome of a remediation process that was only necessitated by their own discovery failures. Initial Plaintiffs cannot avoid the consequences of their discovery failures; the delays and costs

16

associated with this process fall squarely on Initial Plaintiffs. Initial Plaintiffs failed to show how Walgreens disobeyed the Remediation Protocol or any other Court order. The Court declines to sanction Walgreens under Rule 37(b) or Rule 16(f). Additionally, the Court finds no grounds to sanction Walgreens under its inherent authority.

## CONCLUSION

For the reasons stated above, the Court grants in part Walgreens' Motion for Sanctions [643] and denies Initial Plaintiffs' Motion for Collateral Relief [649]. Walgreens must file a bill of costs and supporting documents within 30 days of this Order. If Initial Plaintiffs wish to respond to the bill of costs, they must file a response within 14 days of when the bill of costs is filed.

_____
Virginia M. Kendall
United States District Judge

Date: September 29, 2025