IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BCBSM, INC., et al., ) ) Plaintiffs, ) ) v. ) ) WALGREEN CO. & WALGREENS ) BOOTS ALLIANCE, INC. ) ) Defendants. ) ) ) ─────────────── ) ) WALGREEN CO. & WALGREENS ) BOOTS ALLIANCE, INC., ) ) Third-Party Plaintiffs, ) ) v. ) ) PRIME THERAPEUTICS LLC, ) ) Third-Party Defendant. ) ) ) | No. 1:20-cv-01853 Honorable Virginia M. Kendall Honorable Daniel P. McLaughlin Consolidated with: No. 1:20-cv-01929 No. 1:20-cv-03332 No. 1:20-cv-04738 No. 1:20-cv-04940 No. 1:22-cv-01362 |

# ORDER

This matter is before the Court on Defendants Walgreen Co. and Walgreens Boots Alliance, Inc.'s Corrected Motion to Compel Initial Plaintiffs' Responses to Litigation-Recovery-Related Production Requests [738]. For the reasons that follow, Defendants' motion is denied.

## BACKGROUND

This consolidated lawsuit stems from Initial Plaintiffs' claims of common law fraud, consumer fraud, deceptive trade practices, and unjust enrichment against Defendants Walgreen Co. and Walgreens Boots Alliance, Inc (together, "Walgreens"). Initial Plaintiffs allege that Walgreens has "knowingly and intentionally engaged in an ongoing fraudulent scheme to overcharge Plaintiffs for prescription drugs by submitting claims for payment at artificially inflated prices." ([145] at ¶ 1.) Along those lines, Initial Plaintiffs assert that Walgreens made false statements and omitted material facts in connection with its usual and customary ("U&C") prices for prescription drugs dispensed to individuals covered by Plaintiffs' health plans. (*Id.*) According to Initial Plaintiffs, "Walgreens fraudulently submitted inflated U&C prices on millions of claims reimbursed by Plaintiffs [and] has overcharged Plaintiffs hundreds of millions of dollars for prescription drugs." (*Id.*) Walgreens now moves for an order compelling Initial Plaintiffs to produce certain presentations prepared by Initial Plaintiffs' counsel in this suit (Crowell & Moring LLP) that were distributed to Initial Plaintiffs before this action was filed.

## DISCUSSION

Federal Rule of Civil Procedure 26 provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

2

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 34; Fed. R. Civ. P. 37(a)(3)(B). "The party requesting discovery bears the initial burden of establishing its relevancy." *Eternity Mart, Inc. v. Nature's Sources, LLC*, No. 19-cv-02436, 2019 U.S. Dist. LEXIS 198880, at *4 (N.D. Ill. Nov. 15, 2019) (citations omitted); *see also Art Akiane LLC v. Art & SoulWorks, LLC*, No. 19 C 2952, 2020 WL 6509228, at *3 (N.D. Ill. Nov. 5, 2020) (collecting cases). If the requesting party meets its burden, "the party opposing discovery has the burden of proving that the requested discovery should be disallowed." *Sols. Team v. Oak St. Health, MSO, LLC*, No. 17 CV 1879, 2021 U.S. Dist. LEXIS 132847, at *7 (N.D. Ill. July 16, 2021) (citation omitted).

Walgreens' instant motion implicates various privileges. In this diversity case, Illinois law governs issues concerning the attorney-client privilege. *See Meier v. Pac. Life Ins. Co.*, No. 20-CV-50096, 2021 WL 6125774, at *1 (N.D. Ill. Mar. 19, 2021). Under Illinois law, "the attorney-client privilege attaches '[w]here legal advice of any kind is sought from a lawyer in his or her capacity as a lawyer, the communication relating to that purpose, made in confidence by the client, is protected from disclosure by the client or lawyer, unless the protection is waived.'" *St. Paul Guardian Ins. Co. v. Walsh Constr. Co.*, No. 15 CV 10324, 2021 WL 4745385, at *3 (N.D. Ill. Oct. 12, 2021) (citation omitted). "[T]he privilege is a two-way street, protecting both the client's communications to the attorney and the attorney's advice to the client." *People v. Radojcic*, 998 N.E.2d 1212, 1221 (Ill. 2013)

3

(citations omitted). Federal law governs issues related to the work product doctrine. *Abbott Laboratories v. Alpha Therapeutic Corp.*, 200 F.R.D. 401, 405 (N.D. Ill. 2001). Pursuant to the work product doctrine, "a party may not discover documents and tangible things that are prepared in anticipation of litigation . . . by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3)(A). The party asserting that a privilege protects documents from disclosure bears the burden of establishing that the privilege is applicable. *See Hankins v. Alpha Kappa Alpha Sorority, Inc.*, 619 F. Supp. 3d 828, 834 (N.D. Ill. 2021).

Initial Plaintiffs maintain that that the presentations Walgreens seeks are protected from disclosure by the attorney-client privilege. In contrast, Walgreens argues that they are "seek[ing] non-privileged documents relating to law firms' unsolicited marketing outreach to Initial Plaintiffs." ([738] at 8.) Along those lines, Walgreens' motion is largely premised on the notion that they are seeking "pre-attorney-client-relationship business development pitches." (*Id.*) Pertinent to Walgreens' assertions, it appears from the record that the Crowell presentations (that the parties dispute in particular) were originally given to Plaintiff BCBS FL (and later distributed to other Initial Plaintiffs, as discussed further below). It appears from the record that "BCBS FL has been a Crowell client since 1995, and has been specifically advised on issues related to fraudulent U&C price reporting since 2018." ([750] at ¶ 14.) Initial Plaintiffs aver that the presentations Walgreens seeks "were authored by Crowell attorneys to advise BCBS FL and other recipient

4

BCBS plans about their rights as pertaining to Walgreens' alleged fraudulent conduct." ([750] at ¶ 33.) Initial Plaintiffs further represent to the Court that the presentations "specifically contained Crowell's legal advice, strategy, and mental impressions about this litigation." ([752] at 1.) Based on Initial Plaintiffs' averments and representations, the Court finds that they have adequately established that the Crowell presentations were not "pre-attorney-client-relationship business development pitches" when they were given to BCBS FL but rather documents containing legal advice conveyed to a firm client with an established attorney-client relationship. The same holds true to the extent Crowell directly sent the presentations at issue to other preexisting clients. Accordingly, the Court concludes that the Crowell presentations in dispute are covered by the attorney-client privilege.[1]

Initial Plaintiffs also maintain that that the Crowell presentations are protected from disclosure by the work product doctrine. Walgreens argues that the work product doctrine is inapplicable here because "[t]he prospects of litigation was too speculative for Initial Plaintiffs to have reasonably anticipated it when these responsive communications were made." ([738] at 12.) The Court disagrees. Contrary to Walgreens' suggestion, a lawsuit need not be underway for the work product doctrine to apply. "The work-product doctrine protects documents prepared

---

[1] Citing to various decisions, Walgreens maintains that "[c]ourts have recognized that no attorney-client privilege protects attorney business solicitations." ([738] at 11) Consistent with its determination above, the Court finds that Walgreens' cases are distinguishable because they generally involved law firm solicitations to non-clients with no preexisting relationships.

5

in anticipation of litigation for the purpose of analyzing and preparing a client's case." *Hankins*, 619 F. Supp. 3d at 834 (citations and internal quotations omitted). "The Seventh Circuit has explained that the test for 'anticipation of litigation' is 'whether, in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained *because* of the prospect of litigation.'" *Id.* at 837 (citations omitted). The work product doctrine will apply if "[s]ome articulable claim, likely to lead to litigation" has arisen that "served as the primary motivating purpose behind the creation of a document claimed to be protected." *Slaven v. Great Am. Ins. Co.*, 83 F. Supp. 3d 789, 795 (N.D. Ill. 2015) (citations omitted).

    Here, this action was preceded by a series of settlements between retail pharmacies and the Department of Justice based on allegations of false U&C price-reporting practices, including a Walgreens settlement. Furthermore, in 2017, a putative class sued Walgrens over the same alleged U&C conduct involved in this case. These circumstances gave rise to articulable claims. Considering Initial Plaintiffs' representations and averments, the Court finds that the presentations at issue were created in order to prepare for the advancement of the articulable claims in court. Accordingly, the Court concludes that Initial Plaintiffs have adequately shown that the Crowell presentations were prepared in anticipation of litigation and are covered by the work product doctrine.

These findings lead the Court to Walgreens' arguments concerning waiver. The record reflects that Plaintiff BCBS FL's in-house counsel e-mailed the presentations at issue to other BCBS plans on October 18, 2019, November 5, 2019, and November 6, 2019. Walgreens argues that "FL Blue waived any protection it purportedly had when it forwarded the email to numerous parties that had not engaged Crowell for this matter and did not ask for the pitch materials." ([745] at 4.) On the other hand, Initial Plaintiffs contend that privilege was not waived based on the application of the common interest doctrine. The common interest doctrine is "an exception to the general rule that voluntary disclosure to a third party of purportedly privileged information waives the privilege." *City of Rockford v. Express Scripts Holding Co.*, No. 3:17-CV-50107, 2023 WL 8544108, at *6 (N.D. Ill. Dec. 11, 2023) (citation omitted). The doctrine "allows communications that are already privileged to be shared between parties having a 'common legal interest' without a resultant waiver. *Fleury v. Union Pac. R.R. Co.*, No. 20 C 390, 2024 WL 1620613, at *4 (N.D. Ill. Apr. 15, 2024). "[T]he parties' interests need not be 'compatible in all respects' [and] [t]hey need only have some interests in common." *Id.* at *6 (citations omitted). The common interest doctrine "generally applies to any parties who have a 'common interest' in current or potential litigation, either as actual or potential plaintiffs or defendants." *City of Rockford*, 2023 WL 8544108 at *6 (citation omitted).

The record reflects that "BCBS FL originally executed its engagement letter with Crowell for this action against Walgreens on May 17, 2019," *i.e.*, before BCBS

7

FL's in-house counsel sent the presentations in the October/November 2019 e-mails. ([750] at ¶ 32.) Initial Plaintiffs aver that, though they had not yet signed engagement letters, all of the BCBS plans that received the October/November 2019 e-mails "were Crowell clients with preexisting attorney-client relationships" who received the presentations in preparation for an upcoming board meeting. (*Id.* at ¶ 31, 33.) Under these circumstances, the Court finds that the BCBS plans that received the Crowell presentations had a sufficient common legal interest to warrant application of the common interest doctrine. The BCBS plans (all Crowell clients) were payors who may have been overcharged due to Walgreens' U&C pricing practices. The BCBS plans had a common legal interest as potential plaintiffs in litigation to curtail (and be made whole for) Walgreens' alleged fraudulent scheme. Having found that the common interest doctrine is applicable, the Court concludes that the privileges attaching to the Crowell presentations were not waived when Plaintiff BCBS FL shared the documents with the other BCBS plans. *See In re Blue Cross Blue Shield Antitrust Litig.*, No. 2:13-CV-20000-RDP, 2017 WL 9807442, at *6 (N.D. Ala. Aug. 31, 2017) ("The Antitrust Compliance document, a privileged document, was shared among the Blue Caucus members at a meeting. As noted, the court finds that these members were the actual clients of the lawyer who prepared the document. But even if that were not so, and a single client disseminated the document to other Blue Caucus members, the common interest doctrine applies such that this disclosure did not waive the attorney-client privilege.").

Finally, Walgreens argues that the Crowell presentations are discoverable because Initial Plaintiffs have put the documents "at issue" with respect to the parties' claims and defenses. Pointing to deposition testimony, Walgreens contends that "[t]he lead plaintiff in this litigation, MN Blue, now admits that facts in the pitch materials put them on notice of Walgreens' alleged misconduct and the pitch materials contain the only facts MN Blue knows of supporting Walgreens' fraudulent intent." ([745] at 3.) As an initial matter, Initial Plaintiffs point out that the deposition testimony Walgreens relies upon was given in the deponent's personal capacity, not on behalf of Plaintiff BCBS MN as a whole. Furthermore, and in any event, the Court finds that Initial Plaintiffs are not relying upon privileged communications to make their case and have not "injected" the actual contents of the privileged materials into this suit. *See In re Est. of Wright*, 881 N.E.2d 362, 367 (2007). Initial Plaintiffs appear to concede that the Crowell presentations are relevant to Walgreens' affirmative defenses to the extent they show when Initial Plaintiffs first acquired knowledge of Walgreens' alleged U&C fraud. In responding to Walgreens' interrogatories, Initial Plaintiffs have provided the timing, high-level substance, and specific people that were involved in the communications at issue. Under the circumstances, Initial Plaintiffs are correct that "[a]ll that remains is the literal legal advice contained in those attorney-client communications." ([752] at 2.) The Court concludes that Walgreens does not need the actual legal advice contained in the documents to raise Walgreens' notice defenses.

**CONCLUSION**

For the foregoing reasons, Defendants' Corrected Motion to Compel Initial Plaintiffs' Responses to Litigation-Recovery-Related Production Requests [738] is denied.

**SO ORDERED.**     **ENTERED:**

**DATE:     November 18, 2025**

**HON. DANIEL P. McLAUGHLIN**
**United States Magistrate Judge**